# Exhibit A

# SUMMONS
## (CITACION JUDICIAL)

**SUM-100**

| | |
|---|---|
| **NOTICE TO DEFENDANT:**  XAVIER BECERRA, in his official capacity as *(AVISO AL DEMANDADO):* Attorney General of California; BRENT E. ORICK, in his official capacity as Acting Chief of the Department of Justice Bureau of Firearms; CALIFORNIA DEPARTMENT OF JUSTICE; and DOES 1 through 20, inclusive | *FOR COURT USE ONLY (SOLO PARA USO DE LA CORTE)* <br><br> **FILED** <br> JUL 1 1 2018 CQ <br> CLERK OF THE SUPERIOR COURT <br> BY: C. QUON, DEPUTY CLERK |

**YOU ARE BEING SUED BY PLAINTIFF:**  HARRY SHARP, an individual;
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):* DAVID AJIROGI, an individual; RYAN GILARDY, an individual; THE CALGUNS FOUNDATION; FIREARMS POLICY COALITION; FIREARMS POLICY FOUNDATION; and SECOND AMENDMENT FOUNDATION

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: *(El nombre y dirección de la corte es:)* <br> Shasta County Superior Court <br> 1500 Court Street <br><br> Redding, CA 96001 | CASE NUMBER: *(Número del Caso):* <br><br> 1 9 0 3 5 0 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
George M. Lee (SBN 172982)  (415) 979-0500  (415) 979-0511
SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
601 Montgomery Street, Suite 2000
San Francisco, CA 94111

| DATE: JUL 1 1 2018 <br> *(Fecha)* | Clerk, by _____, Deputy <br> *(Secretario)*                  *(Adjunto)* |
|---|---|

(For proof of service of this summons, use Proof of Service of Summons *(form POS-010).*)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

| [SEAL] <br> REDDING BRANCH <br> SUPERIOR COURT <br> SHASTA COUNTY <br> CALIF. <br> SEAL | **NOTICE TO THE PERSON SERVED: You are served** <br> 1. ☐ as an individual defendant. <br> 2. ☐ as the person sued under the fictitious name of *(specify):* <br><br> 3. ☐ on behalf of *(specify):* <br><br> under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor) <br>          ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee) <br>          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person) <br>          ☐ other *(specify):* <br> 4. ☐ by personal delivery on *(date):* |
|---|---|

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Legal Solutions Plus

Code of Civil Procedure §§ 412.20, 465

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| George M. Lee (SBN 172982)<br>SEILER EPSTEIN ZIEGLER & APPLEGATE LLP<br>601 Montgomery Street<br>Suite 2000<br>San Francisco, CA 94111<br>TELEPHONE NO.: (415) 979-0500   FAX NO.: (415) 979-0511<br>ATTORNEY FOR (Name): Plaintiffs HARRY SHARP, et al. | **FILED**<br>JUL 1 1 2018<br>CLERK OF THE SUPERIOR COURT<br>BY: C. QUON, DEPUTY CLERK |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SHASTA
STREET ADDRESS: 1500 Court Street
MAILING ADDRESS:
CITY AND ZIP CODE: Redding, CA 96001
BRANCH NAME:

CASE NAME: SHARP v. BECERRA

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: 190350 |
|---|---|---|---|---|
| [x] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter  [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | JUDGE:<br>DEPT: |

*Items 1-6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[x] Other petition (not specified above) (43)

2. This case [ ] is [x] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties   d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel   e. [ ] Coordination with related actions pending in one or more courts
   issues that will be time-consuming to resolve   in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence   f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought (check all that apply): a. [ ] monetary b. [x] nonmonetary; declaratory or injunctive relief c. [ ] punitive
4. Number of causes of action (specify): Three
5. This case [ ] is [x] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)
Date: July 10, 2018

George M. Lee (SBN 172982)
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Legal
Solutions
Plus

Cal. Rules of Court, rules 2.30, 3.220, 3.400-3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10

BY FAX

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**CM-010**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)—Personal Injury/Property
    Damage/Wrongful Death
Uninsured Motorist (46) *(if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto)*
**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
      Wrongful Death
Product Liability *(not asbestos or
    toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice–
      Physicians & Surgeons
    Other Professional Health Care
      Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip
      and fall)
    Intentional Bodily Injury/PD/WD
      (e.g., assault, vandalism)
    Intentional Infliction of
      Emotional Distress
    Negligent Infliction of
      Emotional Distress
    Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
    Practice (07)
Civil Rights (e.g., discrimination,
    false arrest) *(not civil
    harassment)* (08)
Defamation (e.g., slander, libel)
    (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
      *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease
      Contract *(not unlawful detainer
      or wrongful eviction)*
    Contract/Warranty Breach—Seller
      Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
      Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case—Seller Plaintiff
    Other Promissory Note/Collections
      Case
Insurance Coverage *(not provisionally
    complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
    Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent
      domain, landlord/tenant, or
      foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
      Case Matter
    Writ–Other Limited Court Case
      Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
      Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
    *(arising from provisionally complex
    case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of
      County)
    Confession of Judgment *(non-
      domestic relations)*
    Sister State Judgment
    Administrative Agency Award
      *(not unpaid taxes)*
    Petition/Certification of Entry of
      Judgment on Unpaid Taxes
    Other Enforcement of Judgment
      Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
    above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-
      harassment)*
    Mechanics Lien
    Other Commercial Complaint
      Case *(non-tort/non-complex)*
    Other Civil Complaint
      *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate
    Governance (21)
Other Petition *(not specified
    above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
      Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief from Late
      Claim
    Other Civil Petition

1    George M. Lee (SBN 172982)
2    Douglas A. Applegate (SBN 142000)
     SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
3    601 Montgomery Street, Suite 2000
     San Francisco, CA 94111
4    Phone: (415) 979-0500
     Fax:    (415) 979-0511

5    Raymond M. DiGuiseppe (SBN 228457)
6    THE DIGUISEPPE LAW FIRM, P.C.
     2 North Front Street, Fifth Floor
7    Wilmington, NC 28401
     Phone: (910) 713-8804
8    Fax:    (910) 672-7705

9    Attorneys for Plaintiffs and Petitioners

**FILED**

**JUL 1 1 2018**

CLERK OF THE SUPERIOR COURT
BY: C. QUON, DEPUTY CLERK

10

11         **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

12              **FOR THE COUNTY OF SHASTA**

13    HARRY SHARP, an individual;        CASE NO.   **1 9 0 3 5 0**
14    DAVID AJIROGI, an individual;
     RYAN GILARDY, an individual;       **VERIFIED PETITION FOR WRIT OF**
15    THE CALGUNS FOUNDATION;       **MANDATE AND COMPLAINT FOR**
     FIREARMS POLICY COALITION;      **DECLARATORY AND INJUNCTIVE**
16    FIREARMS POLICY FOUNDATION; and   **RELIEF**
17    SECOND AMENDMENT FOUNDATION,

18           Petitioners,

19              vs.

20    XAVIER BECERRA, in his official capacity as
21    Attorney General of California;
     BRENT E. ORICK, in his official capacity as
22    Acting Chief of the Department of Justice
     Bureau of Firearms;
23    CALIFORNIA DEPARTMENT OF JUSTICE;
24    and DOES 1 through 20, inclusive,

25          Respondents.

26

27    //

28    //

**BY FAX**

1

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

1    COME NOW the Plaintiffs and petitioners, HARRY SHARP, DAVID AJIROGI, RYAN

2    GILARDY, THE CALGUNS FOUNDATION, FIREARMS POLICY COALITION,

3    FIREARMS POLICY FOUNDATION, and SECOND AMENDMENT FOUNDATION

4    (collectively, "Plaintiffs") by and through their undersigned counsel, who hereby complain and

5    allege as follows:

6

7                                    **INTRODUCTION**

8        1.    Since 1989, the State of California has regulated the acquisition, possession, and

9    use of firearms using an ever-expanding definition of so-called "assault weapons" and by and

10   through an aggressive enforcement of an ever-expanding statutory scheme.  In 2016, the State

11   once again broadened the "assault weapons" statutes to include more semi-automatic firearms

12   with a magazine locking device, colloquially known as "bullet buttons."[1]

13       2.    The possession, transportation, and use of unregistered "assault weapons" carries

14   criminal liability to otherwise law-abiding citizens, in addition to the potential loss of their

15   property, fines, and standing in the community.  Thus, many law-abiding California citizens,

16   desiring to abide by the laws of our State, have opted to comply with the laws and register their

17   eligible firearms so as to remain in good standing with the law.

18       3.    But many law-abiding gun owners, including the Individual Plaintiffs and many

19   members of the Institutional Plaintiffs here, have been denied their right and ability to register

20   such eligible firearms in accordance with the registration mandates of Penal Code §§ 30680 and

21   30900(b) because Defendants Attorney General Xavier Becerra and the California Department of

22   Justice (DOJ) have utterly failed and refused in their statutorily-imposed duties to the People of

23   the State of California to establish a properly functioning Internet-based system for processing

24

---

25   [1]A Bullet Button is a particular patented and trademarked device that functions to provide a mechanical barrier
26   between a firearm's normal magazine release function and the user, requiring a bullet, tool, or other object to
     affirmatively engage the release mechanism and allow the magazine to be removed from the firearm body. While
     the DOJ's regulations refer to such devices generally as "bullet button" devices, they are more properly considered
27   as a class of "magazine locking devices" of which the Bullet Button is but one brand and type. For consistency, all
     references to "bullet button" are generic and refer to the broader class of "magazine locking devices" invented for
28   compliance with prior statutes and regulations or, where the context so indicates, to the firearms on which such
     devices are installed.

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

2

1  the registration of such firearms.  The system that DOJ has set up and maintained, the California

2  Firearms Application Reporting System (CFARS), was known by Defendants to be flawed,

3  intermittently inoperable, and ultimately incapable of providing a reliable means for the public to

4  register their firearms in accordance with the law.

5        4.    Things came to an ignominious conclusion the week before the statutory

6  registration deadline.  During the week of Monday, June 25, 2018, through Saturday, June 30,

7  2018, the statutory deadline, and beyond, the DOJ's registration system was largely inaccessible,

8  and inoperable on a wide variety of ordinary web browsers across the state.  Users who were able

9  to access the site were prevented from completing the process before the Internet-based

10  registration system crashed, obliterating the hours-long progress they had made.  As a result,

11  many individuals, including the individual plaintiffs herein, were prevented from timely

12  registering before July 1 in compliance with the law due to no fault of their own.

13        5.    In this case, Plaintiffs seek an un-extraordinary result, compelled by the basic

14  tenets of due process: That they simply be allowed to register their eligible firearms and comply

15  with the law, and that the Attorney General, the DOJ, and their officers and agents similarly

16  comply with the law by allowing such registrations and ensuring they are properly and timely

17  processed through a functioning online database as they have been required by statute to do.

18        6.    Plaintiffs seek mandamus, declaratory and injunctive relief as necessary and

19  proper to remedy the DOJ's failures to permit and provide for a functional registration system

20  throughout the registration period, including and especially during the last week of June 2018.

21

22                         **JURISDICTION AND VENUE**

23        7.    This Court has jurisdiction to hear and resolve all of Plaintiffs' claims and to grant

24  all forms of relief requested herein, including the mandamus, declaratory, and injunctive relief

25  sought as to all claims.  (Cal. Const., art. VI, § 10; Code Civ. Pro. §§ 525, 526, 1060 & 1085; see

26  also CCP § 410.10.)

27        8.    Venue in this judicial district is proper because some or all the Causes of Action

28  arose in this county, and the conduct of the Defendants at issue has caused and will continue to

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

VERIFIED PETITION FOR WRIT OF MANDATE AND
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1   cause legal injuries and deprivation of rights to individuals in this county, including one or more

2   of the Plaintiffs herein, and those similarly situated individuals they represent, as further

3   described herein.  (CCP §§ 393(b), 395(a); Gov. Code § 955.2.)

4

5                                   **THE PARTIES**

6   **A.     Individual Plaintiffs**

7         9.      All individual Plaintiffs herein are natural persons, citizens of the United States,

8   and citizens and residents of the State of California, in the counties specified below.

9         10.     All individual Plaintiffs are eligible to possess firearms under applicable state and

10  federal laws, including those firearms which the State now classifies as "bullet button assault

11  weapons" under the regulatory scheme enacted in 2016 under Senate Bill 880 and Assembly Bill

12  1135 (2015-2016 Reg. Sess.).

13        11.     Plaintiff Harry Sharp is an individual, a law-abiding gun owner and a resident of

14  the County of Shasta, California.  Plaintiff Sharp is and has been eligible to own firearms.  For

15  over 30 years, he has held a license to carry a concealed firearm (CCW) issued to him by his

16  county sheriff, after proving "good cause" and his good moral character to his licensing

17  authority, successfully completing a course of training on the law and firearms proficiency,

18  passing an extensive Live Scan-based background check.  Plaintiff Sharp also is the registered

19  owner of several Registered Assault Weapons (RAWs) which were legally owned and registered

20  during a prior assault weapons registration period, in or before 2001.  Prior to December 31,

21  2016, and as a private citizen, plaintiff Sharp legally owned four semiautomatic firearms which

22  the DOJ now labels "bullet button assault weapons" and has declared, in its regulations, and

23  elsewhere, must be registered.  On or about June 29, 2018, and continuing through June 30,

24  2018, Plaintiff Sharp attempted to register said firearms in accordance with the statutes and

25  DOJ's regulations, using the DOJ's CFARS system.  But the CFARS registration system was

26  inaccessible throughout his multiple attempts to use it during this period, and Plaintiff Sharp was

27  thus unable to register three of the four firearms.

28        12.     Plaintiff David Ajirogi is an individual, a law-abiding gun owner and a resident of

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

1   the County of Sacramento, California. Plaintiff Ajirogi is legally eligible to acquire, own, and

2   possess firearms. Prior to December 31, 2016, and as a private citizen, plaintiff Ajirogi legally

3   owned three semiautomatic firearms which the DOJ now labels as "bullet button assault

4   weapons" and has declared, in its regulations, and elsewhere, must be registered. On or about

5   June 28, 2018, and again on June 29, 2018, Plaintiff Ajirogi attempted to register said firearms in

6   accordance with the statutes and DOJ's regulations, using the DOJ's CFARS system. But the

7   CFARS registration system was inaccessible during this period and as a result Plaintiff Ajirogi

8   was unable to register his firearms.

9          13.    Plaintiff Ryan Gilardy is an individual, a law-abiding gun owner and a resident of

10   the County of Contra Costa, California. Plaintiff Gilardy is legally eligible to acquire, own, and

11   possess firearms. Prior to December 31, 2016, and as a private citizen, plaintiff Gilardy legally

12   owned three semiautomatic firearms which the DOJ now labels as "bullet button assault

13   weapons" and has declared, in its regulations, and elsewhere, must be registered. Beginning on

14   or about June 22, 2018, and continuing through June 30, 2018, Plaintiff Gilardy attempted to

15   register said firearms in accordance with the statutes and DOJ's regulations, using the DOJ's

16   CFARS system. But the CFARS registration system was inaccessible during this period and as a

17   result Plaintiff Gilardy was unable to register two of his firearms. Plaintiff Gilardy is a member

18   of institutional Plaintiffs Firearms Policy Coalition, Firearms Policy Foundation, and The

19   Calguns Foundation.

20

21   **B.     Institutional Plaintiffs**

22          14.    Plaintiff The Calguns Foundation ("CGF") is a 501(c)(3) non-profit organization

23   incorporated under the laws of California with its principal place of business in Sacramento,

24   California. CGF is dedicated to promoting education for all stakeholders about California and

25   federal firearm laws, rights and privileges, and to defending and protecting the civil rights of

26   California gun owners. CGF represents its members and supporters, who include California

27   firearm retailers and consumers throughout the State, including Shasta County, and brings this

28   action on behalf of itself, its members, supporters who possess all the indicia of membership, and

5

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

1  similarly situated members of the public.  Many of CGF's individual members have been

2  adversely and directly affected by Defendants' failure to permit or provide for timely and proper

3  registrations of "bullet button assault weapons" as required by statute, and all of CGF's

4  individual members are adversely and directly affected by Defendants' continuing deliberate

5  indifference to the resulting plight of law-abiding California gun owners who have been

6  prevented from complying with the law.

7      15.   Plaintiff Firearms Policy Coalition, Inc. ("FPC") is a 501(c)(4) non-profit

8  organization incorporated under the laws of Delaware with its principal place of business in

9  Sacramento, California, with members residing both within and outside of this state, including in

10  Shasta County, California.  FPC serves its members and the public through direct legislative

11  advocacy, grassroots advocacy, legal efforts, research, education, operation of a Hotline, and

12  other programs.  The purposes of FPC include defending the United States Constitution and the

13  People's rights, privileges, and immunities deeply rooted in the Nation's history and tradition,

14  especially the fundamental right to keep and bear arms.  FPC represents its members and

15  supporters, who include California firearm retailers and consumers, and brings this action on

16  behalf of itself, its members, supporters who possess all the indicia of membership, and similarly

17  situated members of the public.  Many of FPC's individual California members have been

18  adversely and directly affected by Defendants' failure to permit registrations of "bullet button

19  assault weapons" as required by statute, and all of FPC's individual members are adversely and

20  directly affected by Defendants' continuing deliberate indifference to the resulting plight of law-

21  abiding California gun owners who have been prevented from complying with the law.

22      16.   Plaintiff Firearms Policy Foundation, Inc. ("FPF") is a 501(c)(3) non-profit

23  organization incorporated under the laws of Delaware with its principal place of business in

24  Sacramento, California, with members residing both within and outside of this state, including in

25  Shasta County, California. FPF serves to defend and advance constitutional rights through

26  charitable purposes, with a focus on the fundamental, individual right to keep and bear arms. FPF

27  represents its members and supporters, who include California firearm retailers and consumers,

28  and brings this action on behalf of itself, its members, supporters who possess all the indicia of

VERIFIED PETITION FOR WRIT OF MANDATE AND
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1   membership, and similarly situated members of the public. Many of FPF's individual California

2   members have been adversely and directly affected by Defendants' failure to permit registrations

3   of "bullet button assault weapons" as required by statute, and all of FPF's individual members

4   are adversely and directly affected by Defendants' continuing deliberate indifference to the

5   resulting plight of law-abiding California gun owners who have been prevented from complying

6   with the law.

7        17.     Plaintiff Second Amendment Foundation, Inc. ("SAF") is a 501(c)(3) non-profit

8   organization incorporated under the laws of Washington with its principal place of business in

9   Bellevue, Washington. SAF has over 650,000 members and supporters nationwide, including

10   many in California. The purposes of SAF include education, research, publishing, and legal

11   action focusing on the constitutional right to privately own and possess firearms under the

12   Second Amendment, and the consequences of gun control. SAF brings this action on behalf of

13   itself, its members, supporters who possess all the indicia of membership, and similarly situated

14   members of the public. Many of SAF's individual California members have been adversely and

15   directly affected by Defendants' failure to permit registrations of "bullet button assault weapons"

16   as required by statute, and all of SAF's individual members are adversely and directly affected

17   by Defendants' continuing deliberate indifference to the resulting plight of law-abiding

18   California gun owners who have been prevented from complying with the law.

19        18.     Individual Plaintiffs Sharp, Ajirogi, and Gilardy are bringing this claim on behalf

20   of themselves, and as representatives of a class of similar individuals consisting of law-abiding

21   California residents too numerous to individually name or include as parties to this action. These

22   are: California citizens who are not otherwise prohibited or exempt under the "assault weapon"

23   registration laws, and who lawfully and legally possessed firearms that the State of California

24   has retroactively classified as "assault weapons" under Penal Code § 30515(a) that must be

25   registered as such pursuant to Penal Code sections 30680 and 30900(b), but who have been

26   precluded from doing so due to the inaccessibility and/or non-functionality of the DOJ's CFARS

27   system during the week of June 25, 2018 and continuing through the registration deadline of

28   June 30, 2018.

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

VERIFIED PETITION FOR WRIT OF MANDATE AND
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1       19.     Institutional plaintiffs CGF, FPC, FPF, and SAF are bringing this claim as public

2   interest organizations, whose California members similarly lawfully possessed retroactively-

3   defined "bullet button assault weapons" in this state, prior to December 31, 2016, and who

4   represent the interests of those similarly situated individuals too numerous to individually name

5   or include as parties to this action. These are: California citizens who are not otherwise

6   prohibited or exempt under the "assault weapon" registration laws, and who lawfully and legally

7   possessed firearms that the State of California has retroactively classified as "assault weapons"

8   under Penal Code § 30515(a) that must be registered as such pursuant to Penal Code sections

9   30680 and 30900(b), but who have been precluded from doing so due to the inaccessibility

10  and/or non-functionality of the DOJ's CFARS system during the week of June 25, 2018 and

11  continuing through the registration deadline of June 30, 2018.

12      20.     As to all claims made in a representative capacity herein, there are common

13  questions of law and fact that substantially affect the rights, duties, and liabilities of many

14  similarly situated California residents who knowingly or unknowingly are subject to the statutes.

15  The relief sought in this action is declaratory, injunctive, and mandamus in nature, and the action

16  involves matters of substantial public interest.  Considerations of necessity, convenience and

17  justice justify relief granted to Individual and Institutional Plaintiffs in a representative capacity.

18  Furthermore, to the extent it becomes necessary or appropriate, the Institutional Plaintiffs are

19  uniquely able to provide notice to their thousands of California members and constituents who

20  are or would be part of any identifiable class of individuals for whose benefit this Court may

21  grant such relief.

22

23  **C.      Defendants**

24      21.     Defendant Xavier Becerra is the Attorney General of the State of California, and

25  he is sued herein in his official capacity. The Attorney General is the chief law enforcement

26  officer of the state, and the head of the DOJ. It is his duty to ensure that California's laws are

27  uniformly and adequately enforced. The DOJ and its Bureau of Firearms regulate and enforce

28  state law related to firearms, and the registration of statutorily-classified "assault weapons."

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

8

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

22.     Defendant Brent E. Orick is Acting Chief of the DOJ's Bureau of Firearms. Upon information and belief, Orick reports to Attorney General Becerra, and he is responsible for the various operations of the Bureau of Firearms, including the implementation and enforcement of the statutes governing sales, use, ownership, transfer, and "assault weapon" registration of firearms. He is sued herein in his official capacity.

23.     The California Department of Justice (DOJ) is a state agency charged with responsibility of enforcing state statutes and promulgating and enforcing rules and regulations authorized by and designed to effectuate the law related to the registration of firearms as statutorily-classified "assault weapons." [2]

24.     Plaintiffs are unaware of the true names and capacities of those defendants sued herein as DOES 1 through 20 inclusive, and therefore sue such defendants by fictitious names. Plaintiffs are informed and believe and based upon such information and belief allege that each of the defendants designated as DOES 1 through 20, inclusive, is responsible in some manner for promulgating, administering, enforcing, or otherwise implementing the internet registration system at issue herein. Plaintiffs will amend this complaint to include the true names of DOES 1 through 20 inclusive as soon as is practicable after such names and capacities become known to them.

## OVERVIEW OF THE RELEVANT STATUTORY AND REGULATORY SCHEMES AND SUMMARY OF PLAINTIFFS' CLAIMS

A.     The General Scheme of the AWCA

25.     Since the dawn of the Roberti-Roos Assault Weapons Control Act in 1989 (AWCA), California gun owners have undoubtedly faced significant restrictions upon their ability to acquire and use many popular firearms, in common use elsewhere, as certain lawmakers have succeeded in branding specified types or configurations of firearms as "assault

---

[2] Because Defendants Becerra and Orick are sued in their official capacities as heads of the DOJ, all references herein to "DOJ" should be construed to include them.

1   weapons" and then incrementally expanding that list to include more and more firearms. (Pen.

2   Code § 30505(a).)  The product of these gun control legislative campaigns is that –

3   subject to very limited exceptions (e.g., §§ 30625-30630, 30645-30655, 31000-31005) – for the

4   vast majority of ordinary citizens in California, it is generally illegal to manufacture, distribute,

5   transport, sell, give, lend, or otherwise transfer an increasingly expansive list of firearms (on pain

6   of a felony conviction and prison time (§ 30600, subd. (a)), and even to simply "possess" one of

7   these legislatively-classified "assault weapons" (§ 30605, subd. (a)).

8          26.      The State Legislature has indeed built a statutory scheme especially onerous and

9   hostile to the countless law-abiding Californians simply seeking to exercise their

10  constitutionally-protected fundamental right to keep and bear arms for lawful purposes.  But

11  along the way, the Legislature has engrafted into the scheme a few inherent limitations on the

12  reach of the various prohibitions, establishing the four corners of the State's statutory power to

13  restrict the ability of private citizens in their access and use of firearms deemed "assault

14  weapons."  Each time the gun prohibitionists have succeeded in achieving statutory amendments

15  expanding the list of "assault weapons," the Legislature has made the minimal concession of

16  leaving a small "grandfathering" window for lawful owners of those guns that the legislation

17  retroactively deemed constitutional artifacts that they prefer their citizens not acquire – but only

18  if they register the firearm with the DOJ as an "assault weapon" within a specified period time,

19  can they continue to maintain "possession" of it.

20

21  **B.    The Pre-Existing Categories of "Assault Weapons"**

22         27.      These different phases of restrictions over time have led to the development of

23  three generally recognized categories of "assault weapons," the first two of which ("Category 1"

24  and "Category 2" assault weapons) were created based upon specific makes, models, or series of

25  firearms.  (See Pen. Code §§ 30510, 30960(a); former §§ 12275.5, 12276, 12276.5; 11 CCR §

26  5499.)[3]  "Category 3" firearms, established in 1999, targeted semiautomatic centerfire rifles,

27

28

---

[3]The "Category 2" classification includes certain makes and models that the DOJ itself had at one point added to the list through 11 CCR § 5499. However, in 2006, the Legislature repealed the DOJ's authority to unilaterally add

10

SEILER EPSTEIN ZEGLER & APPLEGATE LLP
Attorneys at Law

1    pistols, and shotguns based upon certain features, configurations, and/or functionalities, as

2    opposed to certain makes, models, or series.  (Pen. Code § 30515; former § 12276.1.)

3

4    **C.       The Registration Mandate for the New Category of "Assault Weapons"**

5           28.       In June of 2016, through Assembly Bill 1135 and Senate Bill 880 (2015-2016

6    Reg. Sess.), the Legislature once again amended the AWCA statutory scheme, changing the

7    definitional terms regarding magazines for semiautomatic rifles and pistols in section 30515 to

8    create new "assault weapon" classifications for those firearms, and adding sections 30680 and

9    30900 to create a concomitant registration requirement for any continued possession of the

10   newly classified firearms. The amendments became effective January 1, 2017. (Stats. 2016, ch.

11   40 § 3 (AB 1135); Stats. 2016, ch. 48 § 3 (SB 880).)  As so modified, the new "assault weapon"

12   classification now applies to any semiautomatic centerfire rifle and pistol that (1) "does not have

13   a *fixed magazine*" and (2) possesses one of the other previously specified features.  For these

14   purposes, "fixed magazine" is now defined as "an ammunition feeding device contained in, or

15   permanently attached to, a firearm in such a manner that the device cannot be removed without

16   disassembly of the firearm action."  (Pen. Code § 30515, subd. (b).)

17          29.       The Legislature specifically incorporated section 30515's assault weapon

18   classifications into the registration requirement of section 30900, subdivision (b)(1), which

19   expressly states that it applies only to a "person who, from January 1, 2001, to December 31,

20   2016, inclusive, lawfully possessed an assault weapon that does not have a fixed magazine, *as*

21   *defined in Section 30515*, including those weapons with an ammunition feeding device that can

22   be readily removed from the firearm with the use of a tool."  (Pen. Code § 30900(b)(1), emphasis

23   added.)  In other words, bullet button weapons could be kept, but must be registered.  The

24   registration window established for the continued possession of such firearms closed June 30,

25   2018 (after an extension of the original deadline of December 31, 2017, under AB 103 (2017)),

26   although it did not actually open until "the effective date of the regulations" the DOJ adopted

27

28   firearms to the list of "assault weapons" (Pen. Code § 30520(b)(1); A.B. 2178, 2005-2006 Reg. Sess.), and the
     classification of such firearms by makes, models, or series has since remained static.

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

11

1  pursuant to paragraph (5) of subdivision (b). (§ 30900, subd. (b)(1).)  In turn, section 30900,
2  subdivision (b)(5), provides (emphasis added): the DOJ "shall adopt regulations for the purpose
3  of *implementing* this subdivision. These regulations are exempt from the Administrative
4  Procedure Act."

5      30.     And therefore, beyond the basic registration requirement in section 30900(b)(1),
6  what "this subdivision" of this section established, and required the DOJ to implement through
7  regulations outside the APA process, is the following:

    1.  A registration system that catalogues specifically identifying information about the
firearm (its unique description including "all identification marks," and the date it
was acquired and from whom) and the owner (including the owner's name, address,
birth date, thumbprint, physical description, California driver's license or
identification card number, and "any other information that the department may
deem appropriate"). (Pen. Code § 30900, subds. (a)(3) & (b)(3));

    2.  A registration system that gathers this information "electronically via the Internet
utilizing a public-facing application made available by the department." (Id. § 30900,
subd. (b)(2)); and

    3.  The charging of a registration fee of up to $20 per person (which may be adjusted
annually), or $15 per person via a debit or credit card for electronically submitted
applications, but in any event "not to exceed the reasonable costs of the department."
(Id. § 30900, subds. (a)(4) & (b)(4).)

## FACTS COMMON TO ALL CLAIMS

    31.     According to the DOJ's data tracking the "Dealer's Record of Sale" (DROS)
transactions, more than 5.1 million long guns have been sold in California since the last
registration period closed in 2000.  It is estimated that a substantial number of those firearms
consist of those subject to the now retroactively-expanded definition of "assault weapon" under
SB 880 / AB 1135, i.e., "bullet button" semiautomatic firearms.  On information and belief, tens
of thousands of Californians (and perhaps more) possess in the State hundreds of thousands of

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

1   firearms during the period of January 1, 2001, and December 31, 2016, that have now been

2   reclassified as "bullet button assault weapons" subject to the requirements of Penal Code §

3   30900(b), rendering all their possessors potentially subject to the significant criminal liabilities

4   under the other criminal statutes at issue in this case.

5         32.    Pursuant to the clear statutory mandate described above, the DOJ established an

6   Internet-based registration system, ostensibly to permit the required registration of those bullet-

7   buttoned firearms now retroactively deemed as "assault weapons" pursuant to AB 1135 and SB

8   880. This system was created to exist within a pre-existing system created, maintained and

9   serviced by the DOJ—the California Firearms Application Reporting System (CFARS). Using

10   CFARS, in theory, would allow a user to access a separate link to: "Assault Weapon Registration

11   Form (Assembly Bill 1135/Senate Bill 880)." On information and belief, the Assault Weapon

12   Registration Form system "went live" (i.e., was made available to the public) on or about August

13   3, 2017 – leaving less than twelve months for potentially hundreds of thousands of California

14   gun owners to discover the laws and perform their duties required thereunder.

15         33.    Those with firearms retroactively branded "bullet button assault weapons"

16   originally had until January 1, 2018, to register them. However, given the DOJ's substantial

17   problems in getting its registration-related regulations issued, the registration deadline was

18   extended to July 1, 2018, by virtue of Assembly Bill 103. See Pen. Code § 30680(c).[4]

19         34.    The Office of the Attorney General itself emphasized the importance of citizens'

20   compliance with the June 30, 2018 deadline, with a dramatic "countdown" display on the splash

21   page of its Firearms Bureau website, showing the number of weeks, days, hours, minutes, and

22   seconds ticking away until literally the last second of the registration period (i.e., June 30, 2018

23   at 11:59:59 PST). A true and correct copy of the DOJ Bureau of Firearms's "countdown clock"

24   illustrating this countdown is attached hereto as **Exhibit A**. The Bureau of Firearms website

25   further contained a direct link to the CFARS web page, ostensibly as the vehicle for citizens to

26   "beat the clock" and avoid the serious consequences of failing to timely register, at

27

28   [4]And since their issuance, these regulations have been challenged as illegally promulgated. (See e.g., *Holt v. Becerra*, Riverside County Superior Court Case No. 1722468.)

*SEILER EPSTEIN ZIEGLER & APPLEGATE LLP*
*Attorneys at Law*

13

1   https://cfars.doj.ca.gov/login.do.  And, according to the DOJ Bureau of Firearms website, the

2   registration window would close on June 30, 2018 at 11:59:59 p.m. PST.

3       35.   Yet, as Defendants knew, from its inception, the CFARS-based "assault weapon"

4   registration system was substantially understaffed, and incapable of properly and timely

5   processing the registration applications the DOJ was charged with processing.  Even before the

6   statutory deadline was extended, the DOJ had requested $2,588,000 and 27 positions to

7   implement the statutorily-mandated internet assault weapons registration system.  These funds

8   were approved, in the form of a "loan" from the Firearms Safety and Enforcement Special Fund,

9   to be repaid by June 30, 2021, in part, from the $15.00 per-person fees to be assessed to each

10  registrant and other funds from the DROS fund.

11      36.   But in a declaration filed under oath in a separate civil action challenging the

12  assault weapons regulations generally, DOJ Special Agent Supervisor Blake Graham, who

13  "helped to design the public-facing application for submitting registration of bullet button assault

14  weapons electronically via the Internet," declared that as of March 2018, all "[t]he programmers

15  who [had] created this system for DOJ [were] [then] working on other legislatively mandated

16  projects that [were] also on tight deadlines."  In addition, Agent Graham explained that the "DOJ

17  d[id] not have funding for [any] modification of the electronic registration system" and the DOJ

18  had received funding for only 24 analysts and two managers to process registration applications.

19  Graham described these as temporary positions that would be eliminated after one year.

20      37.   This situation inevitably led to a backlog of assault weapons registration forms

21  and processing, even well before the statutory deadline.  In response to a Public Record Act

22  (PRA) request, the DOJ admitted that as early as February 1, 2018, more than five months after

23  the system had gone "live," the system was already backlogged with 4,653 applications to

24  register bullet button assault weapons of which it had only been able to approve about 2,500.

25  (See **Exhibit B**.)

26      38.   This situation, predictably, came to a head during this last week of June 2018,

27  when thousands of gun owners, desiring to comply with the law – the importance of which the

28  Attorney General  had so dramatically emphasized with his intimidating "countdown clock" –

14

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

1  attempted to log onto CFARS, either directly or through the link provided in the DOJ Bureau of

2  Firearms website, only to be shut out by technical defects and failures of the DOJ's systems. For

3  most, the system simply "timed out" while some were attempting to access it, denying access

4  altogether. Others got as far as filling out some or all of the DOJ-required submissions

5  (including providing four digital photographs that were not required by statute, but for some

6  reason, were required by the DOJ), only to have the system "time out" and fail when clicking the

7  "submit" application action button to complete registration – blocking the registrations at the last

8  second, after their lengthy and good faith efforts to submit their completed applications that

9  complied with all requirements of the registration process.

10      39.     And thus, on June 29, 2018, while plaintiff Harry Sharp was able to log onto

11  CFARS from his home in Redding, California, and even successfully submit a registration form

12  for one of four his "bullet button assault weapon" firearms, when he attempted to register the

13  remaining three immediately thereafter at approximately 3:30 p.m., he was prevented from doing

14  so. Specifically, after plaintiff Sharp had attached the required pictures of his other registration-

15  eligible firearms, he attempted to hit the "submit" button, but then the system "froze up", failed,

16  and he could not proceed to successfully submit these applications. Plaintiff Sharp attempted to

17  complete the remaining three registrations the following day, on June 30, 2018. He made at least

18  50 attempts to log onto the DOJ's registration systems (in CFARS) for this purpose, investing

19  most of his day attempting these registrations, but to no avail because the system remained

20  inaccessible or inoperable. Plaintiff Sharp attempted to obtain help or technical support from

21  DOJ on at least four occasions, each time being met with an automated, "canned" auto-responder

22  message stating that he had to simply resubmit the forms after clearing out his web browsers and

23  deleting "cookies." He could not reach a live person at the time. Plaintiff Sharp followed these

24  automated instructions, and continued attempting to register the remaining firearms, even into

25  the next day, July 1, 2018, but all to no avail. Finally, Plaintiff Sharp was able to reach someone

26  at the DOJ by phone on Monday, July 2, 2018. However, this person just told him that it was his

27  responsibility to have complied with the registration mandate by the deadline, and the DOJ

28  would not extend the deadline to submit registration applications. As a result, Plaintiff Sharp

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

15

1   was unable to submit three of the four registration applications that were necessary for him to

2   comply with the laws and avoid being in violation of the applicable criminal statutes carrying

3   extraordinary penalties, including prison time and loss of property.

4       40.     On June 28, 2018, plaintiff David Ajirogi attempted to register three bullet-

5   buttoned firearms, from his home in Sacramento, California. All of these firearms had been

6   legally acquired, and all information relevant and necessary to uniquely identify these firearms,

7   including the make, model, manufacturer, and serial numbers, was and has been already on file

8   with the DOJ. However, when he attempted to access the DOJ's registration system on June 28,

9   2018, after attempting to use an established CFARS account, the crucial link to the Assault

10  Weapons Registration Form was inoperable and he was thus unable to access the required

11  registration form. Plaintiff Ajirogi continued attempting to access the registration form page/link

12  for approximately 20-30 minutes. He made several additional attempts on June 29, 2018, but

13  continued to experience the same fundamental problem: the CFARS system would "time out" in

14  the process of attempting to access it. Plaintiff Ajirogi contacted the DOJ for assistance on

15  Friday, June 29, 2018. The DOJ did not respond to his email inquiry, ever.

16      41.     Approximately one month before the statutory registration deadline, Plaintiff

17  Ryan Gilardy contacted the DOJ about his concerns regarding the CFARS system, and the

18  registration process generally. He spoke to an official at the DOJ who told him that they

19  expected to receive a large number of registrations in the weeks before the deadline. In fact, the

20  DOJ official had told Plaintiff Gilardy that he could even expect to be "timed out" during the

21  registration process, but was told that if that happened, he would be able to "get through" after

22  several attempts. Thus, in anticipation of doing the three firearm registrations he intended,

23  Plaintiff Gilardy gathered all of the required information and paperwork necessary for a joint

24  registration with his family members, including the taking of the photographs required for each

25  firearm. On or about June 22, 2018, Plaintiff Gilardy began the registration process through

26  CFARS. However, upon attempting to upload all of the information required for joint

27  registration (including proof of residency required for joint registrants), the system "timed out"

28  and would not allow him to register. Thereafter, and throughout the entire following week of

16

SEDLER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

1    June 25, 2018, Plaintiff Gilardy made multiple attempts to complete the registration process.

2    Plaintiff Gilardy, who was formerly an IT professional, made sure that he was using up to date

3    computer hardware, fully updated web browsers, used different devices (including phones easily

4    capable of processing pictures), different browsers, different Internet service providers, different

5    networks, and attempted access from different locations, including his home in Contra Costa

6    County. Plaintiff Gilardy also performed internet test speeds for his internet connections

7    (measuring MB per second uploaded and downloaded) and determined that his internet speeds

8    were more than adequate. Notwithstanding his repeated efforts to register, he was only able to

9    submit one of the three registrations he had prepared, and that was only after he had abandoned

10   efforts to submit the joint registration (requiring additional information/documents), and after

11   making no less than 14 attempts to register that firearm. The submission for the other two

12   semiautomatic firearms never went through, due to the DOJ's system defects and failures,

13   including "time outs" which would not allow the information to be submitted. Plaintiff Gilardy

14   spent all week attempting these registrations, including approximately 5 hours on June 30, 2018,

15   to no avail. As a result of the DOJ's failures and system defects, Plaintiff Gilardy was unable to

16   register two of his firearms that he intended to register jointly with eligible family members.

17        42.    On information and belief, the DOJ received many other requests for such

18   technical assistance and support from those attempting to complete the required registrations

19   during the last week of June 2018, due to the critical failures and technical issues with the

20   registration system and CFARS throughout this period. On information and belief, in the vast

21   majority of cases, the inquiries were to no avail in attempting to comply with the registration

22   mandate, because the DOJ did not respond or make its staff available to address such inquiries

23   until after the deadline, and then it simply advised the concerned prospective registrants that it

24   was too late to register.

25        43.    At all times during this last week of June 2018, therefore, Defendants, and each of

26   them, were on clear notice of the critical technical defects blocking an untold number of law-

27   abiding gun owners from registering their firearms in compliance with the law, including the

28   Plaintiffs herein and many members of the Institutional Plaintiffs. Yet, they failed and refused to

17

1    rectify the situation in accordance with their statutorily-imposed duties in carrying out the

2    registration process and proceeded to then completely shut down the apparatus for the required

3    registration shortly after midnight on July 1, 2018, and refused to extend the registration period

4    notwithstanding the untold number of registrations that could not be completed as a direct result

5    of the technical failures in the DOJ's own system.

6         44.    For past "assault weapon" registration periods, the DOJ was required to "conduct

7    a public education and notification program regarding the registration of assault weapons and the

8    definition of the weapons set forth in Section 30515 and former Section 12276.1," for purposes

9    including "outreach to local law enforcement agencies and utilization of public service

10   announcements in a variety of media approaches, to ensure maximum publicity..." (Penal Code §

11   31115.)

12        45.    Institutional Plaintiff FPC, during the legislative cycle, used its resources to

13   advocate for such education and outreach to help their members and the public know and

14   understand their duties under the new laws that would be enacted by Senate Bill 880 and

15   Assembly Bill 1135. (See e.g., Senate Committee of Public Safety analysis of SB 880 ("By

16   moving the goal posts on millions of its own residents, California would create new criminal

17   liability for hundreds of thousands of Californians and California visitors -- including shooting

18   sports competitors -- without so much as a simple outreach program, public service

19   announcement, or mandate that DOJ update the years-outdated (and, in some cases, grossly

20   misleading) information it promulgates in its publications and on its website but refuses to

21   correct in spite of the real consequences to law-abiding people."); Assembly Public Safety

22   Analysis of SB 880 (original formatting modified) ("SB 880 contains no provision for outreach

23   to the millions of Californians who have lawfully acquired firearms that would be subject to SB

24   880's reach. SB 880 contains no provision for educating law enforcement officers or

25   prosecutors—the very people who will have to interpret and enforce it—which will lead to false

26   arrests and ruined lives.")

27        46.    For this new "bullet button assault weapon" registration mandate, however, there

28   was no provision, or appropriation for outreach or education for gun owners or law enforcement

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

18

VERIFIED PETITION FOR WRIT OF MANDATE AND
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1  alike. DOJ did not on its own undertake any meaningful or sufficient steps to help Californians

2  understand the laws and their requirements to comply with them – beginning with registration –

3  other than the "countdown" timer and a few sentences on a "Firearms" sub-page of its Web site,

4  of which many of the affected citizens were likely unaware. Thus, the fate of California gun

5  owners and their legal compliance were largely left to "word of mouth."

6      47.    Because of these and other considerations, on information and belief, many gun

7  owners were not able to or did not undertake efforts to begin compliance through registration

8  until the final weeks of the registration period.

9

10  **FIRST CAUSE OF ACTION**

11  **WRIT OF MANDATE OR OTHER APPROPRIATE RELIEF**

12  **Against All Defendants**

13      48.    Plaintiffs incorporate paragraphs 1 through 47 as if fully set forth herein.

14      49.    California Penal Code § 30900(b)(1) provides that any person who lawfully

15  possessed a firearm retroactively defined as an "assault weapon," including those weapons

16  containing bullet button devices, "*shall register* the firearm before July 1, 2018, but not before

17  the effective date of the regulations adopted pursuant to paragraph (5), with the department

18  pursuant to those procedures that the department may establish by regulation pursuant to

19  paragraph (5)." (Emphasis added). Subdivision (b)(2) of this section further provides that

20  "Registrations shall be submitted electronically via the Internet utilizing a public-facing

21  application made available by the [DOJ]." Concomitantly, section 30680 provides an exception

22  to the general prohibition against the possession of "assault weapons" for those, and only those,

23  who lawfully own such firearms *and* register them "by July 1, 2018, in accordance with

24  subdivision (b) of Section 30900." (§ 30680, subd. (c).)

25      50.    Individual Plaintiffs, as discussed above, and the class of similarly-situated

26  individuals they represent, i.e., those California residents who are eligible to own firearms,

27  lawfully possessed a legislatively defined "assault weapon" from January 1, 2001, to December

28  31, 2016, "including those weapons with an ammunition feeding device that can be readily

**SEILER EPSTEIN ZIEGLER & APPLEGATE LLP**
**Attorneys at Law**

19

1  removed from the firearm with the use of a tool," and attempted registration using the only

2  method of registration authorized, during the week of June 25, 2018, and thereafter, were

3  deprived by Defendants from registering in compliance with Pen. Code §§ 30900(b) and

4  30680(c). On information and belief, and as will be demonstrated at trial, a substantial number

5  of other, similarly-situated members of such class of persons were deprived of, and thereby

6  denied, their ability to register such firearms solely due to the technical limitations, constraints,

7  or failures on the part of Defendants, and each of them, in connection with their unreliable and

8  inadequate process for online registration.

9      51.    Defendants had a clear, present, and ministerial duty to implement and enforce

10  policies, practices, and regulations that comply with the requirements of the statutes, as well as

11  the California Constitution and United States Constitution, within the purview of its rule-making

12  and enforcement authority, and to provide its citizens with the ability to properly and timely

13  comply with the law – particularly when the DOJ's system was the sole available means to do so.

14      52.    Plaintiffs, and each of them, and the class of similarly situated individuals

15  described herein, all have a beneficial interest in the proper discharge of the duties that the DOJ

16  must faithfully execute in connection with the "assault weapons" registration process. Plaintiffs,

17  and each of them, and the class of similarly situated individuals described herein, have a

18  beneficial interest in application of the laws in a fair, just and reasonable manner that gives each

19  similarly situated citizen the opportunity to comply with the registration requirements.

20      53.    As a result of the Defendants' failure to implement a properly-operating

21  registration scheme, Plaintiffs, and each of them, have been deprived of the benefit of the laws

22  that would provide them the statutory exemptions necessary to avoid criminal liability and retain

23  the lawful and beneficial use of their statutorily-classified "assault weapons." Plaintiffs, and

24  each of them, therefore have a beneficial interest in ensuring that the law, and Defendants'

25  implementation of the same through their failed registration process, does not deprive them

26  (and/or their members) of liberty and property interests without due process of law. The actions

27  (or inactions) by the Defendants, and each of them, rises to the level of a deprivation of due

28  process under the United States Constitution, and the Constitution of the State of California.

1    54.    Plaintiffs have no speedy or adequate remedy at law, and this Court has

2    jurisdiction to grant the mandamus and other relief requested herein as necessary and proper to

3    rectify the previous and continuing deprivation of such interests. (Cal. Const., art. VI, § 10.)

4         WHEREFORE, Plaintiffs seek mandamus writ relief, as set forth below.

5

6                        **SECOND CAUSE OF ACTION**

7                          **DECLARATORY RELIEF**

8                         **Re: Violation of Due Process**

9              **(Cal. Const., art. I, § 7; U.S. Const., XIV Amend.)**

10                          **Against All Defendants**

11   55.    Plaintiffs incorporate paragraphs 1 through 54 as if fully set forth herein.

12   56.    An actual controversy has arisen and now exists between Plaintiffs, and others

13   similarly situated, and Defendants, and each of them, as to the validity and enforceability of

14   certain statutes prohibiting the possession of "assault weapons" as re-defined by California law,

15   and as to whether such statutes are void and unenforceable, as applied as to them.  Specifically,

16   Plaintiffs, and others similarly situated, claim that they were deprived of due process under the

17   law, and under the Constitution of the United States, and the State of California, and otherwise

18   deprived of the benefits of the law by Defendants' failure and refusal to operate, provide, or

19   otherwise allow for a functional public-facing Internet "assault weapons" registration system, as

20   required by Pen. Code § 30900(b)(2).

21   57.    The Fourteenth Amendment to the United States Constitution and article I, section

22   7 of the California Constitution, each guarantee that no person shall be deprived of life, liberty,

23   or property without due process of law.

24   58.    An actual controversy has further arisen and now exists between Plaintiffs, and

25   the class of similarly situated individuals previously identified, on the one hand, and Defendants,

26   and each of them, on the other hand, as to whether Plaintiffs and the class of persons they

27   represent were deprived of their right or ability to register their firearms as assault weapons by

28   July 1, 2018, as required by Pen Code §§ 30680(c) and 30900(b) and the DOJ's own regulations.

*(left margin, vertical text)* **SEILER EPSTEIN ZIEGLER & APPLEGATE LLP**
Attorneys at Law

21

1    59.    Plaintiffs desire a judicial determination of the validity and enforceability of the

2  assault weapon possession statutes, to wit: Penal Code §§ 30600, 30605, 30615, 30800,

3  30900(b), as applied to them, and to the class of similarly-situated individuals, and a

4  determination of whether the Defendants' flawed registration system prevented Plaintiffs from

5  complying with the law in violation of their rights to due process.

6    WHEREFORE, Plaintiffs seek declaratory relief as set forth below.

7

8    **THIRD CAUSE OF ACTION**

9    **INJUNCTIVE RELIEF**

10    **Against All Defendants**

11    60.    Plaintiffs incorporate paragraphs 1 through 59 as if fully set forth herein.

12    61.    Plaintiffs, and each of them, individually, as representatives of the previously

13  identified class of similarly situated individuals, and the similarly situated members of the

14  Institutional Plaintiffs the interests of whom are at the core of the institutions' organizational

15  purposes, seek injunctive relief in Plaintiffs' favor, against Defendants, and each of them,

16  prohibiting all Defendants and their agents from enforcing Penal Code §§ 30600, 30605, 30615,

17  30800, 30900(b) as to each of them, and those similarly situated, until said Plaintiffs, the class of

18  individuals they represent, and the  affected members of the Institutional Plaintiffs identified

19  herein, are granted  a reasonable opportunity to register their firearms through a functional and

20  reliable registration system.

21    62.    Temporary and permanent injunctive relief are therefore necessary and proper, as

22  plaintiffs will be irreparably injured without such injunctive relief, and the balance of harms

23  weighs heavily in Plaintiffs' favor – particularly as Defendants' failure and refusal to provide a

24  reliable and functional registration to date has left Plaintiffs in jeopardy of criminal liability.

25    WHEREFORE, Plaintiffs seek injunctive relief as set forth below.

26  //

27  //

28  //

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

22

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief as follows:

1.     For judgment in Plaintiffs' favor, against Defendants, and the Court's issuance of a writ of mandate, or other appropriate relief, commanding Defendants, and each of them, and others acting pursuant to their authority or control, to refrain from enforcing Penal Code §§ 30600, 30605, 30615, 30800, 30900(b), and any related agency regulations, and further commanding Defendants, and each of them, to permit Individual Plaintiffs, and those similarly situated, and in an identifiable class, to register their legally-possessed, qualified firearms as "assault weapons" through a reliable and functional registration system pursuant to Pen. Code § 30900(b) for a reasonable period of time beyond the statutory deadline of July 1, 2018;

2.     For declaratory relief in Plaintiffs' favor, against Defendants, that Defendants, and each of them, deprived Individual Plaintiffs and others similarly situated of due process under the law, and under the Constitution of the United States and the State of California, and otherwise deprived them of the benefits of the law by failing to operate, provide or otherwise allow for a public-facing Internet registration system, as required by Pen. Code § 30900(b)(2);

3.     For declaratory relief in Plaintiffs' favor, against Defendants, that the Individual Plaintiffs, and others similarly situated, were deprived of their right or ability to register their firearms as assault weapons by July 1, 2018, as required by Pen. Code § 30680(c) and the DOJ's own regulations, and that Defendants, and each of them, failed in their statutory mandate to create a properly-functioning, public-facing application for submitting registrations of bullet button assault weapons electronically via the Internet, as required by Pen. Code § 30900(b)(2);

4.     For injunctive relief in Plaintiffs' favor, against Defendants, and each of them, prohibiting all Defendants from enforcing Penal Code §§ 30600, 30605, 30615, 30800, 30900(b), and any related agency regulations, as to each of them, and those similarly situated, until said Plaintiffs and members of the class of similarly situated individuals are permitted a reasonable amount of time to register their firearms through a reliable and functioning system;

5.     That Plaintiffs be awarded their costs of suit incurred in this action, and costs including their attorneys' fees pursuant to Code of Civil Procedure §§ 1021.5 and 1095; and

VERIFIED PETITION FOR WRIT OF MANDATE AND
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

6.     For other such relief as this court may deem to be just and proper.

Dated: July 10, 2018                          SEILER EPSTEIN ZIEGLER & APPLEGATE LLP


                                              George M. Lee

                                              THE DIGUISEPPE LAW FIRM, P.C.


                                              /s/ Raymon M. DiGuiseppe
                                              Raymond M. DiGuiseppe

                                              Attorneys for Petitioners

24

DocuSign Envelope ID: 64A64108-C551-49CE-92BE-5FB2951FCF67

## VERIFICATION

I, HARRY SHARP, a plaintiff in this case, have read the foregoing VERIFIED PETITION

FOR WRIT OF MANDATE AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF. I have

personal knowledge of and verify as true all those matters alleged therein that specifically

concern me and my individual circumstances. As to all other matters alleged therein directly or

indirectly bearing upon an adjudication of my rights and/or interests in this case, I am informed,

believe, and on that basis allege, that those matters are also true.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 7/9/2018 2:48:50 PM PDT

DocuSigned by:

harry sharp

046845275F3A4F4...

HARRY SHARP

## VERIFICATION

I, DAVID AJIROGI, a plaintiff in this case, have read the foregoing VERIFIED PETITION FOR WRIT OF MANDATE AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF. I have personal knowledge of and verify as true all those matters alleged therein that specifically concern me and my individual circumstances. As to all other matters alleged therein directly or indirectly bearing upon an adjudication of my rights and/or interests in this case, I am informed, believe, and on that basis allege, that those matters are also true.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: ___7/9/18___                              _____
                                                      DAVID AJIROGI

## VERIFICATION

I, RYAN GILARDY, a plaintiff in this case, have read the foregoing VERIFIED PETITION FOR WRIT OF MANDATE AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF. I have personal knowledge of and verify as true all those matters alleged therein that specifically concern me and my individual circumstances. As to all other matters alleged therein directly or indirectly bearing upon an adjudication of my rights and/or interests in this case, I am informed, believe, and on that basis allege, that those matters are also true.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 7/10/18

RYAN GILARDY

## VERIFICATION

I, GENE HOFFMAN, am the Chairman and President of THE CALGUNS
FOUNDATION (CGF), a plaintiff in this action. I am authorized to make this verification for
and on behalf of CGF. I have read the foregoing VERIFIED PETITION FOR WRIT OF MANDATE
AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF. I have personal knowledge of
and verify as true all those matters alleged therein that specifically concern CGF and its
membership. As to all other matters alleged therein directly or indirectly bearing upon an
adjudication of the rights and/or interests of CGF and its membership in this case, I am informed,
believe, and on that basis allege, that those matters are also true.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 7/9/18

GENE HOFFMAN

VERIFICATION

I, Brandon Combs, am the President of FIREARMS POLICY COALITION (FPC). I am authorized to make this verification for and on behalf of FPC. I have read the foregoing VERIFIED PETITION FOR WRIT OF MANDATE AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF. I have personal knowledge of and verify as true all those matters alleged therein that specifically concern FPC and its membership. As to all other matters alleged therein directly or indirectly bearing upon an adjudication of the rights and/or interests of FPC and its membership in this case, I am informed, believe, and on that basis allege, that those matters are also true.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 9, 2018

BRANDON COMBS

VERIFICATION

I, Jonathan Jensen, am the Vice-President of FIREARMS POLICY FOUNDATION (FPF). I am authorized to make this verification for and on behalf of FPF. I have read the foregoing VERIFIED PETITION FOR WRIT OF MANDATE AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF. I have personal knowledge of and verify as true all those matters alleged therein that specifically concern FPF and its membership. As to all other matters alleged therein directly or indirectly bearing upon an adjudication of the rights and/or interests of FPF and its membership in this case, I am informed, believe, and on that basis allege, that those matters are also true.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: **07-09-2018**

JONATHAN JENSEN

VERIFICATION

I, Alan Gottlieb, am the founder and Executive Vice President of SECOND AMENDMENT FOUNDATION (SAF). I am authorized to make this verification for and on behalf of SAF. I have read the foregoing VERIFIED PETITION FOR WRIT OF MANDATE AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF. I have personal knowledge of and verify as true all those matters alleged therein that specifically concern SAF and its membership. As to all other matters alleged therein directly or indirectly bearing upon an adjudication of the rights and/or interests of SAF and its membership in this case, I am informed, believe, and on that basis allege, that those matters are also true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: __7 | 9 | 2018__

_Alan M. Gottlieb_
ALAN GOTTLIEB

**EXHIBIT A**

State *of* California Department *of* Justice       ℟ f 🖤 ▦



**XAVIER BECERRA**

*Attorney General*

Search

Translate Website | Traducir Sitio Web

| HOME | ABOUT | MEDIA | CAREERS | REGULATIONS | RESOURCES | PROGRAMS | CONTACT |



# EXHIBIT B

**XAVIER BECERRA**
*Attorney General*

*State of California*
**DEPARTMENT OF JUSTICE**



1300 I STREET, SUITE 125
P.O. BOX 944255
SACRAMENTO, CA 94244-2550
Public: (916) 445-9555
Facsimile: (916) 227-0470

February 1, 2018

Brandon Combs
4212 N. Freeway Blvd., Suite 6
Sacramento, CA 95834

Re: Public Records Act Request received January 4, 2018

Dear Mr. Combs:

This letter is in response to your public records request in which you sought records pursuant to the Public Records Act ("PRA") as set forth in Government Code section 6250 et seq. Specifically, you requested the following information:

"Please provide me with a copy of the following records in existence that allow me and the public to determine:

1. The number of applications for firearm registration as an "Assault Weapon" under Penal Code section 30900(b) that were submitted from July 31, 2017, to the present. In lieu of documents I will accept your calculation of the number of applications as a full response to this request.

2. The number of applications for firearm registration as an "Assault Weapon" under Penal Code section 30900(b) that have been approved from July 31, 2017, to the present. In lieu of documents I will accept your calculation of the number of applications that have been approved as a full response to this request.

3. The number of applications for firearm registration as an "Assault Weapon" under Penal Code section 30900(b) that have been denied/rejected from July 31, 2017, to the present. In lieu of documents I will accept your calculation of the number of applications that have been denied/rejected as a full response to this request.

4. The number of applications for firearm registration as an "Assault Weapon" under Penal Code section 30900(b) submitted from July 31, 2017, to the present that are still being processed. In lieu of documents I will accept your calculation of the number of applications still being processed as a full response to this request.

Brandon Combs
February 1, 2018
Page 2

5. The average time it takes to review and make a determination on an "Assault Weapon" registration application under Penal Code section 30900(b) submitted from July 31, 2017, to the present. In lieu of documents I will accept a list of all applications including their respective dates of submission and DOJ's determination of acceptance or denial as a full response to this request.

6. From January 1, 2017, to the present, a copy of all daily, weekly, monthly, or other periodical reports about "Assault Weapon" registrations and applications under Penal Code section 30900(b)."

Here are the responses to your requested information:

1. 4,653 applications to register bullet button assault weapons were submitted for registration in California Firearms Application Reporting System (CFARS).

2. 2,523 applications were approved in CFARS.

3. 200 applications were rejected in CFARS.

4. 1,232 applications are still being processed by the Department.

5. We cannot provide you with an estimate on the time it takes to review and make a determination on an assault weapon registration application because it varies greatly depending on the circumstances.

6. Please find enclosed the information you seek.

Sincerely,

ROBERT D. WILSON
Deputy Attorney General

For   XAVIER BECERRA
Attorney General

Enclosure