# Exhibit B

George M. Lee (SBN 172982)
Douglas A. Applegate (SBN 142000)
SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
601 Montgomery Street, Suite 2000
San Francisco, CA 94111
Phone: (415) 979-0500
Fax:   (415) 979-0511

Raymond M. DiGuiseppe (SBN 228457)
THE DIGUISEPPE LAW FIRM, P.C.
2 North Front Street, Fifth Floor
Wilmington, NC 28401
Phone: (910) 713-8804
Fax:   (910) 672-7705

Attorneys for Plaintiffs and Petitioners

**FILED**

AUG – 6 2018

CLERK OF THE SUPERIOR COURT
BY: C. QUON, DEPUTY CLERK

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

### FOR THE COUNTY OF SHASTA

| | |
|---|---|
| HARRY SHARP, an individual;<br>DAVID AJIROGI, an individual;<br>RYAN GILARDY, an individual;<br>DARIN PRINCE, an individual;<br>TODD FELTMAN, an individual;<br>DAVID KUEHL, an individual;<br>TERRY JAHRAUS, an individual;<br>THE CALGUNS FOUNDATION;<br>FIREARMS POLICY COALITION;<br>FIREARMS POLICY FOUNDATION; and<br>SECOND AMENDMENT FOUNDATION,<br><br>       Petitioners,<br><br>       vs.<br><br>XAVIER BECERRA, in his official capacity as<br>Attorney General of California;<br>BRENT E. ORICK, in his official capacity as<br>Acting Chief of the Department of Justice<br>Bureau of Firearms;<br>JOE DOMINIC, in his official capacity as<br>Chief of the Department of Justice California<br>Justice Information Services Division;<br>CALIFORNIA DEPARTMENT OF JUSTICE;<br>and DOES 1 through 20, inclusive,<br><br>       Respondents. | CASE NO. 190350<br><br>**VERIFIED FIRST AMENDED<br>PETITION FOR WRIT OF MANDATE<br>AND COMPLAINT FOR<br>DECLARATORY AND INJUNCTIVE<br>RELIEF** |

**BY FAX**

1

1    COME NOW the Plaintiffs and petitioners, HARRY SHARP, DAVID AJIROGI, RYAN

2    GILARDY, DARIN PRINCE, TODD FELTMAN, DAVID KUEHL, TERRY JAHRAUS, THE

3    CALGUNS FOUNDATION, FIREARMS POLICY COALITION, FIREARMS POLICY

4    FOUNDATION, and SECOND AMENDMENT FOUNDATION (collectively, "Plaintiffs") by

5    and through their undersigned counsel, who hereby complain and allege as follows:

7    ## INTRODUCTION

8        1.    Since 1989, the State of California has regulated the acquisition, possession, and

9    use of firearms using an ever-expanding definition of so-called "assault weapons" and by and

10   through an aggressive enforcement of an ever-expanding statutory scheme. In 2016, the State

11   once again broadened the "assault weapons" statutes to include more semi-automatic firearms

12   with a particular magazine locking device, colloquially known as "bullet buttons."[1]

13       2.    The possession, transportation, and use of unregistered "assault weapons"

14   imposes criminal liability on gun owners who are not otherwise prohibited from possessing or

15   acquiring firearms, in addition to the potential loss of their property, fines, and standing in the

16   community. Thus, some California citizens and gun owners, desiring to abide by the laws of our

17   State, endeavored to register their eligible firearms in accordance with the statutory registration

18   mandates of Penal Code §§ 30680 and 30900(b) so as to remain in good standing with the law.

19       3.    But many gun owners not prohibited from possessing or acquiring firearms,

20   including the Individual Plaintiffs and many members of the Institutional Plaintiffs here, have

21   been unfairly and improperly prevented from registering their eligible firearms in accordance

22   with the law because Defendants Attorney General Xavier Becerra and California Department of

23   Justice (DOJ) have utterly failed and refused to perform their statutorily-imposed duties to the

---

[1] A Bullet Button is a particular patented and trademarked device that functions to provide a mechanical barrier between a firearm's normal magazine release function and the user, requiring a bullet, tool, or other object to affirmatively engage the release mechanism and allow the magazine to be removed from the firearm body. Individual plaintiff Darin Prince, in fact, was an early innovator and inventor of the Bullet Button device. Today, while the DOJ's regulations refer to such devices generally as "bullet button" devices, they are more properly considered as a class of "magazine locking devices" of which the Bullet Button is but one brand and type. For consistency, all references to "bullet button" are generic and refer to the broader class of "magazine locking devices" invented for compliance with prior statutes and regulations or, where the context so indicates, to the firearms on which such devices are installed.

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

1   People of the State of California to establish a properly functioning Internet-based system for
2   processing the registration of such firearms throughout the registration period. The system that
3   DOJ has set up and maintained, the California Firearms Application Reporting System (CFARS),
4   was known by Defendants to be flawed, intermittently inoperable, and ultimately incapable of
5   providing a reliable means for the public to register their firearms in accordance with the law.

6       4.      The situation came to an ignominious conclusion the week before the statutory
7   registration deadline. During the week of Monday, June 25, 2018, through Saturday, June 30,
8   2018, the statutory deadline, and beyond, the DOJ's registration system was largely inaccessible,
9   and inoperable on a wide variety of ordinary web browsers across the state. And many users
10  who were able to access the site were still prevented from completing the process before the
11  Internet-based registration system crashed, obliterating the hours-long progress they had made.
12  As a result, many individuals, including the Individual Plaintiffs herein, were prevented from
13  timely registering before July 1 in compliance with the law, due to no fault of their own.

14      5.      In this case, Plaintiffs seek an un-extraordinary result, compelled by the basic
15  tenets of due process: That they simply be allowed to register their eligible firearms and comply
16  with the law, and that the Attorney General, the DOJ, and their officers and agents similarly
17  comply with the law by allowing such registrations and ensuring they are properly and timely
18  processed through a functioning Internet-based system as they were required by statute to do.

19      6.      Plaintiffs seek mandamus, declaratory and injunctive relief as necessary and
20  proper to remedy the DOJ's failures to permit and provide for a functional registration system
21  throughout the registration period, including and especially during the last week of June 2018.

22

23                          **JURISDICTION AND VENUE**

24      7.      This Court has jurisdiction to hear and resolve all of Plaintiffs' claims and to grant
25  all forms of relief requested herein, including the mandamus, declaratory, and injunctive relief
26  sought as to all claims. (Cal. Const., art. VI, § 10; Code Civ. Pro. §§ 525, 526, 1060 & 1085; see
27  also CCP § 410.10.)

28      8.      Venue in this judicial district is proper because some or all of the Causes of

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

1 Action arose in this county, and the conduct of the Defendants at issue has caused and will

2 continue to cause legal injuries and deprivation of rights to individuals in this county, including

3 one or more of the Plaintiffs herein, and those similarly situated individuals they represent, as

4 further described herein. (CCP §§ 393(b), 395(a); Gov. Code § 955.2.)

5

6 **THE PARTIES**

7 **A.   Individual Plaintiffs**

8     9.     All Individual Plaintiffs herein are natural persons, citizens of the United States,

9 and citizens and residents of the State of California, in the counties specified below.

10     10.    All Individual Plaintiffs are otherwise eligible to possess and acquire firearms

11 under applicable state and federal laws, including those firearms which the State now classifies

12 as "bullet button assault weapons" under the regulatory scheme enacted in 2016 under Senate

13 Bill 880 and Assembly Bill 1135 (2015-2016 Reg. Sess.)

14     11.    Plaintiff Harry Sharp is an individual, a law-abiding gun owner and a resident of

15 the County of Shasta, California, and is and has been otherwise eligible to possess and acquire

16 firearms under applicable state and federal laws. He is also a member and supporter of

17 Institutional Plaintiffs Firearms Policy Coalition, Firearms Policy Foundation, and The Calguns

18 Foundation. For over 30 years, he has held a license to carry a concealed firearm (CCW) issued

19 to him by his county sheriff, after proving "good cause" and his good moral character to his

20 licensing authority, successfully completing a course of training on the law and firearms

21 proficiency, and passing an extensive Live Scan-based background check. Plaintiff Sharp also is

22 the registered owner of several Registered Assault Weapons (RAWs) which were legally owned

23 and registered during a prior assault weapons registration period, in or before 2001. Prior to

24 January 1, 2017, and as a private citizen, plaintiff Sharp legally owned four semiautomatic

25 firearms which the DOJ now labels "bullet button assault weapons" and has declared, in its

26 regulations, and elsewhere, must be registered. On or about June 29, 2018, and continuing

27 through June 30, 2018, before the end of the registration period, Plaintiff Sharp attempted to

28 register said firearms in accordance with the statutes and DOJ's regulations, using the DOJ's

4

1 CFARS system. But the CFARS registration system was inaccessible and defective in his

2 multiple attempts to use it during this period, and Plaintiff Sharp was thus unable to register three

3 of the four firearms because of Defendants' failures described herein.

4     12.    Plaintiff David Ajirogi is an individual, a law-abiding gun owner and a resident of

5 the County of Sacramento, California, and is and has been otherwise eligible to possess and

6 acquire firearms under applicable state and federal laws. He is also a member and supporter of

7 Institutional Plaintiffs Firearms Policy Coalition, Firearms Policy Foundation, and The Calguns

8 Foundation. Prior to January 1, 2017, and as a private citizen, plaintiff Ajirogi legally owned

9 three semiautomatic firearms which the DOJ now labels as "bullet button assault weapons" and

10 has declared, in its regulations, and elsewhere, must be registered. On or about June 28, 2018,

11 and again on June 29, 2018, before the end of the registration period, Plaintiff Ajirogi attempted

12 to register said firearms in accordance with the statutes and DOJ's regulations, using the DOJ's

13 CFARS system. But the CFARS registration system was inaccessible and defective throughout

14 the periods of his registration attempts and, as a result, Plaintiff Ajirogi was unable to register the

15 three firearms.

16     13.    Plaintiff Ryan Gilardy is an individual, a law-abiding gun owner and a resident of

17 the County of Contra Costa, California, and is and has been otherwise eligible to possess and

18 acquire firearms under applicable state and federal laws. He is also a member and supporter of

19 Institutional Plaintiffs Firearms Policy Coalition, Firearms Policy Foundation, and The Calguns

20 Foundation. Prior to January 1, 2017, and as a private citizen, plaintiff Gilardy legally owned

21 three semiautomatic firearms which the DOJ now labels as "bullet button assault weapons" and

22 has declared, in its regulations, and elsewhere, must be registered. Beginning on or about June

23 22, 2018, and continuing through June 30, 2018, before the end of the registration period,

24 Plaintiff Gilardy attempted to register said firearms in accordance with the statutes and DOJ's

25 regulations, using the DOJ's CFARS system. But the CFARS registration system was

26 inaccessible and defective throughout the periods of his registration attempts and, as a result,

27 Plaintiff Gilardy was unable to register two of the three firearms.

28     14.    Plaintiff Darin Prince is an individual, a law-abiding gun owner and a resident of

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

5

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

the County of San Diego, California, and is and has been otherwise eligible to possess and acquire firearms under applicable state and federal laws. He is also a member and supporter of Institutional Plaintiffs Firearms Policy Coalition, Firearms Policy Foundation, and The Calguns Foundation. Plaintiff Prince has a Certificate of Eligibility (COE) issued to him by the California Department of Justice, and has held a license to carry a concealed firearm (CCW) issued to him by his county sheriff, after proving "good cause" and his good moral character to his licensing authority, successfully completing a course of training on the law and firearms proficiency, and passing an extensive Live Scan-based background check. Prior to January 1, 2017, and as a private citizen, plaintiff Prince legally owned several semiautomatic firearms which the DOJ now labels as "bullet button assault weapons" and which it has declared, in its regulations, and elsewhere, must be registered. On or about June 30, 2018, before the end of the registration period, Plaintiff Prince attempted to register said firearms in accordance with the statutes and DOJ's regulations, using the DOJ's CFARS system. But the CFARS registration system was inaccessible and defective throughout this period, and Plaintiff Prince was unable to register his firearms.

15. Plaintiff Todd Feltman is an individual, a law-abiding gun owner and a resident of the County of San Diego, California, and is and has been otherwise eligible to possess and acquire firearms under applicable state and federal laws. He is also a member and supporter of Institutional Plaintiffs Firearms Policy Coalition, Firearms Policy Foundation, and The Calguns Foundation. Prior to January 1, 2017, and as a private citizen, plaintiff Feltman legally owned several semiautomatic firearms which the DOJ now labels as "bullet button assault weapons" and has declared, in its regulations, and elsewhere, must be registered. On or about June 30, 2018, before the end of the registration period, Plaintiff Feltman attempted to register said firearms in accordance with the statutes and DOJ's regulations, using the DOJ's CFARS system. But the CFARS registration system was inaccessible and defective throughout the period of his registration attempt and, as a result, Plaintiff Feltman was unable to register the firearms.

16. Plaintiff David Kuehl is an individual, law-abiding gun owner and a resident of the County of Fresno, California, and is and has been otherwise eligible to possess and acquire

1  firearms under applicable state and federal laws. He is also a member and supporter of

2  Institutional Plaintiffs Firearms Policy Coalition, Firearms Policy Foundation, and The Calguns

3  Foundation. Plaintiff Kuehl has held a license to carry a concealed firearm (CCW) issued to him

4  by his county sheriff, after proving "good cause" and his good moral character to his licensing

5  authority, successfully completing a course of training on the law and firearms proficiency, and

6  passing an extensive Live Scan-based background check. Plaintiff Kuehl is a military veteran,

7  having been honorably discharged by the U.S. Coast Guard in or about 1988, and is a retired

8  firefighter. Prior to January 1, 2017, and as a private citizen, plaintiff Kuehl legally owned a

9  semiautomatic firearm which the DOJ now labels as "bullet button assault weapon" and has

10  declared, in its regulations, and elsewhere, must be registered. On or about June 30, 2018, before

11  the end of the registration period, Plaintiff Kuehl attempted to register said firearm in accordance

12  with the statutes and DOJ's regulations, using the DOJ's CFARS system. But the CFARS

13  registration system was inaccessible and defective throughout this period and, as a result,

14  Plaintiff Kuehl was unable to register his firearm.

15        17.     Plaintiff Terry Jahraus is an individual, law-abiding gun owner and a resident of

16  the County of Los Angeles, California, and is and has been otherwise eligible to possess and

17  acquire firearms under applicable state and federal laws. He is also a member and supporter of

18  Institutional Plaintiffs Firearms Policy Coalition, Firearms Policy Foundation, and The Calguns

19  Foundation. Plaintiff Jahraus is a Vietnam Veteran, having served in the U.S. Marine Corps in

20  that theater from 1969-1971, and was honorably discharged in 1971. Prior to January 1, 2017,

21  and as a private citizen, plaintiff Jahraus legally owned a semiautomatic firearm which the DOJ

22  now labels as "bullet button assault weapon" and has declared, in its regulations, and elsewhere,

23  must be registered. On or about June 30, 2018, before the end of the registration period, Plaintiff

24  Jahraus attempted to register said firearm in accordance with the statutes and DOJ's regulations,

25  using the DOJ's CFARS system. But the CFARS registration system was inaccessible and

26  defective throughout this period and, as a result, Plaintiff Jahraus was unable to register his

27  firearm.

28

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

B. **Institutional Plaintiffs**

18. Plaintiff The Calguns Foundation ("CGF") is a 501(c)(3) non-profit organization incorporated under the laws of California with its principal place of business in Sacramento, California. CGF is dedicated to promoting education for all stakeholders about California and federal firearm laws, rights and privileges, and to defending and protecting the civil rights of California gun owners. CGF represents its members and supporters, who include California firearm retailers and gun owners throughout the State, including Shasta County, and brings this action on behalf of itself, its members, supporters who possess all the indicia of membership, and similarly situated members of the public. Many of CGF's individual members have been adversely and directly affected by Defendants' failure to permit or provide for timely and proper registrations of "bullet button assault weapons" as required by statute, and all of CGF's individual members have been and continue to be adversely and directly affected by Defendants' ongoing deliberate indifference to the resulting plight of law-abiding California gun owners who have been prevented from complying with the law. Defendants' actions and failures alleged herein have caused CGF to dedicate resources that would otherwise be available for other purposes to protect the rights and property of its members, supporters, and the general public, including by and through this action.

19. Plaintiff Firearms Policy Coalition, Inc. ("FPC") is a 501(c)(4) non-profit organization incorporated under the laws of Delaware with its principal place of business in Sacramento, California, with members residing both within and outside of this state, including in Shasta County, California. FPC serves its members and the public through direct legislative advocacy, grassroots advocacy, legal efforts, research, education, operation of a Hotline, and other programs. The purposes of FPC include defending the United States Constitution and the People's rights, privileges, and immunities deeply rooted in the Nation's history and tradition, especially the fundamental right to keep and bear arms. FPC represents its members and supporters, who include California firearm retailers and gun owners, and brings this action on behalf of itself, its members, supporters who possess all the indicia of membership, and similarly situated members of the public. Many of FPC's individual California members have been

VERIFIED FIRST AMENDED PETITION FOR WRIT OF MANDATE AND
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1     adversely and directly affected by Defendants' failure to permit registrations of "bullet button

2     assault weapons" as required by statute, and all of FPC's individual members have been and

3     continue to be adversely and directly affected by Defendants' ongoing deliberate indifference to

4     the resulting plight of law-abiding California gun owners who have been prevented from

5     complying with the law. Defendants' actions and failures alleged herein have caused FPC to

6     dedicate resources that would otherwise be available for other purposes to protect the rights and

7     property of its members, supporters, and the general public, including by and through this action.

8         20.    Plaintiff Firearms Policy Foundation, Inc. ("FPF") is a 501(c)(3) non-profit

9     organization incorporated under the laws of Delaware with its principal place of business in

10    Sacramento, California, with members residing both within and outside of this state, including in

11    Shasta County, California. FPF serves to defend and advance constitutional rights through

12    charitable purposes, with a focus on the fundamental, individual right to keep and bear arms.

13    FPF represents its members and supporters, who include California firearm retailers and gun

14    owners, and brings this action on behalf of itself, its members, supporters who possess all the

15    indicia of membership, and similarly situated members of the public. Many of FPF's individual

16    California members have been adversely and directly affected by Defendants' failure to permit

17    registrations of "bullet button assault weapons" as required by statute, and all of FPF's individual

18    members have been and continue to be adversely and directly affected by Defendants' ongoing

19    deliberate indifference to the resulting plight of law-abiding California gun owners who have

20    been prevented from complying with the law. Defendants' actions and failures alleged herein

21    have caused FPF to dedicate resources that would otherwise be available for other purposes to

22    protect the rights and property of its members, supporters, and the general public, including by

23    and through this action.

24         21.    Plaintiff Second Amendment Foundation, Inc. ("SAF") is a 501(c)(3) non-profit

25    organization incorporated under the laws of Washington with its principal place of business in

26    Bellevue, Washington. SAF has over 650,000 members and supporters nationwide, including

27    many in California. The purposes of SAF include education, research, publishing, and legal

28    action focusing on the constitutional right to privately own and possess firearms under the

9

Second Amendment, and the consequences of gun control. SAF brings this action on behalf of itself, its members, supporters who possess all the indicia of membership, and similarly situated members of the public. Many of SAF's individual California members have been adversely and directly affected by Defendants' failure to permit registrations of "bullet button assault weapons" as required by statute, and all of SAF's individual members have been and continue to be adversely and directly affected by Defendants' ongoing deliberate indifference to the resulting plight of law-abiding California gun owners who have been prevented from complying with the law. Defendants' actions and failures alleged herein have caused SAF to dedicate resources that would otherwise be available for other purposes to protect the rights and property of its members, supporters, and the general public, including by and through this action.

22. Individual Plaintiffs Sharp, Ajirogi, Gilardy, Prince, Feltman, Kuehl, and Jahraus are bringing this claim on behalf of themselves, and as representatives of a class of similar individuals consisting of law-abiding California residents too numerous to individually name or include as parties to this action. These are: California citizens who are not otherwise prohibited or exempt under the "assault weapon" registration laws, and who lawfully and legally possessed firearms that the State of California has retroactively classified as "assault weapons" under Penal Code § 30515(a) that must be registered as such pursuant to Penal Code sections 30680 and 30900(b), but who have been precluded from doing so due to the Defendants' actions and failures, including but not limited to the inaccessibility, defects, and/or non-functionality of the DOJ's CFARS-based registration system during the registration period ending at midnight on June 30, 2018.

23. Institutional Plaintiffs CGF, FPC, FPF, and SAF are bringing this claim as public interest organizations, whose California members similarly lawfully possessed retroactively-defined "bullet button assault weapons" in this state, prior to December 31, 2016, and who represent the interests of those similarly situated individuals too numerous to individually name or include as parties to this action. These are: California citizens who are not otherwise prohibited or exempt under the "assault weapon" registration laws, and who lawfully and legally possessed firearms that the State of California has retroactively classified as "assault weapons"

10

1  under Penal Code § 30515(a) that must be registered as such pursuant to Penal Code sections
2  30680 and 30900(b), but who have been precluded from doing so due to the Defendants' actions
3  and failures, including but not limited to the inaccessibility, defects, and/or non-functionality of
4  the DOJ's CFARS-based registration system during the registration period ending at midnight on
5  June 30, 2018.

6      24.    As to all claims made in a representative capacity herein, there are common
7  questions of law and fact that substantially affect the rights, duties, and liabilities of many
8  similarly situated California residents who knowingly or unknowingly are subject to the statutes.
9  The relief sought in this action is declaratory, injunctive, and mandamus in nature, and the action
10 involves matters of substantial public interest. Considerations of necessity, convenience, and
11 justice justify relief to Individual and Institutional Plaintiffs in a representative capacity.
12 Furthermore, to the extent it becomes necessary or appropriate, the Institutional Plaintiffs are
13 uniquely able to communicate with and provide notice to their thousands of California members
14 and constituents who are or would be part of any identifiable class of individuals for whose
15 benefit this Court may grant such relief.

16

17 **C.    Defendants**

18     25.    Defendant Xavier Becerra is the Attorney General of the State of California, and
19 he is sued herein in his official capacity. The Attorney General is the chief law enforcement
20 officer of the state, and the head of the DOJ. It is his duty to ensure that California's laws are
21 uniformly and adequately enforced. The DOJ and its Bureau of Firearms regulate and enforce
22 state law related to firearms, and the registration of statutorily-classified "assault weapons."

23     26.    Defendant Brent E. Orick is Acting Chief of the DOJ's Bureau of Firearms. Upon
24 information and belief, Orick reports to Attorney General Becerra, and he is responsible for the
25 various operations of the Bureau of Firearms, including the implementation and enforcement of
26 the statutes and regulations governing sales, use, ownership, transfer, and "assault weapon"
27 registration of firearms. He is sued herein in his official capacity.

28     27.    Defendant Joe Dominic is Chief of the DOJ's California Justice Information

11

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

1    Services (CJIS) Division. Upon information and belief, Dominic reports to Attorney General

2    Becerra, and he is responsible for the various technology operations of the DOJ, including the

3    implementation and maintenance of the technology systems used by the Bureau of Firearms and

4    the public. He is sued herein in his official capacity.

5      28.    The California Department of Justice (DOJ) is a state agency charged with

6    responsibility of enforcing state statutes and promulgating and enforcing rules and regulations

7    authorized by and designed to effectuate the law related to the registration of firearms as

8    statutorily-classified "assault weapons."[2]

9      29.    Plaintiffs are unaware of the true names and capacities of those defendants sued

10    herein as DOES 1 through 20 inclusive, and therefore sue such defendants by fictitious names.

11    Plaintiffs are informed and believe and based upon such information and belief allege that each

12    of the defendants designated as DOES 1 through 20, inclusive, is responsible in some manner for

13    promulgating, administering, enforcing, or otherwise implementing the DOJ systems at issue

14    herein. Plaintiffs will amend this complaint to include the true names of DOES 1 through 20

15    inclusive as soon as is practicable after such names and capacities become known to them.

16

17             **OVERVIEW OF THE RELEVANT STATUTORY AND**
18       **REGULATORY SCHEMES AND SUMMARY OF PLAINTIFFS' CLAIMS**

19    **A.    The General Scheme of the AWCA**

20      30.    Since the dawn of the Roberti-Roos Assault Weapons Control Act in 1989

21    (AWCA), California gun owners have undoubtedly faced significant and growing restrictions

22    upon their ability to acquire and use many popular firearms, in common use for lawful purposes

23    like self-defense and sport, as certain lawmakers have succeeded in branding specified types or

24    configurations of firearms as "assault weapons" and then incrementally expanding that list to

25    include more and more firearms. (Pen. Code § 30505(a).) The product of these gun control

26    legislative campaigns is that – subject to very limited exceptions (e.g., §§ 30625-30630, 30645-

27

28    [2]Because Defendants Becerra, Orick, and Dominic are sued in their official capacities as heads of the DOJ, all references herein to "DOJ" should be construed to include each and all of them.

VERIFIED FIRST AMENDED PETITION FOR WRIT OF MANDATE AND
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

1    30655, 31000-31005) – for the vast majority of ordinary citizens in California, it is generally

2    illegal to manufacture, distribute, transport, sell, give, lend, or otherwise transfer an increasingly

3    expansive list of firearms (on pain of a felony conviction and prison time (§ 30600, subd. (a)),

4    and even to simply "possess" one of these legislatively-classified "assault weapons" (§ 30605,

5    subd. (a)).

6        31.    The State Legislature has indeed built a statutory scheme especially onerous and

7    hostile to the millions of California gun owners simply seeking to exercise their constitutionally-

8    protected fundamental right to keep and bear arms for lawful purposes. But along the way, the

9    Legislature has engrafted into the scheme a few inherent limitations on the reach of the various

10   prohibitions, establishing the four corners of the State's statutory power to restrict the ability of

11   private citizens in their access and use of firearms deemed "assault weapons." Each time the

12   Legislature has succeeded in achieving statutory amendments expanding the list of "assault

13   weapons," it has made the minimal concession of leaving a small "grandfathering" window for

14   lawful owners of those guns that the legislation retroactively deemed constitutional artifacts that

15   they prefer their citizens not acquire – but only if they register the firearm with the DOJ as an

16   "assault weapon" within a specified period time, can they continue to maintain "possession" or

17   use of it.

18

19   **B.    The Pre-Existing Categories of "Assault Weapons"**

20       32.    These different phases of restrictions over time have led to the development of

21   three generally recognized categories of "assault weapons," the first two of which ("Category 1"

22   and "Category 2" assault weapons) were created based upon specific makes, models, or series of

23   firearms. (See Pen. Code §§ 30510, 30960(a); former §§ 12275.5, 12276, 12276.5; 11 CCR §

24   5499.)[3]. "Category 3" firearms, established in 1999, targeted semiautomatic centerfire rifles,

25

26

---

27   [3]The "Category 2" classification includes certain makes and models that the DOJ itself had at one point added to the
28   list through 11 CCR § 5499. However, in 2006, the Legislature repealed the DOJ's authority to unilaterally add
     firearms to the list of "assault weapons" (Pen. Code § 30520(b)(1); A.B. 2178, 2005-2006 Reg. Sess.), and the
     classification of such firearms by makes, models, or series has since remained static.

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

1  pistols, and shotguns based upon certain features, configurations, and/or functionalities, as

2  opposed to certain makes, models, or series. (Pen. Code § 30515; former § 12276.1.)

3

4  **C.    The Registration Mandate for the New Category of "Assault Weapons"**

5       33.    In June of 2016, through Assembly Bill 1135 and Senate Bill 880 (2015-2016

6  Reg. Sess.), the Legislature once again amended the AWCA statutory scheme, changing the

7  definitional terms regarding magazines for semiautomatic rifles and pistols in section 30515 to

8  create new "assault weapon" classifications for those firearms, and adding sections 30680 and

9  30900 to create a concomitant registration requirement for any continued possession of these

10 newly classified firearms. The amendments became effective January 1, 2017. (Stats. 2016, ch.

11 40 § 3 (AB 1135); Stats. 2016, ch. 48 § 3 (SB 880).) As so modified, the new "assault weapon"

12 classification now applies to any semiautomatic centerfire rifle and pistol that (1) "does not have

13 a *fixed magazine*" and (2) possesses one of the other previously specified features. For these

14 purposes, "fixed magazine" is now defined as "an ammunition feeding device contained in, or

15 permanently attached to, a firearm in such a manner that the device cannot be removed without

16 disassembly of the firearm action." (Pen. Code § 30515, subd. (b).)

17     34.    The Legislature specifically incorporated section 30515's assault weapon

18 classifications into the registration requirement of section 30900, subdivision (b)(1), which

19 expressly states that it applies only to a "person who, from January 1, 2001, to December 31,

20 2016, inclusive, lawfully possessed an assault weapon that does not have a fixed magazine, *as*

21 *defined in Section 30515*, including those weapons with an ammunition feeding device that can

22 be readily removed from the firearm with the use of a tool." (Pen. Code § 30900(b)(1), emphasis

23 added.) In other words, "bullet button assault weapons" could be kept, but must be registered, in

24 accordance with the regulations that the DOJ was required adopt pursuant to section 30900,

25 subdivision (b)(5). This section further and specifically required the DOJ to establish an

26 electronic, Internet-based system through which the public could register these firearms by

27 providing the statutorily-required firearm identifying information and pay a fee necessary to

28 cover "the reasonable processing costs." (§§ 30900, subds. (b)(2)-(4).) The statutory deadline to

1 register such firearms, and avoid criminal liability for their continued possession without such

2 registration, was June 30, 2018 (after an extension of the original deadline of December 31,

3 2017, under AB 103 (2017). (§ 30680).

4

5 ## FACTS COMMON TO ALL CLAIMS

6 35. According to the DOJ's data tracking the "Dealer's Record of Sale" (DROS)

7 transactions (online at https://openjustice.doj.ca.gov/firearms/overview), more than 5.1 million

8 long guns have been sold in California since the last registration period closed in 2000. It is

9 estimated that a substantial number of those firearms are subject to the now retroactively-

10 expanded definition of "assault weapon" under AB 1135 and SB 880, i.e., semiautomatic

11 firearms with "bullet button" devices. On information and belief, tens of thousands of

12 Californians (and perhaps more) possessed in the State hundreds of thousands of firearms during

13 the period of January 1, 2001, and December 31, 2016, that have now been reclassified as "bullet

14 button assault weapons" subject to the requirements of Penal Code § 30900(b), rendering all

15 their possessors potentially subject to significant criminal liabilities for failure to comply with

16 the registration mandate.

17 36. Pursuant to the clear statutory mandate described above, the DOJ established an

18 Internet-based registration system, ostensibly to permit the required registration of those bullet-

19 buttoned firearms now retroactively deemed as "assault weapons" pursuant to AB 1135 and SB

20 880. This system was created to exist within a pre-existing system created, maintained, and

21 serviced by the DOJ—the California Firearms Application Reporting System (CFARS). Using

22 CFARS, in theory, would and should have allowed a user to access a separate link to the

23 "Assault Weapon Registration Form (Assembly Bill 1135/Senate Bill 880)." On information

24 and belief, the DOJ's Assault Weapon Registration Form system "went live" (i.e., was made

25 available to the public) on or about August 3, 2017 – leaving less than twelve months for

26 potentially hundreds of thousands of California gun owners to discover the laws and perform

27 their duties required thereunder.

28

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

VERIFIED FIRST AMENDED PETITION FOR WRIT OF MANDATE AND
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    37.    Those with firearms retroactively branded "bullet button assault weapons"
2  originally had until January 1, 2018, to register them. However, given the DOJ's substantial
3  delays in getting its registration-related regulations issued, the registration deadline was extended
4  to July 1, 2018, by virtue of Assembly Bill 103. See Pen. Code § 30680(c).[4]

5    38.    The Office of the Attorney General itself emphasized the importance of citizens'
6  compliance with the June 30, 2018 deadline, with a dramatic "countdown clock" display on the
7  Attorney General's website, showing the number of weeks, days, hours, minutes, and seconds
8  ticking away until literally the last second of the registration period (i.e., June 30, 2018 at
9  11:59:59 PST). A true and correct copy of the DOJ's "countdown clock" illustrating this
10  countdown is attached hereto as **Exhibit A**. The DOJ's website further contained a direct link to
11  the CFARS web page, ostensibly as the vehicle for citizens to "beat the clock" and avoid the
12  serious consequences of failing to timely register, at https://cfars.doj.ca.gov/login.do. And,
13  according to the DOJ's website, the registration window would close on June 30, 2018 at
14  11:59:59 p.m. PST.

15    39.    Defendants knew that the CFARS-based "assault weapon" registration system
16  was substantially understaffed and incapable of properly and timely accepting and processing the
17  registration applications the DOJ was charged with processing. Even before the statutory
18  deadline was extended, the DOJ had requested $2,588,000 and 27 positions to implement the
19  statutorily-mandated Internet-based assault weapons registration system. These funds were
20  approved, in the form of a "loan" from the Firearms Safety and Enforcement Special Fund, to be
21  repaid by June 30, 2021, in part, from the $15.00 per-person fees to be assessed to each registrant
22  and other funds from the DROS Special Fund.

23    40.    But in a declaration filed under oath in a separate civil action challenging the
24  assault weapons regulations generally, DOJ Special Agent Supervisor Blake Graham, who
25  "helped to design the public-facing application for submitting registration of bullet button assault
26  weapons electronically via the Internet," declared that as of March 2018, all "[t]he programmers

27

28  [4]And since their issuance, these regulations have been challenged as illegally promulgated. (See e.g., *Villanueva v. Becerra,* Fresno County Superior Court Case No. 17CECG03093.)

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

VERIFIED FIRST AMENDED PETITION FOR WRIT OF MANDATE AND
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

1    who [had] created this system for DOJ [were] [then] working on other legislatively mandated

2    projects that [were] also on tight deadlines." In addition, Agent Graham explained that the "DOJ

3    d[id] not have funding for [any] modification of the electronic registration system" and the DOJ

4    had received funding for only 24 analysts and two managers to process registration applications.

5    Graham described these as temporary positions that would be eliminated after one year.

6         41.    This situation inevitably led to a backlog of assault weapons registration forms

7    and processing, even well before the statutory deadline. In response to a Public Record Act

8    (PRA) request, the DOJ admitted that as early as February 1, 2018, more than five months after

9    the system had gone "live," the system was already backlogged with 4,653 applications to

10   register "bullet button assault weapons," of which it had only been able to approve about 2,500.

11   (See **Exhibit B.**) Thus, even then, the DOJ knew that only a small fraction of the expected

12   intended registrants had used the system up to that point in time, and did or should have known

13   that an increasing number of registrants would be using the system throughout the end of the

14   registration period.

15        42.    DOJ acknowledged that by the end of the registration deadline, June 30, 2018, a

16   total of 68,848 applications to register "bullet button assault weapons" had been submitted for

17   registration in CFARS, and of those only 13,519 had been registered. As of June 30, 2018, the

18   DOJ was experiencing a backlog of 52,443 applications which were still in process. (See

19   **Exhibit C.**) Therefore, it is clear that a substantial increase in the number of "bullet button

20   assault weapon" registrations was being experienced as the statutory deadline approached.

21        43.    This situation, predictably, came to a head during the end of the registration

22   period, and particularly the last week of June 2018, when thousands of gun owners, desiring to

23   comply with the law – the importance of which the Attorney General had so dramatically

24   emphasized with his intimidating "countdown clock" – attempted to use the registration system

25   in CFARS, either directly or through the link provided in the DOJ Bureau of Firearms website,

26   only to be shut out by acts, defects, and failures of the DOJ in connection with its registration

27   system. For many, the system simply "timed out" and failed while they were attempting to

28   access it, denying access altogether. Others got as far as filling out some or all of the DOJ-

1  required form submissions (including providing multiple digital photographs that were <u>not</u>
2  required by statute, but for some reason, were required by the DOJ), only to have the system fail
3  when clicking the "submit" application action button to complete registration – blocking the
4  registrations at the last second after their lengthy and good faith efforts to submit their completed
5  applications that complied with all requirements of the registration process.

6      44.     On information and belief, Plaintiffs allege that many (perhaps hundreds of)
7  Californians sent the DOJ communications about and reports of various problems with and
8  defects in its systems and the performance of their statutorily-required duties throughout the
9  registration period. Defendants were thus aware of various defects, flaws, and limitations
10  (including but not limited to capacity) of its systems. But the DOJ did not remedy such defects,
11  failures, and limitations, thus causing many California gun owners to be prevented from
12  registering their eligible "bullet button assault weapon" firearms before the end of the
13  registration period.

14      45.     And thus, on June 29, 2018, while plaintiff Harry Sharp was able to log onto
15  CFARS from his home in Redding, California, and even successfully submit a registration form
16  for one of four his "bullet button assault weapon" firearms, when he attempted to register the
17  remaining three immediately thereafter at approximately 3:30 p.m., he was prevented from doing
18  so. Specifically, after plaintiff Sharp had attached the required pictures of his other registration-
19  eligible firearms and attempted to "submit" them, the system "froze up," and failed, and he could
20  not complete these applications. Plaintiff Sharp attempted to complete the remaining three
21  registrations the following day, on June 30, 2018. He made at least 50 attempts to use the DOJ's
22  registration systems (in CFARS) for this purpose, investing most of his day attempting these
23  registrations, but to no avail because the DOJ's defective systems remained inaccessible or
24  inoperable. Plaintiff Sharp attempted to obtain help or technical support from DOJ on at least
25  four occasions, each time being met with an automated, "canned" auto-responder message
26  stating that he had to simply resubmit the forms after clearing out his web browsers and deleting
27  "cookies." He could not reach a live person at the time. Plaintiff Sharp followed these
28  automated instructions, and continued attempting to register the remaining firearms, even into

18

1  the next day, July 1, 2018, but all to no avail. Finally, Plaintiff Sharp was able to reach someone
2  at the DOJ by phone on Monday, July 2, 2018. However, this person just told him that it was his
3  responsibility to have complied with the registration mandate by the deadline, and the DOJ
4  would not extend the deadline to submit registration applications. Thus, as a result of the DOJ's
5  fundamentally defective systems and failures, Plaintiff Sharp was unable to submit three of the
6  four registration applications that were necessary for him to comply with the laws and avoid
7  being in violation of the applicable criminal statutes carrying extraordinary penalties, including
8  prison time and loss of property.

9      46.    On June 28, 2018, plaintiff David Ajirogi attempted to register three "bullet
10  button assault weapon" firearms, from his home in Sacramento, California. All of these firearms
11  had been legally acquired and possessed prior to January 1, 2017, and all information relevant
12  and necessary to uniquely identify these firearms, including the make, model, manufacturer, and
13  serial numbers, was and has been already on file with the DOJ. However, when he attempted to
14  access the DOJ's registration system on June 28, 2018, after attempting to use an established
15  CFARS account, the crucial link to the Assault Weapons Registration Form was inoperable and
16  he was thus unable to access the required registration form. Plaintiff Ajirogi continued
17  attempting to access the registration form page/link for approximately 20-30 minutes. He made
18  several additional attempts on June 29, 2018, but continued to experience the same fundamental
19  problem: the CFARS system would "time out" and fail in the process of attempting to access it.
20  Plaintiff Ajirogi contacted the DOJ for assistance on Friday, June 29, 2018. The DOJ did not
21  respond to his email inquiry, ever.

22      47.    Approximately *one month* before the statutory registration deadline, Plaintiff
23  Ryan Gilardy contacted the DOJ about his concerns regarding the CFARS system, and the
24  registration process generally. He spoke to an official at the DOJ who told him that they
25  expected to receive a large number of registrations in the weeks before the deadline. In fact, the
26  DOJ official had told Plaintiff Gilardy that he could even expect the system to "time out" and fail
27  during the registration process, but was told that if that happened, he would be able to "get
28  through" after several more attempts. Thus, in anticipation of doing the three firearm

19

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

1   registrations he intended, Plaintiff Gilardy gathered all of the required information and

2   paperwork necessary for a joint registration of his "bullet button assault weapon" firearms with

3   his eligible family members, including the photographs required for each firearm. All of these

4   firearms had been legally acquired and possessed prior to January 1, 2017. On or about June 22,

5   2018, Plaintiff Gilardy began the registration process through CFARS. However, upon

6   attempting to submit the information required for joint registration (including proof of residency

7   required for joint registrants), the system "timed out", failed, and prevented him from completing

8   the registration process. Thereafter, and throughout the entire following week of June 25, 2018,

9   Plaintiff Gilardy made many more attempts to complete the registration process. Plaintiff

10   Gilardy, who was formerly an information technology ("IT") professional, made sure that he was

11   using up-to-date computer systems and fully-updated web browsers, and he attempted to

12   complete the registration process through multiple computer devices (including "smart" phones

13   easily capable of processing pictures) from multiple locations, including his home in Contra

14   Costa County, using multiple Internet browsers, Internet service providers, and networks, all to

15   no avail. Plaintiff Gilardy also performed tests of his Internet connections and determined that

16   they were stable and more than technically adequate to perform the registration process.

17   Notwithstanding these repeated and extensive efforts to complete the registration process, he was

18   only able to submit one of the three registrations he had prepared, and that was only after he had

19   abandoned efforts to submit the joint registration (requiring additional information/documents),

20   and only after making at least 14 attempts to register that firearm. The submission for the other

21   two semiautomatic firearms never went through, due to the system's defects and failures,

22   including "time outs" which would not allow the information to be submitted. Plaintiff Gilardy

23   spent all week attempting these registrations, including approximately five hours on June 30,

24   2018, alone, to no avail. As a result of the DOJ system's failures and defects, Plaintiff Gilardy

25   was unable to register two of his firearms that he intended to register jointly with eligible family

26   members.

27       48.   On June 30, 2018, plaintiff Darin Prince attempted to register several "bullet

28   button assault weapon" firearms from his home in San Diego County, California. All of these

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

1  firearms had been legally acquired and possessed prior to January 1, 2017, and all information

2  relevant and necessary to uniquely identify these firearms, including the make, model,

3  manufacturer, and serial numbers, was and had already been on file with the DOJ. However,

4  when he attempted to access the DOJ's systems on June 30, 2018, after using an established

5  CFARS account and after uploading the photographs required for such registration, he was given

6  error messages, due to no fault of his own, and then was unable to proceed further. Plaintiff

7  Prince then made several additional attempts to register the firearms, but each time was denied

8  by the system (including through "timing out") without being able to submit the registration

9  forms. He spent a total of approximately six (6) hours attempting to register through CFARS, to

10  no avail. Plaintiff Prince contacted the DOJ for assistance, but DOJ did not respond to his

11  inquiry. As a result of the DOJ's acts, omissions and failures, and system defects, Plaintiff

12  Prince was unable to register any of the eligible firearms that he intended to register.

13      49.      On June 30, 2018, plaintiff Todd Feltman attempted to register several "bullet

14  button assault weapon" firearms from his home in San Diego County, California. All of these

15  firearms had been legally acquired and possessed prior to January 1, 2017, and all information

16  relevant and necessary to uniquely identify these firearms, including the make, model,

17  manufacturer, and serial numbers, was and has been already on file with the DOJ. However,

18  when he attempted to access the DOJ's registration system on June 30, 2018, utilizing an

19  established CFARS account, and after filling out all required information for the first of several

20  firearms, the CFARS system failed upon his attempt to upload and submit the four photographs

21  of the firearms that the DOJ required as a precondition of registration. Plaintiff Feltman

22  attempted three times to submit the required forms and pictures, only to have the system fail and

23  crash upon submission, requiring him to start over each time. He even attempted to use different

24  web browsers and different Internet connections, but still to no avail. Plaintiff Feltman further

25  attempted to contact DOJ regarding its system failures prior to the registration deadline. The

26  DOJ did not respond to his email inquiry, ever. As a result of the DOJ's failures and system

27  defects, Plaintiff Feltman was unable to register any of the eligible firearms that he intended to

28  register.

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

50. On June 30, 2018, plaintiff David Kuehl attempted to register a "bullet button assault weapon" from his home in Fresno County, California. This firearm had been legally acquired and possessed prior to January 1, 2017, and all information relevant and necessary to uniquely identify it, including the make, model, manufacturer, and serial number, was therefore already on file with the DOJ. However, when he attempted to access the CFARS system on June 30, 2018, he was unable to do so, as he received error messages about the website not being available, and he was unable to proceed further. Plaintiff Kuehl made several attempts to access CFARS on that day, but each time received error messages and could not access the site due to these technical difficulties. As a result of the DOJ's failures and system defects, Plaintiff Kuehl was unable to register his firearm.

51. On June 30, 2018, plaintiff Terry Jahraus learned from watching the news on television that he was required to register "bullet button assault weapons" as such with the DOJ. This was the first he had heard about it. His firearm, which falls under this new classification, had been legally acquired and possessed prior to January 1, 2017; and all information relevant and necessary to uniquely identify it, including the make, model, manufacturer, and serial number, was therefore already on file with the DOJ. Nevertheless, he sought to register his firearm as required by this new law. However, when he attempted to utilize the DOJ's registration systems on June 30, 2018, using an established CFARS account, after he uploaded the required photographs he received error messages, due to no fault of his own, and was unable to proceed further. Plaintiff Jahraus then made several additional attempts to register the firearm, but each time was denied by the faulty system (including through "timing out") without being able to submit the registration forms. He spent a total of approximately three (3) hours attempting to register through CFARS, to no avail. The following Monday, July 2, 2018, Plaintiff Jahraus contacted the DOJ for assistance, but the DOJ official told him, essentially, "it was [his] responsibility to comply with the law [and] that he had all year to do so." In other words, DOJ blamed him for failing to register, even though its own statutorily-mandated registration system was inaccessible and defective throughout the entire period he had attempted

VERIFIED FIRST AMENDED PETITION FOR WRIT OF MANDATE AND
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

1     to register it well before the deadline. As a result of the DOJ's failures and system defects,

2     Plaintiff Jahraus was unable to register his firearm.

3        52.     On information and belief, the DOJ received many other requests for such

4     technical assistance and support from those attempting to complete the required registrations

5     during the last week of June 2018, due to the critical failures and technical issues with the

6     registration system and CFARS throughout this period. On information and belief, in the vast

7     majority of cases, the inquiries to and pleas for help from DOJ were to no avail in attempting to

8     comply with the registration mandate, and the DOJ did not make sufficient staff and technical

9     resources available to address such inquiries and appeals until after the deadline, if at all. And in

10     some cases, DOJ simply advised the concerned prospective registrants, after the deadline, that it

11     was too late to register because the deadline had already passed.

12        53.     At all times during this last week of June 2018, therefore, Defendants, and each of

13     them, were on clear notice of the critical technical defects blocking an untold number of gun

14     owners not otherwise prohibited from possessing or acquiring firearms from registering their

15     firearms in compliance with the law, including the Plaintiffs herein and many members of the

16     Institutional Plaintiffs. Yet, they failed and refused to rectify the situation in accordance with

17     their statutorily-imposed duties in carrying out the registration process. Then, immediately after

18     the deadline had passed, right after midnight on July 1, 2018, the DOJ completely shut down the

19     online registration system and refused to extend the registration period notwithstanding the

20     untold number of registrations that could not be completed as a direct result of the DOJ's acts,

21     omissions, failures, and technical defects in the DOJ's system.

22        54.     For past "assault weapon" registration periods, the DOJ was required to "conduct

23     a public education and notification program regarding the registration of assault weapons and the

24     definition of the weapons set forth in Section 30515 and former Section 12276.1," for purposes

25     of facilitating "outreach to local law enforcement agencies and utilization of public service

26     announcements in a variety of media approaches, to ensure maximum publicity..." (Penal Code §

27     31115.)

28

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

1    55.    Institutional Plaintiff FPC, during the legislative cycle, used its own resources to

2    advocate for such education and outreach to help their members and the public know and

3    understand their duties under the new laws that would be enacted by Senate Bill 880 and

4    Assembly Bill 1135. (See e.g., Senate Committee of Public Safety analysis of SB 880 ["By

5    moving the goal posts on millions of its own residents, California would create new criminal

6    liability for hundreds of thousands of Californians and California visitors -- including shooting

7    sports competitors -- without so much as a simple outreach program, public service

8    announcement, or mandate that DOJ update the years-outdated (and, in some cases, grossly

9    misleading) information it promulgates in its publications and on its website but refuses to

10   correct in spite of the real consequences to law-abiding people."]; Assembly Public Safety

11   Analysis of SB 880 (original formatting modified) ["SB 880 contains no provision for outreach

12   to the millions of Californians who have lawfully acquired firearms that would be subject to SB

13   880's reach. SB 880 contains no provision for educating law enforcement officers or

14   prosecutors—the very people who will have to interpret and enforce it—which will lead to false

15   arrests and ruined lives."].)

16   56.    For this new "bullet button assault weapon" registration requirement, however,

17   there was no mandate or appropriation for outreach or education for gun owners or law

18   enforcement alike. DOJ did not undertake any meaningful or sufficient steps to help

19   Californians understand the laws and their requirements to comply with them – beginning with

20   registration – other than the "countdown" timer and a few sentences on a "Firearms" sub-page of

21   its website, of which many of the affected citizens were likely unaware. Thus, the fate of

22   California gun owners and their legal compliance were largely left to "word of mouth."

23   57.    Because of these and other considerations, on information and belief, many gun

24   owners were not able to or did not undertake efforts to begin compliance through registration

25   until the final weeks of the registration period. And then, they were met with the fundamental

26   failures and defects of the DOJ's registration system that it failed and refused to rectify before

27   the deadline.

28

24

## FIRST CAUSE OF ACTION

## WRIT OF MANDATE OR OTHER APPROPRIATE RELIEF

### Against All Defendants

58. Plaintiffs incorporate paragraphs 1 through 57 as if fully set forth herein.

59. California Penal Code § 30900(b)(1) provides that any person who lawfully possessed a firearm retroactively defined as an "assault weapon," including those weapons containing bullet button devices, "*shall register* the firearm before July 1, 2018, but not before the effective date of the regulations adopted pursuant to paragraph (5), with the department pursuant to those procedures that the department may establish by regulation pursuant to paragraph (5)." (Emphasis added). Subdivision (b)(2) of this section further provides that "Registrations shall be submitted electronically via the Internet utilizing a public-facing application made available by the [DOJ]." Concomitantly, section 30680 provides an exception to the general prohibition against the possession of "assault weapons" for those, and only those, who lawfully own such firearms *and* register them "by July 1, 2018, in accordance with subdivision (b) of Section 30900." (§ 30680, subd. (c).)

60. Individual Plaintiffs, as discussed above, and the class of similarly-situated individuals they represent – i.e., those California residents who are otherwise eligible to own firearms, lawfully owned and possessed a legislatively-defined "assault weapon" from January 1, 2001, to December 31, 2016, "including those weapons with an ammunition feeding device that can be readily removed from the firearm with the use of a tool," and attempted registration using the only authorized method of registration – were deprived by Defendants of their right and ability to register such firearms in compliance with Pen. Code §§ 30900(b) and 30680(c). On information and belief, and as will be demonstrated at trial, a substantial number of other, similarly-situated members of such class of persons were deprived of, and thereby denied, their right and ability to register such firearms solely due to the acts, omissions, constraints, failures, and technical defects on the part of Defendants, and each of them, in connection with their Internet-based "bullet button assault weapon" registration system.

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

61. Defendants had a clear, present, and ministerial duty to establish and implement policies, practices, and regulations that comply with the requirements of the statutes, as well as the California Constitution and United States Constitution, within the purview of their rule-making and enforcement authority, and to provide its citizens with the ability to properly and timely comply with the law – particularly when the DOJ's registration system was the sole available means to do so.

62. Plaintiffs, and each of them, and the class of similarly situated individuals described herein, all have a beneficial interest in the proper discharge of the duties that the DOJ must faithfully execute in connection with the "assault weapons" registration process. Plaintiffs, and each of them, and the class of similarly situated individuals described herein, have a beneficial interest in application of the laws in a fair, just and reasonable manner that gives each similarly situated citizen the opportunity to comply with the registration requirements.

63. As a result of the Defendants' failure to establish, implement, and maintain a functional registration system throughout the registration period, Plaintiffs, and each of them, have been deprived of the ability to avail themselves of the laws that would protect them from criminal liability and permit them to retain lawful and beneficial use of their statutorily-classified "assault weapons." Plaintiffs, and each of them, therefore have a beneficial interest in ensuring that the law, and Defendants' failed implementation of the same through their defective registration process and failures to perform their duties, does not deprive them (and their members, in the case of Institutional Plaintiffs) of their constitutional and statutory rights and their liberty and property interests without due process of law. The actions and omissions of the Defendants, and each of them, rise to the level of a deprivation of due process under the United States Constitution, and the Constitution of the State of California, and a denial of Plaintiffs rights under the applicable statutes.

64. Plaintiffs have no speedy or adequate remedy at law, and this Court has jurisdiction to grant the mandamus and other relief requested herein as necessary and proper to rectify the previous and continuing deprivation of such interests. (Cal. Const., art. VI, § 10.)

WHEREFORE, Plaintiffs seek mandamus writ relief, as set forth below.

## SECOND CAUSE OF ACTION

### DECLARATORY RELIEF

#### Re: Violation of Due Process

#### ·(Cal. Const., art. I, § 7; U.S. Const., XIV Amend.)

#### Against All Defendants

65.    Plaintiffs incorporate paragraphs 1 through 64 as if fully set forth herein.

66.    An actual controversy has arisen and now exists between Plaintiffs, and others similarly situated, and Defendants, and each of them, as to the validity and enforceability of certain statutes prohibiting the possession of "assault weapons" as re-defined by California law, and as to whether such statutes are void and unenforceable, as applied as to them. Specifically, Plaintiffs, and others similarly situated, claim that they have been and are continuing to be deprived of due process under the law, the Constitution of the United States and of the State of California, and that they have been and are continuing to be otherwise deprived of such rights and benefits of the law by Defendants' failure and refusal to operate, provide, or otherwise allow for a functional public-facing Internet "assault weapons" registration system, as required by Penal Code § 30900(b)(2).

67.    The Fourteenth Amendment to the United States Constitution and article I, section 7 of the California Constitution, each guarantee that no person shall be deprived of life, liberty, or property without due process of law.

68.    An actual controversy has further arisen and now exists between Plaintiffs, and the class of similarly situated individuals previously identified, on the one hand, and Defendants, and each of them, on the other hand, as to whether Plaintiffs and the class of persons they . represent were deprived of their right or ability to register their firearms as assault weapons by July 1, 2018, as required by Pen Code §§ 30680(c) and 30900(b) and the DOJ's own regulations, and as to whether that deprivation has resulted in a deprivation of due process.

69.    Plaintiffs desire a judicial determination of the validity and enforceability of the assault weapon possession statutes, to wit: Penal Code §§ 30600, 30605, 30615, 30800, 30900(b), as applied to them, and to the class of similarly-situated individuals, and a

1  determination of whether the Defendants' flawed registration system prevented Plaintiffs from

2  complying with the law in violation of their rights to due process.

3      WHEREFORE, Plaintiffs seek declaratory relief as set forth below.

5  ### THIRD CAUSE OF ACTION

6  ### INJUNCTIVE RELIEF

7  ### Against All Defendants

8      70.    Plaintiffs incorporate paragraphs 1 through 69 as if fully set forth herein.

9      71.    Plaintiffs, and each of them, individually, as representatives of the previously

10 identified class of similarly situated individuals, and the similarly-situated members of the

11 Institutional Plaintiffs and the public, the interests of whom are at the core of the institutions'

12 organizational purposes, seek injunctive relief in Plaintiffs' favor, against Defendants, and each

13 of them, prohibiting all Defendants and their agents from enforcing Penal Code §§ 30600,

14 30605, 30615, 30800, 30900(b) as to each of them, and those similarly situated, until said

15 Plaintiffs, the class of individuals they represent, and the affected members of the Institutional

16 Plaintiffs identified herein, are granted a reasonable opportunity to register their firearms through

17 a functional and reliable registration system.

18     72.    Temporary and permanent injunctive relief are therefore necessary and proper, as

19 plaintiffs will be irreparably injured without such injunctive relief, and the balance of harms

20 weighs heavily in Plaintiffs' favor – particularly as Defendants' failures and refusal to provide a

21 reliable and functional registration system has left Plaintiffs in jeopardy of criminal liability.

22     WHEREFORE, Plaintiffs seek injunctive relief as set forth below.

24 ### PRAYER FOR RELIEF

25     WHEREFORE, Plaintiffs pray for relief as follows:

26     1.    For judgment in Plaintiffs' favor, against Defendants, and the Court's issuance of

27 a writ of mandate, or other appropriate relief, commanding Defendants, and each of them, and

28 others acting pursuant to their authority or control, to permit Individual Plaintiffs, and those

28

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

1  similarly situated, and in an identifiable class, to register their legally-possessed, qualified

2  firearms as "assault weapons" through a reliable and functional registration system pursuant to

3  Pen. Code § 30900(b) for a reasonable period of time beyond the statutory deadline of July 1,

4  2018, and, until such time as that period has expired, command Defendants, and each of them,

5  and others acting pursuant to their authority or control, to refrain from enforcing against

6  Individual Plaintiffs Penal Code §§ 30600, 30605, 30615, 30800, 30900(b), and any related

7  agency regulations enforcing or implementing the mandate of registration by July 1, 2018;

8      2.    For declaratory relief in Plaintiffs' favor, against Defendants, that Defendants,

9  and each of them, have deprived and are continuing to deprive Individual Plaintiffs and others

10  similarly situated of due process under the law, and under the Constitution of the United States

11  and the State of California, and have otherwise deprived and are continuing to deprive them of

12  their statutory rights and benefits of the law by failing to establish, operate, maintain, or

13  otherwise provide for a properly-functioning public-facing Internet-based registration system, as

14  required by Pen. Code § 30900(b)(2);

15      3.    For declaratory relief in Plaintiffs' favor, against Defendants, that the Individual

16  Plaintiffs, and others similarly situated, were deprived of their right or ability to register their

17  firearms as assault weapons by July 1, 2018, as required by Pen. Code § 30680(c) and the DOJ's

18  own regulations, and that Defendants, and each of them, failed in their statutory mandate to

19  establish, operate, maintain, or otherwise provide for a properly-functioning public-facing

20  Internet-based registration system for registrations of "bullet button assault weapons" as required

21  by Pen. Code § 30900(b)(2);

22      4.    For injunctive relief in Plaintiffs' favor, against Defendants, and each of them,

23  prohibiting all Defendants from enforcing Penal Code §§ 30600 (specifically, the prohibition

24  against transportation), 30605, 30615, 30800, 30900(b), and any related agency regulations, as to

25  each of them, and those similarly situated, until said Plaintiffs and members of the class of

26  similarly situated individuals have been permitted a reasonable amount of time to register their

27  firearms through a properly-functioning public-facing Internet-based registration system, as

28  required by Pen. Code § 30900(b)(2);

1    5.    That Plaintiffs be awarded their costs of suit incurred in this action, and costs

2    including their attorneys' fees pursuant to Code of Civil Procedure §§ 1021.5 and 1095; and

3    6.    For other such relief as this court may deem to be just and proper.

4    Dated: July 26, 2018                    SEILER EPSTEIN ZIEGLER & APPLEGATE LLP

5

6                                           George M. Lee

7                                           THE DIGUISEPPE LAW FIRM, P.C.

8

9                                           /s/ Raymond M. DiGuiseppe

10                                          Raymond M. DiGuiseppe

11                                          Attorneys for Petitioners-Plaintiffs

VERIFIED FIRST AMENDED PETITION FOR WRIT OF MANDATE AND
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## VERIFICATION

I, HARRY SHARP, a plaintiff in this case, have read the foregoing VERIFIED FIRST AMENDED PETITION FOR WRIT OF MANDATE AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF. I have personal knowledge of and verify as true all those matters alleged therein that specifically concern me and my individual circumstances. As to all other matters alleged therein directly or indirectly bearing upon an adjudication of my rights and/or interests in this case, I am informed, believe, and on that basis allege, that those matters are also true.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 07/26/18

*Harry Sharp*
Harry Sharp (Jul 26, 2018)

HARRY SHARP

## VERIFICATION

I, DAVID AJIROGI, a plaintiff in this case, have read the foregoing VERIFIED FIRST AMENDED PETITION FOR WRIT OF MANDATE AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF. I have personal knowledge of and verify as true all those matters alleged therein that specifically concern me and my individual circumstances. As to all other matters alleged therein directly or indirectly bearing upon an adjudication of my rights and/or interests in this case, I am informed, believe, and on that basis allege, that those matters are also true.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Jul 30, 2018

David Ajirogi

DAVID AJIROGI

## VERIFICATION

I, RYAN GILARDY, a plaintiff in this case, have read the foregoing VERIFIED FIRST AMENDED PETITION FOR WRIT OF MANDATE AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF. I have personal knowledge of and verify as true all those matters alleged therein that specifically concern me and my individual circumstances. As to all other matters alleged therein directly or indirectly bearing upon an adjudication of my rights and/or interests in this case, I am informed, believe, and on that basis allege, that those matters are also true.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Jul 27, 2018

Ryan Gilardy (Jul 27, 2018)

RYAN GILARDY

## VERIFICATION

I, DARIN PRINCE, a plaintiff in this case, have read the foregoing VERIFIED FIRST AMENDED PETITION FOR WRIT OF MANDATE AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF. I have personal knowledge of and verify as true all those matters alleged therein that specifically concern me and my individual circumstances. As to all other matters alleged therein directly or indirectly bearing upon an adjudication of my rights and/or interests in this case, I am informed, believe, and on that basis allege, that those matters are also true.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 2/31/18

DARIN PRINCE

## VERIFICATION

I, TODD FELTMAN, a plaintiff in this case, have read the foregoing VERIFIED FIRST AMENDED PETITION FOR WRIT OF MANDATE AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF. I have personal knowledge of and verify as true all those matters alleged therein that specifically concern me and my individual circumstances. As to all other matters alleged therein directly or indirectly bearing upon an adjudication of my rights and/or interests in this case, I am informed, believe, and on that basis allege, that those matters are also true.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: **Jul 27, 2018**

Todd Feltman (Jul 27, 2018)

TODD FELTMAN

## VERIFICATION

I, DAVID KUEHL, a plaintiff in this case, have read the foregoing VERIFIED FIRST
AMENDED PETITION FOR WRIT OF MANDATE AND COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF. I have personal knowledge of and verify as true all those matters alleged
therein that specifically concern me and my individual circumstances. As to all other matters
alleged therein directly or indirectly bearing upon an adjudication of my rights and/or interests in
this case, I am informed, believe, and on that basis allege, that those matters are also true.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: **Jul 28, 2018**

David Kuehl (Jul 28 2018)

DAVID KUEHL

## VERIFICATION

I, TERRY JAHRAUS, a plaintiff in this case, have read the foregoing VERIFIED FIRST AMENDED PETITION FOR WRIT OF MANDATE AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF. I have personal knowledge of and verify as true all those matters alleged therein that specifically concern me and my individual circumstances. As to all other matters alleged therein directly or indirectly bearing upon an adjudication of my rights and/or interests in this case, I am informed, believe, and on that basis allege, that those matters are also true.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: **Jul 27, 2018**

*Terry Jahraus*
Terry Jahraus (Jul 27, 2018)

TERRY JAHRAUS

## VERIFICATION

I, GENE HOFFMAN, am the Chairman and President of THE CALGUNS FOUNDATION (CGF), a plaintiff in this action. I am authorized to make this verification for and on behalf of CGF. I have read the foregoing VERIFIED FIRST AMENDED PETITION FOR WRIT OF MANDATE AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF. I have personal knowledge of and verify as true all those matters alleged therein that specifically concern CGF and its membership. As to all other matters alleged therein directly or indirectly bearing upon an adjudication of the rights and/or interests of CGF and its membership in this case, I am informed, believe, and on that basis allege, that those matters are also true.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 7/27/18

GENE HOFFMAN

## VERIFICATION

I, Brandon Combs, am the President of FIREARMS POLICY COALITION (FPC). I am authorized to make this verification for and on behalf of FPC. I have read the foregoing VERIFIED FIRST AMENDED PETITION FOR WRIT OF MANDATE AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF. I have personal knowledge of and verify as true all those matters alleged therein that specifically concern FPC and its membership. As to all other matters alleged therein directly or indirectly bearing upon an adjudication of the rights and/or interests of FPC and its membership in this case, I am informed, believe, and on that basis allege, that those matters are also true.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 27, 2018

_____
BRANDON COMBS

## VERIFICATION

I, Jonathan Jensen, am the Vice-President of FIREARMS POLICY FOUNDATION (FPF). I am authorized to make this verification for and on behalf of FPF. I have read the foregoing VERIFIED FIRST AMENDED PETITION FOR WRIT OF MANDATE AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF. I have personal knowledge of and verify as true all those matters alleged therein that specifically concern FPF and its membership. As to all other matters alleged therein directly or indirectly bearing upon an adjudication of the rights and/or interests of FPF and its membership in this case, I am informed, believe, and on that basis allege, that those matters are also true.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 7-27-2018

JONATHAN JENSEN

## VERIFICATION

I, Alan Gottlieb, am the founder and Executive Vice President of SECOND AMENDMENT FOUNDATION (SAF). I am authorized to make this verification for and on behalf of SAF. I have read the foregoing VERIFIED FIRST AMENDED PETITION FOR WRIT OF MANDATE AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF. I have personal knowledge of and verify as true all those matters alleged therein that specifically concern SAF and its membership. As to all other matters alleged therein directly or indirectly bearing upon an adjudication of the rights and/or interests of SAF and its membership in this case, I am informed, believe, and on that basis allege, that those matters are also true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: 7/27/2018

Alan M. Gottlieb

ALAN GOTTLIEB

EXHIBIT A



# XAVIER BECERRA
*Attorney General*

Search

Translate Website | Traducir Sitio Web



EXHIBIT B

*XAVIER BECERRA*
*Attorney General*

*State of California*
*DEPARTMENT OF JUSTICE*

1300 I STREET, SUITE 125
P.O. BOX 944255
SACRAMENTO, CA 94244-2550
Public: (916) 445-9555
Facsimile: (916) 227-0470

February 1, 2018

Brandon Combs
4212 N. Freeway Blvd., Suite 6
Sacramento, CA 95834

Re: Public Records Act Request received January 4, 2018

Dear Mr. Combs:

This letter is in response to your public records request in which you sought records pursuant to the Public Records Act ("PRA") as set forth in Government Code section 6250 et seq. Specifically, you requested the following information:

"Please provide me with a copy of the following records in existence that allow me and the public to determine:

1. The number of applications for firearm registration as an "Assault Weapon" under Penal Code section 30900(b) that were submitted from July 31, 2017, to the present. In lieu of documents I will accept your calculation of the number of applications as a full response to this request.

2. The number of applications for firearm registration as an "Assault Weapon" under Penal Code section 30900(b) that have been approved from July 31, 2017, to the present. In lieu of documents I will accept your calculation of the number of applications that have been approved as a full response to this request.

3. The number of applications for firearm registration as an "Assault Weapon" under Penal Code section 30900(b) that have been denied/rejected from July 31, 2017, to the present. In lieu of documents I will accept your calculation of the number of applications that have been denied/rejected as a full response to this request.

4. The number of applications for firearm registration as an "Assault Weapon" under Penal Code section 30900(b) submitted from July 31, 2017, to the present that are still being processed. In lieu of documents I will accept your calculation of the number of applications still being processed as a full response to this request.

5. The average time it takes to review and make a determination on an "Assault Weapon" registration application under Penal Code section 30900(b) submitted from July 31, 2017, to the present. In lieu of documents I will accept a list of all applications including their respective dates of submission and DOJ's determination of acceptance or denial as a full response to this request.

6. From January 1, 2017, to the present, a copy of all daily, weekly, monthly, or other periodical reports about "Assault Weapon" registrations and applications under Penal Code section 30900(b)."

Here are the responses to your requested information:

1. 4,653 applications to register bullet button assault weapons were submitted for registration in California Firearms Application Reporting System (CFARS).

2. 2,523 applications were approved in CFARS.

3. 200 applications were rejected in CFARS.

4. 1,232 applications are still being processed by the Department.

5. We cannot provide you with an estimate on the time it takes to review and make a determination on an assault weapon registration application because it varies greatly depending on the circumstances.

6. Please find enclosed the information you seek.

Sincerely,

*Robert Wilson*

ROBERT D. WILSON
Deputy Attorney General

For   XAVIER BECERRA
Attorney General

Enclosure

EXHIBIT C

**XAVIER BECERRA**
*Attorney General*

*State of California*
*DEPARTMENT OF JUSTICE*

1300 I STREET, SUITE 125
P.O. BOX 944255
SACRAMENTO, CA 94244-2550
Public: (916) 445-9555
Facsimile: (916) 227-0470

July 11, 2018

Brandon Combs
4212 N. Freeway Blvd,, Suite 6
Sacramento, CA 95834

Re: Public Records Act Request received July 2, 2018

Dear Mr. Combs:

This letter is in response to your public records request in which you sought records pursuant to the Public Records Act ("PRA") as set forth in Government Code section 6250 et seq. Specifically, you requested the following information:

"Please provide me with a copy of the following records in existence that allow me and the public to determine:

1. The number of applications for firearm registration as an "Assault Weapon" under Penal Code section 30900(b) that were submitted from July 31, 2017, to the present. In lieu of documents I will accept your calculation of the number of applications as a full response to this request.

2. The number of applications for firearm registration as an "Assault Weapon" under Penal Code section 30900(b) that have been approved from July 31, 2017, to the present. In lieu of documents I will accept your calculation of the number of applications that have been approved as a full response to this request.

3. The number of applications for firearm registration as an "Assault Weapon" under Penal Code section 30900(b) that have been denied/rejected from July 31, 2017, to the present. In lieu of documents I will accept your calculation of the number of applications that have been denied/rejected as a full response to this request.

4. The number of applications for firearm registration as an "Assault Weapon" under Penal Code section 30900(b) submitted from July 31, 2017, to the present that are still being processed. In lieu of documents I will accept your calculation of the number of applications still being processed as a full response to this request.

5. The average time it takes to review and make a determination on an "Assault Weapon" registration application under Penal Code section 30900(b) submitted from July 31, 2017, to the present. In lieu of documents I will accept a list of all applications including their respective dates of submission and DOJ's determination of acceptance or denial as a full response to this request.

6. From January 1, 2017, to the present, a copy of all daily, weekly, monthly, or other periodical reports about "Assault Weapon" registrations and applications under Penal Code section 30900(b)."

Here are the responses to your requested information:

1. 68,848 applications to register bullet button assault weapons were submitted for registration in the California Firearms Application Reporting System (CFARS).

2. 13,519 firearms were registered as of June 30, 2018. An application that is being processed is not considered "registered." An assault weapon would only be registered if the applicant meets all the firearm and background requirements and is approved by the Department.

3. 1,373 applications were rejected as of July 11, 2018.

4. 52,443 applications are still being processed by the Department as of July 11, 2018.

5. We cannot provide you with an estimate on the time it takes to review and make a determination on an assault weapon registration application because it varies greatly depending on the circumstances.

6. Please find enclosed the information you seek.

Sincerely,

*Robert D. Wilson*

ROBERT D. WILSON
Deputy Attorney General

For    XAVIER BECERRA
Attorney General

Enclosure