# Exhibit D

George M. Lee (SBN 172982)
Douglas A. Applegate (SBN 142000)
**SEILER EPSTEIN ZIEGLER & APPLEGATE LLP**
601 Montgomery Street, Suite 2000
San Francisco, CA 94111
Phone: (415) 979-0500
Fax: (415) 979-0511

Raymond M. DiGuiseppe (SBN 228457)
**THE DIGUISEPPE LAW FIRM, P.C.**
2 North Front Street, Fifth Floor
Wilmington, NC 28401
Phone: (910) 713-8804
Fax: (910) 672-7705

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF SHASTA**

| | |
|---|---|
| HARRY SHARP, et al.,<br><br>Plaintiffs and Petitioners,<br><br>vs.<br><br>XAVIER BECERRA, in his official capacity as Attorney General of California, et al.,<br><br>Defendants and Respondents. | Case No. 190350<br><br>**NOTICE OF MOTION AND MOTION OF PLAINTIFFS FOR ISSUANCE OF A PRELIMINARY INJUNCTION**<br><br>**[CCP § 527(a)]**<br><br>Date: Sept. 10, 2018<br>Time: 8:30 a.m.<br>Dept. 08<br>Judge: Hon. Tamara L. Wood |

TO ALL PARTIES, THROUGH THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on **September 10, 2018**, at **8:30 a.m.**, or as soon thereafter as the matter may be heard in Department 8 of the above-entitled court, Hon. Tamara L. Wood presiding, plaintiffs Harry Sharp, David Ajirogi, Ryan Gilardy, Darin Prince, Todd Feltman, David Kuehl, Terry Jahraus, The Calguns Foundation, Firearms Policy Coalition, Firearms Policy Foundation and the Second Amendment Foundation ("plaintiffs"), by and though their counsel of record, will and hereby do move the court for an order granting and issuing a preliminary injunction, pursuant to Cal. Code of Civil

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

Procedure §§ 526 and 527(a). Specifically, plaintiffs seek to enjoin defendants California Attorney General Xavier Becerra, in his official capacity as Attorney General of the State of California, Brent Orick, in his official capacity as Acting Chief of the Department of Justice Bureau of Firearms, Joe Dominic, in his official capacity as Chief of the Department of Justice California Justice Information Services Division, and the California Department of Justice (DOJ), their officers, agents, servants, employees, and attorneys, and subdivisions, including those persons in active concert or participation with them, and those duly sworn state peace officers and federal law enforcement officers (collectively "Defendants") from enforcing California Penal Code sections 30600 (insofar as the statute would prohibit otherwise lawful transportation activities), and 30605 (prohibiting possession of assault weapons), against plaintiffs, the class of similarly-situated individuals, and for all persons who otherwise would have been entitled to register certain firearms pursuant to Cal. Penal Code § 30900(b)(1).

The motion is made on the grounds that plaintiffs have demonstrated a likelihood of prevailing on the merits of their mandamus, declaratory and injunctive relief claims, that plaintiffs and a class of similarly-situated individuals would suffer irreparable injury unless and until preliminary injunctive relief is granted, pending resolution of the case, and that the balance of harms tips in favor of granting the plaintiffs injunctive relief.

In support of this motion, plaintiffs and moving parties will rely upon this notice of motion, the supporting memorandum of points and authorities, all declarations submitted in support of the motion, and all evidentiary exhibits thereto, all matters of which the court is requested to and may take judicial notice, the VERIFIED FIRST AMENDED PETITION FOR WRIT OF MANDATE AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF (FAC), all other complete files and judicial records of the above-entitled action, and any other such evidence and argument as the court may consider upon the hearing of this matter.

//

//

Dated: August 13, 2018

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP

George M. Lee

THE DIGUISEPPE LAW FIRM, P.C.

*/s/ Raymond M. DiGuiseppe*
Raymond M. DiGuiseppe

Attorneys for Plaintiffs/Petitioners

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

3

NOTICE OF PLAINTIFFS' MOTION FOR ISSUANCE OF A PRELIMINARY INJUNCTION
CASE NO. 190350

George M. Lee (SBN 172982)
Douglas A. Applegate (SBN 142000)
**SEILER EPSTEIN ZIEGLER & APPLEGATE LLP**
601 Montgomery Street, Suite 2000
San Francisco, California 94111
Phone: (415) 979-0500
Fax: (415) 979-0511

Raymond M. DiGuiseppe (SBN 228457)
**THE DIGUISEPPE LAW FIRM, P.C.**
2 North Front Street, Fifth Floor
Wilmington, NC 28401
Phone: (910) 713-8804
Fax: (910) 672-7705

Attorneys for Plaintiffs/Petitioners

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SHASTA**

HARRY SHARP, et al.,

Plaintiffs and Petitioners,

vs.

XAVIER BECERRA, in his official capacity as Attorney General of California, et al.,

Defendants and Respondents.

Case No. 190350

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR ISSUANCE OF PRELIMINARY INJUNCTION**

**[CCP § 527(a)]**

Date: September 10, 2018
Time: 8:30 am.
Dept. 08
Judge: Hon. Tamara L. Wood

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

TABLE OF CONTENTS

I. INTRODUCTION ..... 1

II. FACTUAL AND PROCEDURAL SUMMARY ..... 1

A. THE "BULLET BUTTON ASSAULT WEAPON" REGISTRATION MANDATE ..... 1

B. THE DOJ ESTABLISHED AND A FUNDAMENTALLY INADEQUATE AND DEFECTIVE REGISTRATION SYSTEM – AND PROBLEMS INEVITABLY ABOUNDED. ..... 3

1. For Many, the CFARS System Was Not Accessible at All. ..... 4

2. For Many Others, the CFARS System Could Not Process Photographs. ..... 5

3. The CFARS System's "Invalid Character" Error ..... 6

4. DOJ Technical Assistance Was Non-Existent ..... 6

III. ARGUMENT ..... 8

A. RELIEF REQUESTED ..... 8

B. PRELIMINARY INJUNCTION STANDARDS ..... 8

C. PLAINTIFFS HAVE SHOWN A LIKELIHOOD OF PREVAILING ON THE MERITS ..... 10

1. Plaintiffs Have Shown Entitlement to Mandamus Relief. ..... 10

2. Defendants Closed the Registration Period Prematurely – Gov. Code § 6707 ..... 11

D. PRELIMINARY INJUNCTIVE RELIEF IS NECESSARY TO PREVENT IRREPARABLE HARM TO INDIVIDUAL PLAINTIFFS AND ALL SIMILARLY SITUATED INDIVIDUALS ..... 12

E. REPRESENTATIVE RELIEF IS REQUESTED ..... 14

IV. CONCLUSION ..... 15

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

# TABLE OF AUTHORITIES

**Cases**

*Alfaro v. Terhune* (2002) 98 Cal.App.4th 492 .......... 9, 13
*Anderson v. Souza* (1952) 38 Cal.2d 825 .......... 12
*Ayotte v. Planned Parenthood* (2005) 546 U.S. 320 .......... 13
*Board of Social Welfare v. County of Los Angeles* (1945) 27 Cal.2d 98 .......... 14
*Butt v. State of California* (1972) 4 Cal.4th 668 .......... 9
*Carlsbad Aquafarm, Inc. v. State Dept. of Health Services* (2000) 83 Cal.App.4th 809 .......... 10
*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859 .......... 10
*Ellena v. Department of Ins.* (2014) 230 Cal.App.4th 198 .......... 10
*Elrod v. Burns* (1976) 427 U.S. 347 .......... 13
*Katzberg v. Regents of Univ. of California* (2002) 29 Cal.4th 300 .......... 10
*Market Lofts Community Assn. v. 9th Street Market Lofts, LLC* (2014) 222 Cal.App.4th 924 .......... 15
*McKay Jewelers, Inc. v. Bowron* (1942) 19 Cal.2d 595 .......... 9
*Novar Corp. v. Bureau of Collection & Investigative Servs.* (1984) 160 Cal.App.3d 1 .......... 9
*O'Connell v. Superior Court* (2006) 141 Cal.App.4th 1452 .......... 13
*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090 .......... 9
*People ex rel. Younger v. County of El Dorado* (1971) 5 Cal.3d 480 .......... 10
*Prigmore v. City of Redding* (2012) 211 Cal.App.4th 1322 .......... 9
*Residents of Beverly Glen, Inc. v. City of Los Angeles* (1973) 34 Cal.App.3d 117 .......... 14
*SB Liberty, LLC v. Isla Verde Assn., Inc.* (2013) 217 Cal.App.4th 272 .......... 8, 9
*Smith v. Novato Unified School Dist.* (2007) 150 Cal.App.4th. 1439 .......... 13
*Startrack, Inc. v. County of Los Angeles* (1976) 65 Cal.App.3d 451 .......... 9
*Take Me Home Rescue v. Luri* (2012) 208 Cal.App.4th 1342 .......... 9
*Tenants Assn. of Park Santa Anita v. Southers* (1990) 222 Cal.App.3d 1293 .......... 15
*White v. Davis* (2003) 30 Cal.4th 528 .......... 13
*Wind v. Herbert* (1960) 186 Cal.App.2d 276 .......... 12

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

**Statutes**

Cal. Civ. Code § 3422 .......... 12
Cal. Code of Civ. Pro § 1085 .......... 10
Cal. Code of Civ. Pro. § 12a .......... 11
Cal. Code of Civ. Pro. § 526 .......... 9
Cal. Gov. Code § 6707 .......... 11
Cal. Pen. Code § 30515 .......... 2
Cal. Pen. Code § 30600 .......... 11, 15
Cal. Pen. Code § 30605 .......... 15
Cal. Pen. Code § 30680 .......... 2, 10
Cal. Pen. Code § 30900(b) .......... passim
Cal. Pen. Code § 31115 .......... 2

**Regulations**

11 Cal. Code of Regs. § 5474 .......... 5

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

## I. INTRODUCTION

This case is about the cruel irony of requiring people to comply with the law, and then depriving them of the ability to do so. The ones truly affected are those who endeavored to and desire to remain law-abiding citizens, respecting the laws of this State. The seven individual plaintiffs in this case, the untold number of similarly situated people they represent, and the many affected members of the institutional plaintiffs all share one crucial fact in common: They are law-abiding gun owners who made good faith, diligent efforts to comply with the "bullet button assault weapon" registration mandate during the open registration period, but were shut out solely because of defects and malfunctions with the online "assault weapons" registration system under the complete control and responsibility of the California Department of Justice (DOJ). By statute, this was only available means through which people could register such lawfully-owned firearms before the deadline of July 1, 2018. As a result, at 12:00 a.m. on July 1st, all plaintiffs in this case and likely thousands more across the state became subject to severe penalties and sanctions for possession of unregistered assault weapons, "criminals," in the eyes of the law, through no legal fault of their own.

Unless and until this Court steps in, plaintiffs, and the class of law-abiding citizens they represent, will continue carrying this unduly prejudicial stigma and burden, subjecting them to prosecution, significant penalties, and deprivation of their property rights – all because the DOJ established and maintained a fundamentally defective system for processing these registrations and then shut it down – prematurely – providing no exception or mercy for any of those whose applications could not be processed due to the system's technical defects. This Court's immediate intervention is therefore requested to prevent the unconstitutional infliction of irreparable injury to these plaintiffs and everyone else forced into this state of legal purgatory.

## II. FACTUAL AND PROCEDURAL SUMMARY

### A. THE "BULLET BUTTON ASSAULT WEAPON" REGISTRATION MANDATE

For many years now, the State of California has strictly regulated the acquisition, possession, sale, and use of popular, commonly-held semiautomatic firearms through a vast and complex web of criminal statutes whose scope is ever-expanding to include more and more such

firearms designated with the legislative classification of "assault weapons." Most recently, the Legislature declared as "assault weapons" another large swath of popular, commonly-held semiautomatic firearms – this time those with the so-called "bullet-button" as part of their magazine-locking mechanism. Specifically, in 2016, through Senate Bill 880 and Assembly Bill 1135 (2015-2016 Reg. Sess.), the Legislature expanded the definition of "assault weapon" to include many such firearms (Pen. Code § 30515) and further established a registration requirement, forcing owners of these firearms to register them with the DOJ by no later than July 1, 2018, in order to continue lawful possession. *See*, Pen. Code §§ 30900(b)(1) (requiring registration), and 30680(c) (allowing possession for those who timely register). At the same time, the Legislature required the DOJ to establish and maintain a functional "public-facing" Internet-based application for timely processing these registrations. Pen. Code § 30900(b)(2).

Hundreds of thousands of firearms likely fall within the purview of the retroactively-classified "bullet button assault weapons" subject to the statutory registration requirement. (FAC, ¶ 33.) In the run-up to the deadline, the Attorney General's website emphasized the importance of compliance in order to stay in line with the law, with an ominous "countdown clock" ticking off the number of weeks, days, hours, minutes, and seconds to the deadline of July 1, 2018. (See, FAC Exhibit A.) But besides the "countdown clock" floating in the ether of the Internet as a portentous reminder to those who happened to see it on the website during the registration period, the DOJ undertook little, if any, efforts to notify or educate the general public about the registration mandate – even though for prior "assault weapon" registration periods the DOJ had been required to "conduct a public education and notification program regarding the registration of assault weapons." *See*, Pen. Code § 31115. Plaintiff FPC took it upon itself to help fill this void by devoting its own resources toward public education. (FAC, ¶ 53.) Still, untold numbers of affected citizens were undoubtedly left in the dark about the registration mandate throughout most or even the entire registration period. Case in point, plaintiff Jahraus only happened to learn of the registration mandate coincidentally when he saw a television news report about it on *June 30th*, the final day of the registration period. (Jahraus Decl., ¶ 6.)

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

B. THE DOJ ESTABLISHED AND A FUNDAMENTALLY INADEQUATE AND DEFECTIVE REGISTRATION SYSTEM – AND PROBLEMS INEVITABLY ABOUNDED.

The DOJ's registration system went "live" August 3, 2017, leaving just eleven months for the numerous affected citizens to learn about and comply with the registration requirement. (FAC, ¶ 34.) The DOJ set up and maintained this online registration system through the California Firearms Application Reporting System (CFARS). As plaintiffs demonstrate, however, this system was flawed from the outset, and during the crucial final days in the run-up to the looming statutory deadline, the system repeatedly malfunctioned, ultimately blocking the registration attempts of the plaintiffs, and numerous other similarly situated people, as they made good faith efforts to comply with the law by registering their firearms through this portal.

Plaintiffs retained Michael Miyabara-McCaskey, a senior IT Systems/Enterprise Architect, with twenty-one years of experience serving clients both in the private and public sectors, with specific experience in building and maintaining organizational IT systems, enterprise architecture, network, systems, and database administration, to examine the likely causes of the inability of plaintiffs, and other members of the pubic, to access and/or successfully submit assault weapon registration forms to the DOJ. (Miyabara-McCaskey Decl., ¶¶ 3-4.) His job, in essence, includes "root cause analysis," which is to diagnose and resolve enterprise IT problems and failures, and his work specifically includes the creation, maintenance and management of the data systems for the Judicial Council of California. (*Id.*, ¶¶ 5-6.) As this expert explains, when the DOJ created its "public-facing application," it did not create an independent on-line registration system, but rather, elected to make an "enhancement" to its already-existing and maintained CFARS web application which included, inter alia: firearm registrations, ownership reports, transfer reports, serial number applications, and other firearms-related data. (Miyabara-McCaskey Decl., ¶ 10; Exhibit B.) The design of the "enhancement" to the CFARS system for using this system to *also* process the numerous "bullet button assault weapon" registrations was inherently flawed, in that it was built on an existing system which already served several other purposes without adequate quality assurance testing or profiling so as to ensure proper sizing (i.e., sufficient capacity) within CFARS. (*Id.*, ¶ 13.)

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

The collective experience of the individual plaintiffs in attempting to access the DOJ's CFARS servers and successfully submit firearm registration forms is illustrative of experiences that were shared with many other members of the public across the state. (See, Lee Decl., ¶¶ 6-7, Exhibits A and B). The commonality of these types of problems supports the conclusion that these were CFARS-server side issues, and not the fault of the plaintiffs or the public. (Miyabara-McCaskey Decl., ¶ 16.) Ultimately, plaintiffs have demonstrated that the problems being experienced (as detailed below) were due to inadequate CFARS system resources such as available memory, unavailability of external or third party connections that the CFARS application depended upon for referenced data, and/or inadequate network bandwidth or network routing problems within CFARS servers. (See *id.* at ¶ 18.)

**1. For Many, the CFARS System Was Not Accessible at All.**

Plaintiff Harry Sharp, a resident of Redding, was initially able to register one of four firearms he intended to register on June 29, 2018. (Sharp Decl., ¶ 6). However, upon attempting to register the second firearm, the system would "time out" (i.e., become unresponsive and eventually quit) when he attempted to upload and submit the required photographs. The next day, June 30, 2018, Mr. Sharp resumed his efforts to register, but was unable to access the CFARS portal at all. (*Id.*, ¶ 7). (A video demonstrating the inaccessibility of CFARS is described in his declaration, at ¶ 11 and found at: http://bit.ly/Sharp_Video_001.)

Likewise, plaintiff David Ajirogi, who was initially able to establish a CFARS account (i.e., create a basic user name and password), was unable to access the "Assault Weapon Registration Form" link at all, despite multiple attempts on June 28 and 29. (Ajirogi Decl., ¶ 6-7.) Each time, the system would "time out" and become unresponsive. (*Ibid.*)

Plaintiff David Kuehl similarly describes an inability to access the CFARS system entirely, receiving error messages about the website not being available. (Kuehl Decl., ¶ 6.)

Plaintiff Darin Prince tried to register on June 30, 2018, but was unable to access the site for four hours. (Prince Decl., ¶ 6.) He was able to get onto the site eventually, but due to other problems, he was unable to timely register all the firearms he intended to register. (*Id.*, ¶ 8.)

As a result of the CFARS system being completely inaccessible, these individuals (and

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

undoubtedly many others) were unable to even begin processing their registrations, and were therefore unable to timely register their firearms subject to the registration mandate. (Sharp Decl., ¶ 9; Ajirogi Decl., ¶ 8; Kuehl Decl., ¶ 7; Prince Decl., ¶¶ 6-8.) These connection issues experienced by the plaintiffs and others across the state, were caused by either the DOJ's CFARS servers being overloaded and/or possibly by one of the State of California datacenters itself being unavailable due to network routing or overload issues. (Miyabara-McCaskey Decl., ¶ 12.)

**2. For Many Others, the CFARS System Could Not Process Photographs.**

Many of the plaintiffs declare that the CFARS system timing out while attempting to upload the four photographs required by the DOJ.[1] Plaintiff Sharp, for example, could not complete the second registration he attempted on June 29, 2018, because the system "froze up" when he attempted to upload the second batch of photographs. (Sharp Decl., ¶ 6.)

Plaintiff Ryan Gilardy, who actually began the registration process a *month* before the Deadline by inquiring with the DOJ about the general process (Gilardy Decl., ¶ 6), experienced "time outs" during his attempted submission of the photographs and documents required for joint registration approximately two weeks before the Deadline. (*Id.*, ¶¶ 8-9.) (A video demonstrating the CFARS system timing out after attempting to upload a simple 2.0 MB photograph is described in the Gilardy Decl. at ¶ 12 and found at: http://bit.ly/Gilardy_Video_001.)

Plaintiff Todd Feltman got as far as submitting the required information, and uploading the photographs, but when he attempted to "submit" everything, the system "timed out" and crashed. (Feltman Decl., ¶¶ 6, 9 and video at: http://bit.ly/Feltman_Video_001.)

These problems uploading photographs were widespread. See Gallinger Decl. (attached to Lee Decl. as Exhibit A) at ¶ 5; Decl. of Richard Whittier (Lee Decl. Exhibit B) at ¶ 5. DOJ's

[1]The photographic requirement was *entirely* an invention of the DOJ itself, by and through its own regulations. (Tit. 11 Cal. Code of Regs. § 5474(c) (requiring four "clear digital photos of firearms listed on the application.") Nowhere in the authorizing statute are photographs actually required. (See Pen. Code § 30900(b)(3) for a list of the registration information required by statute.) Had the DOJ followed the Administrative Procedures Act, and opened its regulations to public comment before promulgating them, the predictable technical problems with its requirement of uploading four photographs could have been exposed and avoided.

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

inability to accommodate its own photographic requirement foreclosed many from timely registering their firearms. (See, Sharp Decl., ¶ 9; Gilardy Decl., ¶ 11; Feltman Decl., ¶ 10.)

**3. The CFARS System's "Invalid Character" Error**

Others were unable to proceed and/or submit their registration forms due to a bizarre "invalid character address" error they received, preventing their submission. For example, plaintiff Darin Prince, who had already submitted seven of his firearms, experienced this error at 11:15 p.m. on June 30th after the system kicked him out, deleting his submission and requiring him to start all over again. (Prince Decl., ¶ 6.) When he did log in again, the CFARS system would not accept the exact same home address he had used previously, responding that there were "invalid characters" in the address field. (*Ibid.*) He naturally attempted every possible combination of letters and variations, to no avail. (*Ibid.*) To cut his losses, plaintiff Prince checked out and paid for those submissions already in his cart, but was unable to process seven of his firearms prior to the Deadline due to this error. (*Id.*, ¶ 8.) He forwarded to the DOJ a screenshot of the error message he had received. (Exhibit A to Prince Decl.)

Similarly, plaintiff Terry Jahraus attempted to register his firearm with CFARS, only to receive the "invalid characters" error message that prevented him from proceeding. (Jahraus Decl., ¶ 6.) He attempted every possible variation of his home address, to no avail. (*Id.*) (Exhibit A to Jahraus Decl. (Picture of the error message).) Declarant Jordan Gallinger likewise experienced this error in attempting to use the registration system. (Lee Decl., Exhibit A at ¶ 5.)

This error prevented these individuals from registering some or all the firearms they intended to register before the Deadline (Prince Decl., ¶ 8; Jahraus Decl., ¶ 7), further illustrating the inadequate memory/resources of the system. (Miyabara-McCaskey Decl., ¶ 4).

**4. DOJ Technical Assistance Was Non-Existent.**

The technical issues that plaintiffs and undoubtedly many others experienced in the crush of attempted registrations *might* have been mitigated, had the DOJ actually provided technical support to address its problems. The DOJ knew there were issues. For example, before the Deadline, the DOJ posted a warning on its website, stating, "[t]he Department is currently experiencing a high volume of users attempting to register their assault weapons." (Lee Decl.,

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

Exhibit E.)[2] The DOJ claimed that "staff will be available to assist with bullet button assault weapon registrations and assault weapon serial number requests via email communication on Saturday, June 30, 2018 until 11:59:59 pm by contacting awr@doj.ca.gov." (*Ibid.*)

But this was all folly, and possibly just for show. Plaintiff Sharp, for example, followed the "troubleshooting tips," to no avail. (Sharp Decl., ¶ 8.) For his part, plaintiff Ryan Gilardy had actually contacted the DOJ by phone a full month before the deadline and addressed to a DOJ official questions about how to properly utilize the registration system. The DOJ official said they expected a large number of online registration attempts throughout the month of June and that registrants would face "time outs" due to the high traffic volume. (Gilardy Decl., ¶ 6.) Nevertheless, she advised if that happened to him, he should "keep trying" and that eventually, he would get through. (*Ibid.*) And when plaintiff Gilardy did experience such problems, as a former IT professional, he did everything the DOJ recommended and more to try to solve them. For example, he made sure he was using up-to-date computer systems and fully-updated web browsers. He used different devices, Internet service providers and networks, to no avail. He performed Internet speed tests to verify that his connections were strong. He attempted to reduce the photograph data size to make sure that file size wasn't the issue. (*Id.*, ¶ 9.) Notwithstanding these efforts, he was unable to complete the registration process for all of the firearms. The one successful registration he made came only after 14 attempts. The other two never went through, due to the system "time outs." (*Id.*, ¶ 10.) When he attempted to call the DOJ for help, there was no response. (See Gilardy Decl., ¶ 12 and video at http://bit.ly/Gilardy_Video_002.)

Likewise, plaintiff Todd Feltman followed the DOJ "troubleshooting tips," using different browsers, devices, and Internet connections, and clearing out web caches and cookies, after he experienced timeouts blocking his attempted registrations. (Feltman Decl., ¶ 7.) And he attempted to contact the DOJ for assistance, but no one ever responded to his inquiry. (*Ibid.*)

---

[2] This same advisory also provided "Troubleshooting Tips", including an advisory to "clear your browser history. [...] Be sure to clear your Cache, Cookies and Form & Search History[,]" and to try using different web browsers or computers networks. (*Ibid.*) However, given that these errors were server-side errors, following these tips was futile. (Miyabara-McCaskey Decl., ¶ 17.)

In fact, almost all the plaintiffs attempted to contact the DOJ for assistance before the Deadline, but the DOJ never responded to them, at all. (Sharp Decl., ¶ 8; Ajirogi Decl., ¶ 7; Gilardy Decl., ¶ 12; Prince Decl., ¶ 6 and Exhibit A; Feltman Decl., ¶ 7.) Some were able to get through the following Monday, July 2. However, the DOJ officials they reached by phone uniformly told plaintiffs (and undoubtedly many others) that it was their own fault for having failed to attempt registration earlier. (See, Sharp Decl., ¶ 10; Jahraus Decl., ¶ 8.) In fact, the DOJ official speaking with plaintiff Jahraus blamed him, saying it had been his responsibility to comply with the law and he "had all year to do so." (Jahraus Decl., ¶ 8.)

## III. ARGUMENT

### A. RELIEF REQUESTED

Ultimately, plaintiffs seek mandamus, declaratory and injunctive relief as necessary, proper and the only remedies to permit them a reasonable opportunity to register their firearms through a functioning registration system. Today, plaintiffs are seeking injunctive relief to protect them against the severe penalties and the loss of substantial liberty and property rights to which they are now subject pending the outcome of this action, for merely continuing possession of the "assault weapons" they attempted to register but could not. The specific statutes plaintiffs seek to enjoin, as applied to them, and the class they represent, are Penal Code §§ 30600 (as it pertains to lawful transportation) and 30605 (prohibiting possession of assault weapons).

### B. PRELIMINARY INJUNCTION STANDARDS

"The general purpose of a preliminary injunction is to preserve the status quo pending a determination on the merits of the action." *SB Liberty, LLC v. Isla Verde Assn., Inc.* (2013) 217 Cal.App.4th 272, 280. "'The granting or denial of a preliminary injunction does not amount to an adjudication of the ultimate rights in controversy. It merely determines that the court, balancing the respective equities of the parties, concludes that, pending a trial on the merits, the defendant should or … should not be restrained from exercising the right claimed by him.'" *Ibid.* A trial court must weigh two interrelated factors here: "(1) the likelihood that the plaintiff will prevail on the merits at trial, and (2) the relative interim harm to the parties from the issuance or

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

nonissuance of the injunction, that is, the interim harm the plaintiff is likely to sustain if the injunction is denied as compared to the harm the defendant is likely to suffer if the preliminary injunction is issued." *Ibid.*; *People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1109. Regarding the first factor, the plaintiff must show "a reasonable probability it will prevail on the merits." *Prigmore v. City of Redding* (2012) 211 Cal.App.4th 1322, 1333. "The latter factor involves consideration of such things as the inadequacy of other remedies, the degree of irreparable harm, and the necessity of preserving the status quo." *Take Me Home Rescue v. Luri* (2012) 208 Cal.App.4th 1342, 1350. Moreover, '"the greater the plaintiff's showing on one, the less must be shown on the other to support an injunction."' *SB Liberty, LLC*, at 280 (quoting *Butt v. State of California* (1972) 4 Cal.4th 668, 678); *Luri*, 208 Cal.App.4th at 1350. "Further, if the party seeking the injunction can make a sufficiently strong showing of likelihood of success on the merits, the trial court has discretion to issue the injunction notwithstanding that party's inability to show that the balance of harms tips in his [or her] favor." *Luri*, at 1350-1351.

While it is generally true that "[a]n injunction cannot be granted . . . [t]o prevent the execution of a public statute by officers of the law for the public benefit[,]" CCP § 526(b)(4), "[t]he rule against enjoining the execution of a public statute is subject to four judicially recognized exceptions: (1) where the statute is unconstitutional and there is a showing of irreparable injury; (2) where the statute is valid but is enforced in an unconstitutional manner; (3) where the statute is valid but, as construed, does not apply to the plaintiff; and (4) where the public official's action exceeds his or her authority." *Alfaro v. Terhune* (2002) 98 Cal.App.4th 492, 501. Therefore, injunctive relief may be granted against illegal enforcement of an otherwise valid statute , as "[i]t is well settled that where the enforcement of a statute may cause irreparable injury, the injured party may seek to enjoin its enforcement." *Novar Corp. v. Bureau of Collection & Investigative Servs.* (1984) 160 Cal.App.3d 1, 6 (citing *McKay Jewelers, Inc. v. Bowron* (1942) 19 Cal.2d 595, 599); *see also*, *Startrack, Inc. v. County of Los Angeles* (1976) 65 Cal.App.3d 451, 457 (upholding injunction where sheriff's threatened enforcement of underlying ordinances was "both mistaken and illegal.")

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

C. PLAINTIFFS HAVE SHOWN A LIKELIHOOD OF PREVAILING ON THE MERITS.

**1. Plaintiffs Have Shown Entitlement to Mandamus Relief.**

A petition for a writ of mandate under CCP § 1085 is the proper vehicle to address an individual's claim of the loss of due process, and to compel a state agency to provide the same. *Katzberg v. Regents of Univ. of California* (2002) 29 Cal.4th 300, 326 (citing *Carlsbad Aquafarm, Inc. v. State Dept. of Health Services* (2000) 83 Cal.App.4th 809, 821). A court may issue a writ of mandate to compel a public agency or officer to perform a mandatory duty. *Ellena v. Department of Ins.* (2014) 230 Cal.App.4th 198, 205 (citing CCP § 1085; *City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 868). "Two basic requirements are essential to the issuance of the writ: (1) A clear, present and usually ministerial duty upon the part of the respondent [citations]; and (2) a clear, present and beneficial right in the petitioner to the performance of that duty [citation]. [Citation.]" *Ellena*, at p. 205 (citing *People ex rel. Younger v. County of El Dorado* (1971) 5 Cal.3d 480, 491).

In the present case, defendants unquestionably had a statutorily-imposed duty to establish and maintain a stable and reliable electronic registration system throughout the entire registration period. Pen. Code § 30900(b)(2) ("Registrations shall be submitted electronically via the Internet utilizing a public-facing application made available by the department") and (b)(5) ("The department shall adopt regulations for the purpose of implementing this subdivision.") It is also obvious that plaintiffs, and many others similarly situated, had a beneficial interest in complying with the law. *See*, Pen. Code § 30680(c) (providing an exception to the assault weapon possession statute for those who timely register in accordance with section 30900(b)(1)).

As shown through the supporting declarations and summarized facts above, defendants have failed and refused to carry out this duty by establishing and maintaining a defective registration system incapable of properly and timely processing the registration applications, by failing or refusing to rectify the technical problems for which it was responsible, and by then failing or refusing to make any exception or accommodation for any of the individuals whose registrations were not timely processed solely due to the system's defects.

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

The right and ability of plaintiffs and all those similarly situated, stemming from their reasonable expectations that they could maintain lawful possession of their firearms by registering them with the DOJ's system at any time before the Deadline, implicates their fundamental constitutional interests because the federal and state constitutions protect them against the deprivation of life, liberty, or property without due process of law. U.S. Const., 14th Amend.; Cal. Const., art. I, § 7. Their inability to register their firearms in accordance with the law, through no fault of their own, and the resulting exposure to criminal sanctions and loss of property interests, jeopardizes these fundamental rights, unless and until this Court intervenes.

Thus, the only viable remedy to protect these citizens against an unjust deprivation of rights is an injunction prohibiting enforcement against them of the laws that would otherwise penalize possession and transportation of registerable firearms (Pen. Code §§ 30600, 30605), until such time as they have been afforded a fair and reasonable opportunity to register the firearms through a functional registration system. As such, plaintiffs have demonstrated a likelihood of success on the merits of their mandamus claims so as to warrant the issuance of the temporary injunction essential to providing immediate relief and preserving the status quo.

**2. Defendants Closed the Registration Period Prematurely – Gov. Code § 6707.**

Furthermore, plaintiffs have shown that they will prevail at trial on the merits of their claims for the simple, yet crucial reason that the DOJ closed the registration period early. Government Code § 6707 provides: "When the last day for filing any instrument or document with a state agency falls upon a Saturday or holiday, such act may be performed upon the next business day with the same effect as if it had been performed on the day appointed." Additional provisions of law provide for such extensions when an act must be done *within* a specified period of time. *See, e.g.*, CCP § 12a, subd. (a) ("If the last day for the performance of any act provided or required by law to be performed within a specified period of time is a holiday, then that period is hereby extended to and including the next day that is not a holiday.") Here, by operation of statute, people having "bullet button assault weapons" were required to register said firearms "*before July 1, 2018 ....*" (Pen. Code § 30900(b)(1) (emphasis added). Accordingly, the statute set forth a defined time within which citizens were required to submit registration information to

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

a state agency, and the last day to submit the registration form electronically was June 30, 2018, which the Court is requested to take judicial notice, fell on a Saturday. (Lee Decl., ¶ 8.)

However, is indisputable that the DOJ shut down its CFARS assault weapons registration page at or about midnight on July 1, 2018. (Lee Decl., ¶ 8, Exhibit E ("REMINDER: ASSAULT WEAPON REGISTRATION ENDS AT 11:59:59 P.M. ON JUNE 30, 2018. [¶] All applications for assault weapon registration must be submitted by this deadline."). Thus, the DOJ effectively closed the registration window early – by two days – because it should have remained open through Monday, July 2. By itself, the DOJ's failure or refusal to keep the registration period open through July 2nd entitles plaintiffs, and everyone else statewide who was deprived of the opportunity to register because of this premature registration closure, to a reopening of the registration window for at least the same amount it was unduly cut short – i.e., two days.[3] Plaintiffs are surely entitled to preliminary injunctive relief preventing enforcement of the assault weapons possession laws when the State failed to keep the registration window open for the period it was legally required to provide.

### D. PRELIMINARY INJUNCTIVE RELIEF IS NECESSARY TO PREVENT IRREPARABLE HARM TO INDIVIDUAL PLAINTIFFS AND ALL SIMILARLY SITUATED INDIVIDUALS.

The irreparable harm in the absence of the requested temporary injunction is palpable given the real risk of irreversible injury to or complete loss of the fundamental rights at stake. "[B]y definition, an injunction properly issues in any case where 'it would be extremely difficult to ascertain the amount of compensation which would afford adequate relief'" or "[w]here pecuniary compensation would not afford adequate relief." *Wind v. Herbert* (1960) 186 Cal.App.2d 276, 285, quoting Civ. Code § 3422. ""The term 'irreparable injury' . . . means that species of damages, whether great or small, that ought not to be submitted to on the one hand or inflicted on the other.'" *Ibid.* (quoting *Anderson v. Souza* (1952) 38 Cal.2d 825, 834). ""The

---

[3]Additionally, or alternatively, as plaintiffs have contended in seeking a narrower form of relief, this Court could grant such relief to the narrower class of individuals who were precluded from registering specifically because of the defects in the registration system, by enjoining operation of these laws as to plaintiffs and all those similarly-situated for so long as necessary to permit a reasonable opportunity for them to register through a functional registration system.

ultimate goal of any test to be used in deciding whether a preliminary injunction should issue is to minimize the harm which an erroneous interim decision may cause.'" *O'Connell v. Superior Court* (2006) 141 Cal.App.4th 1452, 1458 (quoting *White v. Davis* (2003) 30 Cal.4th 528, 554). In this context, a deprivation of fundamental rights for even minimal periods of time constitutes such an irreparable injury. *See, Smith v. Novato Unified School Dist.* (2007) 150 Cal.App.4th. 1439, 1465 (quoting *Elrod v. Burns* (1976) 427 U.S. 347, 373 ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.")). From the risk of seizure and destruction of their otherwise lawfully possessed firearms to the risk of stigma as criminals and incarceration for possessing unregistered firearms, plaintiffs and all those similarly situated have suffered and will continue to suffer harm beyond compensable measure and which can only be meaningfully remediated by immediate injunctive relief. Therefore, each of the plaintiffs has established that he would face potentially grave and irreparable injury resulting in unjust deprivation of liberty and property, and potentially severe criminal liabilities, due to no fault of their own, but solely due to the failure of the DOJ to allow them a reasonable opportunity to comply with the law.

In balancing the harm that the plaintiffs will suffer should the temporary injunction be denied against whatever inconvenience defendants may be required to tolerate should the injunction be granted, the relative equities weigh heavily in favor of granting it. Indeed, there could be no legitimate interest in enforcing the criminal statutes at issue against innocent law-abiding citizens like plaintiffs who made earnest efforts to comply with the law by properly and timely registering their firearms only to be shut out solely because of technical problems with a registration system totally beyond their control. Plaintiffs seek only to prohibit application of these laws in this specific context, where the application would be unconstitutional, and the State could have no legitimate interest in pursuing any such enforcement actions. *Ayotte v. Planned Parenthood* (2005) 546 U.S. 320, 331 ("So long as they are faithful to legislative intent, then … the lower courts can issue a declaratory judgment and an injunction prohibiting the statute's unconstitutional application"); *Alfaro v. Terhune, supra,* 98 Cal.App.4th at 501 (an injunction is appropriate to prevent the execution of a public statute by public officers, even if the statute is

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

otherwise valid, where the statute would be "enforced in an unconstitutional manner"). And while the injunctive relief plaintiffs require is immediate, they seek such relief for only so long as this Court determines as necessary to permit them a reasonable opportunity to register their firearms through a functional registration in accordance with the mandates of the law.

**E. REPRESENTATIVE RELIEF IS REQUESTED.**

As alleged in the operative complaint, injunctive relief is sought to prevent enforcement of the assault weapons possession statutes, not just as to plaintiffs themselves, or as to the institutional members, but also as to the class of similarly-situated individuals they represent. (FAC, ¶¶ 22-24.) Specifically, such a class would consist of: all California citizens who are not otherwise prohibited or exempt under the assault weapon registration laws, who lawfully and legally possessed firearms that the State of California classified as "assault weapons" under Penal Code § 30515(a) and must be registered as such pursuant to Penal Code sections 30680 and 30900(b), but who were precluded from doing so due to the Defendants' actions and failures, including but not limited to the inaccessibility, defects, and/or non-functionality of the DOJ's CFARS-based registration system during the registration period ending at midnight on June 30, 2018. (FAC, ¶¶ 22-23; Lee Decl., ¶ 9.)

Generally, the law permits plaintiffs to bring actions in a representative capacity, "based upon the equitable doctrine of virtual representation which 'rests upon considerations of necessity and paramount convenience, and [...] to prevent a failure of justice.'" *Residents of Beverly Glen, Inc. v. City of Los Angeles* (1973) 34 Cal.App.3d 117, 124 (plaintiffs had standing to bring representative claim to challenge constitutionality of an ordinance). A primary consideration in such cases is "the public nature of the question involved." *Id.* at 127. This is particularly true in mandamus actions, like the present case, "[w]here the question is one of public right and the object of the mandamus is to procure the enforcement of a public duty ..." *Ibid.* In such cases, it is sufficient that [the aggrieved party] is interested as a citizen in having the laws executed and the duty in question enforced ...'" *Ibid.* (citing *Board of Social Welfare v. County of Los Angeles* (1945) 27 Cal.2d 98, 100-101). Generally, considerations of necessity, convenience and justice justify the use of the representative procedural device. *Tenants Assn. of*

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

*Park Santa Anita v. Southers* (1990) 222 Cal.App.3d 1293, 1304. The two basic requirements that must be satisfied for a representative action are an ascertainable class and a well-defined community of interest in the questions of law and fact involved affecting the parties. *Market Lofts Community Assn. v. 9th Street Market Lofts, LLC* (2014) 222 Cal.App.4th 924, 933.

Here, common questions of fact affect the rights, duties and liabilities of plaintiffs and the many similarly-situated people unable to comply with the registration requirement due to technical issues with the system and/or simply because the DOJ shut down the registration system early. Moreover, a well-defined and common community of interest exists among the plaintiffs and the represented class concerning the questions of law and fact affecting their interests, given that the effect of their inability to register through no fault of their own has left them all exposed to severe criminal sanctions, loss of liberty interests, and deprivation of substantial property rights. And this case surely presents a matter of substantial public importance, as to whether innocent, law-abiding citizens should face such unduly prejudicial ramifications when they attempted to but were deprived of their ability to comply with the law.

## IV. CONCLUSION

Plaintiffs respectfully request preliminary injunctive relief enjoining defendants from enforcing as to plaintiffs, and the class of individuals they represent, the prohibitions against possession and transportation in Penal Code §§ 30600 and 30605, throughout the pendency of this case, or until they have had a reasonable opportunity, as determined by the Court, to register the qualifying firearms through a functional registration system.

Dated: August 13, 2018

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP

George M. Lee

THE DIGUISEPPE LAW FIRM, P.C.

/s/ Raymond M. DiGuiseppe
Raymond M. DiGuiseppe
Attorneys for Plaintiffs/Petitioners

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

– 15 –
MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION -- CASE NO. 190350

George M. Lee (SBN 172982)
Douglas A. Applegate (SBN 142000)
**SEILER EPSTEIN ZIEGLER & APPLEGATE LLP**
601 Montgomery Street, Suite 2000
San Francisco, CA 94111
Phone: (415) 979-0500
Fax: (415) 979-0511

Raymond M. DiGuiseppe (SBN 228457)
**THE DIGUISEPPE LAW FIRM, P.C.**
2 North Front Street, Fifth Floor
Wilmington, NC 28401
Phone: (910) 713-8804
Fax: (910) 672-7705

Attorneys for Plaintiffs and Petitioners

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF SHASTA**

HARRY SHARP, et al.,

Petitioners,

vs.

XAVIER BECERRA, et al.,

Respondents.

Case No. 190350

**DECLARATION OF PLAINTIFF/PETITIONER HARRY SHARP IN SUPPORT OF PLAINTIFFS' MOTION FOR ISSUANCE OF PRELIMINARY INJUNCTION**

**[CCP § 527]**

Date: Sept. 10, 2018
Time: 8:30 a.m.
Dept. 08
Judge: Hon. Tamara L. Wood

**DECLARATION OF HARRY SHARP**

I, Harry Sharp, declare as follows:

1. I am an adult resident of the Redding, California, and I am a named plaintiff/petitioner in this matter. I have personal knowledge of the facts stated in this declaration, and if called as a witness, could competently testify thereto.

2. This declaration is executed in support of plaintiffs' motion for the issuance of a preliminary injunction, made pursuant to Code of Civ. Pro. § 527, whereby we are seeking an

injunction prohibiting the temporary and preliminary enforcement of the assault weapon possession statute, Pen. Code § 30605, as well as the "transportation" provision of the assault weapon transportation statute found in Pen. Code § 30605, pending the outcome of this litigation. The relief I and my fellow plaintiffs/petitioners are seeking would be as applied to myself and my fellow plaintiffs/petitioners, as well as an identifiable class of persons who attempted to register "bullet button assault weapons" unsuccessfully due to the failure of the California Department of Justice's registration system.

3. I was born and raised in California, and I have been a lifelong resident of this state. I am a law-abiding individual, and I am not prohibited from owning firearms.

4. I am currently retired from my prior employment as an emergency medical technician (EMT) in Solano County, due to a work-related injury, since 1994. I received my training at a California Firefighter Academy. I have been a resident of Redding, California since 1996. I am also a lifelong shooter, hunter and conservationist. I was the local (Redding) chapter president of Safari Club International, a national conservationist/hunters' organization. I have held a license to carry a concealed weapon (CCW), issued by my local sheriff, for approx. 30 years.

5. Prior to January 1, 2017, I lawfully acquired and possessed four firearms, equipped with bullet-button devices, which the Legislature in 2016 defined as "assault weapons" in that they do not have "fixed magazines" as that term was revised in Pen. Code § 30515. (See First Amended Complaint ("FAC") ¶¶ 33-34.) It was and remains my intention to register these firearms in accordance with Pen. Code § 30900(b)(1). I acquired these firearms primarily because these were collectors' items.

6. With the assistance of a friend, approximately two weeks before the statutory registration deadline of July 1, 2018 ("Deadline"), created a user account with the California Department of Justice's CFARS system, with the intention of attempting to register all four bullet-button firearms. On Friday, June 29, 2018, I was able to log onto my CFARS account, and with some repeated efforts, I was able to submit a registration form (and all required

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

information and photographs) for one of the four firearms I intended to register that day. Immediately after submitting the registration form for this first firearm, however, I began to experience problems with the remaining three submissions. Specifically, after I attached the required photographs for the other three firearms, and attempted to submit them, the DOJ's system "froze up," and failed. Due to this issue, I was unable to complete these three applications on that day.

7. I tried again the following day, on June 30, 2018. On that day, I made repeated, multiple attempts (at least 50) to use the DOJ's system, to no avail. Each time I attempted to get on, the system, it would "freeze up" and it would not be accessible at all.

8. I made at least four attempts to obtain help or technical support from the DOJ by sending an email request by clicking the "help" button (or something similar) on the CFARS website on that day. Each message was met with an automated, "canned" auto-responder message stating that I should resubmit the forms after clearing out my web browsers and deleting "cookies." However, I could not reach a live person at the time. I nevertheless followed these automated instructions, and continued attempting to register the remaining firearms, even into the next day, July 1, 2018, but all to no avail.

9. Notwithstanding these repeated and extensive efforts to complete the registration process, I was only able to submit one of the four registrations I had prepared, on June 29. As a result of the DOJ system's failure to upload/accept my submissions, I was unable to register three of the four firearms that I intended to register prior to the Deadline.

10. I was finally able to reach someone at the DOJ by phone on Monday, July 2, 2018. I told her about the problems I had attempting to register, and I requested an extension of the deadline (to that day, even). She refused, telling me in essence that it was my responsibility to have complied with the registration requirement by the Deadline, and that they would not be providing any extensions.

11. A true and correct video I took, documenting my attempts to register after spending many hours doing so on June 30, 2018, with the CFARS "timeout" preventing me from even accessing the web page, may be found at: http://bit.ly/Sharp_Video_001 .

12. In light of these circumstances, I am requesting today that this court prohibit the defendants, the DOJ, and all of their respective officers, agents, servants, employees, attorneys, and persons acting in concert or participation with them, from enforcing Penal Code §§ 30600 (specifically, the prohibition against transportation), and 30605, pending trial and the adjudication of the merits of this action, or until plaintiffs, and a well-defined class of similarly-situated individuals, are permitted a reasonable amount of time to register their firearms through a properly-functioning public-facing Internet-based registration system, as required by Pen. Code § 30900(b)(2).

13. The circumstances described above, and as described by my fellow plaintiffs' declarations in support of this motion, demonstrate that we will likely prevail in proving that the inability of plaintiffs and many other people, similarly situated, to register such bullet-button firearms according to the statute was not a technical or failure on our part, but was a systemic failure on the part of the DOJ. Declaratory relief is requested to determine that I and the other plaintiffs have been unreasonably deprived of the ability to comply with the registration requirements of the law.

14. In the absence of such temporary or preliminary injunctive relief, we would face potentially grave and irreparable injury associated with the substantially unjust deprivation of liberty and property, and potentially severe criminal liabilities, due to no fault of our own, but solely due to the failure of the DOJ to allow us a reasonable opportunity to comply with the law.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 8-7-2018

HARRY SHARP

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

George M. Lee (SBN 172982)
Douglas A. Applegate (SBN 142000)
SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
601 Montgomery Street, Suite 2000
San Francisco, CA 94111
Phone: (415) 979-0500
Fax: (415) 979-0511

Raymond M. DiGuiseppe (SBN 228457)
THE DIGUISEPPE LAW FIRM, P.C.
2 North Front Street, Fifth Floor
Wilmington, NC 28401
Phone: (910) 713-8804
Fax: (910) 672-7705

Attorneys for Plaintiffs and Petitioners

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF SHASTA**

HARRY SHARP, et al.,

Petitioners,

vs.

XAVIER BECERRA, et al.,

Respondents.

Case No. 190350

**DECLARATION OF PLAINTIFF/PETITIONER DAVID AJIROGI IN SUPPORT OF PLAINTIFFS' MOTION FOR ISSUANCE OF PRELIMINARY INJUNCTION**

**[CCP § 527]**

Date: Sept. 10, 2018
Time: 8:30 a.m.
Dept. 08
Judge: Hon. Tamara L. Wood

**DECLARATION OF DAVID AJIROGI**

I, David Ajirogi, declare as follows:

1. I am an adult resident of the County of Sacramento, California, and I am a named plaintiff/petitioner in this matter. I have personal knowledge of the facts stated in this declaration, and if called as a witness, could competently testify thereto.

2. This declaration is executed in support of plaintiffs' motion for the issuance of a preliminary injunction, made pursuant to Code of Civ. Pro. § 527, whereby we are seeking an

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

injunction prohibiting the temporary and preliminary enforcement of the assault weapon possession statute, Pen. Code § 30605, as well as the "transportation" provision of the assault weapon transportation statute found in Pen. Code § 30605, pending the outcome of this litigation. The relief I and my fellow plaintiffs/petitioners are seeking would be as applied to myself and my fellow plaintiffs/petitioners, as well as an identifiable class of persons who attempted to register "bullet button assault weapons" unsuccessfully due to the failure of the California Department of Justice's registration system.

3. I was born and raised in Hawaii, and I have been a resident of this state for over 30 years. I am a law-abiding individual, and I am not prohibited from owning firearms.

4. I am currently employed as an auditor with the EDD, and have been employed by the State of California for over 20 years. I am also actively involved as a Scoutmaster, Golden Empire Council, with whom I have been involved for 28 years. I have been a camp director and have been an NRA range master for a scout camp.

5. Prior to January 1, 2017, I lawfully acquired and possessed three firearms, equipped with bullet-button devices, which the Legislature in 2016 defined as "assault weapons" in that they do not have "fixed magazines" as that term was revised in Pen. Code § 30515. (See First Amended Complaint ("FAC") ¶¶ 33-34.) It was and remains my intention to register these firearms in accordance with Pen. Code § 30900(b)(1).

6. I first began the attempts to register these firearms through the DOJ's CFARS website on Thursday, June 28, 2018. I created a CFARS account with the intention of registering the firearms at that time, where I was able to input basic personal information. However, when I attempted to click onto the "Assault Weapon Registration Form (Assembly Bill 1135/Senate Bill 880)" link, the system froze ("timed out"), became unresponsive, and I was unable to proceed any further. I spent approximately 20-30 minutes accessing the form that day, to no avail.

7. I next tried again on June 29, 2018, from my home in Sacramento, using a different computer. However, I experienced the same problems as before, i.e., the CFARS

system would "time out" and not allow me to access the registration form. I contacted the DOJ for assistance via email that day, but the DOJ never responded to my inquiry.

8. As a result of the DOJ system's failure to upload/accept my submissions, I was unable to register the three firearms that I intended to register prior to the Deadline.

9. In light of these circumstances, I am requesting today that this court prohibit the defendants, the DOJ, and all of their respective officers, agents, servants, employees, attorneys, and persons acting in concert or participation with them, from enforcing Penal Code §§ 30600 (specifically, the prohibition against transportation), and 30605, pending trial and the adjudication of the merits of this action, or until plaintiffs, and a well-defined class of similarly-situated individuals, are permitted a reasonable amount of time to register their firearms through a properly-functioning public-facing Internet-based registration system, as required by Pen. Code § 30900(b)(2).

10. The circumstances described above, and as described by my fellow plaintiffs' declarations in support of this motion, demonstrate that we will likely prevail in proving that the inability of plaintiffs and many other people, similarly situated, to register such bullet-button firearms according to the statute was not a technical or failure on our part, but was a systemic failure on the part of the DOJ. Declaratory relief is requested to determine that I and the other plaintiffs have been unreasonably deprived of the ability to comply with the registration requirements of the law.

11. In the absence of such temporary or preliminary injunctive relief, we would face potentially grave and irreparable injury associated with the substantially unjust deprivation of liberty and property, and potentially severe criminal liabilities, due to no fault of our own, but solely due to the failure of the DOJ to allow us a reasonable opportunity to comply with the law.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Aug 7, 2018

David Ajirogi (Aug 7, 2018)

DAVID AJIROGI

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

George M. Lee (SBN 172982)
Douglas A. Applegate (SBN 142000)
SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
601 Montgomery Street, Suite 2000
San Francisco, CA 94111
Phone: (415) 979-0500
Fax: (415) 979-0511

Raymond M. DiGuiseppe (SBN 228457)
THE DIGUISEPPE LAW FIRM, P.C.
2 North Front Street, Fifth Floor
Wilmington, NC 28401
Phone: (910) 713-8804
Fax: (910) 672-7705

Attorneys for Plaintiffs and Petitioners

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF SHASTA**

HARRY SHARP, et al.,

Petitioners,

vs.

XAVIER BECERRA, et al.,

Respondents.

Case No. 190350

**DECLARATION OF PLAINTIFF/PETITIONER RYAN GILARDY IN SUPPORT OF PLAINTIFFS' MOTION FOR ISSUANCE OF PRELIMINARY INJUNCTION**

[CCP § 527]

Date: Sept. 10, 2018
Time: 8:30 a.m.
Dept. 08
Judge: Hon. Tamara L. Wood

**DECLARATION OF RYAN GILARDY**

I, Ryan Gilardy, declare as follows:

1. I am an adult resident of the County of Contra Costa, California, and I am a named plaintiff/petitioner in this matter. I have personal knowledge of the facts stated in this declaration, and if called as a witness, could competently testify thereto.

2. This declaration is executed in support of plaintiffs' motion for the issuance of a preliminary injunction, made pursuant to Code of Civ. Pro. § 527, whereby we are seeking an

injunction prohibiting the temporary and preliminary enforcement of the assault weapon possession statute, Pen. Code § 30605, as well as the "transportation" provision of the assault weapon transportation statute found in Pen. Code § 30605, pending the outcome of this litigation. The relief I and my fellow plaintiffs/petitioners are seeking would be as applied to myself and my fellow plaintiffs/petitioners, as well as an identifiable class of persons who attempted to register "bullet button assault weapons" unsuccessfully due to the failure of the California Department of Justice's registration system.

3. I was born and raised in California, and I have been a lifelong resident of this state. I am a law-abiding individual, and I am not prohibited from owning firearms.

4. I am currently working on my bachelor's degree in neurobiology. I am currently employed as a contract researcher and lecturer for a local community college in a natural sciences field. I previously have been working under a grant from a national scientific foundation, which provides funds for education and research in the natural sciences and educational fields. Prior to my current work, I was also an information technology (IT) professional, having done consulting for individuals and small businesses, part time, mostly installing and maintaining computer network security systems, general infrastructure updates, and other IT services.

5. Prior to January 1, 2017, I lawfully acquired and possessed three firearms, equipped with bullet-button devices, which the Legislature in 2016 defined as "assault weapons" in that they do not have "fixed magazines" as that term was revised in Pen. Code § 30515. (See First Amended Complaint ("FAC") ¶¶ 33-34.) It was and remains my intention to register these firearms in accordance with Pen. Code § 30900(b)(1).

6. Approximately one month before the statutory registration deadline of July 1, 2018 ("Deadline"), I contacted the California Department of Justice ("DOJ") out of concern for the Department's CFARS system, and the registration process generally. I did so before establishing a CFARS account, with the intention of registering, prior to the Deadline, the three bullet button firearms, jointly with other family members. I contacted DOJ at that time because I

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

had heard that there may be issues regarding "timeouts" (i.e., computer freezes) when people were attempting to make the required payments. I also wanted to make sure that I better understood the registration process and the information required for submission. During this telephone conversation I had with a DOJ official, she told me that they expected that there would be "time outs" with the system, due to the high volume of people who would be attempting to register in the last month, and therefore advised me to take "extra time" to undergo the process. At that time, she specifically told me that I might experience "time outs" during the process, but to keep trying and I would get through eventually after several attempts. I was also advised to try to register during "non-peak" times.

7. After this conversation with the DOJ, and in anticipation of the process, during the month of June I began to gather all required information and documentation as to the three firearms in question, including "all identification marks, the date the firearm was acquired, the name and address of the individual from whom, or business from which, the firearm was acquired," as required by Pen. Code § 30900(b)(3). I also gathered additional documentation specifically required for joint registration, i.e., proof of residency for each joint registrant, and I took the four required digital photographs that the DOJ was requiring of each firearm. I did so approximately two weeks before the Deadline to avoid any delays and problems about which the DOJ was informing me.

8. Having gathered all of the required information, documentation and photographs, I began the registration process on-line on or about June 22, 2018, by accessing CFARS and attempting to fill out information required upon opening the system's "Assault Weapon Registration Form (Assembly Bill 1135/Senate Bill 880)." However, during this process, and upon attempting to submit the additional documentation required for joint registration (proof of residency), the system "timed out" and thereby prevented me from completing the registration process.

9. Thereafter, and throughout the week of June 25, 2018, I made many more attempts to complete the registration process, to no avail. The system continued to "time out" upon attempted submission of the documentation. As a former IT professional, I took care to

make sure that I was using up-to-date computer systems and fully-updated web browsers. I also attempted to use multiple computer devices (including a "smart phone" easily capable of processing pictures), and did so from multiple locations, including my home in Contra Costa County. I attempted using different devices, Internet browsers, Internet service providers, and networks, all to no avail. I verified my bandwith and latency were in a consistent range by performing Internet speed tests and made sure there were no issues on my side of the connection. Tests showed my connections were strong, stable and should have been more than adequate to perform the registration process, but the CFARS servers timed out repeatedly. I also attempted to reduce the photo size (as measured in megabits) for the four photographs that were being required, to make sure that the file size was not the issue.

10. Notwithstanding these repeated and extensive efforts to complete the registration process, I was only able to submit one of the three registrations I had prepared, and that was only after I had abandoned efforts to submit the joint registrations, which would have required the additional information/documents. That one successful submission came only after making at least 14 attempts to register that particular firearm. The submission for the other two semiautomatic firearms never went through, due to the system's defects and failures, including "time outs" which would not allow the information to be submitted.

11. I attempted to register multiple times the week before the Deadline, including approximately five (5) hours on June 30, 2018, to no avail. As a result of the DOJ system's failure to upload/accept my submissions, I was unable to register two of the firearms that I intended to register jointly with eligible family members prior to the Deadline.

12. A true and correct video I took, documenting and demonstrating my attempts to register on June 30, 2018, and in particular, showing the amount of time (over five minutes) the system was taking to upload one single photograph file of 2.0 MB in size, before ultimately timing out, may be found at: http://bit.ly/Gilardy_Video_001. Another video showing what happened when I attempted to call the DOJ for help on June 30, 2018 may be found at: http://bit.ly/Gilardy_Video_002

13. In light of these circumstances, I am requesting today that this court prohibit the

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

defendants, the DOJ, and all of their respective officers, agents, servants, employees, attorneys, and persons acting in concert or participation with them, from enforcing Penal Code §§ 30600 (specifically, the prohibition against transportation), and 30605, pending trial and the adjudication of the merits of this action, or until plaintiffs, and a well-defined class of similarly-situated individuals, are permitted a reasonable amount of time to register their firearms through a properly-functioning public-facing Internet-based registration system, as required by Pen. Code § 30900(b)(2).

14. The circumstances described above, and as described by my fellow plaintiffs' declarations in support of this motion, demonstrate that we will likely prevail in proving that the inability of plaintiffs and many other people, similarly situated, to register such bullet-button firearms according to the statute was not a technical or failure on our part, but was a systemic failure on the part of the DOJ. Declaratory relief is requested to determine that I and the other plaintiffs have been unreasonably deprived of the ability to comply with the registration requirements of the law.

15. In the absence of such temporary or preliminary injunctive relief, we would face potentially grave and irreparable injury associated with the substantially unjust deprivation of liberty and property, and potentially severe criminal liabilities, due to no fault of our own, but solely due to the failure of the DOJ to allow us a reasonable opportunity to comply with the law.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 8/6/2018

Ryan Gilardy
RYAN GILARDY

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

George M. Lee (SBN 172982)
Douglas A. Applegate (SBN 142000)
**SEILER EPSTEIN ZIEGLER & APPLEGATE LLP**
601 Montgomery Street, Suite 2000
San Francisco, CA 94111
Phone: (415) 979-0500
Fax: (415) 979-0511

Raymond M. DiGuiseppe (SBN 228457)
**THE DIGUISEPPE LAW FIRM, P.C.**
2 North Front Street, Fifth Floor
Wilmington, NC 28401
Phone: (910) 713-8804
Fax: (910) 672-7705

Attorneys for Plaintiffs and Petitioners

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF SHASTA**

HARRY SHARP, et al.,

Petitioners,

vs.

XAVIER BECERRA, et al.,

Respondents.

Case No. 190350

**DECLARATION OF PLAINTIFF/PETITIONER TERRY JAHRAUS IN SUPPORT OF PLAINTIFFS' MOTION FOR ISSUANCE OF PRELIMINARY INJUNCTION**

**[CCP § 527]**

Date: Sept. 10, 2018
Time: 8:30 a.m.
Dept. 08
Judge: Hon. Tamara L. Wood

## DECLARATION OF TERRY JAHRAUS

I, Terry Jahraus, declare as follows:

1. I am an adult resident of the County of Los Angeles, California, and I am a named plaintiff/petitioner in this matter. I have personal knowledge of the facts stated in this declaration, and if called as a witness, could competently testify thereto.

2. This declaration is executed in support of plaintiffs' motion for the issuance of a preliminary injunction, made pursuant to Code of Civ. Pro. § 527, whereby we are seeking an

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

injunction prohibiting the temporary and preliminary enforcement of the assault weapon possession statute, Pen. Code § 30605, as well as the "transportation" provision of the assault weapon transportation statute found in Pen. Code § 30605, pending the outcome of this litigation. The relief I and my fellow plaintiffs/petitioners are seeking would be as applied to myself and my fellow plaintiffs/petitioners, as well as an identifiable class of persons who attempted to register "bullet button assault weapons" unsuccessfully due to the failure of the California Department of Justice's registration system.

3. I lived in California since the age of five, and I have otherwise been a lifelong resident of this state. I am a law-abiding individual, and I am not prohibited from owning firearms.

4. I am currently retired from being in the real estate business for 40+ years, though I still manage properties and continue to maintain my real estate licenses with the California Bureau of Real Estate. I am also a Vietnam Veteran, having served in the U.S. Marine Corps in that theater from 1969-1971, and was honorably discharged in 1971. I went into the real estate business after returning from Vietnam.

5. Prior to January 1, 2017, I lawfully acquired and possessed a firearm, equipped with a bullet-button device, which the Legislature in 2016 defined as an "assault weapon" in that it does not have a "fixed magazine" as that term was revised in Pen. Code § 30515. (See First Amended Complaint ("FAC") ¶¶ 33-34.) It was and remains my intention to register this firearm in accordance with Pen. Code § 30900(b)(1).

6. On June 30, 2018, I learned for the first time, by watching the news on television, that I was being required to register my "bullet button assault weapon" as such with the California DOJ. This was the first I ever heard about this requirement, having received no formal notice from the DOJ or any other source. In order to comply with the law, prior to the deadline of July 1, 2018 at midnight ("Deadline"), I attempted to access and submit a registration form with the DOJ's system, after establishing a CFARS account for this purpose. However, upon uploading the four required photographs to the site, I received an error message that my

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

submission had "invalid characters" in the address field. I tried all variations of my address that I could think of, but the system would not accept it. I then logged out and back in, and restarted the process, but each time I received the "invalid characters" error message, and I was unable to proceed further. I spent a total of three (3) hours that evening, prior to the Deadline, attempting to submit the registration form, to no avail. Per the recommendation on the DOJ's website, I tried using different web browsers to access and submit, but this didn't work.

7. As a result of the DOJ system's inaccessibility, I was unable to register the firearm that I intended to register prior to the Deadline.

8. The following Monday, July 2, 2018, I contacted the DOJ for assistance, but the DOJ official told me, in essence, that it was my responsibility to comply with the law and that I had all year to do so. In other words, the DOJ representative was blaming me for failing to register, even though its system was inaccessible and defective in failing to allow me to submit the form before the Deadline.

9. A true and correct picture I took of the "invalid character" error that I was repeatedly receiving on June 30, 2018, preventing me from submitting the registration form, is attached hereto as **Exhibit A.**

10. In light of these circumstances, I am requesting today that this court prohibit the defendants, the DOJ, and all of their respective officers, agents, servants, employees, attorneys, and persons acting in concert or participation with them, from enforcing Penal Code §§ 30600 (specifically, the prohibition against transportation), and 30605, pending trial and the adjudication of the merits of this action, or until plaintiffs, and a well-defined class of similarly-situated individuals, are permitted a reasonable amount of time to register their firearms through a properly-functioning public-facing Internet-based registration system, as required by Pen. Code § 30900(b)(2).

11. The circumstances described above, and as described by my fellow plaintiffs' declarations in support of this motion, demonstrate that we will likely prevail in proving that the inability of plaintiffs and many other people, similarly situated, to register such bullet-button firearms according to the statute was not a technical or failure on our part, but was a systemic

failure on the part of the DOJ. Declaratory relief is requested to determine that I and the other plaintiffs have been unreasonably deprived of the ability to comply with the registration requirements of the law.

12. In the absence of such temporary or preliminary injunctive relief, we would face potentially grave and irreparable injury associated with the substantially unjust deprivation of liberty and property, and potentially severe criminal liabilities, due to no fault of our own, but solely due to the failure of the DOJ to allow us a reasonable opportunity to comply with the law.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 8/7/2018

TERRY JAHRAUS

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

EXHIBIT A

CFARS Home > CRIS Home

Logged in user: Terry Jahraus 06/30/2018

# Assault Weapon Registration Form (Assembly Bill 1135/Senate Bill 880)

**FORM INSTRUCTIONS AND FEE INFORMATION - REVIEW BEFORE CONTINUING (touch or click this banner to view)**

* Indicates Required Field

**Form submission failed due to issues requiring correction:**

'Residence Street Address' is required

When undefined is entered 'Residence Street Address' is required

'Street Address' contains one or more invalid characters

Need help? Refer to the Assault Weapon Registration user guide to complete the form.

George M. Lee (SBN 172982)
Douglas A. Applegate (SBN 142000)
SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
601 Montgomery Street, Suite 2000
San Francisco, CA 94111
Phone: (415) 979-0500
Fax: (415) 979-0511

Raymond M. DiGuiseppe (SBN 228457)
THE DIGUISEPPE LAW FIRM, P.C.
2 North Front Street, Fifth Floor
Wilmington, NC 28401
Phone: (910) 713-8804
Fax: (910) 672-7705

Attorneys for Plaintiffs and Petitioners

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF SHASTA**

HARRY SHARP, et al.,

Petitioners,

vs.

XAVIER BECERRA, et al.,

Respondents.

Case No. 190350

**DECLARATION OF PLAINTIFF/PETITIONER DARIN PRINCE IN SUPPORT OF PLAINTIFFS' MOTION FOR ISSUANCE OF PRELIMINARY INJUNCTION**

**[CCP § 527]**

Date: Sept. 10, 2018
Time: 8:30 a.m.
Dept. 08
Judge: Hon. Tamara L. Wood

**DECLARATION OF DARIN PRINCE**

I, Darin Prince, declare as follows:

1. I am an adult resident of the County of San Diego, California, and I am a named plaintiff/petitioner in this matter. I have personal knowledge of the facts stated in this declaration, and if called as a witness, could competently testify thereto.

2. This declaration is executed in support of plaintiffs' motion for the issuance of a preliminary injunction, made pursuant to Code of Civ. Pro. § 527, whereby we are seeking an

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

injunction prohibiting the temporary and preliminary enforcement of the assault weapon possession statute, Pen. Code § 30605, as well as the "transportation" provision of the assault weapon transportation statute found in Pen. Code § 30605, pending the outcome of this litigation. The relief I and my fellow plaintiffs/petitioners are seeking would be as applied to myself and my fellow plaintiffs/petitioners, as well as an identifiable class of persons who attempted to register "bullet button assault weapons" unsuccessfully due to the failure of the California Department of Justice's registration system.

3. I was born and raised in California, and I have been a lifelong resident of this state. I am a law-abiding individual, and I am not prohibited from owning firearms. I have a Certificate of Eligibility (COE) issued to me by the California Department of Justice, and have a license to carry a concealed firearm (CCW) issued to me by my county sheriff.

4. I am the owner of North Coast Firearms, a federally-licensed firearms dealership (FFL) and range and training facility, in the County of San Diego, California.

5. Prior to January 1, 2017, I lawfully acquired and possessed many firearms, equipped with bullet-button devices, which the Legislature in 2016 defined as "assault weapons" in that they do not have "fixed magazines" as that term was revised in Pen. Code § 30515. (See First Amended Complaint ("FAC") ¶¶ 33-34.) It was and remains my intention to register all such firearms in accordance with Pen. Code § 30900(b)(1).

6. On June 30, 2018, I attempted to register my "bullet button assault weapons" from my home in San Diego County, California. At first, I was unable to access the DOJ's registration website (https://cfars.doj.ca.gov) at all, as the site was inaccessible, and would "time out" while attempting to access it. After about four (4) hours that evening, I was finally able to log in, and when I did finally start loading all of the firearm information into the system, it was approximately 10:50 p.m. I was able to upload information and photographs required for seven (7) firearms, but at approximately 11:15 p.m., the system kicked me out, deleting my submission and forcing me to log in and start all over again. Upon re-entering the CFARS system, and re-inputting the information, I was asked to enter my home address. I reentered everything exactly

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

as I had before, but this time, I received an error message that my attempted submission had "invalid characters" in the home address field. I then attempted every combination of letter and variations on my address that I could think of, but the system would continue to give me the error message and would not let me proceed. I contacted the DOJ via email for technical assistance regarding the error messages I was receiving, but the DOJ did not respond to my inquiry. I spent a total of approximately six (6) hours attempting to complete all of the registration forms, to no avail.

7. A true and correct copy of my email to the DOJ, sent on June 30, 2018 at 11:51 p.m., which also shows the specific error message I was receiving ("'Street Address' contains one or more invalid characters") and which was preventing my submissions, is attached hereto as **Exhibit A.**

8. At 11:58 p.m., even though I was able to complete uploading of information and photographs of several of the firearms, I was unable to enter information and upload photographs for all that I intended to register that evening. Given the impending midnight deadline, I finished, submitted and paid for registration seven of the firearms that were in my "cart" at the time. However, due to the DOJ website's repeated inaccessibility and errors, I was unable to register seven other firearms that I had intended to register prior to the Deadline.

9. In light of these circumstances, I am requesting today that this court prohibit the defendants, the DOJ, and all of their respective officers, agents, servants, employees, attorneys, and persons acting in concert or participation with them, from enforcing Penal Code §§ 30600 (specifically, the prohibition against transportation), and 30605, pending trial and the adjudication of the merits of this action, or until plaintiffs, and a well-defined class of similarly-situated individuals, are permitted a reasonable amount of time to register their firearms through a properly-functioning public-facing Internet-based registration system, as required by Pen. Code § 30900(b)(2).

10. The circumstances described above, and as described by my fellow plaintiffs' declarations in support of this motion, demonstrate that we will likely prevail in proving that the

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

inability of plaintiffs and many other people, similarly situated, to register such bullet-button firearms according to the statute was not a technical or failure on our part, but was a systemic failure on the part of the DOJ. Declaratory relief is requested to determine that I and the other plaintiffs have been unreasonably deprived of the ability to comply with the registration requirements of the law.

11. In the absence of such temporary or preliminary injunctive relief, we would face potentially grave and irreparable injury associated with the substantially unjust deprivation of liberty and property, and potentially severe criminal liabilities, due to no fault of our own, but solely due to the failure of the DOJ to allow us a reasonable opportunity to comply with the law.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 8/7/18

DARIN PRINCE

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

EXHIBIT A

-----Original Message-----
From: dlprince1 <dlprince1@aol.com>
To: firearms.bureau <firearms.bureau@doj.ca.gov>
Sent: Sat, Jun 30, 2018 11:51 pm
Subject: CFARS is locking me out without letting me finish registration

# FORM INSTRUCTIONS AND FEE INFORMATION - REVIEW BEFORE CONTINUING (touch or click this banner to view)

* Indicates Required Field

**Form submission failed due to issues requiring correction:**

'Street Address' contains one or more invalid characters

'Street Address' contains one or more invalid characters

George M. Lee (SBN 172982)
Douglas A. Applegate (SBN 142000)
**SEILER EPSTEIN ZIEGLER & APPLEGATE LLP**
601 Montgomery Street, Suite 2000
San Francisco, CA 94111
Phone: (415) 979-0500
Fax: (415) 979-0511

Raymond M. DiGuiseppe (SBN 228457)
**THE DIGUISEPPE LAW FIRM, P.C.**
2 North Front Street, Fifth Floor
Wilmington, NC 28401
Phone: (910) 713-8804
Fax: (910) 672-7705

Attorneys for Plaintiffs and Petitioners

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF SHASTA**

HARRY SHARP, et al.,

Petitioners,

vs.

XAVIER BECERRA, et al.,

Respondents.

Case No. 190350

**DECLARATION OF PLAINTIFF/PETITIONER TODD FELTMAN IN SUPPORT OF PLAINTIFFS' MOTION FOR ISSUANCE OF PRELIMINARY INJUNCTION**

**[CCP § 527]**

Date: Sept. 10, 2018
Time: 8:30 a.m.
Dept. 08
Judge: Hon. Tamara L. Wood

**DECLARATION OF TODD FELTMAN**

I, Todd Feltman, declare as follows:

1. I am an adult resident of the County of San Diego, California, and I am a named plaintiff/petitioner in this matter. I have personal knowledge of the facts stated in this declaration, and if called as a witness, could competently testify thereto.

2. This declaration is executed in support of plaintiffs' motion for the issuance of a preliminary injunction, made pursuant to Code of Civ. Pro. § 527, whereby we are seeking an

injunction prohibiting the temporary and preliminary enforcement of the assault weapon possession statute, Pen. Code § 30605, as well as the "transportation" provision of the assault weapon transportation statute found in Pen. Code § 30605, pending the outcome of this litigation. The relief I and my fellow plaintiffs/petitioners are seeking would be as applied to myself and my fellow plaintiffs/petitioners, as well as an identifiable class of persons who attempted to register "bullet button assault weapons" unsuccessfully due to the failure of the California Department of Justice's registration system.

3. I was born and raised in California, and I have been a lifelong resident of this state. I am a law-abiding individual, and I am not prohibited from owning firearms.

4. I am a Senior Project Manager with the United States General Services Administration (GSA), San Diego Construction Services Branch. Part of my work for this government agency includes basic use and familiarity with computers and computer networks.

5. Prior to January 1, 2017, I lawfully acquired and possessed several firearms, equipped with bullet-button devices, which the Legislature in 2016 defined as "assault weapons" in that they do not have "fixed magazines" as that term was revised in Pen. Code § 30515. (See First Amended Complaint ("FAC") ¶¶ 33-34.) It was and remains my intention to register these firearms in accordance with Pen. Code § 30900(b)(1).

6. On June 30, 2018, prior to the statutory deadline of midnight, July 1, 2018 ("Deadline"), I attempted to register these firearms utilizing the DOJ's CFARS system from my home in San Diego County. After creating a CFARS account, I began to enter into the system all information for the first of the firearms I was attempting to register. However, after entering all required information regarding the first firearm, and upon attempting to upload the required pictures, the system would "crash" when I attempted to hit the "Submit Final" icon, requiring me to start over with the form completely.

7. After the system timed out, I repeated the effort, making multiple attempts, using different web browsers and different Internet connections, all to no avail, as I encountered the same problems and system errors. I also looked and followed the DOJ's recommendations

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

regarding clearing of web caches and "cookies." I also used different devices (different computers) to attempt to remedy the issue, all to no avail. I attempted to contact the DOJ regarding these issues, prior to the Deadline, but the DOJ never responded to my inquiry.

8. A true and correct screenshot of my computer, showing that everything had been re-uploaded and prepared prior to the Deadline, that I had checked the "Agree" box, and was attempting to submit it on my third attempt before the system froze and timed out, is attached hereto as **Exhibit A.**

9. A true and correct video I took, documenting and demonstrating my attempts to register on June 30, 2018, with the CFARS "timeout" experienced upon hitting the "Submit Final" icon may be found at: http://bit.ly/Feltman_Video_001

10. As a result of the DOJ system's failure to upload/accept my submissions, I was unable to register the three firearms that I intended to register prior to the Deadline.

11. In light of these circumstances, I am requesting today that this court prohibit the defendants, the DOJ, and all of their respective officers, agents, servants, employees, attorneys, and persons acting in concert or participation with them, from enforcing Penal Code §§ 30600 (specifically, the prohibition against transportation), and 30605, pending trial and the adjudication of the merits of this action, or until plaintiffs, and a well-defined class of similarly-situated individuals, are permitted a reasonable amount of time to register their firearms through a properly-functioning public-facing Internet-based registration system, as required by Pen. Code § 30900(b)(2).

12. The circumstances described above, and as described by my fellow plaintiffs' declarations in support of this motion, demonstrate that we will likely prevail in proving that the inability of plaintiffs and many other people, similarly situated, to register such bullet-button firearms according to the statute was not a technical or failure on our part, but was a systemic failure on the part of the DOJ. Declaratory relief is requested to determine that I and the other plaintiffs have been unreasonably deprived of the ability to comply with the registration requirements of the law.

13. In the absence of such temporary or preliminary injunctive relief, we would face

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

potentially grave and irreparable injury associated with the substantially unjust deprivation of liberty and property, and potentially severe criminal liabilities, due to no fault of our own, but solely due to the failure of the DOJ to allow us a reasonable opportunity to comply with the law.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Aug. 7, 2018

Todd Feltman Digitally signed by Todd Feltman DN: cn=Todd Feltman, o, ou, email=[redacted], c=US Date: 2018.08.07 10:02:03 -07'00'

TODD FELTMAN

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

EXHIBIT A

SDSC SDCB USMS RWA USMS Tucson USMS Descope IGE PMO Div 1 EASI guide TECH SERVICES » Other bookmarks

IRS) 1 14 0 1 (06/28/2018)

Log Off

**Uploaded Right Side of Receiver/Frame** RIGHT JPG

**Uploaded Left Side of Receiver/Frame** LEFT JPG

**Uploaded Bullet Button Style Magazine Release** BB JPG

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that I am the lawful owner of all assault weapons that I seek to have registered I expressly authorize the Department of Justice to perform firearms eligibility checks of all relevant state and federal databases, including the Federal Bureau of Investigation's National Instant Criminal Background Check System I also understand that if I currently possess or own firearms and the results of this check reveal that I am ineligible either to lawfully possess or purchase firearms, I must relinquish any and all firearms in my possession ***Agree** ☑

Please click buttons only once. Multiple clicks will delay processing

Edit | Submit Final

↑ Top

CFARS Home > CRIS Home

CFARS CONTACT US DOJ PRIVACY POLICY

11:07 PM 6/30/2018

George M. Lee (SBN 172982)
Douglas A. Applegate (SBN 142000)
SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
601 Montgomery Street, Suite 2000
San Francisco, CA 94111
Phone: (415) 979-0500
Fax: (415) 979-0511

Raymond M. DiGuiseppe (SBN 228457)
THE DIGUISEPPE LAW FIRM, P.C.
2 North Front Street, Fifth Floor
Wilmington, NC 28401
Phone: (910) 713-8804
Fax: (910) 672-7705

Attorneys for Plaintiffs and Petitioners

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SHASTA

| | |
|---|---|
| HARRY SHARP, et al.,<br><br>Petitioners,<br><br>vs.<br><br>XAVIER BECERRA, et al.,<br><br>Respondents. | Case No. 190350<br><br>DECLARATION OF PLAINTIFF/PETITIONER DAVID KUEHL IN SUPPORT OF PLAINTIFFS' MOTION FOR ISSUANCE OF PRELIMINARY INJUNCTION<br><br>[CCP § 527]<br><br>Date: Sept. 10, 2018<br>Time: 8:30 a.m.<br>Dept. 08<br>Judge: Hon. Tamara L. Wood |

<u>DECLARATION OF DAVID KUEHL</u>

I, David Kuehl, declare as follows:

1. I am an adult resident of the County of Fresno, California, and I am a named plaintiff/petitioner in this matter. I have personal knowledge of the facts stated in this declaration, and if called as a witness, could competently testify thereto.

2. This declaration is executed in support of plaintiffs' motion for the issuance of a preliminary injunction, made pursuant to Code of Civ. Pro. § 527, whereby we are seeking an

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

injunction prohibiting the temporary and preliminary enforcement of the assault weapon possession statute, Pen. Code § 30605, as well as the "transportation" provision of the assault weapon transportation statute found in Pen. Code § 30605, pending the outcome of this litigation. The relief I and my fellow plaintiffs/petitioners are seeking would be as applied to myself and my fellow plaintiffs/petitioners, as well as an identifiable class of persons who attempted to register "bullet button assault weapons" unsuccessfully due to the failure of the California Department of Justice's registration system.

3. I was born and raised in California, and I have been a lifelong resident of this state. I am a law-abiding individual, and I am not prohibited from owning firearms.

4. I am currently retired, having served as an engineering technician, and a member of the fire protection department, among other responsibilities, with Exxon Mobil for over 30 years. I was also a paid reserve firefighter with the City of Napa Fire Dept. from approx. 1970-1982. I am also a military veteran, having been honorably discharged by the U.S. Coast Guard in 1988. For over 7 years, I have held a license to carry a concealed firearm (CCW) issued by my county sheriff, after proving "good cause" and good moral character to the issuing agency, after successfully completing a course of training on the law and firearms proficiency, and passing an extensive Live Scan-based background check.

5. Prior to January 1, 2017, I lawfully acquired and possessed a firearm, equipped with a bullet-button device, which the Legislature in 2016 defined as an "assault weapon" in that it does not have a "fixed magazine" as that term was revised in Pen. Code § 30515. (See First Amended Complaint ("FAC") ¶¶ 33-34.) It was and remains my intention to register this firearm in accordance with Pen. Code § 30900(b)(1).

6. On June 30, 2018, prior to the deadline of midnight July 1, 2018 ("Deadline"), I attempted to register the firearm from my home in Fresno County, California. When I attempted to access the CFARS system from my computer at that time, I could not get onto the system at all. I received error messages about the website not being available. I made multiple attempts to access the DOJ's website for the purpose of registration, but was unable to get on, and was

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

unable to proceed further. At that time, my Internet connection was working properly, as I was able to access other websites.

7. As a result of the DOJ system's inaccessibility, I was unable to register the firearm that I intended to register prior to the Deadline.

8. In light of these circumstances, I am requesting today that this court prohibit the defendants, the DOJ, and all of their respective officers, agents, servants, employees, attorneys, and persons acting in concert or participation with them, from enforcing Penal Code §§ 30600 (specifically, the prohibition against transportation), and 30605, pending trial and the adjudication of the merits of this action, or until plaintiffs, and a well-defined class of similarly-situated individuals, are permitted a reasonable amount of time to register their firearms through a properly-functioning public-facing Internet-based registration system, as required by Pen. Code § 30900(b)(2).

9. The circumstances described above, and as described by my fellow plaintiffs' declarations in support of this motion, demonstrate that we will likely prevail in proving that the inability of plaintiffs and many other people, similarly situated, to register such bullet-button firearms according to the statute was not a technical or failure on our part, but was a systemic failure on the part of the DOJ. Declaratory relief is requested to determine that I and the other plaintiffs have been unreasonably deprived of the ability to comply with the registration requirements of the law.

10. In the absence of such temporary or preliminary injunctive relief, we would face potentially grave and irreparable injury associated with the substantially unjust deprivation of liberty and property, and potentially severe criminal liabilities, due to no fault of our own, but solely due to the failure of the DOJ to allow us a reasonable opportunity to comply with the law.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Aug 6, 2018

David Kuehl (Aug 6, 2018)

DAVID KUEHL

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

George M. Lee (SBN 172982)
Douglas A. Applegate (SBN 142000)
SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
601 Montgomery Street, Suite 2000
San Francisco, CA 94111
Phone: (415) 979-0500
Fax: (415) 979-0511

Raymond M. DiGuiseppe (SBN 228457)
THE DIGUISEPPE LAW FIRM, P.C.
2 North Front Street, Fifth Floor
Wilmington, NC 28401
Phone: (910) 713-8804
Fax: (910) 672-7705

Attorneys for Plaintiffs and Petitioners

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SHASTA

HARRY SHARP, et al.,

Petitioners,

vs.

XAVIER BECERRA, et al.,

Respondents.

Case No. 190350

**DECLARATION OF MICHAEL D. MIYABARA-MCCASKEY IN SUPPORT OF PLAINTIFFS' MOTION FOR ISSUANCE OF PRELIMINARY INJUNCTION**

**[CCP § 527]**

Date: Sept. 10, 2018
Time: 8:30 a.m.
Dept. 08
Judge: Hon. Tamara L. Wood

I, Michael D. Miyabara-McCaskey, declare as follows:

1. I am an adult resident of San Jose, California. I have been retained as an expert witness/consultant by plaintiffs' counsel for the matters stated herein. My qualifications are set forth in more detail below. Except as otherwise noted herein, I have personal knowledge of the matters and opinions stated in this declaration, and if called as a witness, could competently testify thereto.

//

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

2. This declaration is executed in support of plaintiffs' motion for the issuance of a preliminary injunction, made pursuant to Code of Civ. Pro. § 527.

3. I have specifically been retained as an expert witness/consultant by plaintiffs' counsel to provide this court with information and an opinion regarding the likely causes of the inability of plaintiffs, and other members of the pubic, to maintain connections with the California Department of Justice's assault weapons registration system, and/or to successfully submit assault weapon registration forms to the DOJ.

## QUALIFICATIONS

4. I am a senior IT Systems/Enterprise Architect, with twenty-one years of experience serving clients both in the private and public sectors. I am the principal of Professional Edge LLC, a San Jose-based organization providing technology and IT consulting for private businesses and the public sector. I have specific and relevant experience in building and maintaining organizational IT systems, enterprise architecture, network administration, systems administration, and database administration.

5. As specifically relevant to the instant matter, I have had over 19 years of experience in designing and architecting enterprise solution platforms, using multi-tier architectures to improve uptime, capacity and security. I am also experienced in providing full root cause analysis (that is, diagnostic tracing, process, threading, memory dump analysis, and code review) relating to enterprise IT problems and failures. In effect, my professional responsibilities are to explain to management, and also to developers, what happened, how and what needs to happen to fix failures, and how to verify the same failures will not happen again.

6. My professional experience includes the creation, maintenance and management of the data systems for the Judicial Council of California. In this regard, I was specifically hired to handle in-sourcing of large court management systems that have data exchanges to multiple justice partners, training resources, developing or finding ways to modify systems to be more efficient and if possible cost less. In the years I have served the Judicial Council as a service

provider, I have analyzed, enhanced, profiled, migrated, or maintained dozens of systems originally created by various State contractors. My primary role as an Architect is to understand these systems completely, and to make sure that management is fully aware of any implications of planned upgrades, migrations or enhancements to existing systems. Further, my responsibilities with the Judicial Council require me to determine and direct teams of IT resources such as developers, quality assurance/testers, business analysts, systems, network or database administrators, on how to handle production issues, where others have been unable to diagnose, and explain the cause of failures.

7. Also, as a part of my work for the Judicial Council, I work with many Justice Partners systems, and as such, I hold a Level 4 Criminal Justice Information System (CJIS) Security and Awareness certification, and I am experienced with criminal data systems and the handling of law enforcement data.

8. A full set of my credentials, education and experience in this field is set forth in my resume, a copy of which is attached hereto as **Exhibit A.**

SCOPE OF REVIEW AND ANALYSIS

9. I have been specifically asked to review, and to provide an opinion, as to the likely cause, source or reason for the inability of the plaintiffs, and others who may be similarly situated, to connect to and submit information to the California Department of Justice's firearms registration system (California Firearms Application Reporting System, or "CFARS") for purpose of registering bullet button assault weapons pursuant to Pen. Code § 30900(b)(1). It is my understanding that the statutory mandate to create an internet registration system comes from section 30900(b)(2), which states: "Registrations shall be submitted electronically via the Internet utilizing a public-facing application made available by the department."

10. However, when creating this "public-facing application," the DOJ did not create an independent on-line registration system, but rather, elected to make an "enhancement" to its already-existing and maintained CFARS web application which included, inter alia: firearm

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

registrations, ownership reports, transfer reports, serial number applications, and other firearms-related data. (See portal at https://cfars.doj.ca.gov.) This "enhancement" to an already-existing system was specifically requested "[t]o support a new type of firearms registration in response to a recently enacted legislation." (An undated record obtained through the Public Records Act entitled "Unanticipated Tasks Work Authorization" describing the scope and manner in which the DOJ sought to create the firearms registration process by 12/31/17 is attached hereto as **Exhibit B.**)

11. To further the scope of this study, I specifically reviewed and relied upon the following:

- The Verified First Amended Complaint and attached exhibits;
- The declarations of plaintiffs in support of the motion for preliminary injunction, describing their efforts and difficulty with attempting to register bullet button assault weapons, and including the photographic exhibits attached, and the video clips that are referenced and linked therein;
- A response to a Public Records Act Request dated July 9, 2018; and
- Web Browser error codes and their meanings from various software vendors.

12. Having reviewed these materials, I am able to provide the following opinions: First, it is very clear that the connection issues that were being experienced by the plaintiffs and others across the state, were caused by either the DOJ's CFARS servers being overloaded and/or possibly by one of the State of California datacenters itself being unavailable due to network routing or overload issues. As shown in multiple screen shots from the plaintiffs, users were not presented a local browser errors such as "No Internet Connection," but instead we see very specific errors from the various browsers being shown saying, "Can't reach this page" (cfars.doj.ca.gov) or "This site can't be reached" (cfars.doj.ca.gov). These very specific errors by browsers from various software vendors mean the browser was able to diagnose that the Internet was available, but the specific website (cfars.doj.ca.gov) was not responding in a timely fashion, or routing to the CFARS server was unavailable due to network hardware or software

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

failures at the State of California Datacenter where the CFARS servers are located.

13. Next, it is also very clear that the design of the enhancement to the CFARS system that added the ability allowing these "bullet button assault weapons" to be registered was flawed, in that it was built on an existing system which already served other purposes, but without adequate quality assurance testing or profiling allowing for proper sizing of CFARS resources. In a Software Development Lifecycle Management (SDLC) activity such as enhancing an existing system, code is developed as an "add on," also additional tables, indexes, stored procedures, etc. would likely be added to a separate system called a database, used to store the data set and/or provide configuration or reference data to the new code "add on." This enhancement "add on" would follow a normal cycle of development, unit test, system or functional test, and possibly regression test, it would eventually lead to user acceptance testing, each phase being done by a combination of either DOJ employees or contractors to simulate the end to end process of registering "bullet button assault weapons." But the most critical of these tests should happen at the very end of the SDLC enhancement process, and that is load or stress test, this type of testing answers the question of how many or how much more resources does the "add on" need to function reliably when being used by the expected number of users using the newly enhanced CFARS. Again, the CFARS was an existing system that already serves many other purposes. For example, CFARS already hosts a subset of data called California Reporting Information System (CRIS). The CRIS database alone already includes:

- Firearm Ownership Report
- New Resident Report of Firearm Ownership
- Collector In-State Acquisition of Curio or Relic Long Gun Report
- Curio or Relic Firearm Report
- Report of Operation of Law
- Report of Intra-Familial Firearm Transaction; and
- Law Enforcement Gun Release Application

(See screenshot of CRIS reporting forms, attached hereto as **Exhibit C.**) Thus, to create an "add

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

on" with an entirely new data set, involving the submission of thousands of applications and photographs to accompany them, the CFARS enhancement allowing "bullet button assault weapons" to be registered absolutely also would require "Load or Stress Testing" to verify that the new enhancement itself is stable when large numbers of users use it at the same time, and that it does not create instability or compromise existing functionality that CFARS was already serving. And while it is possible that the Department of Justice or its contractors did do these extra types of tests, the evidence I've seen says they were not done, or not done correctly. For example, in detailed review of video footage, it is very clear that DOJ added only a few new pages to the CFARS system, they were added to existing pull down menus, and once the user was on the new pages allowing the "bullet button assault weapons" to be registered, we can see whole sections of the screens redraw upon various "clicks" or "pull down menu selections," which implies these new pages loaded large amounts of referenced data, configuration and code into these few pages. In other words, large amounts of CFARS server RAM memory were used to load these pages, each time a user logged in. Based on the screenshots from plaintiff Jahraus, for example, we can see direct evidence that the system was not able to load all the data in all cases, the error "When undefined is entered 'Residence Street Address' is required" - there is no possible way a user can select or enter "undefined" they must select something from a pull down menu, or click on something on the registration form, and leaving something blank is not "undefined." The term "undefined" is a common Java code-based error that occurs when the Java application server is unable to load data referenced from a remote source. This implies the CFARS application servers running this new enhancement allowing the "bullet button assault weapons" to be registered, did not go through proper load or stress testing to see how much server RAM memory, or how many remote connections would be needed during times when the expected number of users were on the system.

14. The "invalid character address" error experienced by some, if not many, also demonstrates inadequate memory/resources. The fact that multiple different users, plaintiffs Gallinger, Jahraus, and Prince all experienced times when their address became invalid, is also a

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

telltale sign that the enhancement to CFARS allowing the "bullet button assault weapons" to be registered was flawed. In the specific case of plaintiff Prince, we note that he was on the system for 4 hours and was able to register half of the firearms he was trying to register but then the system started reporting errors saying his street address was invalid, yet it was valid for the first several of the firearms he was able to register but then suddenly in the midst of the next registration his address became invalid. (Prince Decl., ¶ 6.) This again implies that the CFARS system with its enhancement allowing the "bullet button assault weapons" to be registered had not been load- or stress-tested, and that erratic behavior was happening on the CFARS server causing the system not to be able to know if "Avenue" or "Street" or "Court" or "Way" were valid characters. This is, again, a classic example of a Java Application Server that has run out of memory, or is unable to connect to a remote or third-party system to load reference data, and can now no longer validate the user data form submission because the code thinks that only the value of "undefined" is valid.

15. Finally, it's also very clear that the CFARS servers were both drastically undersized for network bandwidth speeds required and were also potentially failing and someone or something was restarting services. Reviewing detailed review of video footage from Gilardy, we clearly see a timeline from 10:54 p.m., he goes from the "This site can't be reached" error, to trying several times with his browser, and following best practices by clearing his browser cookies and browser cache, he eventually gets a CFARS login page. (Gilardy Decl., ¶ 12; http://bit.ly/Gilardy_Video_001.) He logs in, the system appears very responsive, until he starts uploading a digital photograph that 3.4MB in size, which is one of the items required for his firearm registration, and the video footage clearly shows that at 11:05 p.m. the upload finishes, (at around 42kbps per second, or slower than a 56kbps modem from the 1990s), but he's immediately redirected back to the login page, with an error from the CFARS server stating "Your session has timed out" (video at 05:38:04), so the CFARS server issued a Session Timeout in 11 minutes. Most Java code applications default to session of 20 to 60 minutes. Even if the system was configured, for some reason, for a 10-minute session timeout, and therefore this is by

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

design, the upload speed is so slow that it would not be possible to upload all the required images without causing a Session Timeout. So regardless if this was caused when a system administrator manually restarted, or an automated process restarted the system - either of which would cause a Session Timeout (sometimes termed a "Kick Out" because the user losses all data and must start again from the beginning), or if by design this had a 10 minute session timeout but due to the DOJ incorrectly, or unknowingly didn't size available network bandwidth correctly for peak times – it would not be possible for users to follow the law as each and everyone would instead get a Session Timeout.

16. Supporting these opinions is the commonality of many of the problems that were being experienced, apparently across the state. For example, some individuals reported that they were having trouble getting onto the CFARS registration system at all. (See Sharp Decl., ¶ 7; Ajirogi Decl., ¶¶ 6-7; Prince Decl., ¶ 6; and Kuehl Decl., ¶ 6.) In the case of plaintiffs Ajirogi and Kuehl, they reported that they were being prevented from even reaching the website entirely, or could not access the assault weapon registration form that was a feature on the CFARS web site. Other individuals got as far as being able to submit information, but the system would "time out" (i.e., become unresponsive) upon attempting to upload the four pictures that the DOJ was requiring as a part of the registration process. (See Sharp Decl., ¶ 6; Gilardy Decl., ¶¶ 8-9 (and video referenced above); Feltman Decl., ¶ 6 (and see: http://bit.ly/Feltman_Video_001). It was common for others to receive "invalid character address" type errors when attempting to submit their home address information, which caused them to be unable to proceed further with those registrations. (See Prince Decl., ¶ 6 and Exhibit A; Jahraus Decl., ¶ 6 and Exhibit A.)

17. Finally, given that these errors were server-side errors (on the part of CFARS), it explains why users following the "Troubleshooting Tips" shown on the DOJ Bureau of Firearms Website (attached as **Exhibit D**), for many, including plaintiffs, was futile. (See Sharp Decl., ¶ 8; Gilardy Decl., ¶ 9; Feltman Decl., ¶ 7; Jahraus Decl., ¶ 8; Gallinger Decl., ¶ 5.)

//

//

**SUMMARY OPINION**

18. Therefore, I conclude, with a reasonable degree of certainty, based upon my training, experience and knowledge of the field, that the problems that were being experienced connecting to or the ability to fully use the CFARS system, as reported by plaintiffs and others, was due to inadequate CFARS system resources such as available memory, or available external or third party connections that CFARS application servers depended upon for referenced data, and/or inadequate network bandwidth or network routing problems to the CFARS servers. Additionally, it appears the enhancements to the existing CFARS architecture did not include proper load or stress testing. Finally, the fact that several users had been trying to register for many hours, days or in a few cases weeks, and were receiving some or all of errors mentioned previously, means the DOJ/CFARS or their hired production support vendors were responsible these problems, and in no possible way were any of these issues due to any known fault of the plaintiffs or other members of the public attempting to submit registrations in a timely manner.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 10, 2018 8/10/18

MICHAEL D. MIYABARA-MCCASKEY

# EXHIBIT A

# Michael D. Miyabara-McCaskey

2087 Coastland Avenue
San Jose, CA 95125-2606
http://www.professionaledgellc.com

Mobile: (408) 504-9014
m3@professionaledgellc.com

## PROFILE

- **Senior IT Systems/Operations Architect,** with twenty one years of experience serving clients ranging from the smallest startup to the largest Fortune 500 corporations. Primary duties include determine best ROI for planned SDLC changes, work to facilitate integration between major software vendors packages, and deliver systems that provide the highest levels of service and resilience with the lowest operational direct or incurred costs.
- **Outstanding communication skills,** tailored to audiences ranging from Senior Executives to individual contributors such as Java/C++ Developers, QA testers, DBAs, and Systems Administrators.
- **Highly proficient in all aspects of Software Development Life Cycle ( SDLC );** including capacity planning, system sizing/scaling, redundancy, high availability, and disaster recovery planning.
- **Deep skills/experience with integration/troubleshooting a broad range of enterprise applications,** including web, J2EE, middleware, enterprise/ERP, CRM, SFA, and groupware applications.
- **Served Deloitte Consulting and its clients with distinction for over 6 years.** Recognized by Deloitte leadership as the "Go-to guy" for all critical customer-facing issues.

## QUALIFICATIONS

- **19+ years designing and architecting enterprise solution platforms,** using multi-tier architectures to improve uptime, capacity and security. Responsibilities have included requirements analysis with stakeholders, determining integration points, planning for system scaling, and establishment of processes/revision controls.
- **17+ years working hands-on with numerous Enterprise tools/solutions** such as Weblogic, Webmethods, Adobe, Autonomy, and Oracle databases. Capabilities include full root cause analysis (diagnostic tracing, process, threading, memory dump analysis, code review, etc) plus tailoring enterprise monitoring to watch critical components/integration points.
- **23+ years as systems administrator of numerous platforms,** including Unix/Linux (RHEL, HPUX, Solaris, SunOS, AIX) and Microsoft (NT, 2000, 2003, 2008) operating systems.
- **21+ years managing information technology projects,** including milestone planning, workload balancing, effort estimation, cost management, team building, and resource coordination.
- **13+ years of network administration experience,** including secure network design ( layered security ), setup, troubleshooting, and monitoring of routers, firewalls, managed switches, load balancers, and kvm/serial consoles.

## PROFESSIONAL EXPERIENCE

**Duration:** Feb 2011 – Present **Client:** Judicial Council of CA – San Francisco, CA
**Role:** Enterprise Architect for Operations, CCMS V3 – JCC IT. (contracted by Ziba Group)

- Enterprise Architect hired to manage current operations relating to code development ( source-code, unit, bundle, integration, etc. ) - as well as deployment vendors responsible for Go-Live production deployments.
- Additional tasks include gathering requirements for various internal departments; security, data-exchanges, source-code management, etc. and making sure the appropriate outsourced vendor or internal division is able to accommodate the details of each request.
- Recognized by both Senior Management and the Director of Information Systems Division – as being the only person able to properly identify and explain to outsourced vendors where to look to fix and resolve ongoing Production issues that has been plaguing users for months ( multiple vendors had already spent hundreds of man hours - unable to even identify the issues ).
- Ongoing audits of all systems / software / network design / interaction points of software; producing numerous proposals or work orders that have consistently reduced operational costs each year with vast improvements in ROI; keeping all current SLAs and functional and non-functional requirements the same.

**Duration:** Aug 2005 – May 2011          **Client:** Applied Biosystems – Foster City, CA
**Role:** Lead Systems Administrator, Global eBusiness Portal project (contracted by Deloitte Consulting)

- Lead administrator for Portal implementation and ongoing support operations, which combined represent over $30 Million worth of work for Deloitte Consulting.

- Originally hired to identify/solve chronic performance issues on the Portal's HP PA-RISC Superdomes, which included Apache, BEA WebLogic, Verity, and WebMethods servers. Successfully tuned the system to allow for the successful launch of the R1.0 Portal in 2005, to the extent that no additional tuning was needed until 2007.

- Designed capacity planning algorithms – allowing for proper allocation and usage of PA-RISC hardware and BEA clustered software packages for the intended 3 year lifespan of the R1.0 Portal Project.

- Led security task-force for penetration testing; threat evaluation, and implemented fixes for all software packages. Liaison to development teams to fix functional (coding) issues as they related to security concerns.

- Created a Zero downtime method of code/configuration/data deployment, thus allowing the Portal operations team to apply patches or major releases with no downtime to the end user and with full rollback capability.

- Trained support teams. Reviewed and updated system documentation. Worked as bridge between development and environment teams, creating consistent versioning schemes for all releases.

- Wrote custom monitoring tools with complex logic flows to alert based upon proactive predictive failure points, thus allowing support resources to respond before customer experience was impacted.

- Led design, planning, and execution of a six-month complete platform conversion and hosting migration project. Net result was a 70% reduction in hosting and maintenance fees, while at the same time significantly increasing system performance. Scope of work included new hardware sizing and selection, identification of software updates, vendor interaction for major upgrade solutions, and environment build-out.

**Duration:** May 2001 – Jul 2005          **Client:** Agilent Technologies – Santa Clara, CA
**Role:** Senior IT Systems Architect, Global Agilent.com eBusiness Platform

- Designed and implemented a WAN real-time "always on" Disaster Recovery Plan (DRP) solution, providing Agilent customers near-100% uptime in over 100 countries worldwide.

- Re-designed production processes to allow for zero downtime deployments with rollback capability, without purchasing any additional hardware or software.

- Created a custom monitoring/notification "Healthcheck" solution, which continuously diagnosed all hosts, ports, daemons, services, listeners, etc. for issues and displayed results in a non-technical green/yellow/red style of dashboard.

- Named lead for task force to solve issues of performance with the R2.0 release of Agilent.com. Identified issues, created test cases, and tuned various packages resulting in a 60% increase in speed.

- Created, trained, and managed offshore outsourced infrastructure team in India, greatly improving cost effectiveness for both Agilent and Deloitte Functional Testing activities.

- Enhanced system configuration tool to handle ~15,000 configuration files, spanning 67 hosts (PA-RISC/x86), 5 environments, and 4 software vendors (Oracle, Broadvision, Sun and Entrust) - with full version control using CVS.

**Duration:** Dec 2000 – Apr 2001          **Client:** Hubstorm(Velosel) – Mountain View, CA
**Role:** Senior IT Systems Administrator / IT Manager

- Hired to prepare the company infrastructure for expansion from startup to a fully functional medium sized company.

- Developed long-term strategies for Windows Server + Exchange. Stabilized infrastructure by de-coupling development processes from operations needs. Standardized computing and phone needs for all employees.

- Redesigned network with NAT/DNS zones and site-to-site VPNs, allowing proper interoperability of Linux, Solaris, and Windows from the Corporate LAN to a remote datacenter, including secure remote administration.

- Helped create the next generation of software using Apache, PERL, OpenSSL, and Tomcat. Then deployed a zero downtime infrastructure using Network Appliance Filer (5.2.5R2) and Foundry ServerIron load balancers.

- Managed servers for both internal operations and External B2B customers, including x86/Sun, MS NT4, MS 2000, Linux 2.x, and Solaris 7.x, with Oracle 8i, Apache, Perl (dbi, modperl), OpenSSL, and DNS (bind).

**Duration:** August 1999 – November 2000 **Client:** LinkAbility – Pacifica, CA
**Role:** CTO of Silicon Valley startup - Creating B2B/B2C/C2C commerce search engine

- Designed a system for customers to search and find a desired product, service, or service provider from within a unified portal system.
- Areas of focus included both backend integration to very large disparate database systems (using PostgreSQL), as well as front-end presentation using Windows IIS/ASP

**Duration:** July 1997 – July 1999 **Client:** SensArray (KLA Tencor) – Santa Clara, CA
**Role:** Information Systems Administrator / Manager

- Hired to prepare the company for projected 50% growth.
- Updated entire company to latest Microsoft groupware system – including Exchange 5.x and RightFAX (fax to/from email via InterTel PBX). Implemented proper disaster recovery (off-site backups, plans, etc.)
- Managed data conversion process from Mac AUX custom accounting packages to standard Oracle Enterprise Apps (ERP). Later integrated self serve HR system - using Microsoft IIS, ASP and Access.
- Migrated to Y2K compliant, redundant servers with Windows NT 4, allowing simplified procedures for Engineering and Manufacturing using an Intranet web system for product line automation and revision control.
- Built sales system implementing a custom Sales Forecast method, using Goldmine 4.x (SFA) with dBase IV. Secured sales satellite offices over secure Cisco and Ascend routers/firewalls using site-to-site VPN.

**Duration:** April 1994 – May 1997 **Client:** Palo Alto Research Center (PARC) – Palo Alto, CA
**Role:** Information Systems Engineer

- Directed project migrating data/applications from Xerox proprietary systems to Microsoft platforms, created documentation, brown-bag lunch talks, and helped to create user communities to increase user feedback.
- Key participant creating PC Support Business – included training, vendor contracts, inventory & repair tracking, networks, printing, servers, and disaster recovery/backup for a 1500+ workstation LAN.

## RELEVANT SKILLS

- **Application Administration**
  - Appservers (Weblogic, Adobe Central Suite, Adobe Coldfusion, WebMethods, MS Exchange, Autonomy IDOL, Verity, Broadvision, Comergent, LDAP Sun Directory, Siteminder, Tomcat, JBoss)
  - Databases (Oracle 8i,9i,10g,11g,12c, MySQL 4/5, PostgreSQL 7, MS SQL 2005, MS Access, dBase III/IV)
  - Tools/Others (PL-SQL, ERWin, VBS, Perl, DBI, PHP, HTML, CSS, ASP, Parallels Hsphere, Cpanel, Mercury Suite - Test-Director, LoadRunner, Quality Center, Performance Center, Quick Test Pro (QTP), LDAP, Sun One, iPlanet, Apache, Crystal Reports/Business Objects), Oracle AWR/ADDM reports.
- **Systems Administration**
  - Highly experienced in dealing with issues such as interoperability, parallel authentication structures, and application standardization (directories, ports, mounts, naming, etc.).
  - Linux/UNIX (Red Hat Enterprise Linux 3/4/5/6, HPUX, Solaris, Gentoo, SunOS, AIX, various Linux), bind, yp, nfs, lpr, x windows, samba, apache, iplanet, cvs, tomcat, cpio, tar, gzip, cron, openssl, openssh, and isolation management for custom source configurations.) Shell scripting (sh, ksh, bash)
  - WINDOWS (NT/2000/2003/2008), dns, wins, iis, ftp, veritas, batch scripting (bat) w/at scheduling.
  - POP3/IMAP/SMTP (sendmail, postfix, qmail), FTP, Telnet, RAID (sw or hw)
  - SAN (NetApp Filer/EMC), VNC, RDC, KVM/Serial Console (Raritan/Belkin), PBX (Fujitsu, InterTel)
- **Network Administration**
  - Routers / Firewalls (T1/DSL/ISDN/2way-LEOSAT, Cisco Pix, Juniper Netscreen, Ascend, AWS)
  - Switches, Proxies, Load-balancers, Virtual Private Cloud (Cisco, Dell, Foundry ServerIron, Cisco CSS, F5 BigIP, Bluecoat, AWS)
  - Secure network design SSL, SSH, SCP, VPN, IP or protocol filtering, NAT, and Cloud (VPC).
- **Desktop Applications**
  - MS Office, MS Project, MS Visio, Thunderbird, MS Outlook, Eudora, Goldmine, Java, Adobe Suite – Acrobat, Photoshop, Illustrator, Premier, Frontpage, Pagemill, MS Internet Explorer, Firefox, Chrome, Safari, Subversion, XML Spy, Oracle client tools – WebLogic Workshop, Eclipse, DB Administration.

## RECOGNITION

- Senior Management and Director level recognition in response to identification of on-going production system problems that had been interrupting hundreds of users several times per week – causing thousands of hours of lost work - for the CCMS V3 project – Administration Of the Courts.
- Awarded cash bonus in recognition of leadership provided for the Applied Biosystems eBusiness Portal re-platforming project.
- "Michael is the most well-rounded, technically savvy systems administrator I have ever worked with in my 20+ year career. Plain and simple there is no problem I have thrown at him that he can't solve. He is clearly THE trusted adviser to both me and my clients." **--Dave Kusmik, Director, Deloitte Consulting**
- "The one person we knew we needed for a successful project launch was Michael."

  **--Mike Brinker, Principal, Deloitte Consulting**

## EDUCATION

- **DeAnza College, Cupertino, CA**
  A.A. Liberal Arts, 1994
- **Additional Training/Certifications**
  Oracle DB Administration (Oracle Corp) 1999
  Oracle SQL (Oracle Corp) 1999
  HR Vantage Admin (Spectrum Soft) 1998
  MS Access I, II, III (InfoTech) 1997
  Windows Server & 9x (Unitek Training) 1996
  MS Visual Basic (UCSC Extension) 1995
  NetWare Enterprise Admin (Wave Tech) 1995
  NetWare Admin & Support (Wave Tech) 1993
  NetWare Data Comm. (Wave Tech) 1993
  Apple Computer/Printer HW (Apple) 1993
  Computer & Digital Maint. (CCOC) 1989
  Stand and Deliver Program (Temenos) 1995

**EXHIBIT B**

# Unanticipated Tasks Work Authorization

Project Title

15IT-0841 BOF Apps Upgrade

Statement of Purpose

CFARS needs to be enhanced to support a new type of firearm registration in response to a recently enacted legislation. The changes required to be made to CFARS is significant and out of the scope of the originally planned work.

This work authorization replaces the previous work authorization approved in August 2016.

Objective/Goals to be undertaken by the Contractor

Create a new firearms registration process in CFARS.

Materials to be developed by the Contractor and delivered to the DOJ

Java and PL/SQL source code for the CFARS enhancement.

Materials to be developed by the DOJ and delivered to the Contractor

No action required by the DOJ.

Schedule Dates

Start Date: 10/01/2016 | Completion Date: 12/31/2017

| Estimated Labor Hours | Labor Rate | Estimated Total Cost |
|---|---|---|
| 429 | $ 130.00 | $55770.00 |

| Contractor Personnel To Be Assigned | Job Classification/Skill Level |
|---|---|
| Manoj Gopalakrishnan | Sr. Tech Lead |

Completion Criteria
CFARS enhancement completed and deployed to production by 1/1/2017.

Approval

______________________________ Date ______________
Contractor Project Manager

______________________________ Date ______________
DOJ Management

# EXHIBIT C

## CRIS Reporting Forms

Firearm Ownership Report

New Resident Report of Firearm Ownership

Collector In-State Acquisition of Curio or Relic Long Gun Report

Curio or Relic Firearm Report

Report of Operation of Law

Report of Intra-Familial Firearm Transaction

Law Enforcement Gun Release Application

Help Me Identify Which Report I Need

## Assistance Center

CFARS Contact Us

Report an Issue

Additional Help

CFARS Home > CRIS Home

Logged in user: [redacted]

## CRIS Home Page

The CRIS Home Page is used to present important system messages, when necessary, as well as provide users a starting point for system navigation.

To proceed, please select an option from one of the links available.

EXHIBIT D

State of California Department of Justice

**XAVIER BECERRA**

*Attorney General*

Search

Translate Website | Traducir Sitio Web

# Bullet Button Assault Weapon

Home / Firearms / *Bullet Button Assault Weapon*

## California Firearms Application Reporting System (CFARS)

The Department is currently experiencing a high volume of users attempting to register their assault weapons.

If you are experiencing difficulty processing an application in CFARS, please try the trouble shooting options listed below.

Troubleshooting Tips:

- Clear your browser history. This can be done by selecting Shift + Ctrl + Delete on your keyboard. Be sure to clear your Cache, Cookies and Form & Search History.
- Use a different web browser such as, Internet Explorer or Mozilla FireFox. Mozilla FireFox is the preferred web browser to process an application in

CFARS.

- Change computers and/or networks (WiFi, cellular network, etc.)
- If you are still unable to submit your registration, you may try accessing the system at a later time.

**REMINDER:** The last day to submit a bullet button assault weapon registration is **Saturday, June 30, 2018.** The Customer Support Center is available to assist the public between the hours of 8:00 am – 5:00 pm, Monday – Friday only. However, staff will be available to assist with bullet button assault weapon registrations and assault weapon serial number requests via email communication on Saturday, June 30, 2018 until 11:59:59 pm by contacting awr@doj.ca.gov.

# REMINDER: ASSAULT WEAPON REGISTRATION ENDS AT 11:59:59 P.M. ON JUNE 30, 2018.

All applications for assault weapon registration must be submitted by this deadline. No applications will be accepted thereafter (see Penal Code section 30900(b)(1) and California Code of Regulations, title 11, division 5, chapter 39, section 5469).

**NOTE:** If you are in lawful possession of a bullet button assault weapon that is a Firearm Manufactured By Unlicensed Subject (FMBUS), you must obtain a DOJ-issued serial number by completing form BOF 1008 and emailing it to DOJSerialNumber@doj.ca.gov. The serial number issuance process is **separate** from the assault weapon registration process and **must be completed before the assault weapon registration application will be accepted by DOJ.**

**Do I need to register my bullet button firearm?**

Assembly Bill 1135 and Senate Bill 880 require that any person who, from January 1, 2001, to December 31, 2016, inclusive, lawfully possessed an assault weapon that does not have a fixed magazine, as defined in Penal Code section 30515, including those weapons with an ammunition feeding device that can be readily removed from the firearm with the use of a tool (commonly referred to as a bullet-button) must register the firearm before January 1, 2018. However, Assembly Bill 103 has since extended the registration period from January 1, 2018 to **July 1, 2018.**

Assembly Bill 1135 and Senate Bill 880 also define the meaning of "fixed magazine" to mean an ammunition feeding device contained in, or permanently attached to, a firearm in such a manner that the device cannot be removed without disassembly of the firearm action.

This legislation closes the "bullet button" loop hole and categorizes "bullet button" firearms as assault weapons. The adopted regulations for bullet button assault weapon registration contains additional information on registration requirements.

**What is considered an "assault weapon"?**

Pursuant to Assembly Bill 1135 (Stats. 2016, ch. 40) and Senate Bill 880 (Stats. 2016, ch. 48) effective January 1, 2017, the definition of "assault weapon" is revised to mean the following:

**RIFLES**

a. A semiautomatic, centerfire rifle that does not have a fixed magazine but has any one of the following:
    i. A pistol grip that protrudes conspicuously beneath the action of the weapon.
    ii. A thumbhole stock.

   iii. A folding or telescoping stock.

iv. A grenade launcher or flare launcher.

v. A flash suppressor.

vi. A forward pistol grip.

b. A semiautomatic, centerfire rifle that has a fixed magazine with the capacity to accept more than 10 rounds.

c. A semiautomatic, centerfire rifle that has an overall length of less than 30 inches.

**PISTOLS**

a. A semiautomatic pistol that does not have a fixed magazine but has any one of the following:

i. A threaded barrel, capable of accepting a flash suppressor, forward handgrip, or silencer.

ii. A second handgrip.

iii. A shroud that is attached to, or partially or completely encircles, the barrel that allows the bearer to fire the weapon without burning the bearer's hand, except a slide that encloses the barrel.

iv. The capacity to accept a detachable magazine at some location outside of the pistol grip.

b. A semiautomatic pistol with a fixed magazine that has the capacity to accept more than 10 rounds.

**SHOTGUNS**

a. A semiautomatic shotgun that has both of the following:

i. A folding or telescoping stock.

ii. A pistol grip that protrudes conspicuously beneath the action of the weapon, thumbhole stock, or vertical handgrip.

b. A semiautomatic shotgun that has the ability to accept a detachable magazine.

c. Any shotgun with a revolving cylinder.

**Do I need a DOJ Serial Number?**

Pursuant to California Code of Regulations, title 11, section 5474.2 a person in possession of a Firearm Manufactured By Unlicensed Subject (FMBUS) must seek a Department issued serial number prior to initiating the assault weapon registration process.

Applicants seeking a serial number shall complete a New Serial Number Application (BOF 1008) and submit it to the Department per the instructions on the form. For instructions on how to complete the application, refer to the New Serial Number Form Instructions. For additional information, please contact the Bureau of Firearms Assault Weapon Registration Serial Number at: DOJserialnumber@doj.ca.gov.

**Where can I register my assault weapon?**

All registrations must be submitted electronically, through the California Firearms Application Reporting System (CFARS) at https://cfars.doj.ca.gov. The registration fee is $15 per person (transaction). To submit your application you will need:

- At least 4 photos of the firearm you intend to register (see sample photos)
  - Close-up of the bullet button style magazine on the firearm.
  - Stock to barrel (with the firearm lying horizontally on a flat surface).
  - Left side of the receiver/frame.
  - Right side of the receiver/frame.
- Proof of residency, if submitting a joint registration.
- Military permanent duty station orders indicating assignment within California, if using a military ID to register. Active duty military spouse ID is not acceptable.

A CFARS Assault Weapon Registration Public User Guide is available for information on how to submit an assault weapon registration electronically.

**Where can I find additional information about bullet button assault weapons?**

Additional information can be found within the Bullet Button Assault Weapons Frequently Asked Questions.

**Additional Bureau of Firearms Links**

1. California Firearms Application Reporting System (CFARS)
2. Frequently Asked Questions
3. Forms and Publications
4. Firearms Reporting & Law Enforcement Gun Release Application
5. Assault Weapons Identification Guide
6. California Firearms Laws Summary
7. Firearms Information for New California Residents
8. Contact Us

## Bureau of Firearms

Firearms Home

California Firearms Laws Summary, pdf (revised 2016)

FAQs

Forms and Publications

Becoming a Firearm Dealer and/or Ammunition Vendor in California

Firearm Safety Certificate Program, DOJ Certified Instructor Information and Comparable Entities

Certificate of Eligibility Information and Application Process

Bullet Button Assault Weapon Information and Registration Process

Firearms Reporting & Law Enforcement Gun Release Application

Firearm Regulations/Rulemaking Activities

California Code of Regulations

Roster of Firearm Safety Devices Certified for Sale

Roster of Handguns Certified for Sale

Unique Serial Number Application (USNA) Process

Contact Us



**STATE OF CALIFORNIA DEPARTMENT OF JUSTICE**
**OFFICE OF THE ATTORNEY GENERAL**

Search

**WHO WE ARE**

About AG Xavier Becerra

History of the Office

Organization of the Office

**WHAT WE DO**

Public Safety

Opinions and Quo Warranto

Research

Children & Families

Civil Rights

Consumer Protection

Environment & Public Health

Tobacco Directory

**OPEN GOVERNMENT**

Ballot Initiatives

Conflicts of Interest

Criminal Justice Statistics

Meetings and Public Notices

OpenJustice Initiative

Public Records

Publications

Regulations

**Memorial**

Agents Fallen in the Line of Duty

**Vote**

Register to Vote

**WHAT WE'RE WORKING ON**

21st Century Policing

Children's Rights

Consumer Protection and Economic Opportunity

Environmental Justice

Equality

Health Care

Immigration

OpenJustice

**MEDIA**

Consumer Alerts

Press Releases

Media Library

**CAREERS**

Getting a State Job

Examinations

Job Vacancies

Internships & Student Positions

Attorney General's Honors Program

Earl Warren Solicitor General Fellowship

Office of the Attorney General    Accessibility    Privacy Policy    Conditions of Use    Disclaimer

© 2018 DOJ

George M. Lee (SBN 172982)
Douglas A. Applegate (SBN 142000)
SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
601 Montgomery Street, Suite 2000
San Francisco, CA 94111
Phone: (415) 979-0500
Fax: (415) 979-0511

Raymond M. DiGuiseppe (SBN 228457)
THE DIGUISEPPE LAW FIRM, P.C.
2 North Front Street, Fifth Floor
Wilmington, NC 28401
Phone: (910) 713-8804
Fax: (910) 672-7705

Attorneys for Plaintiffs and Petitioners

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF SHASTA**

HARRY SHARP, et al.,

Petitioners,

vs.

XAVIER BECERRA, et al.,

Respondents.

Case No. 190350

**DECLARATION OF GEORGE M. LEE IN SUPPORT OF PLAINTIFFS' MOTION FOR ISSUANCE OF PRELIMINARY INJUNCTION**

[CCP § 527]

Date: Sept. 10, 2018
Time: 8:30 a.m.
Dept. 08
Judge: Hon. Tamara L. Wood

I, George M. Lee, declare as follows:

1. I am an attorney at law, in good standing, duly licensed to practice law in this state and appear before its courts. I am the attorney of record for plaintiffs/petitioners in the above matter. I have personal knowledge of the facts stated in this declaration, and if called as a witness, could competently testify thereto.

2. This declaration is executed in support of plaintiffs' motion for the issuance of a preliminary injunction, made pursuant to Code of Civ. Pro. § 527.

3. I represent institutional plaintiffs Calguns Foundation, Firearms Policy Coalition, Firearms Policy Foundation, and Second Amendment Foundation, both in the instant matter, and in other litigation matters in this state.

4. As a part of my representation of the institutional plaintiffs, I have been referred, and have had many discussions with individuals seeking legal assistance and advice, who experienced substantial problems getting their "bullet button assault weapons" registered pursuant Pen. Code § 30900(b)(1), prior to the registration deadline of July 1, 2018 ("Deadline") imposed by § 30680(c). Specifically, since June 30, 2018, I have had discussions with many California citizens who had experienced technical problems while attempting to access or submit firearms registration information using the DOJ Bureau of Firearms' system called the California Firearms Application Reporting System ("CFARS").

5. The statutory mandate to the DOJ to create an on-line registration system for these newly-classified assault weapons is found at Pen. Code § 30900(b)(2) ("Registrations shall be submitted electronically via the Internet utilizing a public-facing application made available by the department.") This lawsuit was filed to allow people a reasonable opportunity to comply with section 30900(b)(2). Plaintiffs seek mandamus, declaratory and injunctive relief with the ultimate objective of allowing them (and many others) to register their firearms and continue to remain citizens in good standing.

6. From these numerous discussions I had with people all across the state since June 30, 2018, I found there to be many commonalities as to the specific problems they had encountered with CFARS. In particular, many individuals (such as plaintiffs Sharp, Ajirogi, Prince and Kuehl) had trouble getting onto CFARS at all. (See Sharp Decl., ¶ 7; Ajirogi Decl., ¶¶ 6-7; Prince Decl., ¶ 6; and Kuehl Decl., ¶ 6.) In the case of Messrs. Ajirogi and Kuehl, they were prevented from even reaching the website entirely, or could not access the assault weapon registration form that was a feature on the CFARS web site (before it was taken down on July 1, 2018). Other individuals got as far as being able to submit information, but the system would "time out" (i.e., become unresponsive) upon attempting to upload the four pictures that the DOJ

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

2

DECL. OF GEORGE M. LEE IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIM. INJUNCTION
CASE NO. 190350

was requiring as a part of the registration process. (See Sharp Decl., ¶ 6; Gilardy Decl., ¶¶ 8-9 (and see: http://bit.ly/Gilardy_Video_001); Feltman Decl., ¶ 6 (and see: http://bit.ly/Feltman_Video_001). Other people received bizarre "invalid character address" errors when attempting to submit their home address information, which caused them to be unable to proceed further with those registrations. (See Prince Decl., ¶ 6 and Exhibit A; Jahraus Decl., ¶ 6 and Exhibit A.)

7. These common problems had been experienced by many people I spoke with, and not just limited to the plaintiffs herein. Many others I spoke with were unwilling or hesitant to be named as plaintiffs in this case, many fearing retaliation and/or the threat of prosecution by the DOJ for "illegally" possessing assault weapons after the Deadline, even though they attempted to comply. Some were not willing to be plaintiffs in the case, but were willing to submit declarations describing their experience. Attached hereto as **Exhibit A** is the true and correct declaration of Jordan Gallinger. Attached hereto as **Exhibit B** is the true and correct declaration of Richard Whittier.

8. On information and belief, the DOJ's link to the assault weapons registration form (entitled: "Assault Weapon Registration Form (Assembly Bill 1135/Senate Bill 880)") was taken down on July 1, 2018, after midnight. Pursuant to Cal. Evid. Code §§ 451 and 452, this Court is requested to take judicial notice that July 1, 2018 was a Sunday, and that June 30, 2018 fell on a Saturday.

## REQUEST FOR CLASS-WIDE PRELIMINARY INJUNCTIVE RELIEF

9. As set forth in the plaintiffs' motion, injunctive relief is sought to prevent enforcement of the assault weapons possession statutes, to wit: Penal Code §§ 30600 (insofar as the statute would prohibit otherwise lawful transportation activities) and 30605, not just as to plaintiffs themselves, or as to the institutional members, but as to the class of similarly-situated individuals they represent. Specifically, and as alleged in plaintiffs' First Amended Complaint (FAC), such a class would consist of: all California citizens who are not otherwise prohibited or

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

exempt under the assault weapon registration laws, who lawfully and legally possessed firearms that the State of California classified as "assault weapons" under Penal Code § 30515(a) that must be registered as such pursuant to Penal Code sections 30680 and 30900(b), but who were precluded from doing so due to the Defendants' actions and failures, including but not limited to the inaccessibility, defects, and/or non-functionality of the DOJ's CFARS-based registration system during the registration period ending at midnight on June 30, 2018. (FAC, ¶¶ 22-23).

10. As the declarations of the plaintiffs, and other individuals (Exhibits A and B hereto) show, there are common questions of fact that likely affect the rights, duties and liabilities of many similarly-situated California residents who were unable to comply with the registration requirement due to technical issues with the CFARS system. It is widely known that a large number of people attempted to register in the days and weeks leading up to the registration deadline. To illustrate this, in response to a request for records under the Public Records Act (PRA), the DOJ had indicated that as of February 1, 2018, only five (5) months before the Deadline, it had received 4,653 applications to register bullet button assault weapons through CFARS. (A true and correct copy of the letter of Dep. Attorney General Robert D. Wilson, dated February 1, 2018 is attached hereto as **Exhibit C.**) However, in a further response to information under the PRA, the DOJ revealed that it had received a total of 68,848 applications to register bullet button assault weapons through CFARS by the Deadline. (A true and correct copy of the letter of Dep. Attorney General Robert D. Wilson, dated July 11, 2018 is attached hereto as **Exhibit D.**) Therefore, it is not unreasonable to conclude that a sharp spike in the number of bullet button assault weapon registrations was occurring in the weeks and days leading up to the Deadline. This is further borne out by a warning on the DOJ Bureau of Firearms website, which indicated that "[t]he Department is currently experiencing a high volume of users attempting to register their assault weapons." (A true and correct copy of the DOJ Bureau of Firearms notification and "Troubleshooting Tips" published on its website prior to the Deadline is attached hereto as **Exhibit E.**)

11. If notice to the proposed class of affected individuals who may benefit from the

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

requested injunction becomes necessary, my institutional clients and my firm are well-situated to provide outreach and notification regarding the existence, scope and duration of any preliminary injunction. Specifically, the institutional plaintiffs are able to communicate with and provide notice to their thousands of California members and constituents who are or would be part of any identifiable class of individuals for whose benefit this court may grant such relief. For example, plaintiff Firearms Policy Coalition (FPC) already used its own resources to advocate for education and outreach to help their members and the public know and understand their duties under the new laws that would be enacted by Senate Bill 880 and Assembly Bill 1135. (FAC, ¶ 55). Plaintiffs and I are further willing to work with other Second Amendment advocacy groups (such as the California Rifle & Pistol Association, Gun Owners of California, and other organizations) to provide notice and outreach regarding the scope of any injunctive relief. I am an attorney with over 22 years of experience in San Francisco, handling civil litigation matters, including: complex civil matters, class-action and representative claims, and state and federal civil rights litigation.

12. In addition to this ascertainable class of members specifically defined in paragraph 9 above, there is also a well-defined and common community of interest in the questions of law and fact affecting the parties to be represented. This is a matter of substantial public importance, presenting the question of whether people should face potentially severe criminal penalties when they attempted to but were deprived of their ability to comply with the law due to the technical deficiencies of the DOJ's registration system.

13. The scope of the preliminary injunctive relief requested would be limited in duration, until this court adjudicates to finality the merits of the plaintiffs' claims, and in particular, until such time as the court may grant the plaintiffs mandamus, declaratory and permanent injunctive relief to allow the class of similarly-situated individuals a reasonable opportunity to comply with the registration requirement of Pen. Code § 30900(b)(2).

14. For these reasons, plaintiffs are requesting preliminary injunctive relief, for themselves, their members, and for the class of similarly-situated individuals.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 10, 2018

GEORGE M. LEE

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

6

DECL. OF GEORGE M. LEE IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIM. INJUNCTION
CASE NO. 190350

# EXHIBIT A

George M. Lee (SBN 172982)
Douglas A. Applegate (SBN 142000)
SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
601 Montgomery Street, Suite 2000
San Francisco, CA 94111
Phone: (415) 979-0500
Fax: (415) 979-0511

Raymond M. DiGuiseppe (SBN 228457)
THE DIGUISEPPE LAW FIRM, P.C.
2 North Front Street, Fifth Floor
Wilmington, NC 28401
Phone: (910) 713-8804
Fax: (910) 672-7705

Attorneys for Plaintiffs and Petitioners

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF SHASTA**

HARRY SHARP, et al.,

Petitioners,

vs.

XAVIER BECERRA, et al.,

Respondents.

Case No. 190350

**DECLARATION OF JORDAN GALLINGER IN SUPPORT OF PLAINTIFFS' MOTION FOR ISSUANCE OF PRELIMINARY INJUNCTION**

[CCP § 527]

Date:
Time:
Dept.
Judge:

**DECLARATION OF JORDAN GALLINGER**

I, Jordan Gallinger, declare as follows:

1. I am an adult resident of the County of Los Angeles, California. I have personal knowledge of the facts stated in this declaration, and if called as a witness, could competently testify thereto.

2. This declaration is executed in support of plaintiffs' motion for the issuance of a preliminary injunction, made pursuant to Code of Civ. Pro. § 527.

3. I am a lifelong resident of California. I am a law-abiding individual, and I am not prohibited from owning firearms.

4. Prior to January 1, 2017, I lawfully acquired and possessed three firearms, equipped with bullet-button devices. It was my intention to register these firearms according to the laws requiring registration of "bullet button assault weapons."

5. Starting sometime in late May 2018, I began making attempts to submit the assault weapons registration form on the DOJ's site in order to comply with the registration requirement. I was able to create an account on the DOJ's CFARS system, but after that, I was unable to submit the registration forms they were requiring. Specifically, I would get various error messages informing me that I had included "invalid characters" in the address, which caused me to attempt many different variations on my home address information that was required. I also found that the system would "time out" and then delete all of my information once I attempted to upload the four pictures that were being required for each firearm, deleting all of the form information I had filled out, and requiring me to start over. I made multiple attempts to submit the information, using 3 or 4 different computers, and 3 or 4 different web browsers, all to no avail. I consider myself to be fairly tech-literate, and I definitely considered this to be a systematic problem on the DOJ's side.

6. I made approximately 10 attempts to submit the registration forms, starting in May and continuing through June 2018, and in particular, the last two weeks of June. However, and due to the failure of the DOJ's system, and the error messages, I was unable to register any of the three firearms I intended to register prior to the statutory deadline.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 03 AUG 2018

JORDAN GALLINGER

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

2

DECL. OF JORDAN GALLINGER IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIM. INJUNCTION
CASE NO. 190350

EXHIBIT B

George M. Lee (SBN 172982)
Douglas A. Applegate (SBN 142000)
SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
601 Montgomery Street, Suite 2000
San Francisco, CA 94111
Phone: (415) 979-0500
Fax: (415) 979-0511

Raymond M. DiGuiseppe (SBN 228457)
THE DIGUISEPPE LAW FIRM, P.C.
2 North Front Street, Fifth Floor
Wilmington, NC 28401
Phone: (910) 713-8804
Fax: (910) 672-7705

Attorneys for Plaintiffs and Petitioners

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF SHASTA**

HARRY SHARP, et al.,

Petitioners,

vs.

XAVIER BECERRA, et al.,

Respondents.

Case No. 190350

**DECLARATION OF RICHARD WHITTIER IN SUPPORT OF PLAINTIFFS' MOTION FOR ISSUANCE OF PRELIMINARY INJUNCTION**

**[CCP § 527]**

Date:
Time:
Dept.
Judge:

**DECLARATION OF RICHARD WHITTIER**

I, Richard Whittier, declare as follows:

1. I am an adult resident of the County of Riverside, California. I have personal knowledge of the facts stated in this declaration, and if called as a witness, could competently testify thereto.

2. This declaration is executed in support of plaintiffs' motion for the issuance of a preliminary injunction, made pursuant to Code of Civ. Pro. § 527.

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

3. I am a lifelong resident of California. I am a law-abiding individual, and I am not prohibited from owning firearms.

4. Prior to January 1, 2017, I lawfully acquired and possessed a firearm, equipped with a bullet-button device. It was my intention to register this firearm according to the laws requiring registration of "bullet button assault weapons."

5. On June 30, 2018, I went online to fill out the assault weapon registration form that was being required by the DOJ. I spent a fair amount of time filling out all of the required information regarding the firearm in question. However, each time I went to upload the photos that were being required, the website would terminate the form, and sent me back to the beginning, requiring me to start the process all over again, i.e., filling out all of the same information. I attempted to do this several times, each time encountering the same problem. I then called the provided telephone number for the DOJ, but nobody answered. I also sent an email, but the DOJ did not respond for days. Based upon this problem, I was not able to register the firearm before the statutory deadline.

6. On or about July 2, 2018, I called the DOJ Firearms Bureau and got hold of someone to tell them about the problems I had encountered. The DOJ employee told me that I should not have waited until the last day to register the firearm. I explained to her that I had heard that many people had experienced problems registering on their website. She told me in response that the Department knew that some web browsers did not work with their application. I said that based upon these problems, I was requesting that they allow me to register the firearm. She told me that there was nothing they could do because the form was not submitted in time. She also acknowledged that I was trying to comply with the law, but told me that it was my fault for waiting until the last day.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 8/6/18

RICHARD WHITTIER

# EXHIBIT C

*XAVIER BECERRA*
*Attorney General*

*State of California*
*DEPARTMENT OF JUSTICE*



1300 I STREET, SUITE 125
P.O. BOX 944255
SACRAMENTO, CA 94244-2550
Public: (916) 445-9555
Facsimile: (916) 227-0470

February 1, 2018

Brandon Combs
4212 N. Freeway Blvd., Suite 6
Sacramento, CA 95834

Re: Public Records Act Request received January 4, 2018

Dear Mr. Combs:

This letter is in response to your public records request in which you sought records pursuant to the Public Records Act ("PRA") as set forth in Government Code section 6250 et seq. Specifically, you requested the following information:

"Please provide me with a copy of the following records in existence that allow me and the public to determine:

1. The number of applications for firearm registration as an "Assault Weapon" under Penal Code section 30900(b) that were submitted from July 31, 2017, to the present. In lieu of documents I will accept your calculation of the number of applications as a full response to this request.

2. The number of applications for firearm registration as an "Assault Weapon" under Penal Code section 30900(b) that have been approved from July 31, 2017, to the present. In lieu of documents I will accept your calculation of the number of applications that have been approved as a full response to this request.

3. The number of applications for firearm registration as an "Assault Weapon" under Penal Code section 30900(b) that have been denied/rejected from July 31, 2017, to the present. In lieu of documents I will accept your calculation of the number of applications that have been denied/rejected as a full response to this request.

4. The number of applications for firearm registration as an "Assault Weapon" under Penal Code section 30900(b) submitted from July 31, 2017, to the present that are still being processed. In lieu of documents I will accept your calculation of the number of applications still being processed as a full response to this request.

5. The average time it takes to review and make a determination on an "Assault Weapon" registration application under Penal Code section 30900(b) submitted from July 31, 2017, to the present. In lieu of documents I will accept a list of all applications including their respective dates of submission and DOJ's determination of acceptance or denial as a full response to this request.

6. From January 1, 2017, to the present, a copy of all daily, weekly, monthly, or other periodical reports about "Assault Weapon" registrations and applications under Penal Code section 30900(b)."

Here are the responses to your requested information:

1. 4,653 applications to register bullet button assault weapons were submitted for registration in California Firearms Application Reporting System (CFARS).
2. 2,523 applications were approved in CFARS.
3. 200 applications were rejected in CFARS.
4. 1,232 applications are still being processed by the Department.
5. We cannot provide you with an estimate on the time it takes to review and make a determination on an assault weapon registration application because it varies greatly depending on the circumstances.
6. Please find enclosed the information you seek.

Sincerely,

ROBERT D. WILSON
Deputy Attorney General

For XAVIER BECERRA
Attorney General

Enclosure

# EXHIBIT D

*XAVIER BECERRA*
*Attorney General*

*State of California*
*DEPARTMENT OF JUSTICE*

1300 I STREET, SUITE 125
P.O. BOX 944255
SACRAMENTO, CA 94244-2550
Public: (916) 445-9555
Facsimile: (916) 227-0470

July 11, 2018

Brandon Combs
4212 N. Freeway Blvd., Suite 6
Sacramento, CA 95834

Re: Public Records Act Request received July 2, 2018

Dear Mr. Combs:

This letter is in response to your public records request in which you sought records pursuant to the Public Records Act ("PRA") as set forth in Government Code section 6250 et seq. Specifically, you requested the following information:

> "Please provide me with a copy of the following records in existence that allow me and the public to determine:
>
> 1. The number of applications for firearm registration as an "Assault Weapon" under Penal Code section 30900(b) that were submitted from July 31, 2017, to the present. In lieu of documents I will accept your calculation of the number of applications as a full response to this request.
>
> 2. The number of applications for firearm registration as an "Assault Weapon" under Penal Code section 30900(b) that have been approved from July 31, 2017, to the present. In lieu of documents I will accept your calculation of the number of applications that have been approved as a full response to this request.
>
> 3. The number of applications for firearm registration as an "Assault Weapon" under Penal Code section 30900(b) that have been denied/rejected from July 31, 2017, to the present. In lieu of documents I will accept your calculation of the number of applications that have been denied/rejected as a full response to this request.
>
> 4. The number of applications for firearm registration as an "Assault Weapon" under Penal Code section 30900(b) submitted from July 31, 2017, to the present that are still being processed. In lieu of documents I will accept your calculation of the number of applications still being processed as a full response to this request.

5. The average time it takes to review and make a determination on an "Assault Weapon" registration application under Penal Code section 30900(b) submitted from July 31, 2017, to the present. In lieu of documents I will accept a list of all applications including their respective dates of submission and DOJ's determination of acceptance or denial as a full response to this request.

6. From January 1, 2017, to the present, a copy of all daily, weekly, monthly, or other periodical reports about "Assault Weapon" registrations and applications under Penal Code section 30900(b)."

Here are the responses to your requested information:

1. 68,848 applications to register bullet button assault weapons were submitted for registration in the California Firearms Application Reporting System (CFARS).

2. 13,519 firearms were registered as of June 30, 2018. An application that is being processed is not considered "registered." An assault weapon would only be registered if the applicant meets all the firearm and background requirements and is approved by the Department.

3. 1,373 applications were rejected as of July 11, 2018.

4. 52,443 applications are still being processed by the Department as of July 11, 2018.

5. We cannot provide you with an estimate on the time it takes to review and make a determination on an assault weapon registration application because it varies greatly depending on the circumstances.

6. Please find enclosed the information you seek.

Sincerely,

ROBERT D. WILSON
Deputy Attorney General

For XAVIER BECERRA
Attorney General

Enclosure

# EXHIBIT E

State of California Department of Justice

XAVIER BECERRA

*Attorney General*

Search

Translate Website | Traducir Sitio Web

# Bullet Button Assault Weapon

Home / Firearms / *Bullet Button Assault Weapon*

## California Firearms Application Reporting System (CFARS)

The Department is currently experiencing a high volume of users attempting to register their assault weapons.

If you are experiencing difficulty processing an application in CFARS, please try the trouble shooting options listed below.

Troubleshooting Tips:

- Clear your browser history. This can be done by selecting Shift + Ctrl + Delete on your keyboard. Be sure to clear your Cache, Cookies and Form & Search History.
- Use a different web browser such as, Internet Explorer or Mozilla FireFox. Mozilla FireFox is the preferred web browser to process an application in

CFARS.

- Change computers and/or networks (WiFi, cellular network, etc.)
- If you are still unable to submit your registration, you may try accessing the system at a later time.

**REMINDER:** The last day to submit a bullet button assault weapon registration is **Saturday, June 30, 2018.** The Customer Support Center is available to assist the public between the hours of 8:00 am – 5:00 pm, Monday – Friday only. However, staff will be available to assist with bullet button assault weapon registrations and assault weapon serial number requests via email communication on Saturday, June 30, 2018 until 11:59:59 pm by contacting awr@doj.ca.gov.

## REMINDER: ASSAULT WEAPON REGISTRATION ENDS AT 11:59:59 P.M. ON JUNE 30, 2018.

All applications for assault weapon registration must be submitted by this deadline. No applications will be accepted thereafter (see Penal Code section 30900(b)(1) and California Code of Regulations, title 11, division 5, chapter 39, section 5469).

**NOTE:** If you are in lawful possession of a bullet button assault weapon that is a Firearm Manufactured By Unlicensed Subject (FMBUS), you must obtain a DOJ-issued serial number by completing form BOF 1008 and emailing it to DOJSerialNumber@doj.ca.gov. The serial number issuance process is **separate** from the assault weapon registration process and **must be completed before the assault weapon registration application will be accepted by DOJ.**

**Do I need to register my bullet button firearm?**

Assembly Bill 1135 and Senate Bill 880 require that any person who, from January 1, 2001, to December 31, 2016, inclusive, lawfully possessed an assault weapon that does not have a fixed magazine, as defined in Penal Code section 30515, including those weapons with an ammunition feeding device that can be readily removed from the firearm with the use of a tool (commonly referred to as a bullet-button) must register the firearm before January 1, 2018. However, Assembly Bill 103 has since extended the registration period from January 1, 2018 to **July 1, 2018.**

Assembly Bill 1135 and Senate Bill 880 also define the meaning of "fixed magazine" to mean an ammunition feeding device contained in, or permanently attached to, a firearm in such a manner that the device cannot be removed without disassembly of the firearm action.

This legislation closes the "bullet button" loop hole and categorizes "bullet button" firearms as assault weapons. The adopted regulations for bullet button assault weapon registration contains additional information on registration requirements.

**What is considered an "assault weapon"?**

Pursuant to Assembly Bill 1135 (Stats. 2016, ch. 40) and Senate Bill 880 (Stats. 2016, ch. 48) effective January 1, 2017, the definition of "assault weapon" is revised to mean the following:

**RIFLES**

a. A semiautomatic, centerfire rifle that does not have a fixed magazine but has any one of the following:
    i. A pistol grip that protrudes conspicuously beneath the action of the weapon.
    ii. A thumbhole stock.

    iii.  A folding or telescoping stock.

    iv.  A grenade launcher or flare launcher.

    v.  A flash suppressor.

    vi.  A forward pistol grip.

b.  A semiautomatic, centerfire rifle that has a fixed magazine with the capacity to accept more than 10 rounds.

c.  A semiautomatic, centerfire rifle that has an overall length of less than 30 inches.

**PISTOLS**

a.  A semiautomatic pistol that does not have a fixed magazine but has any one of the following:

    i.  A threaded barrel, capable of accepting a flash suppressor, forward handgrip, or silencer.

    ii.  A second handgrip.

    iii.  A shroud that is attached to, or partially or completely encircles, the barrel that allows the bearer to fire the weapon without burning the bearer's hand, except a slide that encloses the barrel.

    iv.  The capacity to accept a detachable magazine at some location outside of the pistol grip.

b.  A semiautomatic pistol with a fixed magazine that has the capacity to accept more than 10 rounds.

**SHOTGUNS**

a.  A semiautomatic shotgun that has both of the following:

    i.  A folding or telescoping stock.

    ii.  A pistol grip that protrudes conspicuously beneath the action of the weapon, thumbhole stock, or vertical handgrip.

b.  A semiautomatic shotgun that has the ability to accept a detachable magazine.

c. Any shotgun with a revolving cylinder.

**Do I need a DOJ Serial Number?**

Pursuant to California Code of Regulations, title 11, section 5474.2 a person in possession of a Firearm Manufactured By Unlicensed Subject (FMBUS) must seek a Department issued serial number prior to initiating the assault weapon registration process.

Applicants seeking a serial number shall complete a New Serial Number Application (BOF 1008) and submit it to the Department per the instructions on the form. For instructions on how to complete the application, refer to the New Serial Number Form Instructions. For additional information, please contact the Bureau of Firearms Assault Weapon Registration Serial Number at: DOJserialnumber@doj.ca.gov.

**Where can I register my assault weapon?**

All registrations must be submitted electronically, through the California Firearms Application Reporting System (CFARS) at https://cfars.doj.ca.gov. The registration fee is $15 per person (transaction). To submit your application you will need:

- At least 4 photos of the firearm you intend to register (see sample photos)
    - Close-up of the bullet button style magazine on the firearm.
    - Stock to barrel (with the firearm lying horizontally on a flat surface).
    - Left side of the receiver/frame.
    - Right side of the receiver/frame.
- Proof of residency, if submitting a joint registration.
- Military permanent duty station orders indicating assignment within California, if using a military ID to register. Active duty military spouse ID is not acceptable.

A CFARS Assault Weapon Registration Public User Guide is available for information on how to submit an assault weapon registration electronically.

**Where can I find additional information about bullet button assault weapons?**

Additional information can be found within the Bullet Button Assault Weapons Frequently Asked Questions.

**Additional Bureau of Firearms Links**

1. California Firearms Application Reporting System (CFARS)
2. Frequently Asked Questions
3. Forms and Publications
4. Firearms Reporting & Law Enforcement Gun Release Application
5. Assault Weapons Identification Guide
6. California Firearms Laws Summary
7. Firearms Information for New California Residents
8. Contact Us

## Bureau of Firearms

Firearms Home

California Firearms Laws Summary, pdf (revised 2016)

FAQs

Forms and Publications

Becoming a Firearm Dealer and/or Ammunition Vendor in California

Firearm Safety Certificate Program, DOJ Certified Instructor Information and Comparable Entities

Certificate of Eligibility Information and Application Process

Bullet Button Assault Weapon Information and Registration Process

Firearms Reporting & Law Enforcement Gun Release Application

Firearm Regulations/Rulemaking Activities

California Code of Regulations

Roster of Firearm Safety Devices Certified for Sale

Roster of Handguns Certified for Sale

Unique Serial Number Application (USNA) Process

Contact Us



**STATE OF CALIFORNIA DEPARTMENT OF JUSTICE**
**OFFICE OF THE ATTORNEY GENERAL**

Search

**WHO WE ARE**

About AG Xavier Becerra

History of the Office

Organization of the Office

## WHAT WE DO

Public Safety

Opinions and Quo Warranto

Research

Children & Families

Civil Rights

Consumer Protection

Environment & Public Health

Tobacco Directory

## OPEN GOVERNMENT

Ballot Initiatives

Conflicts of Interest

Criminal Justice Statistics

Meetings and Public Notices

OpenJustice Initiative

Public Records

Publications

Regulations

## Memorial

Agents Fallen in the Line of Duty

## Vote

Register to Vote

## WHAT WE'RE WORKING ON

21st Century Policing

Children's Rights

Consumer Protection and Economic Opportunity

Environmental Justice

Equality

Health Care

Immigration

OpenJustice

**MEDIA**

Consumer Alerts

Press Releases

Media Library

**CAREERS**

Getting a State Job

Examinations

Job Vacancies

Internships & Student Positions

Attorney General's Honors Program

Earl Warren Solicitor General Fellowship

Office of the Attorney General        Accessibility        Privacy Policy        Conditions of Use        Disclaimer

© 2018 DOJ

George M. Lee (SBN 172982)
Douglas A. Applegate (SBN 142000)
SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
601 Montgomery Street, Suite 2000
San Francisco, CA 94111
Phone: (415) 979-0500
Fax: (415) 979-0511

Raymond M. DiGuiseppe (SBN 228457)
THE DIGUISEPPE LAW FIRM, P.C.
2 North Front Street, Fifth Floor
Wilmington, NC 28401
Phone: (910) 713-8804
Fax: (910) 672-7705

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF SHASTA**

HARRY SHARP, et al.,

Plaintiffs and Petitioners,

vs.

XAVIER BECERRA, in his official capacity as Attorney General of California, et al.,

Defendants and Respondents.

Case No. 190350

**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR ISSUANCE OF A PRELIMINARY INJUNCTION**

**[CCP § 527(a)]**

Date: Sept. 10, 2018
Time: 8:30 a.m.
Dept. 08
Judge: Hon. Tamara L. Wood

On September 10, 2018, the court heard the motion of plaintiffs Harry Sharp, et al. for the issuance of a preliminary injunction, made pursuant to Code of Civil Procedure § 527(a), Hon. Tamara L. Wood presiding. All parties were represented by their counsel of record. The court reviewed all papers submitted in support of, and in opposition to, the plaintiffs' motion, and heard the argument of counsel thereon. The matter having been submitted, the court finds good cause and hereby ORDERS as follows:

//

//

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

**STATEWIDE PRELIMINARY INJUNCTIVE RELIEF GRANTED PURSUANT TO GOV. CODE § 6707**

1. Plaintiffs' motion for a preliminary injunction is GRANTED. Plaintiffs have shown a likelihood of prevailing on the merits of their claims, and that mandamus, declaratory and injunctive relief should and likely will be granted in plaintiffs' favor, on the grounds that the California Department of Justice, charged with establishing and making available a public-facing Internet registration system for certain assault weapons, pursuant to Pen. Code § 30900(b)(2)-(5), closed and refused to accept any assault weapon registrations beyond midnight on July 1, 2018 (the statutory deadline imposed by Pen. Code §§ 30680(c) and 30900(b)(1)) ("Deadline"). The Court grants plaintiffs' request for judicial notice, and finds that the last day to submit registration forms to the DOJ fell on a Saturday, June 30, 2018. Accordingly, and by operation of law, Gov. Code § 6707, the last day to submit registration applications with the DOJ should have been extended to and through the following Monday, July 2, 2018, which the DOJ failed and refused to do. Plaintiffs have also shown that irreparable injury is threatened by the loss of plaintiffs' interests in liberty and property, in the absence of an injunction that would prevent all qualified persons possessing certain assault weapons (defined below) from being subject to arrest, criminal prosecution and/or civil forfeiture. This Court further finds that the balance of harms tips in the plaintiffs' favor. Accordingly, the defendants in this case, California Attorney General Xavier Becerra, in his official capacity as Attorney General of the State of California, Brent Orick, in his official capacity as Acting Chief of the Department of Justice Bureau of Firearms, Joe Dominic, in his official capacity as Chief of the Department of Justice California Justice Information Services Division, and the California Department of Justice (DOJ), their officers, agents, servants, employees, and attorneys, and subdivisions, including: those persons in active concert or participation with them, and those duly sworn state peace officers and federal law enforcement officers who learn of the existence of this injunction order (collectively "Defendants"), are hereby enjoined from enforcing California Penal Code sections 30600

(insofar as the statute would prohibit otherwise lawful transportation activities), and 30605, against any and all persons within this State who: (a) are not prohibited from owning firearms; and (b) lawfully possessed, from January 1, 2001, to December 31, 2016, an assault weapon that does not have a fixed magazine, as defined in Section 30515, including those weapons with an ammunition feeding device that can be readily removed from the firearm with the use of a tool (i.e., "bullet button assault weapons"). This injunction shall remain in force and effect, through the pendency of this case, and until this Court may grant relief to the plaintiffs insofar as they seek to reopen the assault weapon registrations system for a reasonable period of time, and with adequate notice, on such terms that this Court may hereafter approve.

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

**PRELIMINARY INJUNCTIVE RELIEF GRANTED - DUE PROCESS**

2. Plaintiffs have further shown a likelihood of prevailing on the merits of their claims, and that mandamus, declaratory and injunctive relief should and likely will be granted in plaintiffs' favor, on the grounds that the California Department of Justice, charged with establishing and making available a public-facing Internet registration system for certain assault weapons, pursuant to Pen. Code § 30900(b)(2)-(5), failed in its ministerial duties to establish a functional, stable electronic registration system, which was not reasonably accessible to plaintiffs and a class of similarly-situated individuals (defined below). Plaintiffs have established that they, and a class of similarly-situated individuals, had a clear, present and beneficial right in the performance of such duties, and that as a result of such failures, plaintiffs and the class were deprived of due process. Plaintiffs have also shown that irreparable injury is threatened by the loss of plaintiffs' interests in liberty and property, in the absence of an injunction that would prevent all qualified persons possessing certain assault weapons (defined below) from being subject to arrest, criminal prosecution and/or civil forfeiture. This Court further finds that the balance of harms tips in the plaintiffs' favor. Accordingly, the defendants in this case,

■ ■ ■

4. This injunction shall remain in force and effect through the pendency of this case, or until such other time as this Court may determine that the injunction is no longer necessary or appropriate in preventing the harm the injunction is designed to prevent.

5. This injunction shall operate as a defense to any civil enforcement action brought pursuant to Pen. Code § 30800(a), insofar as such action may pertain to assault weapons that may be registered.

6. Plaintiffs are relieved of any requirement to post a bond. [Or, the bond shall be set in the amount of $1.00.]

7. Defendant Becerra shall provide actual notice of this order to all law enforcement personnel under his direction and control who are charged with implementing or enforcing the statutes hereby enjoined. The Attorney General shall file a declaration demonstrating proof of such notice within ten days of the date of this Order.

IT IS SO ORDERED.

Dated: ______________________

______________________________
JUDGE OF THE SUPERIOR COURT

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

POS-040

ATTORNEY OR PARTY WITHOUT ATTORNEY: STATE BAR NO: 172,982
NAME: George M. Lee
FIRM NAME: Seiler Epstein Ziegler & Applegate LLP
STREET ADDRESS: 601 Montgomery Street, Suite 2000
CITY: San Francisco STATE: CA ZIP CODE: 94111
TELEPHONE NO.: (415) 979-0500 FAX NO.: (415) 979-0500
E-MAIL ADDRESS: gml@sezalaw.com
ATTORNEY FOR (name): Plaintiffs Harry Sharp, et al.

FOR COURT USE ONLY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SHASTA
STREET ADDRESS: 1500 Court Street
MAILING ADDRESS:
CITY AND ZIP CODE: Redding, CA 96001
BRANCH NAME:

Plaintiff/Petitioner: Harry Sharp, et al.
Defendant/Respondent: Xavier Becerra, et al.

CASE NUMBER: 190350

JUDICIAL OFFICER:

DEPARTMENT:

## PROOF OF SERVICE—CIVIL

**Check method of service *(only one)*:**

[ ] By Personal Service [ ] By Mail [ ] By Overnight Delivery
[x] By Messenger Service [ ] By Fax

***Do not use this form to show service of a summons and complaint or for electronic service.***
***See USE OF THIS FORM on page 3.***

1. At the time of service I was over 18 years of age **and not a party to this action.**
2. My residence or business address is:
   601 Montgomery Street, Suite 2000, San Francisco, CA 94111
3. [ ] The fax number from which I served the documents is *(complete if service was by fax)*:
4. On *(date)*: August 13, 2018 I served the following **documents** *(specify)*:

   [x] The documents are listed in the *Attachment to Proof of Service–Civil (Documents Served)* (form POS-040(D)).
5. I served the documents on the **person or persons** below, as follows:
   a. Name of person served: Xavier Becerra, in his official capacity as Attorney General of California
   b. [xx] *(Complete if service was by personal service, mail, overnight delivery, or messenger service.)*
   Business or residential address where person was served:
   455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102
   c. [ ] *(Complete if service was by fax.)*
   Fax number where person was served:

   [ ] The names, addresses, and other applicable information about persons served is on the *Attachment to Proof of Service—Civil (Persons Served)* (form POS-040(P)).
6. The documents were served by the following means *(specify)*:
   a. [ ] **By personal service.** I personally delivered the documents to the persons at the addresses listed in item 5. (1) For a party represented by an attorney, delivery was made (a) to the attorney personally; or (b) by leaving the documents at the attorney's office, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office; or (c) if there was no person in the office with whom the notice or papers could be left, by leaving them in a conspicuous place in the office between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening.

Form Approved for Optional Use
Judicial Council of California
POS-040 [Rev. February 1, 2017]

Code of Civil Procedure, §§ 1011, 1013, 1013a, 2015.5; Cal. Rules of Court, rule 2.306
www.courts.ca.gov

| CASE NAME: Harry Sharp, et al. v. Xavier Becerra, et al. | CASE NUMBER: 190350 |
|---|---|

6. b. [ ] **By United States mail.** I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses in item 5 and *(specify one)*:

   (1) [ ] deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid.

   (2) [ ] placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

   I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at *(city and state):*

c. [ ] **By overnight delivery.** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses in item 5. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

d. [X] **By messenger service.** I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed in item 5 and providing them to a professional messenger service for service. *(A declaration by the messenger must accompany this Proof of Service or be contained in the Declaration of Messenger below.)*

e. [ ] **By fax transmission.** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed in item 5. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: August 13, 2018

Frances Kearney
(TYPE OR PRINT NAME OF DECLARANT)

[signature]
(SIGNATURE OF DECLARANT)

*(If item 6d above is checked, the declaration below must be completed or a separate declaration from a messenger must be attached.)*

## DECLARATION OF MESSENGER

[X] **By personal service.** I personally delivered the envelope or package received from the declarant above to the persons at the addresses listed in item 5. (1) For a party represented by an attorney, delivery was made (a) to the attorney personally; or (b) by leaving the documents at the attorney's office, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office; or (c) if there was no person in the office with whom the notice or papers could be left, by leaving them in a conspicuous place in the office between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening.

At the time of service, I was over 18 years of age. I am not a party to the above-referenced legal proceeding.

I served the envelope or package, as stated above, on *(date):* August 13, 2018

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

(NAME OF DECLARANT)

(SIGNATURE OF DECLARANT)

POS-040(D)

| SHORT TITLE: Harry Sharp, et al. v. Xavier Becerra, et al. | CASE NUMBER: 190350 |
| --- | --- |

ATTACHMENT TO PROOF OF SERVICE—CIVIL (DOCUMENTS SERVED)

*(This Attachment is for use with form POS-040)*

**The documents that were served are as follows *(describe each document specifically)*:**

Notice of Motion and Motion of Plaintiffs for Issuance of a Preliminary Injunction

Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Issuance of Preliminary Injunction

Declaration of Plaintiff/Petitioner Harry Sharp in Support of Plaintiffs' Motion for Issuance of Preliminary Injunction

Declaration of Plaintiff/Petitioner David Ajirogi in Support of Plaintiffs' Motion for Issuance of Preliminary Injunction

Declaration of Plaintiff/Petitioner Ryan Gilardy in Support of Plaintiffs' Motion for Issuance of Preliminary Injunction

Declaration of Plaintiff/Petitioner Terry Jahraus in Support of Plaintiffs' Motion for Issuance of Preliminary Injunction

Declaration of Plaintiff/Petitioner Darin Price in Support of Plaintiffs' Motion for Issuance of Preliminary Injunction

Declaration of Plaintiff/Petitioner Todd Feltman in Support of Plaintiffs' Motion for Issuance of Preliminary Injunction

Declaration of Plaintiff/Petitioner David Kuehl in Support of Plaintiffs' Motion for Issuance of Preliminary Injunction

Declaration of Plaintiff/Petitioner Michael D. Miyabara-McCaskey in Support of Plaintiffs' Motion for Issuance of Preliminary Injunction

Declaration of George M. Lee in Support of Plaintiffs' Motion for Issuance of Preliminary Injunction

[Proposed] Order Granting Plaintiffs' Motion for Issuance of a Preliminary Injunction

Form Approved for Optional Use
Judicial Council of California
POS-040(D) [New January 1, 2005]

ATTACHMENT TO PROOF OF SERVICE—CIVIL (DOCUMENTS SERVED)
(Proof of Service)

Page ___ of ___

POS-040

ATTORNEY OR PARTY WITHOUT ATTORNEY: STATE BAR NO: 172,982
NAME: George M. Lee
FIRM NAME: Seiler Epstein Ziegler & Applegate LLP
STREET ADDRESS: 601 Montgomery Street, Suite 2000
CITY: San Francisco STATE: CA ZIP CODE: 94111
TELEPHONE NO.: (415) 979-0500 FAX NO.: (415) 979-0500
E-MAIL ADDRESS: gml@sezalaw.com
ATTORNEY FOR (name): Plaintiffs Harry Sharp, et al.

FOR COURT USE ONLY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SHASTA
STREET ADDRESS: 1500 Court Street
MAILING ADDRESS:
CITY AND ZIP CODE: Redding, CA 96001
BRANCH NAME:

Plaintiff/Petitioner: Harry Sharp, et al.
Defendant/Respondent: Xavier Becerra, et al.

CASE NUMBER: 190350

JUDICIAL OFFICER:

DEPARTMENT:

## PROOF OF SERVICE—CIVIL

**Check method of service *(only one)*:**

☐ By Personal Service ☐ By Mail ☐ By Overnight Delivery
☒ By Messenger Service ☐ By Fax

***Do not use this form to show service of a summons and complaint or for electronic service. See USE OF THIS FORM on page 3.***

1. At the time of service I was over 18 years of age and not a party to this action.
2. My residence or business address is:
601 Montgomery Street, Suite 2000, San Francisco, CA 94111
3. ☐ The fax number from which I served the documents is *(complete if service was by fax)*:
4. On *(date)*: August 13, 2018 I served the following **documents** *(specify)*:

☒ The documents are listed in the *Attachment to Proof of Service–Civil (Documents Served)* (form POS-040(D)).

5. I served the documents on the **person or persons** below, as follows:
   a. Name of person served: Brent E. Orick, in his official capacity as Acting Chief of the Department of Justice Bureau of Firearms
   b. ☒ *(Complete if service was by personal service, mail, overnight delivery, or messenger service.)*
   Business or residential address where person was served:
   455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102
   c. ☐ *(Complete if service was by fax.)*
   Fax number where person was served:

   ☐ The names, addresses, and other applicable information about persons served is on the *Attachment to Proof of Service—Civil (Persons Served)* (form POS-040(P)).
6. The documents were served by the following means *(specify)*:
   a. ☐ **By personal service.** I personally delivered the documents to the persons at the addresses listed in item 5. (1) For a party represented by an attorney, delivery was made (a) to the attorney personally; or (b) by leaving the documents at the attorney's office, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office; or (c) if there was no person in the office with whom the notice or papers could be left, by leaving them in a conspicuous place in the office between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening.

Page 1 of 3

Form Approved for Optional Use
Judicial Council of California
POS-040 [Rev. February 1, 2017]

PROOF OF SERVICE—CIVIL
(Proof of Service)

Code of Civil Procedure, §§ 1011, 1013, 1013a, 2015.5. Cal Rules of Court, rule 2.306
www.courts.ca.gov

| CASE NAME: Harry Sharp, et al. v. Xavier Becerra, et al. | CASE NUMBER: 190350 |
|---|---|

6. b. [ ] **By United States mail.** I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses in item 5 and *(specify one)*:

   (1) [ ] deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid.

   (2) [ ] placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

   I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at *(city and state):*

c. [ ] **By overnight delivery.** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses in item 5. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

d. [X] **By messenger service.** I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed in item 5 and providing them to a professional messenger service for service. *(A declaration by the messenger must accompany this Proof of Service or be contained in the Declaration of Messenger below.)*

e. [ ] **By fax transmission.** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed in item 5. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: August 13, 2018

Frances Kearney
(TYPE OR PRINT NAME OF DECLARANT)

[signature]
(SIGNATURE OF DECLARANT)

*(If item 6d above is checked, the declaration below must be completed or a separate declaration from a messenger must be attached.)*

## DECLARATION OF MESSENGER

[X] **By personal service.** I personally delivered the envelope or package received from the declarant above to the persons at the addresses listed in item 5. (1) For a party represented by an attorney, delivery was made (a) to the attorney personally; or (b) by leaving the documents at the attorney's office, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office; or (c) if there was no person in the office with whom the notice or papers could be left, by leaving them in a conspicuous place in the office between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening.

At the time of service, I was over 18 years of age. I am not a party to the above-referenced legal proceeding.

I served the envelope or package, as stated above, on *(date):* August 13, 2018

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

(NAME OF DECLARANT)

(SIGNATURE OF DECLARANT)

| SHORT TITLE: Harry Sharp, et al. v. Xavier Becerra, et al. | CASE NUMBER: 190350 |
|---|---|

ATTACHMENT TO PROOF OF SERVICE—CIVIL (DOCUMENTS SERVED)

*(This Attachment is for use with form POS-040)*

**The documents that were served are as follows *(describe each document specifically)*:**

Notice of Motion and Motion of Plaintiffs for Issuance of a Preliminary Injunction

Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Issuance of Preliminary Injunction

Declaration of Plaintiff/Petitioner Harry Sharp in Support of Plaintiffs' Motion for Issuance of Preliminary Injunction

Declaration of Plaintiff/Petitioner David Ajirogi in Support of Plaintiffs' Motion for Issuance of Preliminary Injunction

Declaration of Plaintiff/Petitioner Ryan Gilardy in Support of Plaintiffs' Motion for Issuance of Preliminary Injunction

Declaration of Plaintiff/Petitioner Terry Jahraus in Support of Plaintiffs' Motion for Issuance of Preliminary Injunction

Declaration of Plaintiff/Petitioner Darin Price in Support of Plaintiffs' Motion for Issuance of Preliminary Injunction

Declaration of Plaintiff/Petitioner Todd Feltman in Support of Plaintiffs' Motion for Issuance of Preliminary Injunction

Declaration of Plaintiff/Petitioner David Kuehl in Support of Plaintiffs' Motion for Issuance of Preliminary Injunction

Declaration of Plaintiff/Petitioner Michael D. Miyabara-McCaskey in Support of Plaintiffs' Motion for Issuance of Preliminary Injunction

Declaration of George M. Lee in Support of Plaintiffs' Motion for Issuance of Preliminary Injunction

[Proposed] Order Granting Plaintiffs' Motion for Issuance of a Preliminary Injunction

ATTORNEY OR PARTY WITHOUT ATTORNEY: STATE BAR NO: 172,982
NAME: George M. Lee
FIRM NAME: Seiler Epstein Ziegler & Applegate LLP
STREET ADDRESS: 601 Montgomery Street, Suite 2000
CITY: San Francisco STATE: CA ZIP CODE: 94111
TELEPHONE NO.: (415) 979-0500 FAX NO.: (415) 979-0500
E-MAIL ADDRESS: gml@sezalaw.com
ATTORNEY FOR (name): Plaintiffs Harry Sharp, et al.

FOR COURT USE ONLY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SHASTA
STREET ADDRESS: 1500 Court Street
MAILING ADDRESS:
CITY AND ZIP CODE: Redding, CA 96001
BRANCH NAME:

Plaintiff/Petitioner: Harry Sharp, et al.
Defendant/Respondent: Xavier Becerra, et al.

CASE NUMBER: 190350

JUDICIAL OFFICER:

DEPARTMENT:

## PROOF OF SERVICE—CIVIL

**Check method of service *(only one)*:**

[ ] By Personal Service [ ] By Mail [ ] By Overnight Delivery
[X] By Messenger Service [ ] By Fax

***Do not use this form to show service of a summons and complaint or for electronic service. See USE OF THIS FORM on page 3.***

1. At the time of service I was over 18 years of age and not a party to this action.
2. My residence or business address is:
   601 Montgomery Street, Suite 2000, San Francisco, CA 94111
3. [ ] The fax number from which I served the documents is *(complete if service was by fax)*:
4. On *(date)*: August 13, 2018 I served the following documents *(specify)*:

   [X] The documents are listed in the *Attachment to Proof of Service–Civil (Documents Served)* (form POS-040(D)).
5. I served the documents on the person or persons below, as follows:
   a. Name of person served: Joe Dominic, in his official capacity as Chief of the Department of Justice California Justice Information Services Division
   b. [X] *(Complete if service was by personal service, mail, overnight delivery, or messenger service.)*
   Business or residential address where person was served:
   455 Golden Gate Avenue, Suite 1000, San Francisco, CA 94102
   c. [ ] *(Complete if service was by fax.)*
   Fax number where person was served:

   [ ] The names, addresses, and other applicable information about persons served is on the *Attachment to Proof of Service—Civil (Persons Served)* (form POS-040(P)).
6. The documents were served by the following means *(specify)*:
   a. [ ] **By personal service.** I personally delivered the documents to the persons at the addresses listed in item 5. (1) For a party represented by an attorney, delivery was made (a) to the attorney personally; or (b) by leaving the documents at the attorney's office, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office; or (c) if there was no person in the office with whom the notice or papers could be left, by leaving them in a conspicuous place in the office between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening.

Page 1 of 3

Form Approved for Optional Use
Judicial Council of California
POS-040 [Rev. February 1, 2017]

PROOF OF SERVICE—CIVIL
(Proof of Service)

Code of Civil Procedure, §§ 1011, 1013, 1013a, 2015.5; Cal Rules of Court, rule 2.306
www.courts.ca.gov

| CASE NAME: Harry Sharp, et al. v. Xavier Becerra, et al. | CASE NUMBER: 190350 |
|---|---|

6. b. [ ] **By United States mail.** I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses in item 5 and *(specify one)*:

   (1) [ ] deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid.

   (2) [ ] placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

   I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at *(city and state)*:

c. [ ] **By overnight delivery.** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses in item 5. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

d. [X] **By messenger service.** I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed in item 5 and providing them to a professional messenger service for service. *(A declaration by the messenger must accompany this Proof of Service or be contained in the Declaration of Messenger below.)*

e. [ ] **By fax transmission.** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed in item 5. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: August 13, 2018

Frances Kearney
(TYPE OR PRINT NAME OF DECLARANT)

(SIGNATURE OF DECLARANT)

*(If item 6d above is checked, the declaration below must be completed or a separate declaration from a messenger must be attached.)*

## DECLARATION OF MESSENGER

[X] **By personal service.** I personally delivered the envelope or package received from the declarant above to the persons at the addresses listed in item 5. (1) For a party represented by an attorney, delivery was made (a) to the attorney personally; or (b) by leaving the documents at the attorney's office, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office; or (c) if there was no person in the office with whom the notice or papers could be left, by leaving them in a conspicuous place in the office between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening.

At the time of service, I was over 18 years of age. I am not a party to the above-referenced legal proceeding.

I served the envelope or package, as stated above, on *(date)*: August 13, 2018

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

(NAME OF DECLARANT)

(SIGNATURE OF DECLARANT)

POS-040(D)

| SHORT TITLE: Harry Sharp, et al. v. Xavier Becerra, et al. | CASE NUMBER: 190350 |
|---|---|

ATTACHMENT TO PROOF OF SERVICE—CIVIL (DOCUMENTS SERVED)

*(This Attachment is for use with form POS-040)*

**The documents that were served are as follows *(describe each document specifically)*:**

Notice of Motion and Motion of Plaintiffs for Issuance of a Preliminary Injunction

Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Issuance of Preliminary Injunction

Declaration of Plaintiff/Petitioner Harry Sharp in Support of Plaintiffs' Motion for Issuance of Preliminary Injunction

Declaration of Plaintiff/Petitioner David Ajirogi in Support of Plaintiffs' Motion for Issuance of Preliminary Injunction

Declaration of Plaintiff/Petitioner Ryan Gilardy in Support of Plaintiffs' Motion for Issuance of Preliminary Injunction

Declaration of Plaintiff/Petitioner Terry Jahraus in Support of Plaintiffs' Motion for Issuance of Preliminary Injunction

Declaration of Plaintiff/Petitioner Darin Price in Support of Plaintiffs' Motion for Issuance of Preliminary Injunction

Declaration of Plaintiff/Petitioner Todd Feltman in Support of Plaintiffs' Motion for Issuance of Preliminary Injunction

Declaration of Plaintiff/Petitioner David Kuehl in Support of Plaintiffs' Motion for Issuance of Preliminary Injunction

Declaration of Plaintiff/Petitioner Michael D. Miyabara-McCaskey in Support of Plaintiffs' Motion for Issuance of Preliminary Injunction

Declaration of George M. Lee in Support of Plaintiffs' Motion for Issuance of Preliminary Injunction

[Proposed] Order Granting Plaintiffs' Motion for Issuance of a Preliminary Injunction

Form Approved for Optional Use Judicial Council of California POS-040(D) [New January 1, 2005]

ATTACHMENT TO PROOF OF SERVICE—CIVIL (DOCUMENTS SERVED) (Proof of Service)

Page ___ of ___

POS-040

| ATTORNEY OR PARTY WITHOUT ATTORNEY: STATE BAR NO: 172,982<br>NAME: George M. Lee<br>FIRM NAME: Seiler Epstein Ziegler & Applegate LLP<br>STREET ADDRESS: 601 Montgomery Street, Suite 2000<br>CITY: San Francisco STATE: CA ZIP CODE: 94111<br>TELEPHONE NO.: (415) 979-0500 FAX NO.: (415) 979-0500<br>E-MAIL ADDRESS: gml@sezalaw.com<br>ATTORNEY FOR (name): Plaintiffs Harry Sharp, et al. | FOR COURT USE ONLY |
|---|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SHASTA<br>STREET ADDRESS: 1500 Court Street<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: Redding, CA 96001<br>BRANCH NAME: | |
| Plaintiff/Petitioner: Harry Sharp, et al.<br>Defendant/Respondent: Xavier Becerra, et al. | CASE NUMBER:<br>190350 |
| **PROOF OF SERVICE—CIVIL**<br>**Check method of service *(only one)*:**<br>[ ] By Personal Service [ ] By Mail [ ] By Overnight Delivery<br>[X] By Messenger Service [ ] By Fax | JUDICIAL OFFICER:<br><br>DEPARTMENT: |

***Do not use this form to show service of a summons and complaint or for electronic service.***
***See USE OF THIS FORM on page 3.***

1. At the time of service I was over 18 years of age and not a party to this action.
2. My residence or business address is:
   601 Montgomery Street, Suite 2000, San Francisco, CA 94111
3. [ ] The fax number from which I served the documents is *(complete if service was by fax)*:
4. On *(date)*: August 13, 2018 I served the following documents *(specify)*:

   [X] The documents are listed in the *Attachment to Proof of Service–Civil (Documents Served)* (form POS-040(D)).
5. I served the documents on the person or persons below, as follows:
   a. Name of person served: California Department of Justice
   b. [xx] *(Complete if service was by personal service, mail, overnight delivery, or messenger service.)*
      Business or residential address where person was served:
      455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102
   c. [ ] *(Complete if service was by fax.)*
      Fax number where person was served:

   [ ] The names, addresses, and other applicable information about persons served is on the *Attachment to Proof of Service—Civil (Persons Served)* (form POS-040(P)).
6. The documents were served by the following means *(specify)*:
   a. [ ] **By personal service.** I personally delivered the documents to the persons at the addresses listed in item 5. (1) For a party represented by an attorney, delivery was made (a) to the attorney personally; or (b) by leaving the documents at the attorney's office, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office; or (c) if there was no person in the office with whom the notice or papers could be left, by leaving them in a conspicuous place in the office between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening.

Page 1 of 3

Form Approved for Optional Use
Judicial Council of California
POS-040 [Rev. February 1, 2017]

PROOF OF SERVICE—CIVIL
(Proof of Service)

Code of Civil Procedure, §§ 1011, 1013, 1013a, 2015.5; Cal. Rules of Court, rule 2.306
www.courts.ca.gov

| CASE NAME: Harry Sharp, et al. v. Xavier Becerra, et al. | CASE NUMBER: 190350 |
|---|---|

6. b. [ ] **By United States mail.** I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses in item 5 and *(specify one)*:

   (1) [ ] deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid.

   (2) [ ] placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

   I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at *(city and state)*:

c. [ ] **By overnight delivery.** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses in item 5. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

d. [X] **By messenger service.** I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed in item 5 and providing them to a professional messenger service for service. *(A declaration by the messenger must accompany this Proof of Service or be contained in the Declaration of Messenger below.)*

e. [ ] **By fax transmission.** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed in item 5. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: August 13, 2018

Frances Kearney
(TYPE OR PRINT NAME OF DECLARANT)

(SIGNATURE OF DECLARANT)

*(If item 6d above is checked, the declaration below must be completed or a separate declaration from a messenger must be attached.)*

**DECLARATION OF MESSENGER**

[X] **By personal service.** I personally delivered the envelope or package received from the declarant above to the persons at the addresses listed in item 5. (1) For a party represented by an attorney, delivery was made (a) to the attorney personally; or (b) by leaving the documents at the attorney's office, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office; or (c) if there was no person in the office with whom the notice or papers could be left, by leaving them in a conspicuous place in the office between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening.

At the time of service, I was over 18 years of age. I am not a party to the above-referenced legal proceeding.

I served the envelope or package, as stated above, on *(date)*: August 13, 2018

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

(NAME OF DECLARANT)

(SIGNATURE OF DECLARANT)

POS-040(D)

| SHORT TITLE: Harry Sharp, et al. v. Xavier Becerra, et al. | CASE NUMBER: 190350 |
|---|---|

## ATTACHMENT TO PROOF OF SERVICE—CIVIL (DOCUMENTS SERVED)

*(This Attachment is for use with form POS-040)*

**The documents that were served are as follows *(describe each document specifically)*:**

Notice of Motion and Motion of Plaintiffs for Issuance of a Preliminary Injunction

Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Issuance of Preliminary Injunction

Declaration of Plaintiff/Petitioner Harry Sharp in Support of Plaintiffs' Motion for Issuance of Preliminary Injunction

Declaration of Plaintiff/Petitioner David Ajirogi in Support of Plaintiffs' Motion for Issuance of Preliminary Injunction

Declaration of Plaintiff/Petitioner Ryan Gilardy in Support of Plaintiffs' Motion for Issuance of Preliminary Injunction

Declaration of Plaintiff/Petitioner Terry Jahraus in Support of Plaintiffs' Motion for Issuance of Preliminary Injunction

Declaration of Plaintiff/Petitioner Darin Price in Support of Plaintiffs' Motion for Issuance of Preliminary Injunction

Declaration of Plaintiff/Petitioner Todd Feltman in Support of Plaintiffs' Motion for Issuance of Preliminary Injunction

Declaration of Plaintiff/Petitioner David Kuehl in Support of Plaintiffs' Motion for Issuance of Preliminary Injunction

Declaration of Plaintiff/Petitioner Michael D. Miyabara-McCaskey in Support of Plaintiffs' Motion for Issuance of Preliminary Injunction

Declaration of George M. Lee in Support of Plaintiffs' Motion for Issuance of Preliminary Injunction

[Proposed] Order Granting Plaintiffs' Motion for Issuance of a Preliminary Injunction

Form Approved for Optional Use
Judicial Council of California
POS-040(D) [New January 1, 2005]

ATTACHMENT TO PROOF OF SERVICE—CIVIL (DOCUMENTS SERVED)
(Proof of Service)

Page ____ of ____