1
2
3

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
George M. Lee (SBN 172982)
Douglas A. Applegate (SBN 142000)
601 Montgomery Street, Suite 2000
San Francisco, CA 94111

4
5

THE DIGUISEPPE LAW FIRM, P.C.
Raymond M. DiGuiseppe (SBN 228457)
2 North Front Street, Fifth Floor
Wilmington, NC 28401

6
7
8
9

BENBROOK LAW GROUP, PC
BRADLEY A. BENBROOK (SBN 177786)
STEPHEN M. DUVERNAY (SBN 250957)
400 Capitol Mall, Suite 2530
Sacramento, CA  95814
Telephone: (916) 447-4900

10

Attorneys for Plaintiffs and Petitioners

11

12

13

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

14
15
16
17
18

HARRY SHARP; DAVID AJIROGI; RYAN
GILARDY; DARIN PRINCE; TODD
FELTMAN; DAVID KUEH; TERRY
JAHRAUS; THE CALGUNS FOUNDATION;
FIREARMS POLICY COALITION;
FIREARMS POLICY FOUNDATION;
SECOND AMENDMENT FOUNDATION;
and MADISON SOCIETY FOUNDATION,

19
20

Plaintiffs and Petitioners,

21

v.

22
23
24
25
26
27
28

XAVIER BECERRA, in his official capacity as
Attorney General of California; BRENT E.
ORICK, in his official capacity as Acting Chief
of the Department of Justice Bureau of
Firearms; JOE DOMINIC, in his official
capacity as Chief of the Department of Justice
California Justice Information Services
Division; CALIFORNIA DEPARTMENT OF
JUSTICE; and DOES 1 through 20, inclusive,

Respondents.

Case No. 2:18-cv-02317-MCE-AC

**SECOND AMENDED PETITION FOR
WRIT OF MANDATE AND
COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF**

1        Plaintiffs and petitioners HARRY SHARP, DAVID AJIROGI, RYAN GILARDY,

2  DARIN PRINCE, TODD FELTMAN, DAVID KUEHL, TERRY JAHRAUS, THE CALGUNS

3  FOUNDATION, FIREARMS POLICY COALITION, FIREARMS POLICY FOUNDATION,

4  SECOND AMENDMENT FOUNDATION, and MADISON SOCIETY FOUNDATION

5  (collectively, "Plaintiffs") by and through their undersigned counsel, who hereby complain and

6  allege as follows:[1]

7                           **INTRODUCTION**

8        1.      Since 1989, the State of California has regulated the acquisition, possession, and

9  use of firearms using an ever-expanding definition of so-called "assault weapons" and by and

10  through an aggressive enforcement of an ever-expanding statutory scheme.  In 2016, the State

11  once again broadened the "assault weapons" statutes to include more semi-automatic firearms

12  with a particular magazine locking device, colloquially known as "bullet buttons."[2]

13        2.      The possession, transportation, and use of unregistered "assault weapons"

14  imposes criminal liability on gun owners who are not otherwise prohibited from possessing or

15  acquiring firearms, in addition to the potential loss of their property, fines, and standing in the

16  community.  Thus, some California citizens and gun owners, desiring to abide by the laws of our

17  State, endeavored to register their eligible firearms in accordance with the statutory registration

18  mandates of California Penal Code §§ 30680 and 30900(b) so as to remain in good standing with

19  the law.3

---

[1] Defendants have consented to the filing of this amended complaint. FRCP 15(a))(2); *see also* Dkt. 8 (stipulation and order granting leave to file amended complaint).

[2]A Bullet Button is a particular patented and trademarked device that functions to provide a mechanical barrier between a firearm's normal magazine release function and the user, requiring a bullet, tool, or other object to affirmatively engage the release mechanism and allow the magazine to be removed from the firearm body.  Individual plaintiff Darin Prince, in fact, was an early innovator and inventor of the Bullet Button device.  Today, while the DOJ's regulations refer to such devices generally as "bullet button" devices, they are more properly considered as a class of "magazine locking devices" of which the Bullet Button is but one brand and type. For consistency, all references to "bullet button" are generic and refer to the broader class of "magazine locking devices" invented for compliance with prior statutes and regulations or, where the context so indicates, to the firearms on which such devices are installed.

3 All further undesignated references are to the California Penal Code.

3.      But many gun owners not prohibited from possessing or acquiring firearms, including the Individual Plaintiffs, those similarly situated, and many members of the Institutional Plaintiffs here, have been unfairly and improperly prevented from registering their eligible firearms in accordance with the law because Defendants Xavier Becerra, California Attorney General; Brent Orick, Acting Chief of the California Department of Justice (DOJ) Bureau of Firearms; Joe Dominic, Chief of the DOJ, California Justice Information Services Division; and the DOJ itself (collectively "Defendants") have utterly failed and refused to perform their statutorily-imposed duties to the People of the State of California to establish, implement, and maintain a properly functioning, consistently reliable Internet-based system for processing the registration of such firearms throughout the registration period.  Defendants knew or reasonably should have known that the system  they established, implemented, and maintained for these purposes, the California Firearms Application Reporting System (CFARS), was flawed, intermittently inoperable, and ultimately incapable of providing a reliable means for the public to register their firearms in accordance with the law, and therefore they knew or reasonably should have known that the failures of this system effectively prevented Plaintiffs and many other similarly situated individuals from properly and timely registering their firearms in accordance with the law.

4.      The situation came to an ignominious conclusion the week before the statutory registration deadline.  During the week of Monday, June 25, 2018, through Saturday, June 30, 2018, the statutory deadline, and beyond, the DOJ's registration system was largely inaccessible, and inoperable on a wide variety of ordinary web browsers across the state.  And many users who were able to access the site were still prevented from completing the process before the Internet-based registration system crashed, obliterating the hours-long progress they had made. As a result, many individuals, including the Individual Plaintiffs herein, were prevented from timely registering before July 1 in compliance with the law, due to no fault of their own.

5.      In this case, Plaintiffs seek an un-extraordinary result, compelled by the basic tenets of due process: That they simply be allowed to register their eligible firearms and comply with the law, and that Defendants, and their officers and agents, similarly comply with the law

1    by allowing such registrations and ensuring they are properly and timely processed through a

2    functioning Internet-based system as they were required by statute to do.

3        6.      Plaintiffs seek mandamus, declaratory, and injunctive relief as necessary and

4    proper to remedy the Defendants' failures to permit and provide for a functional registration

5    system throughout the registration period, including and especially during the last week of June

6    2018.

7                        **JURISDICTION AND VENUE**

8        7.      This case raises questions under the Fourteenth Amendment to the United States

9    Constitution.  This Court has jurisdiction over Plaintiffs' claims for relief under federal law

10   pursuant to 28 U.S.C. § 1331.  This Court has supplemental jurisdiction over Plaintiffs' state-law

11   claims pursuant to 28 U.S.C. § 1367(a).

12       8.      Venue is proper under 28 U.S.C. § 1391(v).  Assignment to the Sacramento

13   division is proper pursuant to Local Rule 120(d), because it the case was initiated in Shasta

14   County.

15                              **THE PARTIES**

16   **A.     Individual Plaintiffs**

17       9.      All Individual Plaintiffs herein are natural persons, citizens of the United States,

18   and citizens and residents of the State of California, in the counties specified below.

19       10.     All Individual Plaintiffs are otherwise eligible to possess and acquire firearms

20   under applicable state and federal laws, including those firearms which the State now classifies

21   as "bullet button assault weapons" under the regulatory scheme enacted in 2016 under Senate

22   Bill 880 and Assembly Bill 1135 (2015-2016 Reg. Sess.)

23       11.     Plaintiff Harry Sharp is an individual, a law-abiding gun owner and a resident of

24   the County of Shasta, California, and is and has been otherwise eligible to possess and acquire

25   firearms under applicable state and federal laws.  He is also a member and supporter of

26   Institutional Plaintiffs Firearms Policy Coalition, Firearms Policy Foundation, and The Calguns

27   Foundation.  For over 30 years, he has held a license to carry a concealed firearm (CCW) issued

28   to him by his county sheriff, after proving "good cause" and his good moral character to his

licensing authority, successfully completing a course of training on the law and firearms proficiency, and passing an extensive Live Scan-based background check.  Plaintiff Sharp also is the registered owner of several Registered Assault Weapons (RAWs) which were legally owned and registered during a prior assault weapons registration period, in or before 2001.  Prior to January 1, 2017, and as a private citizen, plaintiff Sharp legally owned four semiautomatic firearms which the DOJ now labels "bullet button assault weapons" and has declared, in its regulations, and elsewhere, must be registered.  On or about June 29, 2018, and continuing through June 30, 2018, before the end of the registration period, Plaintiff Sharp attempted to register said firearms in accordance with the statutes and DOJ's regulations, using the DOJ's CFARS system.  But the CFARS registration system was inaccessible and defective in his multiple attempts to use it during this period, and Plaintiff Sharp was thus unable to register three of the four firearms because of Defendants' failures described herein.

12.    Plaintiff David Ajirogi is an individual, a law-abiding gun owner and a resident of the County of Sacramento, California, and is and has been otherwise eligible to possess and acquire firearms under applicable state and federal laws.  He is also a member and supporter of Institutional Plaintiffs Firearms Policy Coalition, Firearms Policy Foundation, and The Calguns Foundation.  Prior to January 1, 2017, and as a private citizen, plaintiff Ajirogi legally owned three semiautomatic firearms which the DOJ now labels as "bullet button assault weapons" and has declared, in its regulations, and elsewhere, must be registered.  On or about June 28, 2018, and again on June 29, 2018, before the end of the registration period, Plaintiff Ajirogi attempted to register said firearms in accordance with the statutes and DOJ's regulations, using the DOJ's CFARS system.  But the CFARS registration system was inaccessible and defective throughout the periods of his registration attempts and, as a result, Plaintiff Ajirogi was unable to register the three firearms.

13.    Plaintiff Ryan Gilardy is an individual, a law-abiding gun owner and a resident of the County of Contra Costa, California, and is and has been otherwise eligible to possess and acquire firearms under applicable state and federal laws.  He is also a member and supporter of Institutional Plaintiffs Firearms Policy Coalition, Firearms Policy Foundation, and The Calguns

SECOND AMENDED PETITION FOR WRIT OF MANDATE AND
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1   Foundation.  Prior to January 1, 2017, and as a private citizen, plaintiff Gilardy legally owned

2   three semiautomatic firearms which the DOJ now labels as "bullet button assault weapons" and

3   has declared, in its regulations, and elsewhere, must be registered.  Beginning on or about June

4   22, 2018, and continuing through June 30, 2018, before the end of the registration period,

5   Plaintiff Gilardy attempted to register said firearms in accordance with the statutes and DOJ's

6   regulations, using the DOJ's CFARS system.  But the CFARS registration system was

7   inaccessible and defective throughout the periods of his registration attempts and, as a result,

8   Plaintiff Gilardy was unable to register two of the three firearms.

9       14.     Plaintiff Darin Prince is an individual, a law-abiding gun owner and a resident of

10  the County of San Diego, California, and is and has been otherwise eligible to possess and

11  acquire firearms under applicable state and federal laws.  He is also a member and supporter of

12  Institutional Plaintiffs Firearms Policy Coalition, Firearms Policy Foundation, and The Calguns

13  Foundation. Plaintiff Prince has a Certificate of Eligibility (COE) issued to him by the California

14  Department of Justice, and has held a license to carry a concealed firearm (CCW) issued to him

15  by his county sheriff, after proving "good cause" and his good moral character to his licensing

16  authority, successfully completing a course of training on the law and firearms proficiency, and

17  passing an extensive Live Scan-based background check.  Prior to January 1, 2017, and as a

18  private citizen, plaintiff Prince legally owned several semiautomatic firearms which the DOJ

19  now labels as "bullet button assault weapons" and which it has declared, in its regulations, and

20  elsewhere, must be registered.  On or about June 30, 2018, before the end of the registration

21  period, Plaintiff Prince attempted to register said firearms in accordance with the statutes and

22  DOJ's regulations, using the DOJ's CFARS system.  But the CFARS registration system was

23  inaccessible and defective throughout this period, and Plaintiff Prince was unable to register his

24  firearms.

25      15.     Plaintiff Todd Feltman is an individual, a law-abiding gun owner and a resident of

26  the County of San Diego, California, and is and has been otherwise eligible to possess and

27  acquire firearms under applicable state and federal laws.  He is also a member and supporter of

28  Institutional Plaintiffs Firearms Policy Coalition, Firearms Policy Foundation, and The Calguns

1  Foundation.  Prior to January 1, 2017, and as a private citizen, plaintiff Feltman legally owned

2  several semiautomatic firearms which the DOJ now labels as "bullet button assault weapons"

3  and has declared, in its regulations, and elsewhere, must be registered.  On or about June 30,

4  2018, before the end of the registration period, Plaintiff Feltman attempted to register said

5  firearms in accordance with the statutes and DOJ's regulations, using the DOJ's CFARS system.

6  But the CFARS registration system was inaccessible and defective throughout the period of his

7  registration attempt and, as a result, Plaintiff Feltman was unable to register the firearms.

8       16.    Plaintiff David Kuehl is an individual, law-abiding gun owner and a resident of

9  the County of Fresno, California, and is and has been otherwise eligible to possess and acquire

10  firearms under applicable state and federal laws.  He is also a member and supporter of

11  Institutional Plaintiffs Firearms Policy Coalition, Firearms Policy Foundation, and The Calguns

12  Foundation.  Plaintiff Kuehl has held a license to carry a concealed firearm (CCW) issued to him

13  by his county sheriff, after proving "good cause" and his good moral character to his licensing

14  authority, successfully completing a course of training on the law and firearms proficiency, and

15  passing an extensive Live Scan-based background check.  Plaintiff Kuehl is a military veteran,

16  having been honorably discharged by the U.S. Coast Guard in or about 1988, and is a retired

17  firefighter.  Prior to January 1, 2017, and as a private citizen, plaintiff Kuehl legally owned a

18  semiautomatic firearm which the DOJ now labels as "bullet button assault weapon" and has

19  declared, in its regulations, and elsewhere, must be registered.  On or about June 30, 2018, before

20  the end of the registration period, Plaintiff Kuehl attempted to register said firearm in accordance

21  with the statutes and DOJ's regulations, using the DOJ's CFARS system.  But the CFARS

22  registration system was inaccessible and defective throughout this period and, as a result,

23  Plaintiff Kuehl was unable to register his firearm.

24       17.    Plaintiff Terry Jahraus is an individual, law-abiding gun owner and a resident of

25  the County of Los Angeles, California, and is and has been otherwise eligible to possess and

26  acquire firearms under applicable state and federal laws.  He is also a member and supporter of

27  Institutional Plaintiffs Firearms Policy Coalition, Firearms Policy Foundation, and The Calguns

28  Foundation.  Plaintiff Jahraus is a Vietnam Veteran, having served in the U.S. Marine Corps in

that theater from 1969-1971, and was honorably discharged in 1971.  Prior to January 1, 2017, and as a private citizen, plaintiff Jahraus legally owned a semiautomatic firearm which the DOJ now labels as "bullet button assault weapon" and has declared, in its regulations, and elsewhere, must be registered.  On or about June 30, 2018, before the end of the registration period, Plaintiff Jahraus attempted to register said firearm in accordance with the statutes and DOJ's regulations, using the DOJ's CFARS system.  But the CFARS registration system was inaccessible and defective throughout this period and, as a result, Plaintiff Jahraus was unable to register his firearm.

**B.      Institutional Plaintiffs**

18.     Plaintiff The Calguns Foundation ("CGF") is a 501(c)(3) non-profit organization incorporated under the laws of California with its principal place of business in Sacramento, California.  CGF is dedicated to promoting education for all stakeholders about California and federal firearm laws, rights and privileges, and to defending and protecting the civil rights of California gun owners.  CGF represents its members and supporters, who include California firearm retailers and gun owners throughout the State, including Shasta County, and brings this action on behalf of itself, its members, supporters who possess all the indicia of membership, and similarly situated members of the public.  Many of CGF's individual members have been adversely and directly affected by Defendants' failure to permit or provide for timely and proper registrations of "bullet button assault weapons" as required by statute, and all of CGF's individual members have been and continue to be adversely and directly affected by Defendants' ongoing deliberate indifference to the resulting plight of law-abiding California gun owners who have been prevented from complying with the law.  Defendants' actions and failures alleged herein have caused CGF to dedicate resources that would otherwise be available for other purposes to protect the rights and property of its members, supporters, and the general public, including by and through this action.

19.     Plaintiff Firearms Policy Coalition, Inc. ("FPC") is a 501(c)(4) non-profit organization incorporated under the laws of Delaware with its principal place of business in Sacramento, California, with members residing both within and outside of this state, including in

1  Shasta County, California.  FPC serves its members and the public through direct legislative

2  advocacy, grassroots advocacy, legal efforts, research, education, operation of a Hotline, and

3  other programs.  The purposes of FPC include defending the United States Constitution and the

4  People's rights, privileges, and immunities deeply rooted in the Nation's history and tradition,

5  especially the fundamental right to keep and bear arms.  FPC represents its members and

6  supporters, who include California firearm retailers and gun owners, and brings this action on

7  behalf of itself, its members, supporters who possess all the indicia of membership, and similarly

8  situated members of the public.  Many of FPC's individual California members have been

9  adversely and directly affected by Defendants' failure to permit registrations of "bullet button

10  assault weapons" as required by statute, and all of FPC's individual members have been and

11  continue to be adversely and directly affected by Defendants' ongoing deliberate indifference to

12  the resulting plight of law-abiding California gun owners who have been prevented from

13  complying with the law.  Defendants' actions and failures alleged herein have caused FPC to

14  dedicate resources that would otherwise be available for other purposes to protect the rights and

15  property of its members, supporters, and the general public, including by and through this action.

16      20.     Plaintiff Firearms Policy Foundation, Inc. ("FPF") is a 501(c)(3) non-profit

17  organization incorporated under the laws of Delaware with its principal place of business in

18  Sacramento, California, with members residing both within and outside of this state, including in

19  Shasta County, California.  FPF serves to defend and advance constitutional rights through

20  charitable purposes, with a focus on the fundamental, individual right to keep and bear arms.

21  FPF represents its members and supporters, who include California firearm retailers and gun

22  owners, and brings this action on behalf of itself, its members, supporters who possess all the

23  indicia of membership, and similarly situated members of the public.  Many of FPF's individual

24  California members have been adversely and directly affected by Defendants' failure to permit

25  registrations of "bullet button assault weapons" as required by statute, and all of FPF's individual

26  members have been and continue to be adversely and directly affected by Defendants' ongoing

27  deliberate indifference to the resulting plight of law-abiding California gun owners who have

28  been prevented from complying with the law.  Defendants' actions and failures alleged herein

SECOND AMENDED PETITION FOR WRIT OF MANDATE AND
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1  have caused FPF to dedicate resources that would otherwise be available for other purposes to

2  protect the rights and property of its members, supporters, and the general public, including by

3  and through this action.

4       21.    Plaintiff Second Amendment Foundation, Inc. ("SAF") is a 501(c)(3) non-profit

5  organization incorporated under the laws of Washington with its principal place of business in

6  Bellevue, Washington. SAF has over 650,000 members and supporters nationwide, including

7  many in California. The purposes of SAF include education, research, publishing, and legal

8  action focusing on the constitutional right to privately own and possess firearms under the

9  Second Amendment, and the consequences of gun control. SAF brings this action on behalf of

10  itself, its members, supporters who possess all the indicia of membership, and similarly situated

11  members of the public.  Many of SAF's individual California members have been adversely and

12  directly affected by Defendants' failure to permit registrations of "bullet button assault weapons"

13  as required by statute, and all of SAF's individual members have been and continue to be

14  adversely and directly affected by Defendants' ongoing deliberate indifference to the resulting

15  plight of law-abiding California gun owners who have been prevented from complying with the

16  law.  Defendants' actions and failures alleged herein have caused SAF to dedicate resources that

17  would otherwise be available for other purposes to protect the rights and property of its

18  members, supporters, and the general public, including by and through this action.

19       22.    Plaintiff Madison Society Foundation ("MSF") is a (501)(c)(3) non-profit

20  organization whose purpose is preserving and protecting the legal and constitutional right to keep

21  and bear arms for its members and all responsible law-abiding citizens.  MSF believes that

22  individual constitutional rights should not be infringed to deny citizens their life, liberty, and

23  pursuit of happiness.  MSF is headquartered in Stanislaus County, and the majority of its

24  members are California residents.  The focus of MSF's litigation efforts is challenging violations

25  of the right to keep and bear arms.  Many of MSF's individual California members have been

26  adversely and directly affected by Defendants' failure to permit registrations of "bullet button

27  assault weapons" as required by statute, and all of MSF's individual members have been and

28  continue to be adversely and directly affected by Defendants' ongoing deliberate indifference to

1 | the resulting plight of law-abiding California gun owners who have been prevented from

2 | complying with the law.  Defendants' actions and failures alleged herein have caused MSF to

3 | dedicate resources that would otherwise be available for other purposes to protect the rights and

4 | property of its members, supporters, and the general public, including by and through this action.

5 |      22.    Individual Plaintiffs Sharp, Ajirogi, Gilardy, Prince, Feltman, Kuehl, and Jahraus

6 | are bringing this claim on behalf of themselves, and as representatives of a class of similar

7 | individuals consisting of law-abiding California residents too numerous to individually name or

8 | include as parties to this action.  These are: California citizens who are not otherwise prohibited

9 | or exempt under the "assault weapon" registration laws, and who lawfully and legally possessed

10 | firearms that the State of California has retroactively classified as "assault weapons" under Penal

11 | Code § 30515(a) that must be registered as such pursuant to Penal Code sections 30680 and

12 | 30900(b), but who have been precluded from doing so due to the Defendants' actions and

13 | failures, including but not limited to the inaccessibility, defects, and/or non-functionality of the

14 | DOJ's CFARS-based registration system during the registration period ending at midnight on

15 | June 30, 2018.

16 |      23.    Institutional Plaintiffs CGF, FPC, FPF, SAF, and MSF are bringing this claim as

17 | public interest organizations, whose California members similarly lawfully possessed

18 | retroactively-defined "bullet button assault weapons" in this state, prior to December 31, 2016,

19 | and who represent the interests of those similarly situated individuals too numerous to

20 | individually name or include as parties to this action. These are: California citizens who are not

21 | otherwise prohibited or exempt under the "assault weapon" registration laws, and who lawfully

22 | and legally possessed firearms that the State of California has retroactively classified as "assault

23 | weapons" under Penal Code § 30515(a) that must be registered as such pursuant to Penal Code

24 | sections 30680 and 30900(b), but who have been precluded from doing so due to the Defendants'

25 | actions and failures, including but not limited to the inaccessibility, defects, and/or non-

26 | functionality of the DOJ's CFARS-based registration system during the registration period

27 | ending at midnight on June 30, 2018.

28 |      24.    As to all claims made in a representative capacity herein, there are common

1   questions of law and fact that substantially affect the rights, duties, and liabilities of many

2   similarly situated California residents who knowingly or unknowingly are subject to the statutes.

3   The relief sought in this action is declaratory, injunctive, and mandamus in nature, and the action

4   involves matters of substantial public interest.  Considerations of necessity, convenience, and

5   justice justify relief to Individual and Institutional Plaintiffs in a representative capacity.

6   Furthermore, to the extent it becomes necessary or appropriate, the Institutional Plaintiffs are

7   uniquely able to communicate with and provide notice to their thousands of California members

8   and constituents who are or would be part of any identifiable class of individuals for whose

9   benefit this Court may grant such relief.

10  **C.     Defendants**

11          25.     Defendant Xavier Becerra is the Attorney General of the State of California, and

12  he is sued herein in his official capacity. The Attorney General is the chief law enforcement

13  officer of the state, and the head of the DOJ. It is his duty to ensure that California's laws are

14  uniformly and adequately enforced. The DOJ and its Bureau of Firearms regulate and enforce

15  state law related to firearms, and the registration of statutorily-classified "assault weapons."

16          26.     Defendant Brent E. Orick is Acting Chief of the DOJ's Bureau of Firearms. Upon

17  information and belief, Orick reports to Attorney General Becerra, and he is responsible for the

18  various operations of the Bureau of Firearms, including the implementation and enforcement of

19  the statutes and regulations governing sales, use, ownership, transfer, and "assault weapon"

20  registration of firearms. He is sued herein in his official capacity.

21          27.     Defendant Joe Dominic is Chief of the DOJ's California Justice Information

22  Services (CJIS) Division. Upon information and belief, Dominic reports to Attorney General

23  Becerra, and he is responsible for the various technology operations of the DOJ, including the

24  implementation and maintenance of the technology systems used by the Bureau of Firearms and

25  the public. He is sued herein in his official capacity.

26          28.     The California Department of Justice (DOJ) is a state agency charged with

27  responsibility of enforcing state statutes and promulgating and enforcing rules and regulations

28  authorized by and designed to effectuate the law related to the registration of firearms as

1    statutorily-classified "assault weapons." [4]

2        29.     Plaintiffs are unaware of the true names and capacities of those defendants sued

3    herein as DOES 1 through 20 inclusive, and therefore sue such defendants by fictitious names.

4    Plaintiffs are informed and believe and based upon such information and belief allege that each

5    of the defendants designated as DOES 1 through 20, inclusive, is responsible in some manner for

6    promulgating, administering, enforcing, or otherwise implementing the DOJ systems at issue

7    herein.  Plaintiffs will amend this complaint to include the true names of DOES 1 through 20

8    inclusive as soon as is practicable after such names and capacities become known to them.

9    **OVERVIEW OF THE RELEVANT STATUTORY ANDREGULATORY SCHEMES**

10   **AND SUMMARY OF PLAINTIFFS' CLAIMS**

11   **A.     The General Scheme of the AWCA**

12       30.     Since the dawn of the Roberti-Roos Assault Weapons Control Act in 1989

13   (AWCA), California gun owners have undoubtedly faced significant and growing restrictions

14   upon their ability to acquire and use many popular firearms, in common use for lawful purposes

15   like self-defense and sport, as certain lawmakers have succeeded in branding specified types or

16   configurations of firearms as "assault weapons" and then incrementally expanding that list to

17   include more and more firearms. (Pen. Code § 30505(a).)  The product of these gun control

18   legislative campaigns is that – subject to very limited exceptions (e.g., §§ 30625-30630, 30645-

19   30655, 31000-31005) – for the vast majority of ordinary citizens in California, it is generally

20   illegal to manufacture, distribute, transport, sell, give, lend, or otherwise transfer an increasingly

21   expansive list of firearms (on pain of a felony conviction and prison time (§ 30600, subd. (a)),

22   and even to simply "possess" one of these legislatively-classified "assault weapons" (§ 30605,

23   subd. (a)).

24       31.     The State Legislature has indeed built a statutory scheme especially onerous and

25   hostile to the millions of California gun owners simply seeking to exercise their constitutionally-

26

27   ───────────────

28   [4]Because Defendants Becerra, Orick, and Dominic are sued in their official capacities as heads of
     the DOJ, all references herein to "DOJ" should be construed to include each and all of them.

protected fundamental right to keep and bear arms for lawful purposes.  But along the way, the Legislature has engrafted into the scheme a few inherent limitations on the reach of the various prohibitions, establishing the four corners of the State's statutory power to restrict the ability of private citizens in their access and use of firearms deemed "assault weapons."  Each time the Legislature has succeeded in achieving statutory amendments expanding the list of "assault weapons," it has made the minimal concession of leaving a small "grandfathering" window for lawful owners of those guns that the legislation retroactively deemed constitutional artifacts that they prefer their citizens not acquire – but only if they register the firearm with the DOJ as an "assault weapon" within a specified period time, can they continue to maintain "possession" or use of it.

**B.      The Pre-Existing Categories of "Assault Weapons"**

32.      These different phases of restrictions over time have led to the development of three generally recognized categories of "assault weapons," the first two of which ("Category 1" and "Category 2" assault weapons) were created based upon specific makes, models, or series of firearms.  (See Pen. Code §§ 30510, 30960(a); former §§ 12275.5, 12276, 12276.5; 11 CCR § 5499.)[5]  "Category 3" firearms, established in 1999, targeted semiautomatic centerfire rifles, pistols, and shotguns based upon certain features, configurations, and/or functionalities, as opposed to certain makes, models, or series.  (Pen. Code § 30515; former § 12276.1.)

**C.      The Registration Mandate for the New Category of "Assault Weapons"**

33.      In June of 2016, through Assembly Bill 1135 and Senate Bill 880 (2015-2016 Reg. Sess.), the Legislature once again amended the AWCA statutory scheme, changing the definitional terms regarding magazines for semiautomatic rifles and pistols in section 30515 to

---

[5]The "Category 2" classification includes certain makes and models that the DOJ itself had at one point added to the list through 11 CCR § 5499. However, in 2006, the Legislature repealed the DOJ's authority to unilaterally add firearms to the list of "assault weapons" (Pen. Code § 30520(b)(1); A.B. 2178, 2005-2006 Reg. Sess.), and the classification of such firearms by makes, models, or series has since remained static.

SECOND AMENDED PETITION FOR WRIT OF MANDATE AND
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

create new "assault weapon" classifications for those firearms, and adding sections 30680 and 30900 to create a concomitant registration requirement for any continued possession of these newly classified firearms. The amendments became effective January 1, 2017. (Stats. 2016, ch. 40 § 3 (AB 1135); Stats. 2016, ch. 48 § 3 (SB 880).)  As so modified, the new "assault weapon" classification now applies to any semiautomatic centerfire rifle and pistol that (1) "does not have a *fixed magazine*" and (2) possesses one of the other previously specified features.  For these purposes, "fixed magazine" is now defined as "an ammunition feeding device contained in, or permanently attached to, a firearm in such a manner that the device cannot be removed without disassembly of the firearm action."  (Pen. Code § 30515, subd. (b).)

34.     The Legislature specifically incorporated section 30515's assault weapon classifications into the registration requirement of section 30900, subdivision (b)(1), which expressly states that it applies only to a "person who, from January 1, 2001, to December 31, 2016, inclusive, lawfully possessed an assault weapon that does not have a fixed magazine, *as defined in Section 30515*, including those weapons with an ammunition feeding device that can be readily removed from the firearm with the use of a tool."  (Pen. Code § 30900(b)(1), emphasis added.)  In other words, "bullet button assault weapons" could be kept, but must be registered, in accordance with the regulations that the DOJ was required adopt pursuant to section 30900, subdivision (b)(5).  This section further and specifically required the DOJ to establish an electronic, Internet-based system through which the public could register these firearms by providing the statutorily-required firearm identifying information and pay a fee necessary to cover "the reasonable processing costs." (§§ 30900, subds. (b)(2)-(4).) The statutory deadline to register such firearms, and avoid criminal liability for their continued possession without such registration, was June 30, 2018 (after an extension of the original deadline of December 31, 2017, under AB 103 (2017). (§ 30680).

## FACTS COMMON TO ALL CLAIMS

35.     According to the DOJ's data tracking the "Dealer's Record of Sale" (DROS) transactions (online at https://openjustice.doj.ca.gov/firearms/overview), more than 5.1 million

long guns have been sold in California since the last registration period closed in 2000.  It is estimated that a substantial number of those firearms are subject to the now retroactively-expanded definition of "assault weapon" under AB 1135 and SB 880, i.e., semiautomatic firearms with "bullet button" devices.  On information and belief, tens of thousands of Californians (and perhaps more) possessed in the State hundreds of thousands of firearms during the period of January 1, 2001, and December 31, 2016, that have now been reclassified as "bullet button assault weapons" subject to the requirements of Penal Code § 30900(b), rendering all their possessors potentially subject to significant criminal liabilities for failure to comply with the registration mandate.

36.     Pursuant to the clear statutory mandate described above, Defendants established an Internet-based registration system, ostensibly to permit the required registration of those bullet-buttoned firearms now retroactively deemed as "assault weapons" pursuant to AB 1135 and SB 880.  This system was created to exist within a pre-existing system created, maintained, and serviced by the DOJ—the California Firearms Application Reporting System (CFARS).  Using CFARS, in theory, would and should have allowed a user to access a separate link to the "Assault Weapon Registration Form (Assembly Bill 1135/Senate Bill 880)."  On information and belief, the DOJ's Assault Weapon Registration Form system "went live" (i.e., was made available to the public) on or about August 3, 2017 – leaving less than twelve months for potentially hundreds of thousands of California gun owners to discover the laws and perform their duties required thereunder.

37.     Those with firearms retroactively branded "bullet button assault weapons" originally had until January 1, 2018, to register them.  However, given the DOJ's substantial delays in getting its registration-related regulations issued, the registration deadline was extended to July 1, 2018, by virtue of Assembly Bill 103. See Pen. Code § 30680(c).[6]

38.     The Office of the Attorney General itself emphasized the importance of citizens' compliance with the June 30, 2018 deadline, with a dramatic "countdown clock" display on the

---

[6]And since their issuance, these regulations have been challenged as illegally promulgated. (See e.g., *Villanueva v. Becerra,* Fresno County Superior Court Case No. 17CECG03093.)

SECOND AMENDED PETITION FOR WRIT OF MANDATE AND
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    Attorney General's website, showing the number of weeks, days, hours, minutes, and seconds

2    ticking away until literally the last second of the registration period (i.e., June 30, 2018 at

3    11:59:59 PST).  A true and correct copy of the DOJ's "countdown clock" illustrating this

4    countdown is attached hereto as **Exhibit A**.  The DOJ's website further contained a direct link to

5    the CFARS web page, ostensibly as the vehicle for citizens to "beat the clock" and avoid the

6    serious consequences of failing to timely register, at https://cfars.doj.ca.gov/login.do.  And,

7    according to the DOJ's website, the registration window would close on June 30, 2018 at

8    11:59:59 p.m. PST.

9          39.     Defendants knew or reasonably should have known that the CFARS-based

10   "assault weapon" registration system was substantially understaffed and incapable of properly

11   and timely accepting and processing the registration applications the DOJ was charged with

12   processing.  Even before the statutory deadline was extended, the DOJ had requested $2,588,000

13   and 27 positions to implement the statutorily-mandated Internet-based assault weapons

14   registration system.  These funds were approved, in the form of a "loan" from the Firearms

15   Safety and Enforcement Special Fund, to be repaid by June 30, 2021, in part, from the $15.00

16   per-person fees to be assessed to each registrant and other funds from the DROS Special Fund.

17         40.     But in a declaration filed under oath in a separate civil action challenging the

18   assault weapons regulations generally, DOJ Special Agent Supervisor Blake Graham, who

19   "helped to design the public-facing application for submitting registration of bullet button assault

20   weapons electronically via the Internet," declared that as of March 2018, all "[t]he programmers

21   who [had] created this system for DOJ [were] [then] working on other legislatively mandated

22   projects that [were] also on tight deadlines."  In addition, Agent Graham explained that the "DOJ

23   d[id] not have funding for [any] modification of the electronic registration system" and the DOJ

24   had received funding for only 24 analysts and two managers to process registration applications.

25   Graham described these as temporary positions that would be eliminated after one year.

26         41.     This situation inevitably led to a backlog of assault weapons registration forms

27   and processing, even well before the statutory deadline.  In response to a Public Record Act

28   (PRA) request, the DOJ admitted that as early as February 1, 2018, more than five months after

SECOND AMENDED PETITION FOR WRIT OF MANDATE AND
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1 the system had gone "live," the system was already backlogged with 4,653 applications to

2 register "bullet button assault weapons," of which it had only been able to approve about 2,500.

3 (See **Exhibit B**.)  Thus, even then, Defendants knew that only a small fraction of the expected

4 intended registrants had used the system up to that point in time, and did or reasonably should

5 have known that an increasing number of registrants would be using the system throughout the

6 end of the registration period and that many of those registrants would therefore encounter

7 insurmountable technical obstacles in attempting to properly and timely register.

8   42. DOJ acknowledged that by the end of the registration deadline, June 30, 2018, a

9 total of 68,848 applications to register "bullet button assault weapons" had been submitted for

10 registration in CFARS, and of those only 13,519 had been registered.  As of June 30, 2018, the

11 DOJ was experiencing a backlog of 52,443 applications which were still in process.  (See

12 **Exhibit C**.)  Therefore, it is clear that a substantial increase in the number of "bullet button

13 assault weapon" registrations was being experienced as the statutory deadline approached and

14 Defendants knew or reasonably should have known that their continuing failure or refusal to

15 establish, implement, and maintain a functional registration system in accordance with their

16 statutorily-mandated duties would effectively prevent Plaintiffs and those similarly situated from

17 properly and timely registering their firearms on or before July 1, 2018, as required by law.

18   43. This situation, predictably, came to a head during the end of the registration

19 period, and particularly the last week of June 2018, when thousands of gun owners, desiring to

20 comply with the law – the importance of which the Attorney General had so dramatically

21 emphasized with his intimidating "countdown clock" – attempted to use the registration system

22 in CFARS, either directly or through the link provided in the DOJ Bureau of Firearms website,

23 only to be shut out by acts, defects, and failures of Defendants in connection with the registration

24 system.  For many, the system simply "timed out" and failed while they were attempting to

25 access it, denying access altogether.  Others got as far as filling out some or all of the DOJ-

26 required form submissions (including providing multiple digital photographs that were <u>not</u>

27 required by statute, but for some reason, were required by the DOJ), only to have the system fail

28 when clicking the "submit" application action button to complete registration – blocking the

1   registrations at the last second after their lengthy and good faith efforts to submit their completed

2   applications that complied with all requirements of the registration process.

3          44.     On information and belief, Plaintiffs allege that many (perhaps hundreds of)

4   Californians sent the DOJ communications about and reports of various problems with and

5   defects in its systems and the performance of their statutorily-required duties throughout the

6   registration period. Defendants thus knew or reasonably should have known of the material

7   defects, flaws, and limitations (including but not limited to capacity) of the registration system.

8   But Defendants failed or refused to remedy such defects, failures, and limitations, thus causing

9   many California gun owners to be prevented from registering their eligible "bullet button assault

10  weapon" firearms before the end of the registration period.

11         45.     And thus, on June 29, 2018, while plaintiff Harry Sharp was able to log onto

12  CFARS from his home in Redding, California, and even successfully submit a registration form

13  for one of four his "bullet button assault weapon" firearms, when he attempted to register the

14  remaining three immediately thereafter at approximately 3:30 p.m., he was prevented from doing

15  so.  Specifically, after plaintiff Sharp had attached the required pictures of his other registration-

16  eligible firearms and attempted to "submit" them, the system "froze up," and failed, and he could

17  not complete these applications.  Plaintiff Sharp attempted to complete the remaining three

18  registrations the following day, on June 30, 2018.  He made at least 50 attempts to use the DOJ's

19  registration systems (in CFARS) for this purpose, investing most of his day attempting these

20  registrations, but to no avail because the DOJ's defective systems remained inaccessible or

21  inoperable.  Plaintiff Sharp attempted to obtain help or technical support from DOJ on at least

22  four occasions, each time being met with an automated, "canned" auto-responder message

23  stating that he had to simply resubmit the forms after clearing out his web browsers and deleting

24  "cookies."  He could not reach a live person at the time.  Plaintiff Sharp followed these

25  automated instructions, and continued attempting to register the remaining firearms, even into

26  the next day, July 1, 2018, but all to no avail.  Finally, Plaintiff Sharp was able to reach someone

27  at the DOJ by phone on Monday, July 2, 2018.  However, this person just told him that it was his

28  responsibility to have complied with the registration mandate by the deadline, and the DOJ

1   would not extend the deadline to submit registration applications.  Thus, as a result of

2   Defendants' fundamentally defective systems and failures, Plaintiff Sharp was unable to submit

3   three of the four registration applications that were necessary for him to comply with the laws

4   and avoid being in violation of the applicable criminal statutes carrying extraordinary penalties,

5   including prison time and loss of property.

6          46.     On June 28, 2018, plaintiff David Ajirogi attempted to register three "bullet

7   button assault weapon" firearms, from his home in Sacramento, California.  All of these firearms

8   had been legally acquired and possessed prior to January 1, 2017, and all information relevant

9   and necessary to uniquely identify these firearms, including the make, model, manufacturer, and

10  serial numbers, was and has been already on file with the DOJ.  However, when he attempted to

11  access the DOJ's registration system on June 28, 2018, after attempting to use an established

12  CFARS account, the crucial link to the Assault Weapons Registration Form was inoperable and

13  he was thus unable to access the required registration form.  Plaintiff Ajirogi continued

14  attempting to access the registration form page/link for approximately 20-30 minutes.  He made

15  several additional attempts on June 29, 2018, but continued to experience the same fundamental

16  problem: the CFARS system would "time out" and fail in the process of attempting to access it.

17  Plaintiff Ajirogi contacted the DOJ for assistance on Friday, June 29, 2018.  The DOJ did not

18  respond to his email inquiry, ever.

19         47.     Approximately *one month* before the statutory registration deadline, Plaintiff

20  Ryan Gilardy contacted the DOJ about his concerns regarding the CFARS system, and the

21  registration process generally.  He spoke to an official at the DOJ who told him that they

22  expected to receive a large number of registrations in the weeks before the deadline.  In fact, the

23  DOJ official had told Plaintiff Gilardy that he could even expect the system to "time out" and fail

24  during the registration process, but was told that if that happened, he would be able to "get

25  through" after several more attempts.  Thus, in anticipation of doing the three firearm

26  registrations he intended, Plaintiff Gilardy gathered all of the required information and

27  paperwork necessary for a joint registration of his "bullet button assault weapon" firearms with

28  his eligible family members, including the photographs required for each firearm.  All of these

SECOND AMENDED PETITION FOR WRIT OF MANDATE AND
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1  firearms had been legally acquired and possessed prior to January 1, 2017.  On or about June 22,

2  2018, Plaintiff Gilardy began the registration process through CFARS. However, upon

3  attempting to submit the information required for joint registration (including proof of residency

4  required for joint registrants), the system "timed out", failed, and prevented him from completing

5  the registration process.  Thereafter, and throughout the entire following week of June 25, 2018,

6  Plaintiff Gilardy made many more attempts to complete the registration process.  Plaintiff

7  Gilardy, who was formerly an information technology ("IT") professional, made sure that he was

8  using up-to-date computer systems and fully-updated web browsers, and he attempted to

9  complete the registration process through multiple computer devices (including "smart" phones

10  easily capable of processing pictures) from multiple locations, including his home in Contra

11  Costa County, using multiple Internet browsers, Internet service providers, and networks, all to

12  no avail.  Plaintiff Gilardy also performed tests of his Internet connections and determined that

13  they were stable and more than technically adequate to perform the registration process.

14  Notwithstanding these repeated and extensive efforts to complete the registration process, he was

15  only able to submit one of the three registrations he had prepared, and that was only after he had

16  abandoned efforts to submit the joint registration (requiring additional information/documents),

17  and only after making at least 14 attempts to register that firearm.  The submission for the other

18  two semiautomatic firearms never went through, due to the system's defects and failures,

19  including "time outs" which would not allow the information to be submitted.  Plaintiff Gilardy

20  spent all week attempting these registrations, including approximately five hours on June 30,

21  2018, alone, to no avail.  As a result of the DOJ system's failures and defects, Plaintiff Gilardy

22  was unable to register two of his firearms that he intended to register jointly with eligible family

23  members.

24         48.      On June 30, 2018, plaintiff Darin Prince attempted to register several "bullet

25  button assault weapon" firearms from his home in San Diego County, California.  All of these

26  firearms had been legally acquired and possessed prior to January 1, 2017, and all information

27  relevant and necessary to uniquely identify these firearms, including the make, model,

28  manufacturer, and serial numbers, was and had already been on file with the DOJ.  However,

1  when he attempted to access the DOJ's systems on June 30, 2018, after using an established

2  CFARS account and after uploading the photographs required for such registration, he was given

3  error messages, due to no fault of his own, and then was unable to proceed further.  Plaintiff

4  Prince then made several additional attempts to register the firearms, but each time was denied

5  by the system (including through "timing out") without being able to submit the registration

6  forms.  He spent a total of approximately six (6) hours attempting to register through CFARS, to

7  no avail.  Plaintiff Prince contacted the DOJ for assistance, but DOJ did not respond to his

8  inquiry.  As a result of Defendants' acts, omissions and failures, and system defects, Plaintiff

9  Prince was unable to register any of the eligible firearms that he intended to register.

10      49.     On June 30, 2018, plaintiff Todd Feltman attempted to register several "bullet

11  button assault weapon" firearms from his home in San Diego County, California.  All of these

12  firearms had been legally acquired and possessed prior to January 1, 2017, and all information

13  relevant and necessary to uniquely identify these firearms, including the make, model,

14  manufacturer, and serial numbers, was and has been already on file with the DOJ.  However,

15  when he attempted to access the DOJ's registration system on June 30, 2018, utilizing an

16  established CFARS account, and after filling out all required information for the first of several

17  firearms, the CFARS system failed upon his attempt to upload and submit the four photographs

18  of the firearms that the DOJ required as a precondition of registration.  Plaintiff Feltman

19  attempted three times to submit the required forms and pictures, only to have the system fail and

20  crash upon submission, requiring him to start over each time.  He even attempted to use different

21  web browsers and different Internet connections, but still to no avail.  Plaintiff Feltman further

22  attempted to contact DOJ regarding its system failures prior to the registration deadline.  The

23  DOJ did not respond to his email inquiry, ever.  As a result of Defendants' acts, omissions, and

24  failures in connection with the system defects, Plaintiff Feltman was unable to register any of the

25  eligible firearms that he intended to register.

26      50.     On June 30, 2018, plaintiff David Kuehl attempted to register a "bullet button

27  assault weapon" from his home in Fresno County, California.  This firearm had been legally

28  acquired and possessed prior to January 1, 2017, and all information relevant and necessary to

SECOND AMENDED PETITION FOR WRIT OF MANDATE AND
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    uniquely identify it, including the make, model, manufacturer, and serial number, was therefore

2    already on file with the DOJ.  However, when he attempted to access the CFARS system on June

3    30, 2018, he was unable to do so, as he received error messages about the website not being

4    available, and he was unable to proceed further.  Plaintiff Kuehl made several attempts to access

5    CFARS on that day, but each time received error messages and could not access the site due to

6    these technical difficulties.  As a result of Defendants' acts, omissions, and failures in connection

7    with the system defects, Plaintiff Kuehl was unable to register his firearm.

8          51.    On June 30, 2018, plaintiff Terry Jahraus learned from watching the news on

9    television that he was required to register "bullet button assault weapons" as such with the DOJ.

10   This was the first he had heard about it.  His firearm, which falls under this new classification,

11   had been legally acquired and possessed prior to January 1, 2017, and all information relevant

12   and necessary to uniquely identify it, including the make, model, manufacturer, and serial

13   number, was therefore already on file with the DOJ.  Nevertheless, he sought to register his

14   firearm as required by this new law.  However, when he attempted to utilize the DOJ's

15   registration systems on June 30, 2018, using an established CFARS account, after he uploaded

16   the required photographs he received error messages, due to no fault of his own, and was unable

17   to proceed further.  Plaintiff Jahraus then made several additional attempts to register the firearm,

18   but each time was denied by the faulty system (including through "timing out") without being

19   able to submit the registration forms.  He spent a total of approximately three (3) hours

20   attempting to register through CFARS, to no avail.  The following Monday, July 2, 2018,

21   Plaintiff Jahraus contacted the DOJ for assistance, but the DOJ official told him, essentially, "it

22   was [his] responsibility to comply with the law [and] that he had all year to do so."  In other

23   words, DOJ blamed him for failing to register, even though its own statutorily-mandated

24   registration system was inaccessible and defective throughout the entire period he had attempted

25   to register it well before the deadline.  As a result of Defendants' acts, omissions, and failures in

26   connection with the system defects, Plaintiff Jahraus was unable to register his firearm.

27         52.    On information and belief, the DOJ received many other requests for such

28   technical assistance and support from those attempting to complete the required registrations

1  during the last week of June 2018, due to the critical failures and technical issues with the

2  registration system and CFARS throughout this period.  On information and belief, in the vast

3  majority of cases, the inquiries to and pleas for help from DOJ were to no avail in attempting to

4  comply with the registration mandate, and the DOJ did not make sufficient staff and technical

5  resources available to address such inquiries and appeals until after the deadline, if at all.  And in

6  some cases, DOJ simply advised the concerned prospective registrants, after the deadline, that it

7  was too late to register because the deadline had already passed.

8       53.     At all times during this last week of June 2018, therefore, Defendants, and each of

9  them, were on clear notice of the critical technical defects blocking an untold number of gun

10  owners not otherwise prohibited from possessing or acquiring firearms from registering their

11  firearms in compliance with the law, including the Plaintiffs herein and many members of the

12  Institutional Plaintiffs.  Yet, they failed and refused to rectify the situation in accordance with

13  their statutorily-imposed duties in carrying out the registration process. Then, immediately after

14  the deadline had passed, right after midnight on July 1, 2018, the DOJ completely shut down the

15  online registration system and refused to extend the registration period notwithstanding the

16  untold number of registrations that could not be completed as a direct result of Defendants' acts,

17  omissions, and failures in connection with the system defects.

18       54.     For past "assault weapon" registration periods, the DOJ was required to "conduct

19  a public education and notification program regarding the registration of assault weapons and the

20  definition of the weapons set forth in Section 30515 and former Section 12276.1," for purposes

21  of facilitating "outreach to local law enforcement agencies and utilization of public service

22  announcements in a variety of media approaches, to ensure maximum publicity..." (Pen. Code §

23  31115.)

24       55.     Institutional Plaintiff FPC, during the legislative cycle, used its own resources to

25  advocate for such education and outreach to help their members and the public know and

26  understand their duties under the new laws that would be enacted by Senate Bill 880 and

27  Assembly Bill 1135. (See e.g., Senate Committee of Public Safety analysis of SB 880 ["By

28  moving the goal posts on millions of its own residents, California would create new criminal

SECOND AMENDED PETITION FOR WRIT OF MANDATE AND
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1  liability for hundreds of thousands of Californians and California visitors -- including shooting

2  sports competitors -- without so much as a simple outreach program, public service

3  announcement, or mandate that DOJ update the years-outdated (and, in some cases, grossly

4  misleading) information it promulgates in its publications and on its website but refuses to

5  correct in spite of the real consequences to law-abiding people."]; Assembly Public Safety

6  Analysis of SB 880 (original formatting modified) ["SB 880 contains no provision for outreach

7  to the millions of Californians who have lawfully acquired firearms that would be subject to SB

8  880's reach.  SB 880 contains no provision for educating law enforcement officers or

9  prosecutors—the very people who will have to interpret and enforce it—which will lead to false

10  arrests and ruined lives."].)

11      56.    For this new "bullet button assault weapon" registration requirement, however,

12  there was no mandate or appropriation for outreach or education for gun owners or law

13  enforcement alike.  Defendants did not undertake any meaningful or sufficient steps to help

14  Californians understand the laws and their requirements to comply with them – beginning with

15  registration – other than the "countdown" timer and a few sentences on a "Firearms" sub-page of

16  its website, of which many of the affected citizens were likely unaware. Thus, the fate of

17  California gun owners and their legal compliance were largely left to "word of mouth."

18      57.    Because of these and other considerations, on information and belief, many gun

19  owners were not able to or did not undertake efforts to begin compliance through registration

20  until the final weeks of the registration period.  And then, they were met with the fundamental

21  failures and defects of the DOJ's registration system that it failed and refused to rectify before

22  the deadline.

23  **<u>FIRST CAUSE OF ACTION</u>**

24  **<u>VIOLATION OF 42 U.S.C. § 1983 (FOURTEENTH AMENDMENT)</u>**

25  **<u>Against All Defendants</u>**

26      58.    Plaintiffs incorporate paragraphs 1 through 58 as if fully set forth herein.

27      59.    "Every person who, under color of [state law] ... subjects, or causes to be

28  subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or

1   immunities secured by the Constitution ... shall be liable to the party injured in an action at law,

2   suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.

3         60.    As the chief law enforcement officer of the state, and the head of the DOJ, it is the

4   duty of Defendant Attorney General Becerra to ensure that California's laws are uniformly and

5   properly enforced, including the registration of statutorily-classified "assault weapons." As the

6   Acting Chief of the DOJ's Bureau of Firearms, Defendant Orick reports to Attorney General

7   Becerra and is responsible for the various operations of the Bureau of Firearms, including the

8   implementation and enforcement of the statutes and regulations governing sales, use, ownership,

9   transfer, and "assault weapon" registration of firearms. Defendant Dominic, Chief of the DOJ's

10  California Justice Information Services (CJIS) Division, reports to Attorney General Becerra and

11  is responsible for the various technology operations of the DOJ, including the implementation

12  and maintenance of the technology systems used by the Bureau of Firearms and the public, like

13  the online registration system that Defendants were required to establish and maintain. And

14  Defendant DOJ itself is the state agency charged with the responsibility of enforcing statutes and

15  promulgating and enforcing rules and regulations authorized by and designed to effectuate the

16  law related to the registration of firearms as statutorily-classified "assault weapons."

17        61.    DOJ, and Defendants Becerra, Orick, and Dominic in their respective official

18  capacities, were individually and collectively responsible for properly establishing,

19  implementing, and maintaining a consistently reliable and functional registration system, for

20  properly supervising, training, and directing those under their charge who were involved in

21  establishing, implementing, and maintaining a registration system actually capable of timely

22  processing all statutorily-required "assault weapon" registrations.

23        63.    The Fourteenth Amendment to the United States Constitution guarantees that no

24  person shall be deprived of life, liberty, or property without due process of law.

25        64.    An actual controversy has arisen and now exists between Plaintiffs, and others

26  similarly situated, and Defendants, and each of them as to the validity and enforceability of

27  certain statutes prohibiting the possession of unregistered "assault weapons" as defined by

28  California law, and as to whether such statutes are void and unenforceable as applied as to them.

1  Specifically, Plaintiffs, and the class of similarly situated persons they represent, claim that they

2  have been and are continuing to be deprived of due process under the law secured by the

3  Constitution of the United States, and that they have been and are continuing to be otherwise

4  deprived of such rights and benefits of the law by Defendants' failure and refusal to operate,

5  provide, or otherwise allow for a functional "assault weapons" registration system, as required

6  by Penal Code § 30900(b)(2), because such actions and omissions have deprived them of their

7  right and/or ability to register their firearms as "assault weapons" by July 1, 2018, as required by

8  Pen Code §§ 30680(c) and 30900(b), which registration is necessary in order to otherwise

9  maintain lawful possession and transportation of their firearms.

10         65.     Pursuant to 28 U.S.C. § 2201, Plaintiffs desire a judicial declaration that

11  Defendants' flawed registration system has unfairly and improperly prevented Plaintiffs, and the

12  class of similarly-situated individuals they represent, from complying with the law, in violation

13  of their rights to due process under 42 U.S.C. § 1983, and, as a result, that certain statutes

14  otherwise subjecting them to criminal sanctions – to wit: Penal Code §§ 30600, 30605, 30615,

15  30800, 30900(b) – are invalid and unenforceable as applied to them.

16         WHEREFORE, Plaintiffs seek the declaratory and injunctive relief as set forth below.

17                      **<u>SECOND CAUSE OF ACTION</u>**

18        **WRIT OF MANDATE OR OTHER APPROPRIATE RELIEF**

19                   **Against All Defendants**

20         66.     Plaintiffs incorporate paragraphs 1 through 65 as if fully set forth herein.

21         67.     California Penal Code § 30900(b)(1) provides that any person who lawfully

22  possessed a firearm retroactively defined as an "assault weapon," including those weapons

23  containing bullet button devices, "*shall register* the firearm before July 1, 2018, but not before

24  the effective date of the regulations adopted pursuant to paragraph (5), with the department

25  pursuant to those procedures that the department may establish by regulation pursuant to

26  paragraph (5)."  (Emphasis added).  Subdivision (b)(2) of this section further provides that

27  "Registrations shall be submitted electronically via the Internet utilizing a public-facing

28  application made available by the [DOJ]."  Concomitantly, section 30680 provides an exception

SECOND AMENDED PETITION FOR WRIT OF MANDATE AND
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1   to the general prohibition against the possession of "assault weapons" for those, and only those,

2   who lawfully own such firearms *and* register them "by July 1, 2018, in accordance with

3   subdivision (b) of Section 30900." (§ 30680, subd. (c.).)

4       68.     Individual Plaintiffs, as discussed above, and the class of similarly-situated

5   individuals they represent – i.e., those California residents who are otherwise eligible to own

6   firearms, lawfully owned and possessed a legislatively-defined "assault weapon" from January 1,

7   2001, to December 31, 2016, "including those weapons with an ammunition feeding device that

8   can be readily removed from the firearm with the use of a tool," and attempted registration using

9   the only authorized method of registration – were deprived by Defendants of their right and

10  ability to register such firearms in compliance with Pen. Code §§ 30900(b) and 30680(c).  On

11  information and belief, and as will be demonstrated at trial, a substantial number of other,

12  similarly-situated members of such class of persons were deprived of, and thereby denied, their

13  right and ability to register such firearms solely due to the acts, omissions, constraints, failures,

14  and technical defects on the part of Defendants, and each of them, in connection with their

15  Internet-based "bullet button assault weapon" registration system.

16      69.     Defendants had a clear, present, and ministerial duty to establish and implement

17  policies, practices, and regulations that comply with the requirements of the statutes, as well as

18  the California Constitution and United States Constitution, within the purview of their rule-

19  making and enforcement authority, and to provide its citizens with the ability to properly and

20  timely comply with the law – particularly when the DOJ's registration system was the sole

21  available means to do so.

22      70.     Plaintiffs, and each of them, and the class of similarly situated individuals

23  described herein, all have a beneficial interest in the proper discharge of the duties that

24  Defendants must faithfully execute in connection with the "assault weapons" registration

25  process.  Plaintiffs, and each of them, and the class of similarly situated individuals described

26  herein, have a beneficial interest in application of the laws in a fair, just and reasonable manner

27  that gives each similarly situated citizen the opportunity to comply with the registration

28  requirements.

71.     As a result of the Defendants' failure to establish, implement, and maintain a functional registration system throughout the registration period, Plaintiffs, and each of them, have been deprived of the ability to avail themselves of the laws that would protect them from criminal liability and permit them to retain lawful and beneficial use of their statutorily-classified "assault weapons."  Plaintiffs, and each of them, therefore have a beneficial interest in ensuring that the law, and Defendants' failed implementation of the same through their defective registration process and failures to perform their duties, does not deprive them (and their members, in the case of Institutional Plaintiffs) of their constitutional and statutory rights and their liberty and property interests without due process of law.  The actions and omissions of the Defendants, and each of them, rise to the level of a deprivation of due process under the United States Constitution, and the Constitution of the State of California, and a denial of Plaintiffs rights under the applicable statutes.

72.     Plaintiffs have no speedy or adequate remedy at law, and this Court has jurisdiction to grant the mandamus and other relief requested herein as necessary and proper to rectify the previous and continuing deprivation of such interests. (Cal. Const., art. VI, § 10.)

WHEREFORE, Plaintiffs seek mandamus writ relief, as set forth below.

### **THIRD CAUSE OF ACTION**

#### **DECLARATORY RELIEF**

**Re: Violation of Due Process (U.S. Const., XIV Amend.; Cal. Const., art. I, § 7)**

**Against All Defendants**

73.     Plaintiffs incorporate paragraphs 1 through 72 as if fully set forth herein.

74.     An actual controversy has arisen and now exists between Plaintiffs, and others similarly situated, and Defendants, and each of them, as to the validity and enforceability of certain statutes prohibiting the possession of "assault weapons" as re-defined by California law, and as to whether such statutes are void and unenforceable, as applied as to them.  Specifically, Plaintiffs, and others similarly situated, claim that they have been and are continuing to be deprived of due process under the law, the Constitution of the United States and of the State of California, and that they have been and are continuing to be otherwise deprived of such rights

and benefits of the law by Defendants' failure and refusal to operate, provide, or otherwise allow for a functional "assault weapons" registration system, as required by Penal Code § 30900(b)(2).

75.     The Fourteenth Amendment to the United States Constitution and article I, section 7 of the California Constitution both guarantee that no person shall be deprived of life, liberty, or property without due process of law.

76.     An actual controversy has further arisen and now exists between Plaintiffs, and the class of similarly situated individuals previously identified, on the one hand, and Defendants, and each of them, on the other hand, as to whether Plaintiffs and the class of persons they represent were deprived of their right or ability to register their firearms as assault weapons by July 1, 2018, as required by Penal Code §§ 30680(c) and 30900(b) and the DOJ's own regulations, and as to whether that deprivation has resulted in a deprivation of due process.

77.     Plaintiffs desire a judicial declaration that certain statutes otherwise subjecting them to criminal sanctions – to wit: Penal Code §§ 30600, 30605, 30615, 30800, 30900(b) – are invalid and unenforceable as applied to them, and to the class of similarly-situated individuals they represent, because Defendants' flawed registration system has unfairly and improperly prevented them from complying with the law in violation of their rights to due process.

WHEREFORE, Plaintiffs seek declaratory relief as set forth below.

**FOURTH CAUSE OF ACTION**

**INJUNCTIVE RELIEF**

**Against All Defendants**

78.     Plaintiffs incorporate paragraphs 1 through 77 as if fully set forth herein.

79.     Plaintiffs, and each of them, individually, as representatives of the previously identified class of similarly situated individuals, and the similarly-situated members of the Institutional Plaintiffs and the public, the interests of whom are at the core of the institutions' organizational purposes, seek injunctive relief in Plaintiffs' favor, against Defendants, and each of them, prohibiting all Defendants and their agents from enforcing Penal Code §§ 30600, 30605, 30615, 30800, 30900(b) as to each of them, and those similarly situated, until said Plaintiffs, the class of individuals they represent, and the  affected members of the Institutional

1  Plaintiffs identified herein, are granted a reasonable opportunity to register their firearms through

2  a functional and reliable registration system.

3      80.      Temporary and permanent injunctive relief are therefore necessary and proper, as

4  plaintiffs have been and will continue to be irreparably injured without such injunctive relief, and

5  the balance of harms weighs heavily in Plaintiffs' favor – particularly as Defendants' failures and

6  refusal to provide a reliable and functional registration system has left Plaintiffs in jeopardy of

7  criminal liability.

8      WHEREFORE, Plaintiffs seek injunctive relief as set forth below.

9  **PRAYER FOR RELIEF**

10      WHEREFORE, Plaintiffs pray for relief as follows:

11      1.      For judgment in Plaintiffs' favor, against Defendants, that Defendants' actions

12  and omissions in connection with the "assault weapons" registration system have prevented and

13  are continuing to prevent Plaintiffs and the class of persons they represent from complying with

14  the law, in violation of their rights to due process under 42 U.S.C. § 1983, and, as a result, that

15  certain statutes otherwise subjecting them to criminal sanctions – to wit: Penal Code §§ 30600,

16  30605, 30615, 30800, 30900(b) – are invalid and unenforceable as applied to them.

17      2.      For judgment in Plaintiffs' favor, against Defendants, and the Court's issuance of

18  a writ of mandate, or other appropriate relief, commanding Defendants, and each of them, and

19  others acting pursuant to their authority or control, to permit Individual Plaintiffs, and those

20  similarly situated, and in an identifiable class, to register their legally-possessed, qualified

21  firearms as "assault weapons" through a reliable and functional registration system pursuant to

22  Penal Code § 30900(b) for a reasonable period of time beyond the statutory deadline of July 1,

23  2018, and, until such time as that period has expired, command Defendants, and each of them,

24  and others acting pursuant to their authority or control, to refrain from enforcing against

25  Individual Plaintiffs Penal Code §§ 30600, 30605, 30615, 30800, 30900(b), and any related

26  agency regulations enforcing or implementing the mandate of registration by July 1, 2018.

27      3.      For declaratory relief in Plaintiffs' favor, against Defendants, that Defendants,

28  and each of them, have deprived and are continuing to deprive Individual Plaintiffs and others

31

1  similarly situated of due process under the law, and under the Constitution of the United States

2  and the State of California, and have otherwise deprived and are continuing to deprive them of

3  their statutory rights and benefits of the law by failing to establish, operate, maintain, or

4  otherwise provide for a properly-functioning public-facing Internet-based registration system, as

5  required by Penal Code § 30900(b)(2).

6      4.     For declaratory relief in Plaintiffs' favor, against Defendants, that the Individual

7  Plaintiffs, and others similarly situated, have been deprived of their right and/or ability to register

8  their firearms as assault weapons by July 1, 2018, as required by Penal Code § 30680(c) and the

9  DOJ's own regulations, and that Defendants, and each of them, have failed in their statutorily-

10 mandated duties to establish, implement, maintain, or otherwise provide for a properly-

11 functioning public-facing Internet-based registration system for registrations of "bullet button

12 assault weapons" as required by Penal Code § 30900(b)(2).

13     5.     For injunctive relief in Plaintiffs' favor, against Defendants, and each of them,

14 prohibiting all Defendants from enforcing Penal Code §§ 30600 (specifically, the prohibition

15 against transportation), 30605, 30615, 30800, 30900(b), and any related agency regulations, as to

16 each of them, and those similarly situated, until said Plaintiffs and members of the class of

17 similarly situated individuals have been permitted a reasonable amount of time to register their

18 firearms through a properly-functioning public-facing Internet-based registration system, as

19 required by Penal Code § 30900(b)(2).

20     6.     That Plaintiffs be awarded their costs of suit incurred in this action, and costs

21 including their attorneys' fees pursuant to 42 U.S.C. § 1988, California Code of Civil Procedure

22 §§ 1021.5 and 1095; and any other applicable law.

23     7.     For other such relief as this court may deem to be just and proper.

24

25

26

27

28

SECOND AMENDED PETITION FOR WRIT OF MANDATE AND
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1

2

Dated:  September 21, 2018                    SEILER EPSTEIN ZIEGLER & APPLEGATE
                                              LLP

3

4

                                              By   /s George M. Lee
                                                  GEORGE M. LEE

5

6

                                              THE DIGUISEPPE LAW FIRM, P.C.

7

8

                                              By   /s Raymond M. DiGuiseppe
                                                  RAYMOND M. DIGUISEPPE

9

10

                                              BENBROOK LAW GROUP, PC

11

12

                                              By   /s Bradley A. Benbrook
                                                  BRADLEY A. BENBROOK

                                                  Attorneys for Plaintiffs and Petitioners

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SECOND AMENDED PETITION FOR WRIT OF MANDATE AND
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF