1. XAVIER BECERRA, State Bar No. 118517
Attorney General of California
2. MARK R. BECKINGTON, State Bar No. 126009
Supervising Deputy Attorney General
3. ENRIQUE A. MONAGAS, State Bar No. 239087
Deputy Attorney General
4.   300 South Spring Street, Suite 1702
  Los Angeles, CA 90013
5.   Telephone: (213) 269-6250
  Fax: (213) 897-5775
6.   E-mail: Enrique.Monagas@doj.ca.gov
*Attorneys for Respondents*
7. *Xavier Becerra, Brent E. Orick, Joe Dominic,*
*and the California Department of Justice*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

**HARRY SHARP, et al.,**

                Plaintiffs and Petitioners,

v.

**XAVIER BECERRA, et al.,**

                Respondents.

CASE NO. 2:18-cv-02317-MCE-AC

**MEMORANDUM IN SUPPORT OF RESPONDENTS' MOTION TO DISMISS SECOND AMENDED PETITION FOR WRIT OF MANDATE AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Date: November 29, 2018
Time: 2:00 P.M.
Dept: Courtroom 7
Judge: Hon. Morrison C. England, Jr.

Action Filed: 7/11/2018

**TABLE OF CONTENTS**

|     | | **Page** |
| --- | --- | --- |
| INTRODUCTION | | 1 |
| STATEMENT OF FACTS | | 2 |
| I. | California's Prohibition of Assault Weapons | 2 |
| | A. The AWCA Initially Identified Prohibited Assault Weapons by Make and Model | 3 |
| | B. The 1999 Amendments: Closing the "Copycat" Weapons Loophole by Prohibiting Rifles with Assault Weapon Features | 4 |
| | C. The 2016 Amendments: Closing the "Bullet Button" Loophole by Defining Assault Weapon as a Rifle That Has a Prohibited Feature and Lacks a Fixed Magazine | 5 |
| | D. The Original Enactment and the 1999 and 2016 Amendments of the AWCA Each Includes a Grandfather Clause | 6 |
| II. | Plaintiffs' Allegations | 7 |
| PROCEDURAL HISTORY | | 7 |
| LEGAL STANDARD | | 7 |
| ARGUMENT | | 8 |
| I. | Mere Negligence Does Not Give Rise to a Due Process Claim | 8 |
| II. | In All Events, Plaintiffs' Due Process Rights Were Not Violated | 10 |
| CONCLUSION | | 13 |

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ...................................................................................................7

*Blaylock v. Schwinden*
  862 F.2d 1352 (9th Cir. 1988) ....................................................................................9

*Bryan Cty. v. Brown*
  520 U.S. 397 (1997) ...................................................................................................8

*Buckingham v. Sec'y of U.S. Dep't of Agric.*
  603 F.3d 1073 (9th Cir. 2010) ..................................................................................10

*Castro v. Cty. of Los Angeles*
  833 F.3d 1060 (9th Cir. 2016) (en banc) ...................................................................8

*Daniels v. Williams*
  474 U.S. 327 (1986) ...................................................................................................8

*Foss v. Nat'l Marine Fisheries Serv.*
  161 F.3d 584 (9th Cir. 1998) ....................................................................................12

*Johnson v Barker*
  799 F.2d 1396 (9th Cir. 1986) ....................................................................................9

*Johnson v. Riverside Healthcare Sys., LP*
  534 F.3d 1116 (9th Cir. 2008) ....................................................................................7

*Kasler v. Lockyer*
  2 P.3d 581 (Cal. 2000) .................................................................................2, 3, 4, 12

*L.W. v. Grubbs*
  92 F.3d 894 (9th Cir. 1996) ........................................................................................9

*Lazy Y Ranch Ltd. v. Behrens*
  546 F.3d 580 (9th Cir. 2008) ......................................................................................7

*Lunde v. Oldi*
  808 F.2d 219 (2nd Cir. 1986) .....................................................................................8

*Mathews v. Eldridge*
  424 U.S. 319 (1976) .................................................................................................10

*North Star Int'l v. Ariz. Corp. Comm'n*
  720 F.2d 578 (9th Cir. 1983) ......................................................................................7

*Patel v. Kent Sch. Dist.*
   648 F.3d 965 (9th Cir. 2011)...................................................................................2, 8

*Ryan v. Cal. Interscholastic Fed'n-San Diego Section*
   94 Cal.App.4th 1048 (2001)....................................................................................8, 10

*Schwarm v. Craighead*
   552 F.Supp.2d 1056 (E.D. Cal. 2008)...........................................................................8

*Shinault v. Hawks*
   782 F.3d 1053 (9th Cir. 2015).....................................................................................10

*Silveira v. Lockyer*
   312 F.3d 1052 (9th Cir. 2002).........................................................................2, 3, 4, 12

*Sprewell v. Golden State Warriors*
   266 F.3d 979 (9th Cir. 2001).........................................................................................7

*Wainwright v. Torna*
   455 U.S. 586 (1982).....................................................................................................10

**STATUTES**

Cal. Code Regs. Title 11
   § 5499...............................................................................................................................4

Cal. Pen. Code
   § 12276.5(a)(1)-(2).........................................................................................................4
   § 30505......................................................................................................................3, 12
   § 30515(a)(1)...................................................................................................................6
   § 30520............................................................................................................................4
   § 30600............................................................................................................................3
   § 30605............................................................................................................................3
   § 30680......................................................................................................................6, 11
   § 30900..............................................................................................................2, 6, 10, 11
   § 31055..........................................................................................................................10

Respondents Xavier Becerra, Attorney General of the State of California, Brent E. Orick, Acting Chief of the Department of Justice Bureau of Firearms, Joe Dominic, Chief of the Department of Justice California Justice Information Services Division, and the California Department of Justice (collectively, "Respondents"), submit this memorandum in support of their Motion to Dismiss the Second Amended Petition for Writ of Mandate and Complaint for Declaratory and Injunctive Relief (the "SAC" or "Complaint"). Dkt. No. 10.

**INTRODUCTION**

In 1989, a man armed with an AK-47 semiautomatic rifle opened fire at the schoolyard of an elementary school in Stockton, California, where over 300 children were outside playing. The shooter murdered five children and wounded 29 others, expending over 100 rounds and reloading his AK-47 during the shooting. In response to this senseless mass shooting, the California Legislature enacted the Roberti-Roos Assault Weapons Control Act (AWCA).

By the AWCA, California prohibits, among other things, the manufacture, possession, transport, sale, offer for sale, and import of assault weapons. The AWCA defines assault weapons by make and model and by feature. As defined by feature, a semiautomatic rifle is an assault weapon if it lacks a fixed magazine and has one or more militaristic features such as a conspicuously protruding pistol grip, a forward pistol grip, a folding stock, or a flash suppressor, or has an overall length of less than 30 inches.

In 2016, the Legislature amended the AWCA to proscribe the proliferation of copycat weapons that were functionally similar to the banned weapons. Specifically, the 2016 amendments banned a product called a magazine lock, which requires the use of a bullet to depress a button to release the magazine. This so-called "bullet-button" enabled the magazine to be removed and replaced in seconds while not being technically detachable. This 2016 revision to the AWCA was enacted in response to a 2015 mass shooting in San Bernardino, where two assailants used weapons equipped with the bullet-button magazine locks to shoot 36 people, gathered at an office holiday party, in less than four minutes.

Under the 2016 amendments, owners of assault weapons with bullet-button magazine locks could register to keep their weapons "via the Internet utilizing a public-facing application made

1

available by the department [of justice]." Cal. Pen. Code § 30900(b)(2). The online registration process commenced in August 2017 and concluded on June 30, 2018. SAC, ¶ 36. Plaintiffs claim that this online registration process violated their due process rights because the website was purportedly "flawed, intermittently inoperable, and ultimately incapable of providing a reliable means for the public to register their firearms in accordance with the law." SAC, ¶ 3.

The operative Complaint alleges four causes of action, each grounded on this alleged due process violation. Plaintiffs' due process claims must be dismissed for two independent reasons: *First*, Plaintiffs have not alleged that the Respondents deliberately intended to prevent them from registering their assault weapons or otherwise cause them injury. Under settled precedent, an unintentional act—or even mere negligence—cannot form the basis of a constitutional deprivation. *Second*, the online registration process gave Plaintiffs ample notice, time and ability to comply and register their assault weapons. Instead, Plaintiffs waited until the very last days of the nearly year-long registration window to register—at a time they knew would be a high traffic event on the website, during which "time outs" and related difficulties could occur, as would be true for any website experiencing high traffic. SAC, ¶ 47. As such, any harm Plaintiffs suffered was a direct result of their own delay, not the result of a due process deprivation.

**STATEMENT OF FACTS**

**I.    CALIFORNIA'S PROHIBITION OF ASSAULT WEAPONS**

The California Legislature passed the Roberti-Roos Assault Weapons Control Act in 1989 in response to a proliferation of shootings that involved semiautomatic weapons. *See Silveira v. Lockyer*, 312 F.3d 1052, 1057 (9th Cir. 2002) (citing 1989 Cal. Stat. ch. 19, § 3, at 64, codified at former Cal. Penal Code § 12275 et seq.), *abrogated on other grounds by Dist. of Columbia v. Heller*, 554 U.S. 570 (2008). The immediate cause of the AWCA's enactment was a random, mass shooting that year at the Cleveland Elementary School in Stockton, California. *Id*. at 1057. An individual armed with an AK-47 semiautomatic rifle opened fire on the schoolyard, where 300 students were enjoying recess. *Id*.; *Kasler v. Lockyer*, 2 P.3d 581, 587 (Cal. 2000). The shooter expended at least 106 rounds, reloaded his weapon at least once, killed five children

2

aged 6 to 9, and wounded one teacher and 29 children. *Silveira*, 312 F.3d at 1057; *Kasler*, 2 P.3d at 587.

The California assembly met soon after the Stockton shooting in an extraordinary session called to enact a response to the mass shooting. *Silveira*, 312 F.3d at 1057 (citing 1 Cal. Assembly J., 1989-1990 Reg. Sess., at 436-37 (Feb. 13, 1989)). The Legislature also received testimony that assault weapons were favored by gangs in shooting. At the legislative committee hearing, the California Attorney General testified that "semi-automatic military assault rifles" were the "weapons of choice" for gang shootings. *Kasler*, 2 P.3d at 587 (citing 1 Assem. J., 989-1990 Reg. Sess., at 438). And a Los Angeles police officer "familiar with gangs and the increasing use of assault weapons" also testified that there is "only one reason [gang members] use [military assault rifles], and that is to kill people. They are weapons of war." *Id.* (citing 1 Assem. J., 1989-1990 Reg. Sess., at 450).

After the AWCA was enacted in 1989, it was amended in 1999 and 2016 to close loopholes exploited by gun manufacturers.

### A. The AWCA Initially Identified Prohibited Assault Weapons by Make and Model

The AWCA was the first legislative restriction on assault weapons in the nation. *Silveira*, 312 F.3d at 1057. In enacting the AWCA, the California Legislature expressly found that "the proliferation and use of assault weapons poses a threat to the heath, safety, and security of all citizens of this state." Cal. Pen. Code § 30505. The Legislature found that each of the restricted firearms "has such a high rate of fire and capacity for firepower that its function as a legitimate sports or recreational firearm is substantially outweighed by the danger that it can be used to kill and injure human beings." *Id*.

The AWCA renders it a felony offense to manufacture in California any specified assault weapons, or to possess, sell, transfer, or import into the state such weapons without a permit. Cal. Pen. Code §§ 30600, 30605. The AWCA specifically lists approximately forty models of firearms as subject to its restrictions, including "civilian" models of military weapons that feature slightly less firepower than the military-issue versions, such as the Uzi, an Israeli-made military

3

rifle; the AR-15, a semiautomatic version of the United States military's standard-issue rifle, the M-16; and the AK-47, a Russian-designed and Chinese-produced military rifle. *Id*. § 30510; *Silveira*, 312 F.3d at 1058.

The AWCA, as originally enacted, also included a mechanism for the California Attorney General to seek a judicial declaration in superior court that weapons identical to the listed firearms are also subject to the statutory restrictions. (Former Cal. Pen. Code § 12276.5(a)(1)-(2).) Following judicial confirmation of the legal requirements to add firearms to the prohibited list, the Attorney General added additional semiautomatic rifles to the prohibited assault weapons list. Cal. Code Regs. Tit. 11, § 5499; see *Kasler*, 2 P.3d at 587. The Attorney General's ability to add weapons to the assault weapons list ended in 2006. *See* Cal. Pen. Code § 30520.

### B. The 1999 Amendments: Closing the "Copycat" Weapons Loophole by Prohibiting Rifles with Assault Weapon Features

After enactment of the AWCA, gun manufacturers began to produce "copycat" weapons. S.B. 880, 2015-2016 Reg. Sess., Assembly Comm. on Pub. Safety, June 13, 2016 (S.B. 880 Report) at 4.[1] These "copycat" weapons were substantially similar to the restricted weapons, but circumvented the restrictions by having insubstantial variations from the restricted weapons. *Id*.; *Silveira*, 312 F.3d at 1058, n.5. (citation omitted).

In 1999, the Legislature amended the AWCA to address the proliferation of these "copycat" weapons. *Silveira*, 312 F.3d at 1058. The 1999 amendments to the AWCA added a new method of defining the class of restricted weapons by features. It provided that a weapon constituted a restricted assault weapon if it has the capacity to accept a type of detachable magazine in addition to one of several specified military characteristics. S.B. 880 Report at 4. This feature-based definition of an assault weapon was intended to close the loophole created by the AWCA's definition of assault weapons as only those specified by make and model. *See id*.

---

[1] The S.B. 880 Report ("06/13/16- Assembly Public Safety") is *available at* https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201520160SB880# (last visited Oct. 19, 2018).

### C. The 2016 Amendments: Closing the "Bullet Button" Loophole by Defining Assault Weapon as a Rifle That Has a Prohibited Feature and Lacks a Fixed Magazine

The AWCA was most recently amended in 2016 to close the "bullet button" loophole. Implementing regulations of the 1999 amendments defined a detachable magazine as any ammunition feeding device that can be removed readily from the firearm without disassembly of the firearm action or the use of a tool. S.B. 880 Report at 4-5. In response to this definition, firearms manufacturers developed a new feature to make "military-style, high-powered, semi-automatic rifles 'California compliant'"—the "bullet button." *Id*. at 5.

The "bullet button" is a minor design change made by gun manufacturers that allows shooters to use the tip of a bullet as a "tool" to push a button to release the ammunition magazine. S.B. 880 Report (quoting 2012 Violence Policy Center, The "Bullet Button"—Assault Weapon Manufacturers' Gateway to the California Market.) With the "bullet button," a detachable ammunition magazine may be removed and replaced in seconds, rendering meaningless the distinction between a magazine that is not "detachable" within the meaning of California law, and a magazine that can be readily detached without the use of a tool. *Id*.

As proponents of the 2016 amendments noted, the feature that makes a semiautomatic rifle capable of killing or wounding more people in a shorter amount of time more than any other feature is the capacity to reload one magazine after another in rapid succession. S.B. 880 Report at 6. The "bullet button" thus defeated the Legislature's original intent to define assault weapons primarily on the method of detaching the magazine. "These weapons [with "bullet buttons"] are the functional equivalents of illegal assault weapons in every respect, except that the shooter uses a bullet, magnet, or other instrument, instead of his or her finger, to depress the button that releases the weapon's magazine. These weapons may be reloaded as quickly as prohibited assault weapons, but they have been permitted to flood into this state at an alarming rate, threatening Californians' safety." *Id*. at 8 (Argument in Support by the Law Center to Prevent Gun Violence).

The December 2015 mass shooting in San Bernardino illustrates the compelling need to eliminate the "bullet button" loophole. Thirty-six people were shot in less than four minutes by

5

Memorandum ISO Motion to Dismiss Second Amended Complaint (2:18-cv-02317-MCE-AC)

two individuals using "California compliant" AR-15 style "bullet button" weapons "that were nearly indistinguishable from illegal assault weapons." S.B. 880 Report at 8 (Argument in Support by the Law Center to Prevent Gun Violence).

The 2016 amendments changed California's approach to defining prohibited assault weapons by focusing on the absence of a "fixed magazine," rather than on the "capacity to accept a detachable magazine." Cal. Pen. Code § 30515(a)(1). A "fixed magazine" is defined as an "ammunition feeding device contained in, or permanently attached to, a firearm in such a manner that the device cannot be removed without disassembly of the firearm action." *Id*. § 30515(b). Accordingly, a semiautomatic rifle with a non-fixed magazine and one of the specified militaristic features is prohibited under the 2016 amendments. A semiautomatic rifle may have one or more of the militaristic features and a fixed magazine, or it may have a detachable magazine without additional military-style features, but it may not have both military features and a detachable magazine—otherwise it is considered an assault weapon.

**D. The Original Enactment and the 1999 and 2016 Amendments of the AWCA Each Includes a Grandfather Clause**

The AWCA, as originally enacted and as recently amended, includes a grandfather clause that permits anyone to retain an assault weapon that was lawfully possessed prior to being made unlawful, provided such weapons are registered by their owners with the California Department of Justice. Cal. Pen. Code §§ 30680, 30900. With respect to bullet-button assault weapons covered by the 2016 amendments, if an individual lawfully possessed the weapon prior to January 1, 2017, he or she may continue to possess it if he or she was eligible to register the weapon prior to January 1, 2017, and registered the weapon by July 1, 2018 via the online California Firearms Application Reporting System ("CFARS"). Cal. Pen. Code §§ 30680, 30900(b)(1).

In August 2017, CFARS went live, providing nearly a year-long window by which individuals could register their assault weapons via the internet. *See* SAC, ¶ 36.

## II. PLAINTIFFS' ALLEGATIONS

Plaintiffs are California residents who own assault weapons currently prohibited by the AWCA and gun rights advocacy groups. SAC, ¶¶ 9-24. Plaintiffs assert that their failure to register their weapons through CFARS during the final days of online registration violated their due process rights under both the United States and California Constitutions. *Id.* at ¶¶ 58-80. All four causes of action in the Complaint are grounded on this alleged deprivation of due process. *Id.*

## PROCEDURAL HISTORY

On July 11, 2018, Plaintiffs filed their original petition and complaint in the Superior Court of the State of California for the County of Shasta. Thereafter, they filed a first amended petition and complaint on August 6, 2018. On August 24, 2018, Respondents removed the action to this Court. Dkt. No. 1. On September 21, 2018, Plaintiffs filed their second amended petition and complaint. Dkt. No. 10. The present motion to dismiss is Respondents' first responsive pleading.

## LEGAL STANDARD

This motion is brought under Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *North Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and quotations omitted). "A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008) (quotation omitted). The Court accepts as true all material allegations in the complaint and construes those allegations in the light most favorable to the plaintiff. *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). However, the Court need not accept as true legal conclusions, conclusory allegations, unwarranted deductions of fact, or unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988, *amended by* 275 F.3d 1187 (9th Cir. 2001).

**ARGUMENT**

**I. MERE NEGLIGENCE DOES NOT GIVE RISE TO A DUE PROCESS CLAIM**

Plaintiffs' due process claim is without merit and Respondents are entitled to dismissal as a matter of law. The United States Supreme Court has long held that "that the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 328 (1986). Rather, a deprivation of due process exists only if there are allegations of "*deliberate* decisions of government officials to deprive a person of life, liberty, or property." *See id*. at 331 (emphasis in original); *see also Lunde v. Oldi*, 808 F.2d 219, 221 (2nd Cir. 1986) (the Due Process Clause "was intended to secure the individual from abusive government conduct, something quite remote from lack of due care which suggests no more than a failure to measure up to the conduct of a reasonable person.").

In the Ninth Circuit, a plaintiff may also allege "deliberate indifference" to advance a claim under the Due Process Clause. *See Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1067–68 (9th Cir. 2016) (en banc). Deliberate indifference, however, is "a stringent standard of fault, requiring proof that [an] actor disregarded a known or obvious consequence of his action." *Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997). Consequently, the deliberate indifference standard "requires a culpable mental state." *Patel v. Kent Sch. Dist*., 648 F.3d 965, 974 (9th Cir. 2011).

California's constitutional guarantee of due process is equivalent to that contained in the United States Constitution in this context. *See Ryan v. Cal. Interscholastic Fed'n-San Diego Section*, 94 Cal.App.4th 1048, 1069 (2001); *accord Schwarm v. Craighead*, 552 F.Supp.2d 1056, 1083 (E.D. Cal. 2008) ("The procedural due process requirements under the California Constitution closely follow the federal requirements except that California does not require a plaintiff to 'establish a property or liberty interest as a prerequisite to invoking due process protection.'").

In the present case, all four causes of action in the Complaint are grounded on an alleged deprivation of due process. SAC, ¶¶ 58-80. Specifically, Plaintiffs allege that they "have been unfairly and improperly prevented from registering their eligible firearms in accordance with the

law because Defendants . . . have utterly failed and refused to perform their statutorily-imposed duties to the People of the State of California to establish, implement, and maintain a properly functioning, consistently reliable Internet-based system for processing the registration of such firearms throughout the registration period." *Id*. at ¶ 3.

Plaintiffs do not claim that the Respondents *deliberately* intended to prevent them from registering their assault weapons or otherwise cause them injury; nor, do they allege deliberate indifference. *Compare* SAC, ¶ 3, *with L.W. v. Grubbs*, 92 F.3d 894, 899 (9th Cir. 1996) (Plaintiffs must show that Respondents "recognized [an] unreasonable risk and *actually intended* to expose the plaintiff to such risks without regard to the consequences to the plaintiff."). Rather, Plaintiffs claim that the operation of an online registration system, which was purportedly "flawed, intermittently inoperable, and ultimately incapable of providing a reliable means for the public to register their firearms in accordance with the law," caused their injury. *Id*. As alleged, the purportedly flawed online registration system was not deliberate, but, at most, was *negligent*. Mere negligence cannot be the basis of a constitutional deprivation, however. *Johnson v Barker*, 799 F.2d 1396, 1401 (9th Cir. 1986).

In *Blaylock v. Schwinden*, 862 F.2d 1352 (9th Cir. 1988), the Ninth Circuit rejected a similar claim. There, the "complaint alleged that the defendants, acting under the color of state law, failed properly to administer the Montana Workers' Compensation Act, depriving them of their rights and privileges under the fourteenth amendment." *Id*. at 1353. Plaintiffs argued that defendants failed to "adequately examine [their employer's] financial solvency every year," resulting in injury when their employer became insolvent. *Id*. at 1355. The Ninth Circuit rejected their due process claim, observing that "plaintiffs' claim simply alleges negligence on the part of state officials in carrying out their duties," which is not actionable and thus, plaintiffs failed to state a claim for relief. *Id*.

In this action, Plaintiffs fare no better. At bottom, any harm they suffered was the result of their inability to navigate the online registration system during peak hours and not the deliberate act, or indifference, of any of the Respondents. As such, the Second Amended Complaint should be dismissed in its entirety for failure to state a claim.

## II. IN ALL EVENTS, PLAINTIFFS' DUE PROCESS RIGHTS WERE NOT VIOLATED

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). To determine what process is due, courts weigh three factors: "(1) the private interest . . . that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the fiscal and administrative burdens posed by alternative procedural requirements." *Id*. at 335; *accord Ryan*, 94 Cal.App.4th at 1072 ("Procedural due process challenges based on the California Constitution are also analyzed using the *Mathews* paradigm.").

"Due process is a flexible concept that varies with the particular situation." *Shinault v. Hawks*, 782 F.3d 1053, 1057 (9th Cir. 2015) (internal quotations omitted). "The base requirement of the Due Process Clause is that a person deprived of property be given an opportunity to be heard at a meaningful time and in a meaningful manner." *Buckingham v. Sec'y of U.S. Dep't of Agric.*, 603 F.3d 1073, 1082 (9th Cir. 2010) (quoting *Brewster v. Bd. of Educ.*, 149 F.3d 971, 984 (9th Cir. 1998)). The enforcement of a properly noticed deadline, however, generally does not effect a due process violation. *See Wainwright v. Torna*, 455 U.S. 586, 588 n. 4 (1982).

Here, Plaintiffs' claims fail because they received all the process that was due to them.

1. Private Property Interest. Plaintiffs have a private property interest in registering and retaining their assault weapons. That narrow interest, however, is not substantial given that Plaintiffs can still make use of their assault weapons if they fail to register. Namely, Plaintiffs can (1) sell the assault weapon either out of state or to a licensed gun dealer within the state (Cal. Penal Code § 31055); (2) modify the assault weapon to make it compliant with state law; or (3) store the assault weapon outside of the state. As such, their private interest is minimal.

2. Online Registration Procedure and the June 30, 2018 Deadline. As required by state law, the California Department of Justice established an online registration system (CFARS) for the public to register bullet-buttoned assault weapons. Cal. Pen. Code § 30900(b)(2); *see also*

SAC, ¶ 36.  The Department notified the public about the need to register assault weapons and the online procedure by which to do it.  *See* SAC, ¶ 38 (recognizing that the "Office of the Attorney General itself emphasized the importance of citizens' compliance with the June 30, 2018 deadline, with a dramatic 'countdown clock' display on the Attorney General's website, showing the number of weeks, days, hours, minutes, and seconds ticking away until literally the last second of the registration period (i.e., June 30, 2018 at 11:59:59 PST).").  In August 2017, the CFARS system went live, providing nearly a year-long window by which individuals could register their assault weapons.  *See id*. at ¶ 36.

Plaintiffs complain that in the final few days of the nearly year-long online registration window, they were unable to successfully complete the online registration of their assault weapons.  SAC, ¶¶ 45, 46 (Plaintiffs Sharp and Ajirogi commenced online registration 2 days before the June 30, 2018 deadline), ¶ 47 (Plaintiff Gilardy commenced online registration 8 days before the June 30, 2018 deadline), ¶¶ 48-51 (Plaintiffs Prince, Feltman, Kuehl, and Jahraus commenced online registration on June 30, 2018, the very day of the deadline).

Waiting until the last days of a nearly year-long online registration window to register, and then failing to do so during peak online traffic, is not the basis of a due process violation.  Indeed, not only did Plaintiffs have from approximately August 3, 2017 until June 30, 2018 to register their assault weapons (SAC, ¶ 36; Cal. Pen. Code §§ 30680, 30900(b)(1)), they were well aware that waiting until the last minute to register their weapons online was ill-advised.  *See* SAC, ¶ 47.  As alleged in the Complaint,

> [Plaintiff Gilardy] spoke to an official at the DOJ who told him that they expected to receive a large number of registrations in the weeks before the deadline.  In fact, the DOJ official had told Plaintiff Gilardy that he could even expect the system to "time out" and fail during the registration process, but was told that if that happened, he would be able to "get through" after several more attempts.

*Id*.  Nevertheless, all but one of the Plaintiffs waited until two days or less before the June 30, 2018 deadline, and the remaining Plaintiff until just 8 days before the deadline, to even attempt to register their weapons.  All of these facts demonstrate the low risk of an erroneous deprivation of Plaintiffs' private property interest in registering their assault weapons via the online registration procedure.  Indeed, any injury Plaintiffs suffered was of their own making.

11

3. Government Interest. Through experience, California has recognized that assault weapons pose a significant safety risk to its citizens. The AWCA was enacted in response to a series of mass shootings involving semiautomatic rifles. *See Silveira*, 312 F.3d at 1057; *Kasler*, 2 P.3d at 587. In enacting the AWCA, the Legislature expressly found and declared that "the proliferation and use of assault weapons poses a threat to the health, safety, and security" of Californians. Cal. Pen. Code § 30505. Thereafter, the Legislature amended the AWCA in 1999 and 2016 to counter gun manufacturers' attempts to sidestep the AWCA's prohibitions. S.B. 880 Report at 4.

With respect to the online registration procedure and deadline at issue in this action, the State and its agencies have "a strong interest in maintaining its procedures" and courts "lean heavily on the agency's expertise in fashioning its application process." *Foss v. Nat'l Marine Fisheries Serv.*, 161 F.3d 584, 589 (9th Cir. 1998). "An application deadline serves the twin goals of fairness and predictability. The importance of a fixed application period cannot be underestimated." *Id*. at 590. Accounting for and registering "bullet button" assault weapons in a timely manner furthers the State's interest in safety. As noted in the legislative history of the 2016 amendments, the shooters in the 2015 San Bernardino mass shooting used AR-15 style "bullet button" semiautomatic rifles that were not defined to be assault weapons prior to the 2016 amendments. S.B. 880 Report at 8. As this Complaint illustrates, some of those lethal assault weapons remain unaccounted for and in the public space, capable of causing future tragedies.

As required by state law, the California Department of Justice created an accessible online system, notified the public about it, and provided citizens with almost a full year to register their weapons. SAC, ¶¶ 36-38. This was ample due process. Accordingly, on this separate and independent ground, the Second Amended Complaint should be dismissed in its entirety for failure to state a claim.

*///*

*///*

*///*

# CONCLUSION

For the foregoing reasons, the SAC fails to state any claim against Respondents upon which relief may be granted. The motion to dismiss should be granted, and all claims against Respondents should be dismissed.

Dated: October 19, 2018

Respectfully Submitted,

XAVIER BECERRA
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General

*/s/ Enrique A. Monagas*

ENRIQUE A. MONAGAS
Deputy Attorney General
*Attorneys for Respondents Xavier Becerra, Brent E. Orick, Joe Dominic, and the California Department of Justice*

SA2018102035
62997879.docx