George M. Lee (SBN 172982)
**SEILER EPSTEIN ZIEGLER & APPLEGATE LLP**
601 Montgomery Street, Suite 2000
San Francisco, CA 94111
Phone: (415) 979-0500
Fax:    (415) 979-0511

Raymond M. DiGuiseppe (SBN 228457)
**THE DIGUISEPPE LAW FIRM, P.C.**
2 North Front Street, Fifth Floor
Wilmington, NC 28401
Phone: (910) 713-8804
Fax:    (910) 672-7705

BRADLEY A. BENBROOK (SBN 177786)
STEPHEN M. DUVERNAY (SBN 250957)
**BENBROOK LAW GROUP, PC**
400 Capitol Mall, Suite 2530
Sacramento, CA  95814
Telephone: (916) 447-4900

Attorneys for Plaintiffs and Petitioners

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARRY SHARP; DAVID AJIROGI; RYAN GILARDY; DARIN PRINCE; TODD FELTMAN; DAVID KUEH; TERRY JAHRAUS; THE CALGUNS FOUNDATION; FIREARMS POLICY COALITION; FIREARMS POLICY FOUNDATION; SECOND AMENDMENT FOUNDATION; and MADISON SOCIETY FOUNDATION,<br><br>    Plaintiffs and Petitioners,<br><br>vs.<br><br>XAVIER BECERRA, in his official capacity as Attorney General of California; BRENT E. ORICK, in his official capacity as Acting Chief of the Department of Justice Bureau of Firearms; JOE DOMINIC, in his official capacity as Chief of the Department of Justice California Justice Information Services Division; CALIFORNIA DEPARTMENT OF JUSTICE; and DOES 1 through 20, inclusive,<br><br>    Respondents. | **Case No. 2:18-cv-02317-MCE-AC**<br><br>**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS SECOND AMENDED PETITION FOR WRIT OF MANDATE AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

# TABLE OF CONTENTS

I. Introduction ..........................................................................................................................1

II. The Liberal "Notice" Pleading Standards .........................................................................2

III. The SAC Strongly Supports the Substantive Due Process Claims ....................................3

    A. Even What the State Characterizes as "Mere Negligence" Would Support
the Substantive Due Process Claims Under a Proper Interpretation of the Law .................3

    B. The SAC Does in Fact Establish Deliberate Indifference ........................................4

IV. The SAC Also Firmly Establishes Clear Procedural Due Process Violations ...................8

    A. Even Inadvertent Conduct is Enough in the Procedural Due Process Context ...............8

    B. The SAC Demonstrates that the Interests at Stake are Significant ........................10

    C. The SAC Establishes a Clear Deprivation of the Process Due ...............................10

    D. As the SAC Also Clearly Demonstrates, the Government Interest Here Can in
No Way Justify or Excuse the Significant Deprivation of the Process Due ......................11

    E. The Outrageously Absurd Claims of the State Reveal It is Simply Grasping for Straws in
Attempting to Avoid These Well-Pleaded Due Process Claims .........................................12

V. Plaintiffs Have Also Demonstrated the Necessity of and Their Entitlement
to the Mandamus Relief that They Have Separately Sought Through the SAC ...................13

VI. Plaintiffs' Action Survives Regardless of Any Possible Deficiencies .................................15

VII. Conclusion .........................................................................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................. 2

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696 (9th Cir. 1988) ................................. 15

*Blaylock v. Schwinden*, 862 F.2d 1352 (9th Cir. 1988) ................................................... 8

*Boddie v. Connecticut*, 401 U.S. 371 (1971) ................................................................ 13

*Bryan Cty. v. Brown*, 520 U.S. 397 (1997) ..................................................................... 6

*Carlo v. City of Chino*, 105 F.3d 493 (9th Cir. 1997) ..................................................... 9

*City of Canton v. Harris*, 489 U.S. 378 (1989) ............................................................... 6

*Daniels v. Williams*, 474 U.S. 327 (1986) ....................................................................... 3

*Foss v. Nat'l Marine Fisheries Serv.*, 161 F.3d 584 (9th Cir. 1998) .............................. 12

*Guatay Christian Fellowship v. County of San Diego*, 670 F.3d 957 (9th Cir. 2011) ..... 8

*In re Baldwin-United Corp.*, 770 F.2d 328 (2d Cir. 1985) ............................................. 14

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*,
   507 U.S. 163 (1993) ...................................................................................................... 3

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) ...................................... 2, 6, 8

*Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982) ................................... 4, 9, 10, 13

*Marsh v. County of San Diego*, 680 F.3d 1148 (9th Cir. 2012) ....................................... 9

*Matthews v. Eldridge*, 424 U.S. 319 (1976) ............................................................. 8, 10

*P.R. v. Branstad*, 483 U.S. 219 (1987) .......................................................................... 14

*Petrowski v. Nutt*, 161 F.2d 938 (9th Cir. 1947) ............................................................ 14

*Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936 (9th Cir. 2004) ................................. 4

*Sutton v. Stewart*, 22 F.Supp.2d 1097 (D.C. Ariz. 1998) ............................................ 3, 4

*Thornton v. City of St. Helens*, 425 F.3d 1158 (9th Cir. 2005) ....................................... 9

*United States ex rel. Lee v. Corinthian Colleges*, 655 F.3d 984 (9th Cir. 2011) ...... 2, 8, 15, 16

**Statutes**

28 U.S.C. § 1651 ................................................................................................................. 14

42 U.S.C. § 1983 ................................................................................................................ 3, 4

Cal. Pen. Code § 30900 ................................................................................................. 11, 15

# I. Introduction

Before this Court is Defendants' motion to dismiss (MTD) the Second Amended Petition for a Writ of Mandate and Complaint for Declaratory and Injunctive Relief (SAC) on the basis that the SAC "fails to state any claim against [Defendants] upon which relief may be granted," concerning the online registration system Defendants were statutorily mandated to establish and maintain under California Penal Code section 30900(b) as the sole means through which responsible and law-abiding citizens, just like the individual Plaintiffs in this case, could lawfully retain possession of their firearms recently reclassified as "assault weapons." MTD at 13.

Tellingly, the State does *not* dispute the existence of a constitutionally protected interest under the Due Process Clause of the Fourteenth Amendment in the continued lawful possession of the firearms that Plaintiffs, and all those similarly situated whom they represent, could not register due to the pervasive inadequacies and defects of the registration system. In fact, while the State attempts to downplay the situation in mischaracterizing it as "narrow" and "not substantial," the State expressly concedes they hold such an interest. MTD at 10 ("Plaintiffs have a private property interest in registering and retaining their assault weapons."). And it recognizes that Plaintiffs' due process claims are two-dimensional in nature, giving rise to related but distinct claims of substantive and procedural due process violations based on the same conduct.

The State also does not even suggest that Defendants did *not* have a statutory duty to establish a registration system that consistently and reliably processed applications *throughout the entire* registration period, that the system was *not* defective and inadequate for these purposes, or that Defendants were *not* fully aware of the situation and consistently failed and refused to rectify or attempt to rectify the problems blocking registrations during the registration period. Rather, the State's strategy in seeking to avoid facing Plaintiffs' substantive due process claim is to portray all these facts as being of no moment because, regardless of what the Defendants did or did not do in connection with the registration system, the SAC does not sufficiently establish that they acted "intentionally" or with "deliberate indifference" in discharging their duty to set up and maintain a consistently reliable registration system. MTD at

2, 9. The State is dead wrong here, as the SAC clearly and specifically lays a strong legal foundation demonstrating that Defendants' acted with the requisite degree of culpability.

The State goes on to contend that, as a matter of procedural due process, Plaintiffs received all the process they were due anyway, because the registration window was open long enough to provide an adequate registration opportunity and thus *Plaintiffs* are to blame for the harm they suffered. Essentially, the State's position is that Plaintiffs and everyone else who unsuccessfully attempted during the last week of the registration period *wrongly assumed* they would be able to complete their registrations during this time when "high traffic" and "related difficulties" with the system were likely to and did occur. MTD at 2, 10-11. This transparent attempt by the State to continue shirking its clear duty to the citizens of California in derogation of their constitutional and statutory rights by trying to shift the blame to the victims of its misconduct and cut off the only means they have left to seek redress, is simply appalling.

This Court must reject the State's specious, and alarmingly callous, attempts to dismiss Plaintiffs' well-pleaded claims in pursuit of the judicial relief to which they are certainly entitled.

## II.     The Liberal "Notice" Pleading Standards

The test of Plaintiffs' complaint is a forgiving one. "[U]nder the liberal system of 'notice pleading,'" to survive the State's attempt to dismiss this case, all that is required is "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). In determining whether the complaint satisfies this low threshold, the court views the complaint globally, considering whether it "contains 'sufficient factual matter' that, taken as a true, 'state a claim for relief [that] is plausible on its face.'" *United States ex rel. Lee v. Corinthian Colleges*, 655 F.3d 984, 991 (9th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). And all such factual matter must be construed "in the light most favorable to the plaintiffs." *Lee*, at 679. So long as the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" under this standard, the complaint must be allowed to proceed. *Corinthian Colleges*, at 991. These "bare requirements of

notice pleading" equally apply to claims under 42 U.S.C. § 1983. *Lee*, at 679-680; see *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993) ("a federal court may not apply a heightened pleading standard" to such claims).

### III. The SAC Strongly Supports the Substantive Due Process Claims

The State essentially concedes that the SAC sufficiently establishes the elements of a substantive due process claim with the exception of the *scienter* element – i.e., it only argues that the SAC fails to sufficiently establish Defendants acted with the requisite degree of culpability.

#### A. Even What the State Characterizes as "Mere Negligence" Would Support the Substantive Due Process Claims Under a Proper Interpretation of the Law

In attempting to portray the entire case as rising and falling upon the degree to which Defendants operated with a sufficiently culpable state of mind, the State emphasizes the basic principle, established in *Daniels v. Williams*, 474 U.S. 327 (1986), that allegations of "mere negligence" or an "unintended loss of or injury to life, liberty, or property" by a state official are generally insufficient to establish a violation of substantive due process rights. *See* MTD 8-9 (quoting *Daniels*, at 328). There's no quarrel with this as a general proposition. But, the *Daniels* court did not actually create a hard-and-fast rule. What it *said* was: "'Depending on the right, merely negligent conduct *may not* be enough to state a claim.'" *Sutton v. Stewart*, 22 F.Supp.2d 1097, 1110, n. 24 (D.C. Ariz. 1998) (quoting *Daniels*, at 330). In other words, "[t]he court in *Daniels* … was careful to distinguish among various types of § 1983 claims, noting the right at issue determines the level of culpability necessary to state a claim." *Sutton*, at 1110, n. 24.

The *Daniels* court addressed a jail inmate's due process claim with, at best, a tangential tie to "anything governmental in nature," because the claim was based upon nothing more than a "mere lack of care" where a jail deputy had left a pillow on a stairway that caused the inmate to slip and hurt himself. *Daniels*, 474 U.S. at 328, 332, 334. It was this particular sort of situation that the Supreme Court was concerned "would trivialize the centuries-old principle of due process of law" if it was recognized as giving rise to a viable claim under section 1983. *Id.* at 331

("Our Constitution deals with the large concerns of the governors and the governed …"). The court "did not determine the level of culpability necessary for § 1983 in other contexts" for purposes of substantive due process claims. *Sutton v. Stewart*, 22 F.Supp.2d at 1110, n. 24.[1]

Here, as detailed in the SAC, ¶¶ 3-5, 11-24, 33-57, the rights at stake involve not only Plaintiffs' property interests in retaining lawful possession of their "assault weapons" but also their liberty interests in remaining free from criminal sanctions for continued possession of unregistered "assault weapons" after being unable to register them due to the failings with the online registration system. And even assuming (without conceding) that the government misconduct at issue constituted only "negligence," the pervasive degree of undisputed government neglect was far greater than anything seen in *Daniels*, as it ran through an entire executive department charged with properly implementing a statewide program designed to ensure the public's compliance with stringent criminal laws and regulations governing "assault weapons." Thus, the "negligence" in which the State *admits* Defendants engaged could in itself support Plaintiffs' substantive due process claims under the applicable pleading standards. *See Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 948 (9th Cir. 2004) ("The touchstone of due process is protection of the individual against arbitrary action of government."); *id.* (a substantive due process violation can arise from conduct of a state actor that "interferes with rights implicit in the concept of ordered liberty").

### B. The SAC *Does* in Fact Establish *Deliberate Indifference*

Even focusing solely upon the higher standard of culpability that the State emphasizes – "deliberate decisions of governmental officials" in the deprivation of life, liberty, or property interests, MTD at 8 – the fact is, the complaint still firmly establishes the necessary factual foundation for surviving this motion. Despite what the State might like to glean from a selective reading of the SAC, its central argument about the supposed deficiency of the complaint here is

---

1   As discussed below in section IV., in the procedural due process context, the Supreme Court has specifically recognized that mere "negligence" may in fact violate the Due Process Clause where, as here, the state's system itself operates to finally destroy constitutionally protected property interests. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428-29 (1982).

4

dead wrong. The State insists that "Plaintiffs do not claim that [Defendants] deliberately intended to prevent them from registering their assault weapons or otherwise cause them injury; nor, do they allege deliberate indifference." MTD at 9. No fewer than *five times* in the complaint Plaintiffs specifically allege that *all* the individual members of *all* the institutional plaintiffs (CGF, FPC, FPF, SAF, and MSF) "have been and continue to be adversely and directly affected by *Defendants' ongoing deliberate indifference* to the resulting plight of law-abiding California gun owners who have been prevented from complying with the law." SAC ¶¶ 18-22. *All* individual plaintiffs (Sharp, Ajirogi, Gilardy, Prince, Feltman, Kuehl, and Jahraus) are alleged to be members of CGF, FPC, and FPF. SAC ¶¶ 9-17. All these plaintiffs are specifically alleged to represent the entire "class of similar individuals precluded from timely registering due to the actions and failures of Defendants" – a representative classification that the State does not attempt to challenge. SAC ¶ 22. And *all* these allegations are expressly incorporated into and thus expressly made part of the pleadings in support of each cause of action. SAC ¶¶ 58, 66, 73, 78 (where Plaintiffs incorporate these allegations into each cause of action). Hence, these key assertions of "*ongoing deliberate indifference*" are tied directly to all the due process claims.

Moreover, the SAC repeatedly asserts that Defendants "failed *and* refused" to perform their statutorily-imposed duties by establishing, implementing, and maintaining a defective and inadequate registration system. SAC ¶¶ 3, 53, 57. A *refusal* connotes an *intentional* action or *deliberate* decision. *See* https://www.merriam-webster.com/dictionary/refuse (to "refuse" means "to show or express unwillingness to do or comply with" or "to not allow someone to have or do (something)"). In direct connection with these allegations, the SAC also repeatedly asserts that Defendants were fully aware of these problems with the system and yet failed to rectify them despite pleas for assistance from the public, including the individuals Plaintiffs. SAC ¶¶ 43-53. The complaint goes on to routinely allege that the harm Plaintiffs suffered and the remedies they seek as necessary to rectify that harm were the direct and unmistakable result of Defendants' failures and refusals to perform their statutorily-imposed duties. SAC ¶¶ 3, 4, 12, 13, 15, 16, 47, 48, 49, 50, 51, 53, 57, 65, 71. And, as with the *deliberate indifference* allegations that the State

overlooks, all these allegations were also expressly incorporated into and thus made part of each of the factual pleadings in support of each cause of action. SAC ¶¶ 58, 66, 73, 78.

These factual allegations not only sufficiently support the general "stringent standard of fault" that applies when the government "disregarded a known or obvious consequence of [its] action," MTD at 8 (citing *Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997)), they also support the "customs-or-policies" form of "deliberate indifference." Under that theory of liability, the elements are that plaintiffs "(1) … were deprived of their constitutional rights by defendants and their employees acting under color of state law; (2) that the defendants have customs or policies which 'amount[] to deliberate indifference' to their constitutional rights; and (3) that these policies are the 'moving force behind the constitutional violation[s].'" *Lee v. City of Los Angeles* 250 F.3d 668, 681-82 (9th Cir. 2001) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389-90 (1989). The SAC details what are clearly widespread systemic problems permeating the entire spectrum of the online registration system, which the California Department of Justice and its agents (collectively "DOJ") knowingly disregarded throughout the registration period while undoubtedly aware of the significant risks to the affected public. As Plaintiffs clearly explain in support of the complaint, the registration program was understaffed and underfunded from its very inception. SAC ¶¶ 39-40. Because of these serious systemic inadequacies, the registration system was incapable of processing the actual volume of registration applications, which was clear *five months before* the deadline (if not even sooner), because DOJ's response to the Public Records Request shows the system was already significantly backlogged with unprocessed applications on *February 1, 2018*. SAC ¶ 41. Instead of taking the actions necessary to rectify this situation, it is clear that DOJ simply let these problems continue to fester, since by the date of the deadline, June 30, 2018, the backlog had increased *more than ten times over*. SAC ¶ 42 (the backlog increased from 4,653 applications on February 1st to 52,443 on June 30th).

Moreover, while the State points to the ominous "countdown" clock on DOJ's website and tries to twist the situation around to blame Plaintiffs and the rest of the affected public on the basis that the warning conveyed it was "ill-advised" to attempt registration towards the end of the registration period, MTD at 11, this can only prove the deliberate indifference at work. In

graphically emphasizing to the public at large *precisely when* the registration period ended, this message clearly represented that registrations *could be* processed and accepted *up until the very last second* of the "countdown clock" – i.e., 11:59:59 p.m. on June 30, 2018. SAC ¶ 38.

Similarly, the evidence that a DOJ official told Plaintiff Gilardy that he could "expect the system to 'time out' and fail during the registration process, *but … that if happened, he would be able to 'get through'* after several more attempts," MTD at 11 (quoting SAC at 47) (italics added), certainly does not show the harm they suffered "was of their own making" because they *wrongly assumed* they could attempt to register when they did, as the State says. MTD at 11. Rather, this can only prove that Plaintiffs and all those similarly situated were fully justified in attempting registration when they did. Through its own messages, DOJ *assured* the public that, consistent with its statutory duties, the registration system *would* be accessible, registration applications *would* be processed, and thus the affected public *would* be able to comply with the law by registering their "assault weapons" *up until* the last second of the registration period.

Lastly, the State overlooks the allegations in the SAC that DOJ *actively* refused to assist Plaintiffs, and on reasonable information and belief numerous others, who sought assistance in navigating the defective registration system during the last week of the registration period. Much like the attitude of the State here, DOJ told Plaintiffs Sharp and Jahraus that it would not make any accommodations for those whose applications were not processed by the end of the period because it was the registrants' responsibility to make sure this was done – *regardless* of the fact that their failed attempts to register were the direct result of Defendants' failings. SAC ¶¶ 45, 51.

DOJ also completely ignored the inquiries of Plaintiffs Ajirogi, Prince, and Feltman requesting assistance with processing their applications on time, SAC ¶¶ 46, 48, 49, another pervasive problem. It is common sense that part and parcel of DOJ's duty in establishing and maintaining this online registration system *to perform the function it was designed to perform* included the maintenance of a viable technical support system for those attempting to use the system – *especially* when the system was under the *sole* control of DOJ and when DOJ *knew* the system was inadequate from the start for timely processing the volume of applications.

Plaintiffs have clearly and specifically alleged that Defendants knowingly established and maintained a fundamentally inadequate and defective registration system whose inadequacies and defects permeated the entire registration process from the very inception all the way through the final day of the registration period. Far more than the sort of "mere negligence" at issue in *Blaylock v. Schwinden*, 862 F.2d 1352 (9th Cir. 1988) to which the State unpersuasively attempts to analogize, Defendants' conduct, and the injurious customs and policies it followed which were the "moving force behind the constitutional violations," *Lee v. City of Los Angeles*, 250 F.3d at 681-82, amount to actionable "deliberate indifference," as described in the SAC.

DOJ can't blame the public for being unable to register their firearms *at any point* during the registration period when it was required by statute to provide throughout the *entire* period an accessible and functional online system for processing their applications. And now that Plaintiffs have been left out in the cold with nowhere else to turn, the State cannot shirk responsibility by shutting the door to their only means of recourse through a dismissal of their complaint. More fundamentally, under the liberal pleading standards, the contents of the SAC unquestionably give Defendants "fair notice" of the claims and the grounds upon they rest, *Lee v. City of Los Angeles*, 250 F.3d at 679, and thus support a "reasonable inference" that Defendants are liable for the substantive due process violations alleged, *Corinthian Colleges*, 655 F.3d at 991.

### IV. The SAC Also Firmly Establishes Clear Procedural Due Process Violations

#### A. Even *Inadvertent* Conduct is Enough in the Procedural Due Process Context

As much as the State seeks to turn this case into a blame-game with its focus upon the respective culpability of the parties, its own analytical framework for dealing with the procedural due process concerns reveals its implicit recognition of an important legal distinction: *procedural* due process guarantees do not hinge upon any particular kind or degree of culpability. Plaintiffs need only allege "*a deprivation*" of a constitutionally-protected liberty or property interest, coupled with a "lack of process." *Guatay Christian Fellowship v. County of San Diego*, 670 F.3d 957, 983 (9th Cir. 2011) (italics added); *Matthews v. Eldridge*, 424 U.S. 319, 322 (1976) (the

procedural process guarantees are implicated by all "government decisions which deprive individuals or 'liberty' or 'property' interests" within the purview of the Due Process Clause).

Indeed, in *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, the Supreme Court specifically recognized that a violation of procedural due process necessarily occurs when "it is the state's system itself that destroys a complainant's property interest, by operation of law," whether the state's action "is taken through negligence, maliciousness, or otherwise." *Id.* at 436. Thus, in that case, the state employment commission's failure, "[a]pparently through *inadvertence*," to convene the statutorily-prescribed factfinding conference for purposes of timely adjudicating the plaintiff's employment discrimination claim violated his procedural due process rights. *Id.* at 426, 435-36 (italics added). This was true regardless of the *reason* or intention behind the misconduct; its failure to discharge this duty precluded adjudication of his claim, and that was enough since it automatically resulted in a final destruction of the property interests at stake. *Id.*

As noted, the State has expressly conceded that Plaintiffs and the class of similarly situated individuals they represent hold such a constitutionally protected interest here. The complaint alleges just as much in asserting that their interests in retaining lawful possession of their firearms not only arise from the Constitution itself but also from the state-created right (and indeed, mandate) to register their firearms for the very purpose of ensuring they can and do retain such lawful possession and remain free of the criminal sanctions that would otherwise apply. SAC ¶¶ 60-80; *see Marsh v. County of San Diego*, 680 F.3d 1148, 1154 (9th Cir. 2012) (liberty and property interests "may arise from the Constitution itself," by "guarantees implicit" in the words "liberty" and "property," and "from an expectation or interest created by state laws or policies").

Thus, the only real issue is whether Plaintiffs received the process due before being deprived of their protected interests. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1164 (9th Cir. 2005) ("A procedural due process claim hinges on proof of two elements: (1) a protectible liberty or property interest; and (2) a denial of adequate procedural protections.")). "It is clear that once a liberty interest has been found, federal law rather than state law dictates how much process is due." *Carlo v. City of Chino*, 105 F.3d 493, 497 (9th Cir. 1997). The "adequacy of

OPPOSITION TO MOTION TO DISMISS SECOND AMENDED PETITION FOR WRIT OF MANDATE
AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

statutory procedures for deprivation of a statutorily created property interest must be analyzed in constitutional terms." *Logan v. Zimmerman Brush Co.*, 455 U.S. at 432. And this turns on the following: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. at 335.

### B.    The SAC Demonstrates that the Interests at Stake are Significant

Regarding the interests at stake, although the State admits they are constitutionally protected, it attempts to diminish their significance by perversely pointing to the thin reeds of an interest that might remain after the *total destruction* of the rights at stake. The availability of means through which the affected public can *dispossess* themselves of their firearms under threat of criminal sanction is no meaningful way for Plaintiffs "to make use of their assault weapons." MTD at 10. Nor can this serve as a legitimate justification for the total destruction of the substantial, constitutionally and statutorily created rights to continue in lawful possession of the firearms as configured without the threat of criminal sanctions, as the State argues. *Id.*

### C.    The SAC Establishes a Clear Deprivation of the Process Due

As for the supposed adequacy of the procedures used and the futility of additional procedural safeguards, the State banks its entire theory on the already debunked notion that it was Plaintiffs' fault for waiting until they did to attempt their registrations, given the warnings conveyed through the "countdown clock" on DOJ's website and the statements of the DOJ official to Plaintiff Gilardy regarding the technical problems with the registration system. MTD at 11. The State even has the audacity to characterize Plaintiff Gilardy's attempt to register a *full eight days* before the deadline as so dilatory in light of this evidence that he too caused his own plight. *Id.* Again, this evidence can only highlight how the procedures were clearly inadequate, that DOJ indeed actively misled the public into believing registrations were possible up until the

very last minute, and that additional procedural safeguards were vital to the process. Those safeguards certainly wouldn't have been overly burdensome — setting a up system actually designed to handle the volume of applications expected would have been the easy place to start; that is what DOJ was specifically charged with doing. Cal. Pen. Code, § 30900, subd. (b)(2) ("Registrations shall be submitted electronically via the Internet utilizing a public-facing application made available by the department."). Failing that, DOJ was at the least required to establish a responsive and effective technical support system with trained, and helpful, staff dedicated to assisting registrants successfully navigate through all the technical pitfalls that the agency was unable or willing to rectify. Moreover, the State's theory rests on the *critical assumption* that Plaintiffs and the rest of these individuals certainly would have been able to register had they tried to do so at some point earlier in time. But given the evidence that the system was already significantly backlogged *several months* before the deadline, that is not a valid or logical assumption; instead, the more than *ten-fold increase* in the backlog between then and June 30th shows the system was *continuously* unreliable throughout the registration period.

### D. As the SAC Also Clearly Demonstrates, the Government Interest Here Can in No Way Justify or Excuse the Significant Deprivation of the Process Due

The State's distortion of the government interest factor highlights the troublingly skewed perspective driving its bid for dismissal of the complaint. This case is not about "a series of mass shootings involving semiautomatic rifles" or "gun manufacturers' attempts to sidestep the AWCA's prohibitions." MTD at 12. Nor is it about general legislative findings that "assault weapons pose a threat to the health, safety, and security of California." MTD at 12. Whatever value these concerns have as general governmental interests for purposes of assessing procedural due process violations – such concerns could apply to virtually any device capable of inflicting injury when in the wrong hands – they do not speak to, much less justify, the concern here: the government's failure and refusal to perform the statutory duty it was required to perform in ensuring the accessibility of a functional registration system throughout the entire statutory

OPPOSITION TO MOTION TO DISMISS SECOND AMENDED PETITION FOR WRIT OF MANDATE
AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

registration period, callously depriving Plaintiffs and numerous other law-abiding Californians of the statutorily and constitutionally protected right to retain lawful possession of their firearms.

The State's focus upon "[t]he importance of a fixed application period," as if Plaintiffs' claims would somehow throw a wrench into the government's well-oiled machines, is yet another red herring. MTD at 12 (quoting *Foss v. Nat'l Marine Fisheries Serv.*, 161 F.3d 584, 589 (9th Cir. 1998). No one is taking issue with the use of "a fixed application period." What matters, obviously, is Defendants' failure and refusal to establish and maintain a consistently reliable online system for processing all the necessary registration *during* the fixed application period. And there is no credible analogy to be drawn with the *Foss* case, as the State suggests. *See* MTD at 12. In *Foss*, the National Marine Fisheries Services went to "great lengths" and "the extra mile" in notifying all the potentially affected fisherman about the fishing quota program that the agency was charged with administering through a fixed application period, including twice sending plaintiff Foss an application for the program. *Id.* at 589-589. In this case, Defendants essentially undertook no efforts to educate or advise the public at large of the registration requirement besides creating the ominous "countdown clock" on its website, which only those who happened to surf the website might stumble upon. SAC ¶¶ 54-57. And, unlike here, more fundamentally, there were no allegations in *Foss* of *any* failings or missteps by the agency in connection with its implementation of the application program; Foss's only complaint was that he did not receive the notices the agency sent him and thus that he was deprived of *actual* notice in time to submit an application before the deadline. *Id.* at 587, 589-590.

**E.   The Outrageously Absurd Claims of the State Reveal It is Simply Grasping for Straws in Attempting to Avoid These Well-Pleaded Due Process Claims**

Hammering home its specious theme that Plaintiffs are at fault for everything that went wrong, the State outrageously takes things to another level of absurdity. It ties the unregistered firearms of Plaintiffs and everyone in the represented class to the "AR-15 style 'bullet button' semiautomatic rifles" that "the shooters in the 2015 San Bernardino mass shooting [allegedly] used" to perpetrate those mass killings, and laments that "[a]s this Complaint illustrates, some of

12

OPPOSITION TO MOTION TO DISMISS SECOND AMENDED PETITION FOR WRIT OF MANDATE
AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

those lethal assault weapons remain unaccounted for and in the public space, capable of causing future tragedies." MTD at 12. So, the State is essentially blaming Plaintiffs and all those similarly situated for *increasing societal dangers* because their firearms are now unregistered "assault weapons." Taking *the plight* of law-abiding citizens *who attempted to register* within the registration period but were shut out entirely due to *the fault of Defendants* and twisting it around to put them in the same camp with *deranged mass shooters*, is plain madness.

Clearing away the smoke and mirrors, the fact remains that, through far more than mere "inadvertence" or "negligence," Defendants' woefully inadequate and defective registration system has resulted in a total destruction of the protected interests at issue, a deprivation that is and will remain "final" absent the judicial relief they seek through this lawsuit. Having created the necessity of this judicial intervention through the operation of this system that has unfairly and improperly deprived the rights of Plaintiffs and all those similarly situated, Defendants cannot now shirk responsibility for the harm that they have caused by dismissing this action. *See Logan v. Zimmerman Brush Co.*, 455 U.S. at 429, n. 5 (quoting *Boddie v. Connecticut*, 401 U.S. 371, 380 (1971) ("a due process right of access to the courts exists when fundamental interests are present and the State has exclusive control over 'the adjustment of [the] legal [relationships] involved'"). The minimum procedure due here is simply what Defendants were statutorily required to provide in the first instance: the opportunity to actually complete the "assault weapon" registration process through a functional online registration system.

Plaintiffs' allegations are more than sufficient to support their entitlement to this relief based upon Defendants' clear violation of their procedural due process rights under the liberal notice pleading standards – despite the State's outrageously absurd arguments to the contrary.

### V. Plaintiffs Have Also Demonstrated the Necessity of and Their Entitlement to the Mandamus Relief that They Have Separately Sought Through the SAC

The State has entirely ignored the independent significance of Plaintiffs' Second Cause of Action, seeking "a writ of mandate or other appropriate relief" based upon "a deprivation of due process under the United States Constitution, and the Constitution of the State of California, and

13

OPPOSITION TO MOTION TO DISMISS SECOND AMENDED PETITION FOR WRIT OF MANDATE
AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

a denial of Plaintiffs' rights under the applicable statutes." SAC ¶ 71. "It has long been a settled principle that federal courts may enjoin unconstitutional action by state officials." *P.R. v. Branstad*, 483 U.S. 219, 228 (1987). Thus, "when a plain official duty, requiring no exercise of discretion, is to be performed, and performance is refused, any person who will sustain personal injury by such refusal may have a mandamus to compel its performance,' and it [is] no objection that such an order might be sought in the federal courts against a state officer." *Id.* at 227.

Here, as we have seen, the State does not challenge the existence of such a "plain official duty," or even that Defendants failed to properly discharge this duty; nor does it challenge the sufficiency of the allegations that the Defendants had such a duty which they failed to properly discharge. Rather, the essence of the State's case for dismissal is that, despite the existence and breach of such a duty, Plaintiffs have not sufficiently pleaded a violation of due process under the United States Constitution. This is simply wrong, given the clear and specific allegations about the systemic defects of the registration system, of which Defendants were fully aware but failed and refused to rectify, and which have directly resulted in a palpable deprivation of Plaintiffs' due process and statutory rights that will become final absent judicial intervention.

Independent of the declaratory and injunctive relief Plaintiffs seek through their other causes of action, this Court has the power to grant the relief Plaintiffs seek through this cause of action and to compel the proper performance of Defendants' duty based upon the same allegations of misconduct, under its ancillary jurisdiction to issue "such writs which may be necessary to the exercise of [the federal courts'] respective jurisdictions and agreeable to the usages and principles of law." *Petrowski v. Nutt*, 161 F.2d 938, 939 (9th Cir. 1947); 28 U.S.C. § 1651;[2] *In re Baldwin-United Corp.*, 770 F.2d 328, 335 (2d Cir. 1985) (federal courts retain "ancillary jurisdiction to issue writs 'necessary or appropriate in aid of'" their jurisdiction over the case in chief). The writ relief to which Plaintiffs contend they are entitled here – a mandate

---

2  28 U.S.C. § 1651 (known as "the All Writs Act"), provides:

(a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

directing Defendants to permit Plaintiffs to register their otherwise legally-possessed, qualified firearms as "assault weapons" through a reliable registration system pursuant to Penal Code section 30900(b) for a reasonable period of time beyond the statutory deadline – is necessary and appropriate as essential ancillary relief to the injunctive and declaratory relief prohibiting Defendants from prosecuting Plaintiffs for being in violation of the criminal laws proscribing possession of unregistered "assault weapons" during the pendency of this opportunity to register.

### VI. Plaintiffs' Action Survives Regardless of Any *Possible* Deficiencies

While the State does not use the buzzwords "with prejudice" in seeking dismissal of this action, the language it uses in pursuing the dismissal – *see e.g.*, MTD at 2, 9, 12, 13 (arguing the complaint "*must* be dismissed" and "in its entirety") – implicitly conveys the message that the action is not only legally deficient as currently presented but even deficient beyond repair. The strength and steadfastness of Plaintiffs' belief in the legal and factual solidarity of this action cannot be understated. For all the reasons discussed herein, the claims are rock solid as is. Without conceding or intending to convey *any* measure of doubt on this point, Plaintiffs simply respond here to the wrongness of the implication that this action is somehow fatally defective.

It is settled that "[d]ismissal without leave to amend is improper unless it is *clear*, upon de novo review, that the complaint *could not* be saved by *any* amendment." *Corinthian Colleges*, 655 F.3d at 995 (italics added). Under this "generous" standard for granting leave to amend, such leave must be granted so long as "the court 'can conceive of any facts' that would render the plaintiff's claim viable." *Id.* (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1988). Here, again, given the quality and substantiality of the supporting allegations in strongly framing their case for judicial redress as outlined above, there could be nothing *fatally* deficient about the SAC action. Rather, any potential or arguable deficiencies could only amount to mere imperfections or minor deficiencies easily curable with additional or marginally different language. Fundamentally, the factual content of the complaint strongly supports the core legal

---

(b) An alternative writ or rule nisi may be issued by a justice or judge of a court which has jurisdiction.

claims, whether or not some sort of modifications to the contents might be useful in clarifying that. Beyond the primary "futility" factor, none of the other relevant factors would justify denial of an opportunity to amend the complaint for any such purposes. There is no concern about "bad faith," "undue delay," "prejudice to the opposing party," or excessive amendments – particularly since any protraction of the litigation to date has stemmed from the inherent complications of Defendants' action of removing Plaintiffs' lawsuit to this Court. *Corinthian Colleges*, at 995. Thus, to whatever extent the SAC *may* contain technical pleadings deficiencies, Plaintiffs are entitled to amend the SAC accordingly. *Id.* at 996 (finding error in dismissal of the complaint with prejudice "without considering whether additional facts could cure any deficiencies").

## VII.   Conclusion

Plaintiffs respectfully request that this Court deny the State's motion to dismiss the SAC.

Dated: November 19, 2018            **THE DIGUISEPPE LAW FIRM, P.C.**

/s/ Raymond M. DiGuiseppe
Raymond M. DiGuiseppe

Attorneys for Petitioners-Plaintiffs