XAVIER BECERRA
Attorney General of California
BENJAMIN M. GLICKMAN
Supervising Deputy Attorney General
JOHN W. KILLEEN, State Bar No. 258395
Deputy Attorney General
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone:  (916) 210-6045
  Fax:  (916) 324-8835
  E-mail:  John.Killeen@doj.ca.gov
*Attorneys for Defendants*
*Xavier Becerra, Brent E. Orick, Joe Dominic, and*
*the California Department of Justice*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **HARRY SHARP, et al.,** | Case No. 2:18-cv-02317-MCE-AC |
| Plaintiffs, | **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED PETITION FOR WRIT OF MANDATE AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| v. | |
| **XAVIER BECERRA, et al.,** | |
| Defendants. | Date:          None Set[1] |
| | Time:          None Set |
| | Dept:          Courtroom 7 |
| | Judge:         Hon. Morrison C. England, Jr. |
| | Trial Date:    None Set |
| | Action Filed:  7/11/2018 |

---

[1] On October 19, 2018, the Court vacated the November 29, 2018, hearing on Defendants' motion to dismiss and took the matter under submission.

1

**TABLE OF CONTENTS**

2

**Page**

3      I.    Introduction ......................................................................................................... 1

4      II.   Mere Negligence Does Not Give Rise to a Due Process Claim ............................ 2

       III.  In All Events, Plaintiffs' Due Process Rights Were Not Violated......................... 6

5      IV.   Conclusion ........................................................................................................... 7

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

CASES

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ........................................................................................4

*Blaylock v. Schwinden*
    862 F.2d 1352 (9th Cir. 1988) ..................................................................2, 3

*Cnty. of Sacramento v. Lewis*
    523 U.S. 833 (1998) ..................................................................................2, 3, 4

*Collins v. City of Harker Heights*
    503 U.S. 115 (1992) ..................................................................................5, 6

*Daniels v. Williams*
    474 U.S. 327 (1986) ..............................................................................2, 3, 6

*Davidson v. Cannon*
    474 U.S. 344 (1986) ........................................................................................3

*Foss v. Nat'l Marine Fisheries Serv.*
    161 F.3d 584 (9th Cir. 1998) ........................................................................7

*Fraternal Order of Police Dep't of Corrections Labor Comm. v. Williams*
    375 F.3d 1141 (D.C. Cir. 2004) ..................................................................5

*Hernandez v. City of San Jose*
    897 F.3d 1125 (9th Cir. 2018) ..................................................................3, 4

*Hudson v. Palmer*
    468 U.S. 517 (1984) ........................................................................................7

*Kingsley v. Hendrickson*
    135 S. Ct. 2466 (2015) ....................................................................................3

*Logan v. Zimmerman Brush Co.*
    455 U.S. 422 (1982) ........................................................................................3

*Maddox v. City of Los Angeles*
    792 F.3d 1408 (9th Cir. 1986) ......................................................................3

*OSU Student Alliance v. Ray*
    699 F.3d 1053 (9th Cir. 2012) ......................................................................3

*Parratt v. Taylor*
    451 U.S. 527 (1981) ....................................................................................3, 7

ii

## TABLE OF AUTHORITIES
### (continued)

Page

*Ramos-Pinero v. Puerto Rico*
    453 F.3d 48 (1st Cir. 2006) ........................................................................................5

*Shanks v. Dressel*
    540 F.3d 1082 (9th Cir. 2008) ...................................................................................4

STATUTES

42 United States Code § 1983 ..........................................................................................6

California Penal Code § 30900(b)(2) ...............................................................................1

## I. INTRODUCTION

Following a mass shooting in San Bernardino, California, in 2017, the California Legislature changed the law to prohibit possession of semiautomatic rifles with detachable magazines and certain military-style features. *See* Defs.' Mem. in Support of Mot. Dismiss, ECF No. 14-1 ("Mem.") at 5-6. For individuals who already owned such weapons, they had several ways to keep their weapons and comply with the new law. They could make the weapon's detachable magazine a "fixed magazine." *Id.* at 6 (citing Cal. Pen. Code § 30515(b)). Or they could remove the weapon's military-style features (rendering it still operable but "featureless"). *Id.* Or they could retain the weapon exactly as it was, without any modifications, so long as they registered it with the California Department of Justice. *Id.* In the latter case, registration applications were required to "be submitted electronically via the Internet utilizing a public-facing application made available by the department." Cal. Pen. Code § 30900(b)(2).

The Department's registration portal went live in August 2017. *See* Second Amended Complaint, ECF No. 10 ("SAC"), ¶ 36. The California Legislature gave individuals nearly a year to register their weapons—until June 30, 2018—and at least 68,848 applications were successfully submitted by that deadline. *See id.* ¶ 42. Plaintiffs allege that when they attempted to register their weapons in the final hours and days of the nearly year-long registration period, they encountered technical issues with the Department's registration portal that prevented them from timely submitting some of their applications. They further allege that California law imposed a duty on Defendants to guarantee a 100% uptime and a fully functional Internet registration system 24/7/365 and that Defendants did not fulfill their obligations under state law.

Whatever the merits of Plaintiffs' claims might be in a state court writ of mandate action to compel Defendants' compliance with California law, Plaintiffs have not stated a claim for a violation of the federal or state Due Process Clauses. Even assuming arguendo that the technical glitches Plaintiffs encountered deprived them of a property interest (and could be attributed to the registration system), that deprivation did not rise to the level of a constitutional violation because Defendants' conduct was at most negligent. Mere negligence cannot create liability under the Due Process Clause, as decades of Supreme Court and Ninth Circuit precedent make clear. This

1

1  motion to dismiss should be granted and the complaint's due process claims should be dismissed

2  without leave to amend.

3  **II.    MERE NEGLIGENCE DOES NOT GIVE RISE TO A DUE PROCESS CLAIM**

4          As Defendants demonstrated, even if Plaintiffs encountered the technical difficulties

5  described in the complaint, they have not pleaded a plausible claim for violations of due process

6  because, as a matter of law, mere negligence cannot rise to the level of a constitutional due

7  process violation.  *See* Mem. at 8-10 (discussing *Daniels v. Williams*, 474 U.S. 327 (1986) and

8  *Blaylock v. Schwinden*, 862 F.2d 1352 (9th Cir. 1988)).  "[O]nly the most egregious official

9  conduct can be said to be arbitrary in the constitutional sense."  *Cnty. of Sacramento v. Lewis*, 523

10  U.S. 833, 846 (1998) (citations and quotations omitted).  Negligent conduct that might be

11  actionable under state law does not provide a basis for a violation of due process unless it reflects

12  a degree of arbitrariness or deliberate indifference that rises to the level of the "most egregious

13  official conduct."  *Id.*; *see* Mem. at 8-10.

14          Even accepting its allegations as true, the complaint falls short of satisfying this standard.

15  The complaint does not challenge the Legislature's decision to require online registration, but

16  rather seeks to impose an artificially high due process obligation in the operation of the online

17  portal.  When a government agency like the State of California or a federal agency or this Court

18  sets up a website that works for many people over many months, technical issues that arise for a

19  few people on the eve of a filing deadline cannot constitute a violation of due process because, at

20  most, these technical issues were caused by negligence.  The complaint does not allege that

21  Defendants deliberately denied Plaintiffs the opportunity to register, or deliberately crashed their

22  website, or targeted the plaintiffs in any particular way, e.g., by letting other individuals register

23  but deliberately denying Plaintiffs the opportunity to register.  Nor does the complaint allege that

24  the Defendants completely abdicated their responsibility to create a website in a way that could

25  rise to the level of a due process violation; on the contrary, the registration website was open for

26  nearly a year, and at least 68,848 applications—including some of Plaintiffs' applications—were

27  successfully submitted in the months prior to June 30, 2018 deadline.  *See* SAC, ¶¶ 42, 45

28  (plaintiff Sharp able to register one of four weapons), 47 (plaintiff Gilardy able to register one of

1   three weapons).  Rather, the complaint alleges only that when the Plaintiffs tried to use the

2   website, it did not work for whatever reason.  As in *Blaylock*, at most, this is a claim of

3   government negligence that may give rise to a state court writ of mandate action but which does

4   not give rise to a due process claim.  *See* Mem. at 9.

5       In response, Plaintiffs first contend that the proposition that mere negligence cannot give

6   rise to a due process claim is not a "hard-and-fast rule."  Opp. at 3.  The rule is certainly hard-

7   and-fast in the Supreme Court.  *See Daniels*, 474 U.S. at 328 ("[T]he Due Process Clause is

8   simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life,

9   liberty, or property."); *County of Sacramento*, 523 U.S. at 849 ("liability for negligently inflicted

10  harm is categorically beneath the threshold of constitutional due process") (emphasis added);

11  *Kingsley v. Hendrickson,* 135 S. Ct. 2466, 2472 (2015) (citing *County of Sacramento*).  It is

12  equally well-established in the Ninth Circuit.  *See, e.g.*, *Blaylock*, 862 F.2d at 1354-55; *OSU*

13  *Student Alliance v. Ray*, 699 F.3d 1053, 1078 (9th Cir. 2012) ("negligence does not suffice for

14  due process liability"); *see also Hernandez v. City of San Jose*, 897 F.3d 1125, 1135 (9th Cir.

15  2018) (deliberate indifference "requires a culpable mental state" and is more than "gross

16  negligence") (citations omitted).  And despite Plaintiffs' intimations to the contrary, *see* Opp. at 4

17  n.1,[2] the rule bars claims of both substantive due process and procedural due process.  *See*

18  *Davidson v. Cannon*, 474 U.S. 344, 348 (1986) ("the protections of the Due Process Clause,

19  whether procedural or substantive, are just not triggered by lack of due care . . . ."); *County of*

20  *Sacramento*, 523 U.S. at 849 (citing *Davidson*).

21      Second, Plaintiffs argue that the complaint alleges facts sufficient to demonstrate

22  "deliberate indifference" simply because it uses the words "deliberate indifference."  Opp. at 5.

23  This is exactly the "formulaic recitation of the elements" of a claim that is not sufficient to state a

24  _____

25  [2] Plaintiffs rely on *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982) for the proposition that a procedural due process claim may be brought even when the government acts "through inadvertence."  Opp. at 4 n.1, 9.  In 1982, this proposition might have been true under

26  *Parratt v. Taylor*, 451 U.S. 527 (1981).  But the Supreme Court in *Daniels* expressly overruled this aspect of *Parratt*.  *See Maddox v. City of Los Angeles*, 792 F.3d 1408, 1413 (9th Cir. 1986)

27  ("*Daniels* and *Davidson* overruled [*Parratt*] to the extent *Parratt* states that 'mere lack of due care by a state official may deprive an individual of life, liberty or property under the Fourteenth

28  Amendment.'") (citations omitted).

3

claim under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *Iqbal*, 556 U.S. at 681 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). At most, the complaint alleges that "Defendants thus knew or reasonably should have known of the material defects, flaws, and limitations (including but not limited to capacity of the registration system," but "failed or refused to remedy such defects failures and limitations." SAC, ¶ 44. Tens of thousands of Californians were able to successfully submit their applications. *See id.* ¶ 42. A government agency's alleged failure to rectify technical problems of unknown cause, number or scope in a one-week timeframe before a statutory deadline is not the same as a deliberate, intentional, arbitrary decision to deprive its citizens of life, liberty, and property. Deliberate indifference requires a "culpable mental state" and something far exceeding mere negligence, which has not been alleged here. *Hernandez*, 897 F.3d at 1135; *see County of Sacramento*, 523 U.S. at 846 ("[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense"). Plaintiffs have not alleged, because they cannot allege, that the Defendants made a *deliberate choice* to prevent them from registering their weapons, which is the sort of "sudden change in course, malice, bias, [or] pretext" needed to state a due process claim. *Shanks v. Dressel*, 540 F.3d 1082, 1089 (9th Cir. 2008).

Third, Plaintiffs argue that, at a *systematic* level, the registration system was so plagued by problems that it constituted deliberate indifference on Defendants' part. *See, e.g.*, Opp. at 6 ("the registration program was understaffed and underfunded from its very inception") (citing *Lee v. City of Los Angeles* 250 F.3d 668 (9th Cir. 2001). In making this assertion, Plaintiffs repeatedly conflate the online system's initial receipt of applications with the Department's processing and approval of the applications after they were submitted. *See* SAC, ¶¶ 41, 42 (describing backlog of 52,442 applications that were timely received but "still in process"); Opp. at 6 (describing backlog of *already received* applications). But the time required to process applications on the back end is irrelevant to the question of whether Californians could submit applications on the front end—which nearly 70,000 successfully did. *See* SAC, ¶ 42. Tellingly, despite arguing that there were systematic problems with the front-end registration, the only specific examples Plaintiffs identify are from Friday, June 22 (Gilardy), Thursday, June 28 (Ajirogi), Friday June 29

4

1   (Sharp), and Saturday, June 30 (Jahraus, Kuehl, Prince, Sharp).  SAC, ¶¶ 45-51.  The complaint

2   identifies no such "systemic" failures in the almost year that that the online portal successfully

3   operated.  An isolated handful of last-minute technical issues among nearly 70,000 successfully

4   completed applications, even if negligent, hardly rises to the level of an intentional or

5   deliberately indifferent *systemic* deprivation of life, liberty, or property.  If it did, every

6   government agency that administers an Internet-based service would be a perpetual target for

7   constitutional litigation.

8       Moreover, even if the complaint had cogently articulated a connection between funding

9   levels and the alleged failure of the website to accept registrations, such an allegation of program

10  underfunding is not sufficient to state a due process claim.  *See Collins v. City of Harker Heights*,

11  503 U.S. 115, 128-29 (1992).  Any constituency could always claim that it was being deprived of

12  due process because the government was failing to fund a particular program or meet the

13  constituency's desired level of service delivery.  But that purported failure does not rise to the

14  level of a *due process* violation because it would require federal courts to interfere with "the

15  allocation of resources to individual programs . . . and to particular aspects of those programs,"

16  which "involve a host of policy choices that must be made by locally elected representatives,

17  rather than by federal judges . . . ."  *Id.*; *see Ramos-Pinero v. Puerto Rico*, 453 F.3d 48, 53 (1st

18  Cir. 2006) (rejecting argument that the government violated due process rights when it "failed to

19  devote sufficient resources to the design and maintenance of their sewer and highway systems,

20  resulting in flooding and the failure to cover an open manhole"); *Fraternal Order of Police Dep't

21  of Corrections Labor Comm. v. Williams*, 375 F.3d 1141, 1145 (D.C. Cir. 2004) (rejecting

22  argument that "large-scale personnel and program decisions" made in response to funding

23  constraints violated due process).

24      Fourth, Plaintiffs proffer several novel interpretations of the Due Process Clause that stretch

25  it far beyond anything found in current law.  Plaintiffs allege that a government agency's failure

26  to "actively assist" them (especially on weekends) constitutes a violation of due process.  Opp. at

27  7.  Likewise, Plaintiffs ask the Court to create a constitutional right to a "responsive and effective

28  technical support system with trained, and helpful, staff dedicated to assisting registrants

5

1    successfully navigate through all the technical pitfalls that the agency was unable or willing to

2    rectify."  Opp. at 11.

3          Plaintiffs cite no authority for such sweeping constitutional rights.  Indeed, if the Court

4    were to create such ad hoc due process rights, other government agencies—and perhaps the Court

5    itself—would regularly face section 1983 lawsuits alleging that their staff were insufficiently

6    "responsive," "effective," "trained," or "helpful" to the public.  Especially in the context of

7    *substantive* due process—a primary basis of Plaintiffs' arguments—such novel requirements are

8    foreclosed by the Supreme Court's repeated admonitions that federal courts should be "reluctant

9    to expand the concept of substantive due process because guideposts for responsible

10   decisionmaking in this uncharted area are scarce and open-ended."  *Collins*, 503 U.S. at 125.

11         For all of these reasons, Plaintiffs' due process claims must be dismissed.

12   **III.   IN ALL EVENTS, PLAINTIFFS' DUE PROCESS RIGHTS WERE NOT VIOLATED**

13         As demonstrated above, "the Due Process Clause is simply not implicated by a *negligent*

14   act of an official causing unintended loss of or injury to life, liberty, or property."  *Daniels*, 474

15   U.S. at 328.  For this reason alone, the Court should grant the motion to dismiss.

16         Alternatively, even if the Due Process Clause were implicated, the complaint fails to state a

17   cognizable claim for a due process violation.  *See* Mem. at 10-12.  Despite Plaintiffs' rhetoric

18   about being "left out in the cold," Opp. at 8, the practical effect of the technical glitches they

19   describe was minimal because they may still keep their weapons in a fully operational state

20   without any fear of prosecution or deprivation of their property, so long as the weapons are

21   modified to have a "fixed magazine" or not have certain military-style features.  *Id.* at 10.[3]  And

22   as Defendants explained, the California Department of Justice created an accessible online system

23   and provided citizens with almost a full year to register their weapons, as nearly 70,000

24   individuals did.  *Id.* at 12.  Even assuming that technical glitches—whatever their cause—

25   _____

26         [3] Notably, Plaintiff Prince had a California-compliant modification "in the wings for many
     years" before 2018.  *See* Jacob Sullum, *You Can Already Buy a Kit to Circumvent California's
27   New Brand-New "Assault Weapon" Law*, Reason.com, Jul. 7, 2016, available at
     https://reason.com/r/157d (accessed November 30, 2018).

28

1    occurred in the final days, that did not make the *entire process* so defective as to rise to the level

2    of a due process violation.  *See Foss v. Nat'l Marine Fisheries Serv.*, 161 F.3d 584, 590 (9th Cir.

3    1998) (proper inquiry is into "the entire complement of procedural protections," not the result in

4    an individual case).[4]  Had Plaintiffs attempted to register earlier, they could have resolved or at

5    least sought relief for their technical issues prior to the deadline—just as they can seek relief in

6    state court now for their statutory claims pertaining to the registration system.  Whatever claims

7    Plaintiffs may have in state court, they have not cognizably pleaded a claim for a due process

8    violation in this Court.

9    **IV.    CONCLUSION**

10          For these reasons, Defendants request that their motion to dismiss be granted.  Because the

11   only federal claim in the complaint is the due process claim, and there is no way for Plaintiffs to

12   cognizably plead a due process claim, Defendants request that Plaintiffs' federal claims—and

13   Plaintiffs' writ of mandate claim to the extent it is based on a purported due process violation—be

14   dismissed without leave to amend.

15

16   Dated:  December 3, 2018                    Respectfully Submitted,

17                                               XAVIER BECERRA
                                                 Attorney General of California
18                                               BENJAMIN M. GLICKMAN
                                                 Supervising Deputy Attorney General
19

20                                               */s/ John W. Killeen*
                                                 JOHN W. KILLEEN
21                                               Deputy Attorney General
                                                 *Attorneys for Defendants*
22                                               *Xavier Becerra, Brent E. Orick, Joe*
                                                 *Dominic, and the California Department of*
23                                               *Justice*

     SA2018102035
24   13342553_3.docx

25

26   _____

27          [4] Though the Court need not reach the issue, an independent reason for dismissing
     Plaintiffs' due process claims is that Plaintiffs have adequate state-law remedies for any
     deprivation of due process.  *See Parratt v. Taylor*, 451 U.S. 527 (1981); *Hudson v. Palmer*, 468
28   U.S. 517 (1984).

                                                 7

# CERTIFICATE OF SERVICE

Case Name:  **Sharp, Harry, et al. v. Xavier**          No.    **190350**
            **Becerra, et al.**

I hereby certify that on <u>December 3, 2018</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED PETITION FOR WRIT OF MANDATE AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>December 3, 2018</u>, at Sacramento, California.

|                          |                          |
|:------------------------:|:------------------------:|
| Tracie L. Campbell       | */s/  Tracie Campbell*   |
| Declarant                | Signature                |

SA2018102035
13350785.docx