UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARRY SHARP; DAVID AJIROGI; RYAN GILARDY; DARIN PRINCE; TODD FELTMAN; DAVID KUEH; TERRY JAHRAUS; THE CALGUNS FOUNDATION; FIREARMS POLICY COALITION; FIREARMS POLICY FOUNDATION; SECOND AMENDMENT FOUNDATION; and MADISON SOCIETY FOUNDATION,<br><br>Plaintiffs and Petitioners,<br><br>v.<br><br>XAVIER BECERRA, in his official capacity as Attorney General of California; BRENT E. ORICK, in his official capacity as Acting Chief of the Department of Justice Bureau of Firearms; JOE DOMINIC, in his official capacity as Chief of the Department of Justice California Justice Information Services Division; CALIFORNIA DEPARTMENT OF JUSTICE; and DOES 1 through 20, inclusive,<br><br>Respondents. | No.  2:18-cv-02317-MCE-AC<br><br>**MEMORANDUM AND ORDER** |

////

////

1

Through the present lawsuit, Plaintiffs, who are a combination of both individual firearm owners and gun rights interest groups, challenge the alleged shortcomings of the online program administered in 2017-2018 by the California Department of Justice and its officials (hereinafter collectively "Defendants" ) for registering "bullet button" firearms on behalf of gun owners possessing those weapons before they became illegal following a 2016 amendment to California's Roberti-Roos Assault Weapons Control Act ("ACWA"). Plaintiffs allege they were subject to constitutional due process violations in the way that Defendants' program was handled.  Plaintiffs' Complaint was originally filed in state court before being removed to this Court on August 24, 2018 under federal question jurisdiction pursuant to 28 U.S.C. § 1331.

Now before the Court is Defendants' Motion to Dismiss Plaintiffs' operative Second Amended Complaint ("SAC"), which, for the reasons outlined below, is DENIED.[1]

## BACKGROUND

The California Legislature passed ACWA in 1989 in response to a growing number of shootings involving semiautomatic weapons, including an incident occurring at the Cleveland Elementary School in Stockton where five children were killed.  See Silveira v. Lockyer, 312 F.3d 1052, 1057 (9th Cir. 2002) (citing 1989 Cal. Stat. ch. 19, § 3 at 64, codified at former Cal. Penal Code § 12275, et seq.).   ACWA, as initially constituted, prohibited assault weapons by make and model.  Because gun manufacturers responded by making "copycat" weapons that were substantially similar to the restricted weapons, and differed in only insubstantial respects, in 1999 the Legislature amended ACWA to define the class of restricted weapons by features, as opposed to simple restrictions on certain models.  Id. at 1058.  Those amendments

---

[1] Having determined that oral argument would not be of material assistance, the Court submitted this matter on the briefs in accordance with E.D. Local Rule 230(g).

refined the definition of prohibited guns by providing that a weapon constituted a restricted assault weapon if it had the capacity to accept a detachable magazine in addition to one of several specified military characteristics. See S.B. 880, 2015-2016 Reg. Sess., Assembly Comm on Pub. Safety, June 13, 2017, p. 4.  This amendment was intended to close the loophole created by assault weapons being defined only by make and model.  See id.

In 2016, the Legislature amended ACWA yet again, this time in response to a minor design change made by gun manufacturers that allowed shooters to use the tip of a bullet as a "tool" to push a button that would release the ammunition magazine. Id. at 5.  With the so-called "bullet button," a detachable ammunition magazine could be removed and replaced in seconds, rendering meaningless any distinction in California law between a magazine that is not "detachable" and one that can be readily without the use of a special tool.  As was noted in the course of the 2016 amendment process, weapons with "bullet buttons" are the functional equivalents of illegal assault weapons in every respect, except that the shooter uses a bullet, magnet, or other instrument, instead of his or her finger, to depress the button that releases the weapon's magazine.  As a proponent of gun safety noted, "[t]hese weapons may be reloaded as quickly as prohibited assault weapons, [and] have been permitted to flood into the state at an alarming rate, threatening Californians' safety." Id. at 8.  As such, the 2016 amendments to ACWA prohibited semiautomatic rifles as those without a "fixed" magazine, with a "fixed" magazine defined as an "ammunition feeding device contained in, or permanently attached to, a firearm in such a manner that the device cannot be removed without disassembly of the firearm action." Cal. Penal Code § 30515(b).

ACWA, as both originally enacted and as subsequently amended, included a so-called "grandfather" clause permitting anyone to retain an assault weapon lawfully possessed prior to being made unlawful, so long as the weapons were registered by their owners with the California Department of Justice. Id. at §§ 30680, 30900.  With particular reference to the bullet-button assault weapons targeted by the 2016

3

amendments, if an individual lawfully possessed such weapons before January 1, 2017, that person could continue to possess them provided the weapons were registered by July 1, 2018, in the Department of Justice's "California Firearms Application Reporting System ("CFARS"). Cal. Penal Code §§ 30680, 3099(b)(1).

CFARS went live in August of 2017, providing nearly a year-long window within which individuals could register, through the internet, assault weapons prohibited by the 2017 amendment to ACWA. SAC, ¶ 36. Plaintiffs allege, however, that Defendants' online registration system was riddled with problems from the very onset and was both underfunded and understaffed. Frequent glitches and computer crashes made weapons registration difficult. According to the SAC, as of February 2018, some five months into the registration period, there was a backlog of some 4,653 uncompleted applications. By June 30, 2018, when the registration period ended, that backlog had increased some ten-fold to 52,443. See SAC, ¶¶ 39-42.[2]

The individual Plaintiffs, for the most part, attempted to register their weapons during the last couple of days of the registration period. They claim they were assured that despite systems issues their applications could nonetheless be completed through additional attempts. Some Plaintiffs describe repeated unsuccessful attempts, however, before the registration period simply phased out. In the meantime, because the DOJ refused to extend the period, this lawsuit was filed on July 11, 2018.

While Plaintiffs allege four causes of action, each is grounded on alleged due process violations stemming from the claim that Defendants' website was "flawed, intermittently inoperable, and ultimately incapable of providing a reliable means for the public to register their firearms in accordance with the law." SAC, ¶ 3. According to Plaintiffs, because they cannot legally own their weapons now that the registration period has passed, their property rights have been abridged. Perhaps even more

---

[2] While Defendants' Reply appears to assert that "nearly 70,000" applications were successfully processed, its reliance on ¶ 42 for that proposition appears incorrect. While ¶ 42 does state that 68,848 applications were submitted, it goes on to state that of those applications only 13,519 weapons were actually registered.

1  importantly, Plaintiffs aver that this alleged deprivation of due process subjects them to
2  criminal sanctions should they persist in possessing the prohibited weapons.  Finally,
3  from a procedural standpoint, Plaintiffs allege the program was woefully inadequate.
4       Defendants, on the other hand, claim that Plaintiff'' property rights have not been
5  abridged because individual gun owners can either modify their weapons or sell them in
6  another state.  The State further claims that Plaintiff gun owners were themselves
7  responsible for failing to register by waiting until the eve of the deadline to attempt to do
8  so.

## STANDARD

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations.  However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. (internal citations and quotations omitted).  A court is not required to accept as true a "legal conclusion couched as a factual allegation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).  "Factual allegations must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the

///

pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 555 n.3 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing Wright & Miller, supra, at 94, 95). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend). Not all of these factors merit equal weight. Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." Intri-Plex Techs. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .").

## ANALYSIS

In now moving to dismiss, Defendants first claim that because any misfeasance in operating the online CFARS registration system was only negligent, as opposed to deliberate in nature, no substantive due process claim can be made.  Defendants point to the Supreme Court's decision in Daniels v. Williams, 474 U.S. 327 (1986), which holds that due process violations require allegations of "deliberate decisions of government officials to deprive a person of life, liberty, or property."  Id. at 331 (emphasis in original). The Ninth Circuit has also found that averments of deliberate indifference are necessary to advance a substantive due process claim.  See Castro v. City of Los Angeles, 833 F.3d 1060, 1067-68 (en banc).  Due process is deemed to entail "a stringent standard of fault, requiring proof that [an[ actor disregarded a known or obvious consequence of his action."  Bryan Cty. v. Brown, 520 U.S. 397, 410 (1997). Consequently, "a culpable mental state" is required.  Patel v. Kent School Dist., 648 F.3d 965, 974 (9th Cir. 2011).  Mere negligence does not suffice.  Johnson v. Barker, 799 F.2d 1396, 1401 (9th Cir. 1986).

While Defendants insist that the circumstances of this matter fall within the Supreme Court's holding in Daniels, this Court disagrees.  Daniels involved a simple claim based on "mere lack of care" where a jail deputy had left a pillow on a stairway that caused the inmate to slip and hurt himself.  Daniels, 474 U.S. at 328, 332, 334.  This case, on the other hand, is premised on alleged governmental neglect that ran through an entire executive department charged with administering a statewide online program that ran the course of almost an entire year.  Given the ten-fold increase in incomplete applications between February and June of 2018, as well as the SAC's allegations that Defendants consequently knew or should have known that the CFARS registration system "was substantially understaffed and incapable of timely accepting and processing the registration applications" (SAC, ¶ 39), Plaintiffs have adequately pled deliberate indifference inasmuch as Defendants arguably "disregarded a known or obvious

consequence" of the way they handled the registrations. Bryan Cty., 520 U.S. at 410. Significant too in making this conclusion is Plaintiffs' allegation that Defendants were not only fully aware of the system's problems but also failed to rectify them despite pleas from the public, including individual Plaintiffs. See SAC, ¶¶ 44-46, 48-49, 41-52.

Moreover, while Defendants appear to blame the individual Plaintiffs for waiting until the last minute to attempt to register their firearms (seven waited until the last two days of the online registration period), the fact that Defendants' website used a dramatic "countdown clock" showing the number of weeks, days, hours, minutes and seconds elapsing until the deadline at least arguably supported a belief that registrations could be both processed and accepted "until literally the last second of the registration period." Id. at ¶ 38. Particularly when coupled with the documented systemic failures outlined above, the countdown clock also supports an inference of deliberate indifference.

Importantly, Defendants' own policies can support a finding of deliberate indifference. Under the so-called "customs-or-practices" form of deliberate indifference, the requisite indifference can be established where Plaintiffs "(1) . . . were deprived of their constitutional rights by defendants and their employees acting under color of state law; (2) that the defendants have customs or policies which 'amount[] to deliberate indifference' to their constitutional rights; and (3) that these policies are the 'moving force behind the constitutional violation[s].'" Lee v. City of Los Angeles, 250 F.3d 668, 681-82 (9th Cir. 2001) (quoting City of Canton v. Harris, 489 U.S. 378, 389-91 (1989). Here, as indicated above, Plaintiffs allege not only the ten-fold increase in incomplete applications and failure to respond to entreaties for help, but also the fact that the registration program was understaffed and underfunded from its very inception. SAC, ¶¶ 39-40.

Based on all of the above, the Court concludes that Plaintiffs have stated a sufficient substantive due process claim to survive Defendants' Motion to Dismiss. While Plaintiffs' causes of action predicated on due process violations survive on that basis alone, the Court notes that Defendants' separate challenges concerning the viability of any procedural due process violation also fail. That argument is based on the premise

1  that because the online registration process gave Plaintiffs ample notice, time and ability
2  to comply and register their assault weapons, and because Plaintiffs waited until the last
3  days of the nearly year-long registration window to register, any harm they suffered as
4  due to their own delay as opposed to any due process violation.
5        To determine what procedural due process is constitutionally due under the Fifth
6  or Fourteenth Amendments to the United States Constitution, courts primarily look to
7  whether two elements have been established: "(1) a protectible liberty or property
8  interest; and (2) a denial of adequate procedural protections." Thornton v. City of St.
9  Helens, 425 F.3d 1148, 1164 (9th Cir. 2005).  Due process in this context "is a flexible
10 concept that varies with the particular situation." Shinault v. Hawks, 782 F.3d 1053,
11 1057 (9th Cir. 2015).  The fundamental requirement is that the person to be deprived of
12 a property interest "be given an opportunity to be heard at a meaningful time and in a
13 meaningful manner." Buckingham v. Sec'y of U.S. Dep't of Agric., 603 F.3d 1078, 1082
14 (9th Cir. 2010).
15       Here, Defendants allege that any risk to Plaintiffs' property interest is "minimal" in
16 the first place because Plaintiffs can "(1) sell the assault weapon either out of the state or
17 to a licensed gun dealer within the State (Cal. Penal Code § 31055); (2) modify the
18 assault weapon to make it compliant with state law; or (3) store the assault weapon
19 outside of the state." Defs.' Mot. to Dism., ECF No. 14-1, 10:23-25.  This argument
20 borders on the nonsensical.  The fact that Plaintiffs can dispossess themselves of their
21 unregistered firearms does not obviate the loss of their own right to lawfully possess and
22 use their firearms without the threat of criminal sanctions attaching to prohibited
23 unregistered weapons.
24       Defendants' second argument, that the implementation of the CFARS online
25 registration system provided adequate procedural protection in any event, is no more
26 availing.  Defendants claim that "[w]aiting until the last days of a nearly year-long
27 registration window to register. . . is not the basis of a due process violation," with any
28 injury Plaintiffs sustained as a result being "of their own making." Id. at 11:15-16, 28.

The Court disagrees. Plaintiffs allege that Defendants failed and refused "to establish and maintain a consistently reliable online system for processing all the necessary registration[s] during the fixed application period." Pls.' Opp., ECF No. 17, 12:7-8. Moreover, as indicated above, the fact that Defendants' registration system used a "countdown clock" delineating the weeks, days, hours and seconds within which registration could be completed at least arguably supports an inference that Plaintiffs could successfully process an application even during the registration period's final moments. The fact that this was not the case is sufficient to defeat a motion to dismiss alleging that adequate procedural safeguards were employed.

Finally, for purposes of procedural due process, it is also important to note that unlike substantive due process there is no requirement that liability turn upon the culpability of the offending party. In Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982), the Supreme Court specifically recognized that a violation of procedural due process occurs when "it is the state system itself that destroys a complainant's property interest, by operation of law," whether the state's action "is taken through negligence, maliciousness or otherwise." Id. at 436. Consequently, Defendants' argument that there is no due process violation because its shortcomings were, at most, negligent does not defeat a procedural due process claim.

## CONCLUSION

For all the above reasons, Defendants' Motion to Dismiss (ECF No. 14) is DENIED.

IT IS SO ORDERED.

Dated: June 25, 2019

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE