1   XAVIER BECERRA
    Attorney General of California
2   BENJAMIN M. GLICKMAN
    Supervising Deputy Attorney General
3   JOHN W. KILLEEN, State Bar No. 258395
    Deputy Attorney General
4     1300 I Street, Suite 125
      Sacramento, CA  95814
5     Telephone:  (916) 210-6045
      Fax:  (916) 324-8835
6     E-mail:  John.Killeen@doj.ca.gov
    *Attorneys for Respondents*
7   *Xavier Becerra, Brent E. Orick, Joe Dominic, and*
    *the California Department of Justice*

8

9                    IN THE UNITED STATES DISTRICT COURT

10                  FOR THE EASTERN DISTRICT OF CALIFORNIA

11

12

13   **HARRY SHARP, et al.,**                    CASE NO. 2:18-cv-02317-MCE-AC

14                            Petitioners,        **ANSWER OF RESPONDENTS TO
                                                   PETITIONERS' SECOND AMENDED
15             v.                                  PETITION FOR WRIT OF MANDATE
                                                   AND COMPLAINT FOR
16   **XAVIER BECERRA, et al.,**                   DECLARATORY AND INJUNCTIVE
                                                   RELIEF**
17                            Respondents.

18

19

20

21

22

23

24

25

26

27

28

---

1    Respondents Xavier Becerra, Attorney General of the State of California, Brent E. Orick,

2    Acting Chief of the Department of Justice Bureau of Firearms, Joe Dominic, Chief of the

3    Department of Justice California Justice Information Services Division, and the California

4    Department of Justice (collectively, "Respondents") answer, on knowledge as to their own acts,

5    and on information and belief as to the acts of all others, Petitioners' Second Amended Petition

6    for Writ of Mandate and Complaint for Declaratory and Injunctive Relief (the "Petition"),

7    admitting, denying, or otherwise averring as follows:

8    *1.    Since 1989, the State of California has regulated the acquisition, possession, and*

9    *use of firearms using an ever-expanding definition of so-called "assault weapons" and by and*

10   *through an aggressive enforcement of an ever-expanding statutory scheme.  In 2016, the State*

11   *once again broadened the "assault weapons" statutes to include more semi-automatic firearms*

12   *with a particular magazine locking device, colloquially known as "bullet buttons."*

13   1.    The statements in paragraph 1 of the Petition merely characterize Petitioners' claims

14   or state legal conclusions, and are not averments of fact that require a response.  To the extent a

15   response is required, Respondents admit that California's Penal Code regulates the acquisition,

16   possession, and use of firearms.  To the extent a response is required, Respondents are without

17   knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph

18   1 and, on that basis, Respondents deny such allegations.

19   *2.    The possession, transportation, and use of unregistered "assault weapons" imposes*

20   *criminal liability on gun owners who are not otherwise prohibited from possessing or acquiring*

21   *firearms, in addition to the potential loss of their property, fines, and standing in the*

22   *community. Thus, some California citizens and gun owners, desiring to abide by the laws of*

23   *our State, endeavored to register their eligible firearms in accordance with the statutory*

24   *registration mandates of Penal Code §§ 30680 and 30900(b) so as to remain in good standing*

25   *with the law.*

26   2.    The statements in paragraph 2 of the Petition merely characterize Petitioners' claims

27   or state legal conclusions, and are not averments of fact that require a response.  To the extent a

28   response is required, Respondents admit that California's Penal Code regulates the registration of

1

1   firearms.  To the extent a further response is required, Respondents are without knowledge or

2   information sufficient to form a belief as to the truth of the allegations in paragraph 2 and, on that

3   basis, Respondents deny such allegations.

4        **3.    But many gun owners not prohibited from possessing or acquiring firearms,**

5   **including the Individual Plaintiffs, those similarly situated, and many members of the**

6   **Institutional Plaintiffs here, have been unfairly and improperly prevented from registering**

7   **their eligible firearms in accordance with the law because Defendants Xavier Becerra,**

8   **California Attorney General; Brent Orick, Acting Chief of the California Department of**

9   **Justice (DOJ) Bureau of Firearms; Joe Dominic, Chief of the DOJ, California Justice**

10  **Information Services Division; and the DOJ itself (collectively "Defendants") have utterly**

11  **failed and refused to perform their statutorily-imposed duties to the People of the State of**

12  **California to establish, implement, and maintain a properly functioning, consistently reliable**

13  **Internet-based system for processing the registration of such firearms throughout the**

14  **registration period. Defendants knew or reasonably should have known that the system they**

15  **established, implemented, and maintained for these purposes, the California Firearms**

16  **Application Reporting System (CFARS), was flawed, intermittently inoperable, and ultimately**

17  **incapable of providing a reliable means for the public to register their firearms in accordance**

18  **with the law, and therefore they knew or reasonably should have known that the failures of this**

19  **system effectively prevented Plaintiffs and many other similarly situated individuals from**

20  **properly and timely registering their firearms in accordance with the law.**

21       3.    The statements in paragraph 3 of the Petition merely characterize Petitioners' claims

22  or state legal conclusions, and are not averments of fact that require a response.  To the extent a

23  response is required, Respondents deny the allegations in paragraph 3 of the Petition.

24       **4.    The situation came to an ignominious conclusion the week before the statutory**

25  **registration deadline.  During the week of Monday, June 25, 2018, through Saturday, June 30,**

26  **2018, the statutory deadline, and beyond, the DOJ's registration system was largely**

27  **inaccessible, and inoperable on a wide variety of ordinary web browsers across the state.**

28  **And many users who were able to access the site were still prevented from completing the**

2

1    *process before the Internet-based registration system crashed, obliterating the hours-long*

2    *progress they had made.  As a result, many individuals, including the Individual Plaintiffs*

3    *herein, were prevented from timely registering before July 1 in compliance with the law, due to*

4    *no fault of their own.*

5       4.    Respondents deny that the registration system was "largely inaccessible, and

6    inoperable."  Respondents are without knowledge or information sufficient to form a belief as to

7    the truth of the remaining allegations in paragraph 4 and, on that basis, Respondents deny such

8    allegations.

9       ***5.    In this case, Plaintiffs seek an un-extraordinary result, compelled by the basic***

10   *tenets of due process: That they simply be allowed to register their eligible firearms and comply*

11   *with the law, and that the Attorney General, the DOJ, and their officers and agents similarly*

12   *comply with the law by allowing such registrations and ensuring they are properly and timely*

13   *processed through a functioning Internet-based system as they were required by statute to do.*

14      5.    The statements in paragraph 5 of the Petition merely characterize Petitioners' claims

15   or state legal conclusions, and are not averments of fact that require a response.  To the extent a

16   response is required, Respondents deny the allegations in paragraph 5 of the Petition.

17      ***6.    Plaintiffs seek mandamus, declaratory and injunctive relief as necessary and***

18   *proper to remedy the DOJ's failures to permit and provide for a functional registration system*

19   *throughout the registration period, including and especially during the last week of June 2018.*

20      6.    The statements in paragraph 6 of the Petition merely characterize Petitioners' claims

21   or state legal conclusions, and are not averments of fact that require a response.  To the extent a

22   response is required, Respondents deny the allegations in paragraph 6 of the Petition.

23      ***7.    This case raises questions under the Fourteenth Amendment to the United States***

24   *Constitution. This Court has jurisdiction over Plaintiffs' claims for relief under federal law*

25   *pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiffs' state-*

26   *law claims pursuant to 28 U.S.C. § 1367(a)*

27      7.    The statements in paragraph 7 of the Petition merely characterize Petitioners' claims

28   or state legal conclusions, and are not averments of fact that require a response.   To the extent a

3

1   response is required, Respondents admit that this action is a civil action of which this Court has

2   original jurisdiction under 28 U.S.C. § 1331.

3       *8.   Venue is proper under 28 U.S.C. § 1391(v). Assignment to the Sacramento division*

4   *is proper pursuant to Local Rule 120(d), because it the case was initiated in Shasta County.*

5       8.   The statements in paragraph 8 of the Petition merely characterize Petitioners' claims

6   or state legal conclusions, and are not averments of fact that require a response.   To the extent a

7   response is required, Respondents admit that venue in this Court is proper.

8       *9.   All Individual Plaintiffs herein are natural persons, citizens of the United States,*

9   *and citizens and residents of the State of California, in the counties specified below.*

10       9.   Respondents are without knowledge or information sufficient to form a belief as to

11   the truth of the allegations in paragraph 9 and, on that basis, Respondents deny such allegations.

12       *10.   All Individual Plaintiffs are otherwise eligible to possess and acquire firearms*

13   *under applicable state and federal laws, including those firearms which the State now classifies*

14   *as "bullet button assault weapons" under the regulatory scheme enacted in 2016 under Senate*

15   *Bill 880 and Assembly Bill 1135 (2015-2016 Reg. Sess.)*

16       10.   Respondents are without knowledge or information sufficient to form a belief as to

17   the truth of the allegations in paragraph 10 and, on that basis, Respondents deny such allegations.

18       *11.   Plaintiff Harry Sharp is an individual, a law-abiding gun owner and a resident of*

19   *the County of Shasta, California, and is and has been otherwise eligible to possess and acquire*

20   *firearms under applicable state and federal laws.  He is also a member and supporter of*

21   *Institutional Plaintiffs Firearms Policy Coalition, Firearms Policy Foundation, and The*

22   *Calguns Foundation.  For over 30 years, he has held a license to carry a concealed firearm*

23   *(CCW) issued to him by his county sheriff, after proving "good cause" and his good moral*

24   *character to his licensing authority, successfully completing a course of training on the law*

25   *and firearms proficiency, and passing an extensive Live Scan-based background check.*

26   *Plaintiff Sharp also is the registered owner of several Registered Assault Weapons (RAWs)*

27   *which were legally owned and registered during a prior assault weapons registration period, in*

28   *or before 2001.  Prior to January 1, 2017, and as a private citizen, plaintiff Sharp legally*

4

1  *owned four semiautomatic firearms which the DOJ now labels "bullet button assault weapons"*

2  *and has declared, in its regulations, and elsewhere, must be registered.  On or about June 29,*

3  *2018, and continuing through June 30, 2018, before the end of the registration period, Plaintiff*

4  *Sharp attempted to register said firearms in accordance with the statutes and DOJ's*

5  *regulations, using the DOJ's CFARS system. But the CFARS registration system was*

6  *inaccessible and defective in his multiple attempts to use it during this period, and Plaintiff*

7  *Sharp was thus unable to register three of the four firearms because of Defendants' failures*

8  *described herein.*

9      11.   Respondents are without knowledge or information sufficient to form a belief as to

10  the truth of the allegations in paragraph 11 and, on that basis, Respondents deny such allegations.

11      *12.   Plaintiff David Ajirogi is an individual, a law-abiding gun owner and a resident of*

12  *the County of Sacramento, California, and is and has been otherwise eligible to possess and*

13  *acquire firearms under applicable state and federal laws. He is also a member and supporter of*

14  *Institutional Plaintiffs Firearms Policy Coalition, Firearms Policy Foundation, and The*

15  *Calguns Foundation. Prior to January 1,2017, and as a private citizen, plaintiff Ajirogi legally*

16  *owned three semiautomatic firearms which the DOJ now labels as "bullet button assault*

17  *weapons" and has declared, in its regulations, and elsewhere, must be registered. On or about*

18  *June 28,2018, and again on June 29,2018, before the end of the registration period, Plaintiff*

19  *Ajirogi attempted to register said firearms in accordance with the statutes and DOJ's*

20  *regulations, using the DOJ's CFARS system. But the CFARS registration system was*

21  *inaccessible and defective throughout the periods of his registration attempts and, as a result,*

22  *Plaintiff Ajirogi was unable to register the three firearms.*

23      12.   Respondents are without knowledge or information sufficient to form a belief as to

24  the truth of the allegations in paragraph 12 and, on that basis, Respondents deny such allegations.

25      *13.   Plaintiff Ryan Gilardy is an individual, a law-abiding gun owner and a resident of*

26  *the County of Contra Costa, California, and is and has been otherwise eligible to possess and*

27  *acquire firearms under applicable state and federal laws.  He is also a member and supporter*

28  *of Institutional Plaintiffs Firearms Policy Coalition, Firearms Policy Foundation, and The*

5

1  *Calguns Foundation.  Prior to January 1, 2017, and as a private citizen, plaintiff Gilardy*

2  *legally owned three semiautomatic firearms which the DOJ now labels as "bullet button*

3  *assault weapons" and has declared, in its regulations, and elsewhere, must be registered.*

4  *Beginning on or about June 22, 2018, and continuing through June 30, 2018, before the end*

5  *of the registration period.  Plaintiff Gilardy attempted to register said firearms in accordance*

6  *with the statutes and DOJ's regulations, using the DOJ's CFARS system.  But the CFARS*

7  *registration system was inaccessible and defective throughout the periods of his registration*

8  *attempts and, as a result.  Plaintiff Gilardy was unable to register two of the three firearms.*

9      13.    Respondents are without knowledge or information sufficient to form a belief as to

10  the truth of the allegations in paragraph 13 and, on that basis, Respondents deny such allegations.

11      *14.    Plaintiff Darin Prince is an individual, a law-abiding gun owner and a resident of*

12  *the County of San Diego, California, and is and has been otherwise eligible to possess and*

13  *acquire firearms under applicable state and federal laws. He is also a member and supporter of*

14  *Institutional Plaintiffs Firearms Policy Coalition, Firearms Policy Foundation, and The*

15  *Calguns Foundation. Plaintiff Prince has a Certificate of Eligibility (COE) issued to him by*

16  *the California Department of Justice, and has held a license to carry a concealed firearm*

17  *(CCW) issued to him by his county sheriff, after proving "good cause" and his good moral*

18  *character to his licensing authority, successfully completing a course of training on the law*

19  *and firearms proficiency, and passing an extensive Live Scan-based background check. Prior*

20  *to January 1, 2017, and as a private citizen, plaintiff Prince legally owned several*

21  *semiautomatic firearms which the DOJ now labels as "bullet button assault weapons" and*

22  *which it has declared, in its regulations, and elsewhere, must be registered. On or about June*

23  *30, 2018, before the end of the registration period, Plaintiff Prince attempted to register said*

24  *firearms in accordance with the statutes and DOJ's regulations, using the DOJ's CFARS*

25  *system. But the CFARS registration system was inaccessible and defective throughout this*

26  *period, and Plaintiff Prince was unable to register his firearms.*

27      14.    Respondents admit that Plaintiff Prince has a COE issued to him by the California

28  Department of Justice.  Respondents are without knowledge or information sufficient to form a

1    belief as to the truth of the remaining allegations in paragraph 14 and, on that basis, Respondents

2    deny such allegations.

3        *15.    Plaintiff Todd Feltman is an individual, a law-abiding gun owner and a resident of*

4    *the County of San Diego, California, and is and has been otherwise eligible to possess and*

5    *acquire firearms under applicable state and federal laws. He is also a member and supporter of*

6    *Institutional Plaintiffs Firearms Policy Coalition, Firearms Policy Foundation, and The*

7    *Calguns Foundation. Prior to January 1, 2017, and as a private citizen, plaintiff Feltman*

8    *legally owned several semiautomatic firearms which the DOJ now labels as "bullet button*

9    *assault weapons" and has declared, in its regulations, and elsewhere, must be registered. On or*

10   *about June 30, 2018, before the end of the registration period, Plaintiff Feltman attempted to*

11   *register said firearms in accordance with the statutes and DOJ's regulations, using the DOJ's*

12   *CFARS system. But the CFARS registration system was inaccessible and defective throughout*

13   *the period of his registration attempt and, as a result, Plaintiff Feltman was unable to register*

14   *the firearms.*

15       15.    Respondents are without knowledge or information sufficient to form a belief as to

16   the truth of the allegations in paragraph 15 and, on that basis, Respondents deny such allegations.

17       *16.    Plaintiff David Kuehl is an individual, law-abiding gun owner and a resident of the*

18   *County of Fresno, California, and is and has been otherwise eligible to possess and acquire*

19   *firearms under applicable state and federal laws. He is also a member and supporter of*

20   *Institutional Plaintiffs Firearms Policy Coalition, Firearms Policy Foundation, and The*

21   *Calguns Foundation.  Plaintiff Kuehl has held a license to carry a concealed firearm (CCW)*

22   *issued to him by his county sheriff, after proving "good cause" and his good moral character to*

23   *his licensing authority, successfully completing a course of training on the law and firearms*

24   *proficiency, and passing an extensive Live Scan-based background check. Plaintiff Kuehl is a*

25   *military veteran, having been honorably discharged by the U.S. Coast Guard in or about 1988,*

26   *and is a retired firefighter. Prior to January 1, 2017, and as a private citizen, plaintiff Kuehl*

27   *legally owned a semiautomatic firearm which the DOJ now labels as "bullet button assault*

28   *weapon" and has declared, in its regulations, and elsewhere, must be registered. On or about*

1   *June 30, 2018, before the end of the registration period, Plaintiff Kuehl attempted to register*

2   *said firearm in accordance with the statutes and DOJ's regulations, using the DOJ's CFARS*

3   *system. But the CFARS registration system was inaccessible and defective throughout this*

4   *period and, as a result, Plaintiff Kuehl was unable to register his firearm.*

5       16.    Respondents are without knowledge or information sufficient to form a belief as to

6   the truth of the allegations in paragraph 16 and, on that basis, Respondents deny such allegations.

7       *17.    Plaintiff Terry Jahraus is an individual, law-abiding gun owner and a resident of*

8   *the County of Los Angeles, California, and is and has been otherwise eligible to possess and*

9   *acquire firearms under applicable state and federal laws. He is. also a member and supporter*

10  *of Institutional Plaintiffs Firearms Policy Coalition, Firearms Policy Foundation, and The*

11  *Calguns Foundation. Plaintiff Jahraus is a Vietnam Veteran, having served in the U.S. Marine*

12  *Corps in that theater from 1969-1971, and was honorably discharged in 1971, Prior to January*

13  *1, 2017, and as a private citizen, plaintiff Jahraus legally owned a semiautomatic firearm*

14  *which the DOJ now labels as "bullet button assault weapon" and has declared, in its*

15  *regulations, and elsewhere, must be registered. On or about June 30, 2018, before the end of*

16  *the registration period, Plaintiff Jahraus attempted to register said firearm in accordance with*

17  *the statutes and DOJ's regulations, using the DOJ's CFARS system. But the CFARS*

18  *registration system was inaccessible and defective throughout this period and, as a result,*

19  *Plaintiff Jahraus was unable to register his firearm.*

20      17.    Respondents are without knowledge or information sufficient to form a belief as to

21  the truth of the allegations in paragraph 17 and, on that basis, Respondents deny such allegations.

22      *18.    Plaintiff The Calguns Foundation ("CGF") is a 501(c)(3) non-profit organization*

23  *incorporated under the laws of California with its principal place of business in Sacramento,*

24  *California. CGF is dedicated to promoting education for all stakeholders about California and*

25  *federal firearm laws, rights and privileges, and to defending and protecting the civil rights of*

26  *California gun owners. CGF represents its members and supporters, who include California*

27  *firearm retailers and gun owners throughout the State, including Shasta County, and brings*

28  *this action on behalf of itself, its members, supporters who possess all the indicia of*

1   *membership, and similarly situated members of the public. Many of CGF's individual members*

2   *have been adversely and directly affected by Defendants' failure to permit or provide for timely*

3   *and proper registrations of "bullet button assault weapons" as required by statute, and ail of*

4   *CGF's individual members have been and continue to be adversely and directly affected by*

5   *Defendants' ongoing deliberate indifference to the resulting plight of law-abiding California*

6   *gun owners who have been prevented from complying with the law. Defendants' actions and*

7   *failures alleged herein have caused CGF to dedicate resources that would otherwise be*

8   *available for other purposes to protect the rights and property of its members, supporters, and*

9   *the general public, including by and through this action.*

10        18.    Respondents are without knowledge or information sufficient to form a belief as to

11   the truth of the allegations in paragraph 18 and, on that basis, Respondents deny such allegations.

12        *19.    Plaintiff Firearms Policy Coalition, Inc. ("FPC") is a 501(c)(4) non-profit*

13   *organization incorporated under the laws of Delaware with its principal place of business in*

14   *Sacramento, California, with members residing both within and outside of this state, including*

15   *in Shasta County, California. FPC serves its members and the public through direct legislative*

16   *advocacy, grassroots advocacy, legal efforts, research, education, operation of a Hotline, and*

17   *other programs. The purposes of FPC include defending the United States Constitution and the*

18   *People's rights, privileges, and immunities deeply rooted in the Nation's history and tradition,*

19   *especially the fundamental right to keep and bear arms. FPC represents its members and*

20   *supporters, who include California firearm retailers and gun owners, and brings this action on*

21   *behalf of itself, its members, supporters who possess all the indicia of membership, and*

22   *similarly situated members of the public. Many of FPC's individual California members have*

23   *been adversely and directly affected by Defendants' failure to permit registrations of "bullet*

24   *button assault weapons" as required by statute, and all of FPC's individual members have*

25   *been and continue to be adversely and directly affected by Defendants' ongoing deliberate*

26   *indifference to the resulting plight of law-abiding California gun owners who have been*

27   *prevented from complying with the law. Defendants' actions and failures alleged herein have*

28   *caused FPC to dedicate resources that would otherwise be available for other purposes to*

1 | *protect the rights and property of its members, supporters, and the general public, including by*
2 | *and through this action.*

3 | 19. Respondents are without knowledge or information sufficient to form a belief as to
4 | the truth of the allegations in paragraph 19 and, on that basis, Respondents deny such allegations.

5 | ***20.   Plaintiff Firearms Policy Foundation, Inc. ("FPF") is a 501(c)(3) non-profit***
6 | ***organization incorporated under the laws of Delaware with its principal place of business in***
7 | ***Sacramento, California, with members residing both within and outside of this state, including***
8 | ***in Shasta County, California. FPF serves to defend and advance constitutional rights through***
9 | ***charitable purposes, with a focus on the fundamental, individual right to keep and bear arms.***
10 | ***FPF represents its members and supporters, who include California firearm retailers and gun***
11 | ***owners, and brings this action on behalf of itself, its members, supporters who possess all the***
12 | ***indicia of membership, and similarly situated members of the public. Many of FPF's***
13 | ***individual California members have been adversely and directly affected by Defendants' failure***
14 | ***to permit registrations of "bullet button assault weapons" as required by statute, and all of***
15 | ***FPF's individual members have been and continue to be adversely and directly affected by***
16 | ***Defendants' ongoing deliberate indifference to the resulting plight of law-abiding California***
17 | ***gun owners who have been prevented from complying with the law. Defendants' actions and***
18 | ***failures alleged herein have caused FPF to dedicate resources that would otherwise be***
19 | ***available for other purposes to protect the rights and property of its members, supporters, and***
20 | ***the general public, including by and through this action.***

21 | 20. Respondents are without knowledge or information sufficient to form a belief as to
22 | the truth of the allegations in paragraph 20 and, on that basis, Respondents deny such allegations.

23 | ***21.   Plaintiff Second Amendment Foundation, Inc. ("SAF") is a 501(c)(3) non-profit***
24 | ***organization incorporated under the laws of Washington with its principal place of business in***
25 | ***Bellevue, Washington. SAF has over 650,000 members and supporters nationwide, including***
26 | ***many in California. The purposes of SAF include education, research, publishing, and legal***
27 | ***action focusing on the constitutional right to privately own and possess firearms under the***
28 | ***Second Amendment, and the consequences of gun control. SAF brings this action on behalf of***

10

1  *itself, its members, supporters who possess all the indicia of membership, and similarly situated*

2  *members of the public.  Many of SAP's individual California members have been adversely*

3  *and directly affected by Defendants' failure to permit registrations of "bullet button assault*

4  *weapons" as required by statute, and all of SAF's individual members have been and continue*

5  *to be adversely and directly affected by Defendants' ongoing deliberate indifference to the*

6  *resulting plight of law-abiding California gun owners who have been prevented from*

7  *complying with the law. Defendants' actions and failures alleged herein have caused SAF to*

8  *dedicate resources that would otherwise be available for other purposes to protect the rights*

9  *and property of its members, supporters, and the general public, including by and through this*

10  *action.*

11      21.    Respondents are without knowledge or information sufficient to form a belief as to

12  the truth of the allegations in paragraph 21 and, on that basis, Respondents deny such allegations.

13      **22.  Plaintiff Madison Society Foundation ("MSF") is a (501)(c)(3) non-profit**

14  *organization whose purpose is preserving and protecting the legal and constitutional right to*

15  *keep and bear arms for its members and all responsible law-abiding citizens. MSF believes that*

16  *individual constitutional rights should not be infringed to deny citizens their life, liberty, and*

17  *pursuit of happiness. MSF is headquartered in Stanislaus County, and the majority of its*

18  *members are California residents. The focus of MSF's litigation efforts is challenging*

19  *violations of the right to keep and bear arms. Many of MSF's individual California members*

20  *have been adversely and directly affected by Defendants' failure to permit registrations of*

21  *"bullet button assault weapons" as required by statute, and all of MSF's individual members*

22  *have been and continue to be adversely and directly affected by Defendants' ongoing deliberate*

23  *indifference to the resulting plight of law-abiding California gun owners who have been*

24  *prevented from complying with the law. Defendants' actions and failures alleged herein have*

25  *caused MSF to dedicate resources that would otherwise be available for other purposes to*

26  *protect the rights and property of its members, supporters, and the general public, including by*

27  *and through this action.*

28

1    22.    Respondents are without knowledge or information sufficient to form a belief as to

2    the truth of the allegations in (the first) paragraph 22 and, on that basis, Respondents deny such

3    allegations.

4    ***22.    Individual Plaintiffs Sharp, Ajirogi, Gilardy, Prince, Feltman, Kuehl, and Jahraus***

5    ***are bringing this claim on behalf of themselves, and as representatives of a class of similar***

6    ***individuals consisting of law-abiding California residents too numerous to individually name***

7    ***or include as parties to this action. These are: California citizens who are not otherwise***

8    ***prohibited or exempt under the "assault weapon" registration laws, and who lawfully and.***

9    ***legally possessed firearms that the State of California has retroactively classified as "assault***

10   ***weapons" under Penal Code § 30515(a) that must be registered as such pursuant to Penal***

11   ***Code sections 30680 and 30900(b), but who have been precluded from doing so due to the***

12   ***Defendants' actions and failures, including but not limited to the inaccessibility, defects,***

13   ***and/or non-functionality of the DOJ's CFARS-based registration system during the***

14   ***registration period ending at midnight on June 30, 2018.***

15   22.    The statements in (the second) paragraph 22 of the Petition merely characterize

16   Petitioners' claims or state legal conclusions, and are not averments of fact that require a

17   response.  To the extent a response is required, Respondents are without knowledge or

18   information sufficient to form a belief as to the truth of the allegations in (the second) paragraph

19   22 and, on that basis, Respondents deny such allegations.

20   ***23.    Institutional Plaintiffs CGF, FPC, FPF, and SAF are bringing this claim as public***

21   ***interest organizations, whose California members similarly lawfully possessed retroactively***

22   ***defined "bullet button assault weapons" in this state, prior to December 31, 2016, and who***

23   ***represent the interests of those similarly situated individuals too numerous to individually***

24   ***name or include as parties to this action.  These are; California citizens who are not otherwise***

25   ***prohibited or exempt under the "assault weapon" registration laws, and who lawfully and***

26   ***legally possessed firearms that the State of California has retroactively classified as "assault***

27   ***weapons" under Penal Code § 30515(a) that must be registered as such pursuant to Penal***

28   ***Code sections 30680 and 30900(b), but who have been precluded from doing so due to the***

12

1  *Defendants' actions and failures, including but not limited to the inaccessibility, defects,*

2  *and/or non-functionality of the DOJ's CFARS-based registration system during the*

3  *registration period ending at midnight on June 30, 2018.*

4       23.   The statements in paragraph 23 of the Petition merely characterize Petitioners' claims

5  or state legal conclusions, and are not averments of fact that require a response.  To the extent a

6  response is required, Respondents are without knowledge or information sufficient to form a

7  belief as to the truth of the allegations in paragraph 23 and, on that basis, Respondents deny such

8  allegations.

9       *24.   As to all claims made in a representative capacity herein, there are common*

10  *questions of law and fact that substantially affect the rights, duties, and liabilities of many*

11  *similarly situated California residents who knowingly or unknowingly are subject to the*

12  *statutes.  The relief sought in this action is declaratory, injunctive, and mandamus in nature,*

13  *and the action involves matters of substantial public interest.  Considerations of necessity,*

14  *convenience, and justice justify relief to Individual and Institutional Plaintiffs in a*

15  *representative capacity.  Furthermore, to the extent it becomes necessary or appropriate, the*

16  *Institutional Plaintiffs are uniquely able to communicate with and provide notice to their*

17  *thousands of California members and constituents who are or would be part of any identifiable*

18  *class of individuals for whose benefit this Court may grant such relief.*

19       24.   The statements in paragraph 24 of the Petition merely characterize Petitioners' claims

20  or state legal conclusions, and are not averments of fact that require a response.  To the extent a

21  response is required, Respondents deny the allegations in paragraph 24 of the Petition.

22       *25.   Defendant Xavier Becerra is the Attorney General of the State of California, and he*

23  *is sued herein in his official capacity. The Attorney General is the chief law enforcement*

24  *officer of the state, and the head of the DOJ.  It is his duty to ensure that California's laws are*

25  *uniformly and adequately enforced.  The DOJ and its Bureau of Firearms regulate and*

26  *enforce state law related to firearms, and the registration of statutorily-classified "assault*

27  *weapons."*

28

13

25.     Respondents admit that Xavier Becerra is the Attorney General of the State of California and that he is the chief law officer of the State.  Respondents further admit that the California Department of Justice, and its Bureau of Firearms, regulate and enforce state law related to firearms, including registration of statutorily defined assault weapons.  Respondents further admit that the Attorney General has the duties and responsibilities as provided by law.  Respondents otherwise deny the allegations in Paragraph 25 of the Petition.

*26.     Defendant Brent E. Orick is Acting Chief of the DOJ's Bureau of Firearms.  Upon information and belief, Orick reports to Attorney General Becerra, and he is responsible for the various operations of the Bureau of Firearms, including the implementation and enforcement of the statutes and regulations governing sales, use, ownership, transfer, and "assault weapon" registration of firearms.  He is sued herein in his official capacity.*

26.     Respondents deny that Brent E. Orick is the Acting Chief of the California Department of Justice's Bureau of Firearms.  Respondents admit that the Acting Chief or Chief of the Bureau of Firearms reports to the Attorney General and is responsible for the day-to-day operations of the Bureau of Firearms.  Except as expressly admitted, Respondents deny the allegations of paragraph 26.

*27.     Defendant Joe Dominic is Chief of the DOJ's California Justice Information Services (CJIS) Division. Upon information and belief, Dominic reports to Attorney General Becerra, and he is responsible for the various technology operations of the DOJ, including the implementation and maintenance of the technology systems used by the Bureau of Firearms and the public.  He is sued herein in his official capacity.*

27.     Respondents admit that Joe Dominic is Chief of the DOJ's CJIS Division.  Respondents admit that Dominic reports to the Attorney General.  Respondents admit that Dominic is responsible for many technology operations of DOJ.  Respondents admit that CJIS implemented and maintained the technology system at issue in this lawsuit.  Except as expressly admitted, Respondents deny the allegations of paragraph 27.

*28.     The California Department of Justice (DOJ) is a state agency charged with responsibility of enforcing state statutes and promulgating and enforcing rules and regulations*

14

1   *authorized by and designed to effectuate the law related to the registration of firearms as*

2   *statutorily-classified "assault weapons."*

3       28.   Respondents admit that the California Department of Justice is a state agency charged

4   with the responsibility of enforcing certain state statutes, including many statutes relating to

5   firearms.  Except as expressly admitted, Respondents deny the allegations of paragraph 28.

6       *29.   Plaintiffs are unaware of the true names and capacities of those defendants sued*

7   *herein as DOES 1 through 20 inclusive, and therefore sue such defendants by fictitious names.*

8   *Plaintiffs are informed and believe and based upon such information and belief allege that*

9   *each of the defendants designated as DOES 1 through 20, inclusive, is responsible in some*

10  *manner for promulgating, administering, enforcing, or otherwise implementing the DOJ*

11  *systems at issue herein.  Plaintiffs will amend this complaint to include the true names of*

12  *DOES 1 through 20 inclusive as soon as is practicable after such names and capacities become*

13  *known to them.*

14      29.   The statements in paragraph 29 of the Petition merely characterize Petitioners' claims

15  or state legal conclusions, and are not averments of fact that require a response.  To the extent a

16  response is required, Respondents are without knowledge or information sufficient to form a

17  belief as to the truth of the allegations in paragraph 29 and, on that basis, Respondents deny such

18  allegations.

19      *30.   Since the dawn of the Roberti-Roos Assault Weapons Control Act in 1989 (AWCA),*

20  *California gun owners have undoubtedly faced significant and growing restrictions upon their*

21  *ability to acquire and use many popular firearms, in common use for lawful purposes like self-*

22  *defense and sport, as certain lawmakers have succeeded in branding specified types or*

23  *configurations of firearms as "assault weapons" and then incrementally expanding that list to*

24  *include more and more firearms. (Pen. Code §. 30505(a).) The product of these gun control*

25  *legislative campaigns is that - subject to very limited exceptions (e.g., §§ 30625-30630, 30645-*

26  *30655, 31000-31005) - for the vast majority of ordinary citizens in California, it is generally*

27  *illegal to manufacture, distribute, transport, sell, give, lend, or otherwise transfer an*

28  *increasingly expansive list of firearms (on pain of a felony conviction and prison time (§*

15

1    *30600, subd. (a)), and even to simply "possess" one of these legislatively-classified "assault*

2    *weapons" (§ 30605, subd. (a)).*

3        30.    The statements in paragraph 30 of the Petition merely characterize Petitioners' claims

4    or state legal conclusions, and are not averments of fact that require a response.  To the extent a

5    response is required, Respondents admit that California's Penal Code regulates the registration

6    and possession of firearms.  Respondents otherwise deny the allegations in Paragraph 30 of the

7    Petition.

8        *31.    The State Legislature has indeed built a statutory scheme especially onerous and*

9    *hostile to the millions of California gun owners simply seeking to exercise their*

10   *constitutionally-protected fundamental right to keep and bear arms for lawful purposes. But*

11   *along-the way, the Legislature has engrafted into the scheme a few inherent limitations on the*

12   *reach of the various prohibitions, establishing the four corners of the State's statutory power to*

13   *restrict the ability of private citizens in their access and use of firearms deemed "assault*

14   *weapons."  Each time the Legislature has succeeded in achieving statutory amendments*

15   *expanding the list of "assault weapons," it has made the minimal concession of leaving a small*

16   *"grandfathering" window for lawful owners of those guns that the legislation retroactively*

17   *deemed constitutional artifacts that they prefer their citizens not acquire - but only if they*

18   *register the firearm with the DOJ as an assault weapon" within a specified period time, can*

19   *they continue to maintain "possession" or use of it.*

20       31.    The statements in paragraph 31 of the Petition merely characterize Petitioners' claims

21   or state legal conclusions, and are not averments of fact that require a response.  To the extent a

22   response is required, Respondents admit that California's Penal Code regulates the registration

23   and possession of firearms.  Respondents otherwise deny the allegations in Paragraph 31 of the

24   Petition.

25       *32.    These different phases of restrictions over time have led to the development of three*

26   *generally recognized categories of "assault weapons," the first two of which ("Category 1" and*

27   *"Category 2" assault weapons) were created based upon specific makes, models, or series of*

28   *firearms. (See Pen. Code §§ 30510, 30960(a); former §§ 12275.5, 12276, 12276.5; 11 CCR*

1   *§ 5499.).  "Category 3" firearms, established in 1999, targeted semiautomatic centerfire rifles,*

2   *pistols, and shotguns based upon certain features, configurations, and/or functionalities, as*

3   *opposed to certain makes, models, or series. (Pen. Code § 30515; former § 12276.1.)*

4         32.    The allegations contained in paragraph 32 are Petitioners' summary and argument

5   regarding certain statutory provisions.  Those provisions speak for themselves.  To the extent

6   paragraph 32 contains any allegations of material fact, Respondents deny those allegations.

7         *33.    In June of 2016, through Assembly Bill 1135 and Senate Bill 880 (2015-2016 Reg.*

8   *Sess.), the Legislature once again amended the AWCA statutory scheme, changing the*

9   *definitional terms regarding magazines for semiautomatic rifles and pistols in section 30515 to*

10  *create new "assault weapon" classifications for those firearms, and adding sections 30680 and*

11  *30900 to create a concomitant registration requirement for any continued possession of these*

12  *newly classified firearms. The amendments became effective January 1, 2017. (Stats. 2016, ch.*

13  *40 § 3 (AB 1135); Stats. 2016, ch. 48 § 3 (SB 880).) As so modified, the new "assault weapon"*

14  *classification now applies to any semiautomatic centerfire rifle and pistol that (1) "does not*

15  *have a fixed magazine" and (2) possesses one of the other previously specified features. For*

16  *these purposes, "fixed magazine" is now defined as "an ammunition feeding device contained*

17  *in, or permanently attached to, a firearm in such a manner that the device cannot be removed*

18  *without disassembly-of the firearm action." (Pen. Code § 30515, subd. (b).)*

19        33.    The allegations contained in paragraph 33 are Petitioners' summary and argument

20  regarding certain statutory provisions.  Those provisions speak for themselves.  To the extent a

21  response is required, Respondents admit that in 2016, California enacted Assembly Bill 1135 and

22  Senate Bill 880, which became effective January 1, 2017.  To the extent paragraph 33 contains

23  any allegations of material fact, Respondents deny those allegations.

24        *34.    The Legislature specifically incorporated section 30515's assault weapon*

25  *classifications into the registration requirement of section 30900, subdivision (b)(1), which*

26  *expressly states that it applies only to a "person who, from January 1, 2001, to December 31,*

27  *2016, inclusive, lawfully possessed an assault weapon that does not have a fixed magazine, as*

28  *defined in Section 30515, including those weapons with an ammunition feeding device that can*

1   *be readily removed from the firearm with the use of a tool." (Pen. Code § 30900(b)(1),*

2   *emphasis added.)  In other words, "bullet button assault weapons" could be kept, but must be*

3   *registered, in accordance with the regulations that the DOJ was required adopt pursuant to*

4   *section 30900, subdivision (b)(5). This section further and specifically required the DOJ to*

5   *establish an' electronic, Internet-based system through which the public could register these*

6   *firearms by providing the statutorily-required firearm identifying information and pay a fee*

7   *necessary to cover the reasonable processing costs." (§§ 30900, subds. (b)(2)-(4).) The statutory*

8   *deadline to register such firearms, and avoid criminal liability for their continued possession*

9   *without such registration, was June 30, 2018 (after an extension of the original deadline of*

10   *December 31, 2017, under AB 103 (2017). (§ 30680).*

11   34.    The allegations contained in paragraph 34 are Petitioners' summary and argument

12   regarding certain statutory provisions.  Those provisions speak for themselves.  To the extent

13   paragraph 34 contains any allegations of material fact, Respondents deny those allegations.

14   *35.    According to the DOJ's data tracking the "Dealer's Record of Sale" (DROS)*

15   *transactions (online at https://openjustice.doj.ca.gov/firearms/overview) more than 5.1 million*

16   *long guns have been sold in California since the last registration period closed in 2000.  It is*

17   *estimated that a substantial number of those firearms are subject to the now retroactively*

18   *expanded definition of "assault weapon" under AB 1135 and SB 880, i.e., semiautomatic*

19   *firearms with "bullet button" devices.  On information and belief, tens of thousands of*

20   *Californians (and perhaps more) possessed in the State hundreds of thousands of firearms*

21   *during the period of January 1, 2001, and December 31,2016, that have now been reclassified*

22   *as "bullet button assault weapons" subject to the requirements of Penal Code § 30900(b),*

23   *rendering all their possessors potentially subject to significant criminal liabilities for failure to*

24   *comply with the registration mandate.*

25   35.    To the extent the allegations in paragraph 35 purport to quote from or refer to

26   documents, Respondents refer the Court to those documents for a full and complete statement of

27   their contents.  The remaining statements in paragraph 35 of the Petition merely characterize

28   Petitioners' claims or state legal conclusions, and are not averments of fact that require a

1  response.  To the extent a response is required, Respondents are without knowledge or

2  information sufficient to form a belief as to the truth of the allegations in paragraph 35 and, on

3  that basis, Respondents deny such allegations.

4       *36.    Pursuant to the clear statutory mandate described above, the DOJ established an*

5  *Internet-based registration system, ostensibly to permit the required registration of those bullet-*

6  *buttoned firearms now retroactively deemed as "assault weapons" pursuant to AB 1135 and*

7  *SB 880. This system was created to exist within a pre-existing system created, maintained, and*

8  *serviced by the DOJ—the California Firearms Application Reporting System (CFARS). Using*

9  *CFARS, in theory, would and should have allowed a user to access a separate link to the*

10  *"Assault Weapon Registration Form (Assembly Bill 1135/Senate Bill 880)."  On information*

11  *and belief, the DOJ's Assault Weapon Registration Form system "went live" (i.e., was made*

12  *available to the public) on or about August 3, 2017 - leaving less than twelve months for*

13  *potentially hundreds of thousands of California gun owners to discover the laws and perform*

14  *their duties required thereunder.*

15       36.    Respondents admit that DOJ established an Internet-based registration system

16  pursuant to AB 1135 and SB 880.  Respondents admit that the registration system was created

17  within CFARS, and that users could access the system through a link to the assault weapon

18  registration form.  Respondents admit that the assault weapon registration system "went live" on

19  or about August 3, 2017.  Except as expressly admitted, Respondent deny the allegations of

20  paragraph 36.

21       *37.    Those with firearms retroactively branded "bullet button assault weapons"*

22  *originally had until January 1, 2018, to register them.  However, given the DOJ's substantial*

23  *delays in getting its registration-related regulations issued, the registration deadline was*

24  *extended to July 1, 2018, by virtue of Assembly Bill 103. See Pen. Code § 30680(c).*

25       37.    Respondents admit that individuals who were required to register their weapons under

26  AB 1135 and SB 880 originally had until January 1, 2018, to submit their applications.

27  Respondents further admit that the Legislature extended the registration deadline such that

28

1    individuals were required to submit their applications "before July 1, 2018." Cal. Pen. Code §

2    30900(b)(1). Except as expressly admitted, Respondents deny the allegations of paragraph 37.

3        *38.    The Office of the Attorney General itself emphasized the importance of citizens'*

4    *compliance with the June 30, 2018 deadline, with a dramatic "countdown clock" display on the*

5    *Attorney General's website, showing the number of weeks, days, hours, minutes, and seconds*

6    *ticking away until literally the last second of the registration period (i.e., June 30,2018 at*

7    *11:59:59 PST). A true and correct copy of the DOJ's "countdown clock" illustrating this*

8    *countdown is attached hereto as Exhibit A. The DOJ's website further contained a direct link*

9    *to the CFARS web page, ostensibly as the vehicle for citizens to "beat the clock" and avoid the*

10   *serious consequences of failing to timely register, at https://cfars.doj.ca.gov/login.do. And,*

11   *according to the DOJ's website, the registration window would close on June 30, 2018 at*

12   *11:59:59 PST.*

13       38.    Respondents admit that the CFARS website had a "countdown clock." Respondents

14   admit that the deadline to submit applications would close on June 30, 2018, at midnight (i.e., as

15   June 30 became July 1), and that Respondents notified the public of that fact in various ways.

16   Except as expressly admitted, Respondents deny the allegations of paragraph 38.

17       *39.    Defendants knew or reasonably should have known that the CFARS-based "assault*

18   *weapon" registration system was substantially understaffed and incapable of properly and*

19   *timely accepting and processing the registration applications the DOJ was charged with*

20   *processing. Even before the statutory deadline was extended, the DOJ had requested*

21   *$2,588,000 and 27 positions to implement the statutorily-mandated Internet-based assault*

22   *weapons registration system. These funds were approved, in the form of a "loan" from the*

23   *Firearms Safety and Enforcement Special Fund, to be repaid by June 30, 2021, in part, from*

24   *the $15.00 per-person fees to be assessed to each registrant and other funds from the DROS*

25   *Special Fund.*

26       39.    Respondents deny that the CFARS system was incapable of properly and timely

27   accepting the registration applications the DOJ was charged with accepting. Respondents deny

28   that the development of the Internet-based registration system was underfunded or understaffed.

20

1    Respondents admit that they sought funds and positions to process the registration applications

2    once they were accepted by the system, but deny that there was any connection between the time

3    it took (and manpower required) to process the applications once accepted by the system and

4    whether or not the registration system was prepared to accept the applications.  Except as

5    expressly admitted, Respondents deny the allegations of paragraph 39.

6         ***40.    But in a declaration filed under oath in a separate civil action challenging the***

7    ***assault weapons regulations generally, DOJ Special Agent Supervisor Blake Graham, who***

8    ***"helped to design the public-facing application for submitting registration of bullet button***

9    ***assault weapons electronically via the Internet," declared that as of March 2018, all "[t]he***

10   ***programmers who [had] created this system for DOJ [were] [then] working on other***

11   ***legislatively mandated projects that [were] also on tight deadlines." In addition, Agent Graham***

12   ***explained that the "DOJ d[id] not have funding for [any] modification of the electronic***

13   ***registration system" and the DOJ had received funding for only 24 analysts and two managers***

14   ***to process registration applications, Graham described these as temporary positions that would***

15   ***be eliminated after one year.***

16        40.    Because the complaint does not identify the "separate civil action" to which it refers,

17   Respondents are without knowledge or information sufficient to form a belief as to the truth of

18   the allegations in paragraph 40 and, on that basis, Respondents deny such allegations.

19        ***41.    This situation inevitably led to a backlog of assault weapons registration forms and***

20   ***processing, even well before the statutory deadline. In response to a Public Record Act (PRA)***

21   ***request, the DOJ admitted that as early as February 1, 2018, more than five months after the***

22   ***system had gone "live," the system was already backlogged with 4,653 applications to register***

23   ***"bullet button assault weapons," of which it had only been able to approve about 2,500.  (See***

24   ***Exhibit B.) Thus, even then, Defendants knew that only a small fraction of the expected***

25   ***intended registrants had used the system up to that point in time, and did or reasonably should***

26   ***have known that an increasing number of registrants would be using the system throughout***

27   ***the end of the registration period and that many of those registrants would therefore encounter***

28   ***insurmountable technical obstacles in attempting to properly and timely register.***

41.     Respondents admit that the processing of applications after they were accepted by the system was occurring approximately as described in Exhibit B, but deny that there was any connection between the time required to process the applications once accepted by the system and whether or not the registration system was prepared to accept the applications.  Respondents admit that they were anticipating, and were prepared for, a substantial increase in the number of assault weapon registrations as the statutory deadline approached.  Except as expressly admitted, Respondents deny the allegations of paragraph 41.

*42.     DOJ acknowledged that by the end of the registration deadline, June 30, 2018, a total of 68,848 applications to register "bullet button assault weapons" had been submitted for registration in CFARS, and of those only 13,519 had been registered.  As of June 30, 2018, the DOJ was experiencing a backlog of 52,443 applications which were still in process. (See Exhibit C.)  Therefore, it is clear that a substantial increase in the number of "bullet button assault weapon" registrations was being experienced as the statutory deadline approached and Defendants knew or reasonably should have known that their continuing failure or refusal to establish, implement, and maintain a functional registration system in accordance with their statutorily-mandated duties would effectively prevent Plaintiffs and those similarly situated from properly and timely registering their firearms on or before July 1, 2018, as required by law*

42.     Respondents admit that the processing of applications after they were accepted by the system was occurring approximately as described in Exhibit C, but deny that there was any connection between the time required to process the applications once accepted by the system and whether or not the registration system was prepared to accept the applications.  Respondents admit that they were anticipating, and were prepared for, a substantial increase in the number of assault weapon registrations as the statutory deadline approached.  Except as expressly admitted, Respondents deny the allegations of paragraph 42.

*43.     This situation, predictably, came to a head during the end of the registration period, and particularly the last week of June 2018, when thousands of gun owners, desiring to comply with the law — the importance of which the Attorney General had so dramatically*

22

*emphasized with his intimidating "countdown clock" — attempted to use the registration*

*system in CFARS, either directly or through the link provided in the DOJ Bureau of Firearms*

*website, only to be shut out by acts, defects, and failures of the DOJ in connection with its*

*registration system. For many, the system simply "timed out" and failed while they were*

*attempting to access it, denying access altogether. Others got as far as filling out some or all of*

*the DOJ-required form submissions (including providing multiple digital photographs that*

*were not required by statute, but for some reason, were required by the DOJ), only to have the*

*system fail when clicking the "submit" application action button to complete registration -*

*blocking the registrations at the last second after their lengthy and good faith efforts to submit*

*their completed applications that complied with all requirements of the registration process.*

43.    Respondents are without knowledge or information sufficient to form a belief as to

the truth of the allegations in paragraph 43 and, on that basis, Respondents deny such allegations.

*44.    On information and belief, Plaintiffs allege that many (perhaps hundreds of*

*Californians sent the DOJ communications about and reports of various problems with and*

*defects in its systems and the performance of their statutorily-required duties throughout the*

*registration period. Defendants were thus aware of various defects, flaws, and limitations*

*(including but not limited to capacity) of its systems. But the DOJ did not remedy such defects,*

*failures, and limitations, thus causing many California gun owners to be prevented from*

*registering their eligible "bullet button assault weapon" firearms before the end of the*

*registration period.*

44.    Respondents admit that they received communications about many aspects of the

assault weapon registration system throughout the registration period.  Respondents deny that

there were material "defects, flaws, and limitations (including but not limited to capacity)" of

their systems.  Respondents are without knowledge or information sufficient to form a belief as to

the truth of the remaining allegations in paragraph 44 and, on that basis, Respondents deny such

allegations.

*45.    And thus, on June 29, 2018, while plaintiff Harry Sharp was able to log onto*

*CFARS from his home in Redding, California, and even successfully submit a registration*

*form for one of four his "bullet button assault weapon" firearms, when he attempted to register the remaining three immediately thereafter at approximately 3:30 p.m., he was prevented from doing so. Specifically, after plaintiff Sharp had attached the required pictures of his other registration-eligible firearms and attempted to "submit" them, the system "froze up," and failed, and he could not complete these applications. Plaintiff Sharp attempted to complete the remaining three registrations the following day, on June 30, 2018. He made at least 50 attempts to use the DOJ's registration systems (in CFARS) for this purpose, investing most of his day attempting these registrations, but to no avail because the DOJ's defective systems remained inaccessible or inoperable. Plaintiff Sharp attempted to obtain help or technical support from DOJ on at least four occasions, each time being met with an automated, "canned" auto-responder message stating that he had to simply resubmit the forms after clearing out his web browsers and deleting "cookies." He could not reach a live person at the time. Plaintiff Sharp followed these automated instructions, and continued attempting to register the remaining firearms, even into the next day, July 1, 2018, but all to no avail. Finally, Plaintiff Sharp was able to reach someone at the DOJ by phone on Monday, July 2, 2018. However, this person just told him that it was his responsibility to have complied with the registration mandate by the deadline, and the DOJ would not extend the deadline to submit registration applications. Thus, as a result of the DOJ's fundamentally defective systems and failures, Plaintiff Sharp was unable to submit three of the four registration applications that were necessary for him to comply with the laws and avoid being in violation of the applicable criminal statutes carrying extraordinary penalties, including prison time and loss of property.*

45.    Respondents admit that Sharp registered at least one weapon.  Respondents admit that Sharp contacted them before and after the registration deadline.  Respondents are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 45 and, on that basis, Respondents deny such allegations.

*46.    On June 28, 2018, plaintiff David Ajirogi attempted to register three "bullet button assault weapon" firearms, from his home in Sacramento, California. All of these firearms had been legally acquired and possessed prior to January 1, 2017, and all information relevant and*

24

1  *necessary to uniquely identify these firearms, including the make, model, manufacturer, and*

2  *serial numbers, was and has been already on file with the DOJ. However, when he attempted to*

3  *access the DOJ's registration system on June 28,2018, after attempting to use an established*

4  *CFARS account, the crucial link to the Assault Weapons Registration Form was inoperable*

5  *and he was thus unable to access the required registration form. Plaintiff Ajirogi continued*

6  *attempting to access the registration form page/link for approximately 20-30 minutes. He made*

7  *several additional attempts on June 29, 2018, but continued to experience the same*

8  *fundamental problem: the CFARS system would "time out" and fail in the process of*

9  *attempting to access it.  Plaintiff Ajirogi contacted the DOJ for assistance on Friday, June 29,*

10  *2018. The DOJ did not respond to his email inquiry, ever.*

11    46.    Respondents are without knowledge or information sufficient to form a belief as to

12  the truth of the allegations in paragraph 46 and, on that basis, Respondents deny such allegations.

13    *47.    Approximately one month before the statutory registration deadline, Plaintiff Ryan*

14  *Gilardy contacted the DOJ about his concerns regarding the CFARS system, and the*

15  *registration process generally. He spoke to an official at the DOJ who told him that they*

16  *expected to receive a large number of registrations in the weeks before the deadline. In fact, the*

17  *DOJ official had told Plaintiff Gilardy that he could even expect the system to "time out" and*

18  *fail during the registration process, but was told that if that happened, he would be able to "get*

19  *through" after several more attempts. Thus, in anticipation of doing the three firearm*

20  *registrations he intended, Plaintiff Gilardy gathered all of the required information and*

21  *paperwork necessary for a joint registration of his "bullet button assault weapon" firearms*

22  *with his eligible family members, including the photographs required for each firearm. All of*

23  *these firearms had been legally acquired and possessed prior to January 1,2017. On or about*

24  *June 22, 2018, Plaintiff Gilardy began the registration process through CFARS. However,*

25  *upon attempting to submit the information required for joint registration (including proof of*

26  *residence required for joint registrants), the system "timed out", failed, and prevented him*

27  *from completing the registration process. Thereafter, and throughout the entire following week*

28  *of June 25, 2018, Plaintiff Gilardy made many more attempts to complete the registration*

25

*process. Plaintiff Gilardy, who was formerly an information technology ("IT") professional,*

*made sure that he was using up-to-date computer systems and fully-updated web browsers, and*

*he attempted to complete the registration process through multiple computer devices (including*

*"smart" phones easily capable of processing pictures) from multiple locations, including his*

*home in Contra Costa County, using multiple Internet browsers, Internet service providers,*

*and networks, all to no avail. Plaintiff Gilardy also performed tests of his Internet connections*

*and determined that they were stable and more than technically adequate to perform the*

*registration process.  Notwithstanding these repeated and extensive efforts to complete the*

*registration process, he was only able to submit one of the three registrations he had prepared,*

*and that was only after he had abandoned efforts to submit the joint registration (requiring*

*additional information/documents), and only after making at least 14 attempts to register that*

*firearm. The submission for the other two semiautomatic firearms never went through, due to*

*the system's defects and failures, " including "time outs" which would not allow the*

*information to be submitted. Plaintiff Gilardy spent all week attempting these registrations,*

*including approximately five hours on June 30, 2018, alone, to no avail. As a result of the DOJ*

*system's failures and defects, Plaintiff Gilardy was unable to register two of his firearms that*

*he intended to register jointly with eligible family members.*

47.    Respondents are without knowledge or information sufficient to form a belief as to

the truth of the allegations in paragraph 47 and, on that basis, Respondents deny such allegations.

*48.    On June 30, 2018, plaintiff Darin Prince attempted to register several "bullet*

*button assault weapon" firearms from his home in San Diego County, California.  All of these*

*firearms had been legally acquired and possessed prior to January 1, 2017, and all information*

*relevant arid necessary to uniquely identify these firearms, including the make, model,*

*manufacturer, and serial numbers, was and had already been on file with the DOJ.  However,*

*when he attempted to access the DOJ's systems on June 30, 2018, after using an established*

*CFARS account and after uploading the photographs required for such registration, he was*

*given error messages, due to no fault of his own, and then was unable to proceed further.*

*Plaintiff Prince then made several additional attempts to register the firearms, but each time*

26

1   *was denied by the system (including through "timing out") without being able to submit the*

2   *registration forms. He spent a total of approximately six (6) hours attempting to register*

3   *through CFARS, to no avail. Plaintiff Prince contacted the DOJ for assistance, but DOJ did*

4   *not respond to his inquiry. As a result of the DOJ's acts, omissions and failures, and system*

5   *defects, Plaintiff Prince was unable to register any of the eligible firearms that he intended to*

6   *register.*

7       48.   Respondents admit that Prince contacted them by email a few minutes before the

8   statutory deadline, and that they did not respond to the email.  Respondents are without

9   knowledge or information sufficient to form a belief as to the truth of the remaining allegations in

10   paragraph 48 and, on that basis, Respondents deny such allegations.

11   *    49.   On June 30, 2018, plaintiff Todd Feltman attempted to register several "bullet*

12   *button assault weapon" firearms from his home in San Diego County, California. All of these*

13   *firearms had been legally acquired and possessed prior to January 1,2017, and all information*

14   *relevant and necessary to uniquely identify these firearms, including the make, model,*

15   *manufacturer, and serial numbers, was and has been already on file with the DOJ. However,*

16   *when he attempted to access the DOJ's registration system on June 30, 2018, utilizing an*

17   *established CFARS account, and after filling out all required information for the first of*

18   *several firearms, the CFARS system failed upon his attempt to upload and submit the four*

19   *photographs of the firearms that the DOJ required as a precondition of registration. Plaintiff*

20   *Feltman attempted three times to submit the required forms and pictures, only to have the*

21   *system fail and crash upon submission, requiring him to start over each time. He even*

22   *attempted to use different web browsers and different Internet connections, but still to no avail.*

23   *Plaintiff Feltman further attempted to contact DOJ regarding its system failures prior to the*

24   *registration deadline. The DOJ did not respond to his email inquiry, ever. As a result of the*

25   *DOJ's failures and system defects. Plaintiff Feltman was unable to register any of the eligible*

26   *firearms that he intended to register.*

27       49.   Respondents admit that Feltman contacted them by email at approximately 10:47

28   p.m. on the night of the statutory deadline, and that they did not respond to the email.

1    Respondents are without knowledge or information sufficient to form a belief as to the truth of

2    the remaining allegations in paragraph 49 and, on that basis, Respondents deny such allegations.

3       *50. On June 30, 2018, plaintiff David Kuehl attempted to register a "bullet button assault*

4    *weapon" from his home in Fresno County, California. This firearm had been legally acquired*

5    *and possessed prior to January 1, 2017, and all information relevant and necessary to uniquely*

6    *identify it, including the make, model, manufacturer, and serial number, was therefore already*

7    *on file with the DOJ. However, when he attempted to access the CFARS system on June 30,*

8    *2018, he was unable to do so, as he received error messages about the website not being*

9    *available, and he was unable to. proceed further. Plaintiff Kuehl made several attempts to*

10   *access CFARS on that day, but each time received error messages and could not access the site*

11   *due to these technical difficulties. As a result of the DOJ's failures and system defects, Plaintiff*

12   *Kuehl was unable to register his firearm.*

13       50.     Respondents are without knowledge or information sufficient to form a belief as to

14   the truth of the allegations in paragraph 50 and, on that basis, Respondents deny such allegations.

15       *51.     On June 30, 2018, plaintiff Terry Jahraus learned from watching the news on*

16   *television that he was required to register "bullet button assault weapons" as such with the*

17   *DOJ. This was the first he had heard about it. His firearm, which falls under this new*

18   *classification, had been legally acquired and possessed prior to January 1, 2017, and all*

19   *information relevant and necessary to uniquely identify it, including the make, model,*

20   *manufacturer, and serial number, was therefore already on file with the DOJ. Nevertheless, he*

21   *sought to register his firearm as required by this new law. However, when he attempted to*

22   *utilize the DOJ's registration systems on June 30, 2018, using an established CFARS account,*

23   *after he uploaded the required photographs he received error messages, due to no fault of his*

24   *own, and was unable to proceed further. Plaintiff Jahraus then made several additional*

25   *attempts to register the firearm, but each time was denied by the faulty system (including*

26   *through "timing out") without being able to submit the registration forms. He spent a total of*

27   *approximately three (3) hours attempting to register through CFARS, to no avail. The*

28   *following Monday, July 2, 2018, Plaintiff Jahraus contacted the DOJ for assistance, but the*

1     *DOJ official told him, essentially, "it was [his] responsibility to comply with the law [and] that*

2     *he had all year to do so." In other words, DOJ blamed him for failing to register, even though*

3     *its own statutorily-mandated registration system was inaccessible and defective throughout the*

4     *entire period he had attempted to register it well before the deadline. As a result of the DOJ's*

5     *failures and system defects, Plaintiff Jahraus was unable to register his firearm.*

6          51.     Respondents are without knowledge or information sufficient to form a belief as to

7     the truth of the allegations in paragraph 51 and, on that basis, Respondents deny such allegations.

8          *52.     On information and belief, the DOJ received many other requests for such*

9     *technical assistance and support from those attempting to complete the required registrations*

10     *during the last week of June 2018, due to the critical failures and technical issues with the*

11     *registration system and CFARS throughout this period.  On information and belief, in the vast*

12     *majority of cases, the inquiries to and pleas for help from DOJ were to no avail in attempting*

13     *to comply with the registration mandate, and the DOJ did not make sufficient staff and*

14     *technical resources available to address such inquiries and appeals until after the deadline, if*

15     *at all. And in some cases, DOJ simply advised the concerned prospective registrants, after the*

16     *deadline, that it was too late to register because the deadline had already passed.*

17          52.     Respondents admit that they received communications about many aspects of the

18     assault weapon registration system throughout the registration period.  Respondents deny that

19     they "did not make sufficient staff and technical resources available" or that there were "critical

20     failures."  Respondents admit that, after the statutory deadline had passed, it advised at least some

21     individuals that it was too late to submit their applications because the deadline had passed.  The

22     remaining allegations in paragraph 52 of the Petition merely characterize Petitioners' claims or

23     state legal conclusions, and are not averments of fact that require a response.  To the extent a

24     response is required, Respondents are without knowledge or information sufficient to form a

25     belief as to the truth of the remaining allegations in paragraph 52 and, on that basis, Respondents

26     deny such allegations.

27          *53.     At all times during this last week of June 2018, therefore, Defendants, and each of*

28     *them, were on clear notice of the critical technical defects blocking an untold number of gun*

1   *owners not otherwise prohibited from possessing or acquiring firearms from registering their*

2   *firearms in compliance with the law, including the Plaintiffs herein and many members of the*

3   *Institutional Plaintiffs. Yet, they failed and refused to rectify the situation in accordance with*

4   *their statutorily-imposed duties in carrying out the registration process. Then, immediately*

5   *after the deadline had passed, right after midnight on July 1, 2018, the DOJ completely shut*

6   *down the online registration system and refused to extend the registration period*

7   *notwithstanding the untold number of registrations that could not be completed as a direct*

8   *result of the DOJ's acts, omissions, failures, and technical defects in the DOJ's system.*

9       53.    Respondents admit that they shut down the online registration system right after

10  midnight on July 1, 2018, and did not provide any sort of extension after that time, consistent

11  with Penal Code section 30900.  The remaining statements in paragraph 53 of the Petition merely

12  characterize Petitioners' claims or state legal conclusions, and are not averments of fact that

13  require a response.  To the extent a response is required, Respondents deny the allegations in

14  paragraph 53 of the Petition.

15      ***54.    For past "assault weapon" registration periods, the DOJ was required to "conduct***

16  ***a public education and notification program regarding the registration of assault weapons and***

17  ***the definition of the weapons set forth in Section 30515 and former Section 12276.1," for***

18  ***purposes of facilitating "outreach to local law enforcement agencies and utilization of public***

19  ***service announcements in a variety of media approaches, to ensure maximum publicity..."***

20  ***(Penal Code § 31115.)***

21      54.    The allegations contained in paragraph 54 are Petitioners' summary and argument

22  regarding certain statutory provisions.  Those provisions speak for themselves.  To the extent

23  paragraph 54 contains any allegations of material fact, Respondents deny those allegations.

24      ***55.    Institutional Plaintiff FPC, during the legislative cycle, used its own resources to***

25  ***advocate for such education and outreach to help their members and the public know and***

26  ***understand their duties under the new laws that would be enacted by Senate Bill 880 and***

27  ***Assembly Bill 1135. (See e.g., Senate Committee of Public Safety analysis of SB 880 ["By***

28  ***moving the goal posts on millions of its own residents, California would create new criminal***

30

1  *liability for hundreds of thousands of Californians and California visitors — including*

2  *shooting sports competitors - without so much as a simple outreach program, public service*

3  *announcement, or mandate that DOJ update the years-outdated (and, in some cases, grossly*

4  *misleading) information it promulgates in its publications and on its website but refuses to*

5  *correct in spite of the real consequences to law-abiding people."]; Assembly Public Safety*

6  *Analysis of SB 880 (original formatting modified) ["SB 880 contains no provision for outreach*

7  *to the millions of Californians who have lawfully acquired firearms that would be subject to SB*

8  *880's reach. SB 880 contains no provision for educating law enforcement officers or*

9  *prosecutors—'the very people who will have to interpret and enforce it—which will lead to*

10 *false arrests and ruined lives."].)*

11   55.   The allegations contained in paragraph 55 are Petitioners' summary and argument

12  regarding certain legislative history documents.  Those documents speak for themselves.  To the

13  extent paragraph 55 contains any allegations of material fact, Respondents are without knowledge

14  or information sufficient to form a belief as to the truth of the remaining allegations in paragraph

15  55 and, on that basis, Respondents deny such allegations.

16   *56.   For this new "bullet button assault weapon" registration requirement, however,*

17  *there was no mandate or appropriation for outreach or education for gun owners or law*

18  *enforcement alike.  DOJ did not undertake any meaningful or sufficient steps to help*

19  *Californians understand the laws and their requirements to comply with them - beginning with*

20  *registration - other than the "countdown" timer and a few sentences on a "Firearms" sub-page*

21  *of its website, of which many of the affected citizens were likely unaware. Thus, the fate of*

22  *California gun owners and their legal compliance were largely left to "word of mouth."*

23   56.   The statements in paragraph 56 of the Petition merely characterize Petitioners' claims

24  or state legal conclusions, and are not averments of fact that require a response.  To the extent a

25  response is required, Respondents deny the allegations in paragraph 56 of the Petition.

26   *57.   Because of these and other considerations, on information and belief, many gun*

27  *owners were not able to or did not undertake efforts to begin compliance through registration*

28  *until the final weeks of the registration period.  And then, they were met with the fundamental*

*failures and defects of the DOJ's registration system that it failed and refused to rectify before the deadline.*

57.     The statements in paragraph 57 of the Petition merely characterize Petitioners' claims or state legal conclusions, and are not averments of fact that require a response.  To the extent a response is required, Respondents are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 57 and, on that basis, Respondents deny such allegations.

*58.     Plaintiffs incorporate paragraphs 1 through 57 as if fully set forth herein.*

58.     Respondents incorporate by reference their admissions, denials, and averments to the above allegations as if fully set forth herein.

*59.     "Every person who, under color of [state law] ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution ... shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.*

59.     The allegations contained in paragraph 59 are Petitioners' summary and argument regarding certain statutory provisions.  Those provisions speak for themselves.  To the extent paragraph 59 contains any allegations of material fact, Respondents deny those allegations.

*60.     As the chief law enforcement officer of the state, and the head of the DOJ, it is the duty of Defendant Attorney General Becerra to ensure that California's laws are uniformly and properly enforced, including the registration of statutorily-classified "assault weapons." As the Acting Chief of the DOJ's Bureau of Firearms, Defendant Orick reports to Attorney General Becerra and is responsible for the various operations of the Bureau of Firearms, including the implementation and enforcement of the statutes and regulations governing sales, use, ownership, transfer, and "assault weapon" registration of firearms. Defendant Dominic, Chief of the DOJ's California Justice Information Services (CJIS) Division, reports to Attorney General Becerra and is responsible for the various technology operations of the DOJ, including the implementation and maintenance of the technology systems used by the Bureau of Firearms and the public, like the online registration system that Defendants were required to*

1   *establish and maintain. And Defendant DOJ itself is the state agency charged with the*

2   *responsibility of enforcing statutes and promulgating and enforcing rules and regulations*

3   *authorized by and designed to effectuate the law related to the registration of firearms as*

4   *statutorily-classified "assault weapons."*

5   60.   The statements in paragraph 60 of the Petition merely characterize Petitioners' claims

6   or state legal conclusions, and are not averments of fact that require a response.  To the extent a

7   response is required, Respondents deny the allegations in paragraph 60 of the Petition.

8   *61.   DOJ, and Defendants Becerra, Orick, and Dominic in their respective official*

9   *capacities, were individually and collectively responsible for properly establishing,*

10   *implementing, and maintaining a consistently reliable and functional registration system, for*

11   *properly supervising, training, and directing those under their charge who were involved in*

12   *establishing, implementing, and maintaining a registration system actually capable of timely*

13   *processing all statutorily-required "assault weapon" registrations.*

14   61.   The statements in paragraph 61 of the Petition merely characterize Petitioners' claims

15   or state legal conclusions, and are not averments of fact that require a response.  To the extent a

16   response is required, Respondents deny the allegations in paragraph 61 of the Petition.

17   *63.   The Fourteenth Amendment to the United States Constitution and article I, section*

18   *of the California Constitution, each guarantee that no person shall be deprived of life, liberty,*

19   *or property without due process of law.*

20   63.   The statements in paragraph 63 of the Petition merely characterize Petitioners' claims

21   or state legal conclusions, and are not averments of fact that require a response.

22   *64.   An actual controversy has arisen and now exists between Plaintiffs, and others*

23   *similarly situated, and Defendants, and each of them as to the validity and enforceability of*

24   *certain statutes prohibiting the possession of unregistered "assault weapons" as defined by*

25   *California law, and as to whether such statutes are void and unenforceable as applied as to*

26   *them.  Specifically, Plaintiffs, and the class of similarly situated persons they represent, claim*

27   *that they have been and are continuing to be deprived of due process under the law secured by*

28   *the Constitution of the United States, and that they have been and are continuing to be*

33

1   *otherwise deprived of such rights and benefits of the law by Defendants' failure and refusal to*

2   *operate, provide, or otherwise allow for a functional "assault weapons" registration system, as*

3   *required by Penal Code § 30900(b)(2), because such actions and omissions have deprived them*

4   *of their right and/or ability to register their firearms as "assault weapons" by July 1, 2018, as*

5   *required by Pen Code §§ 30680(c) and 30900(b), which registration is necessary in order to*

6   *otherwise maintain lawful possession and transportation of their firearms.*

7   64.   The statements in paragraph 64 of the Petition merely characterize Petitioners' claims

8   or state legal conclusions, and are not averments of fact that require a response.  To the extent a

9   response is required, Respondents deny the allegations in paragraph 64 of the Petition.

10   *65.   Pursuant to 28 U.S.C. § 2201, Plaintiffs desire a judicial declaration that*

11   *Defendants' flawed registration system has unfairly and improperly prevented Plaintiffs, and*

12   *the class of similarly-situated individuals they represent, from complying with the law, in*

13   *violation of their rights to due process under 42 U.S.C. § 1983, and, as a result, that certain*

14   *statutes otherwise subjecting them to criminal sanctions – to wit: Penal Code §§ 30600, 30605,*

15   *30615, 30800, 30900(b) – are invalid and unenforceable as applied to them. WHEREFORE,*

16   *Plaintiffs seek the declaratory and injunctive relief as set forth below.*

17   65.   The statements in paragraph 65 of the Petition merely characterize Petitioners' claims

18   or state legal conclusions, and are not averments of fact that require a response.  To the extent a

19   response is required, Respondents deny the allegations in paragraph 65 of the Petition.

20   *66.   Plaintiffs incorporate paragraphs 1 through 65 as if fully set forth herein.*

21   66.   Respondents incorporate by reference their admissions, denials, and averments to the

22   above allegations as if fully set forth herein

23   *67.   California Penal Code § 30900(b)(1) provides that any person who lawfully*

24   *possessed a firearm retroactively defined as an "assault weapon," including those weapons*

25   *containing bullet button devices, "shall register the firearm before July 1,2018, but not before*

26   *the effective date of the regulations adopted pursuant to paragraph (5), with the department*

27   *pursuant to those procedures that the department may establish by regulation pursuant to*

28   *paragraph (5)." (Emphasis added). Subdivision (b)(2) of this section further provides that*

34

1  *"Registrations shall be submitted electronically via the Internet utilizing a public-facing*

2  *application made available by the [DOJ]." Concomitantly, section 30680 provides an exception*

3  *to the general prohibition against the possession of "assault weapons" for those, and only*

4  *those who lawfully own such firearms and register them "by July 1, 2018, in accordance with*

5  *subdivision (b) of Section 30900." (§ 30680, subd. (c).)*

6       67.   The allegations contained in paragraph 67 are Petitioners' summary and argument

7  regarding certain statutory provisions.  Those provisions speak for themselves.  To the extent

8  paragraph 67 contains any allegations of material fact, Respondents deny those allegations.

9       *68.   Individual Plaintiffs, as discussed above, and the class of similarly-situated*

10  *individuals they represent — i.e., those California residents who are otherwise eligible to own*

11  *firearms, lawfully owned and possessed a legislatively-defined "assault weapon" from January*

12  *1, 2001, to December 31, 2016, "including those weapons with an ammunition feeding device*

13  *that can be readily removed from the firearm with the use of a tool," and attempted registration*

14  *using the only authorized method of registration — were deprived by Defendants of their right*

15  *and ability to register such firearms in compliance with Pen. Code §§ 30900(b) and 30680(c).*

16  *On information and belief, and as will be demonstrated at trial, a substantial number of other,*

17  *similarly-situated members of such class of persons were deprived of, and thereby denied, their*

18  *right and ability to register such firearms solely due to the acts, omissions, constraints, failures,*

19  *and technical defects on the part of Defendants, and each of them, in connection with their*

20  *Internet-based "bullet button assault weapon" registration system.*

21       68.   The statements in paragraph 68 of the Petition merely characterize Petitioners' claims

22  or state legal conclusions, and are not averments of fact that require a response.  To the extent a

23  response is required, Respondents deny the allegations in paragraph 68 of the Petition.

24       *69.   Defendants had a clear, present, and ministerial duty to establish and implement*

25  *policies, practices, and regulations that comply with the requirements of the statutes, as well as*

26  *the California Constitution and United States Constitution, within the purview of their rule-*

27  *making and enforcement authority, and to provide its citizens with the ability to properly and*

28

Respondents' Answer to Second Amended Petition and Complaint (CASE NO. 2:18-cv-02317-MCE-AC)

1    *timely comply with the law - particularly when the DOJ's registration system was the sole*

2    *available means to do so.*

3        69.   The statements in paragraph 69 of the Petition merely characterize Petitioners' claims

4    or state legal conclusions, and are not averments of fact that require a response.  To the extent a

5    response is required, Respondents deny the allegations in paragraph 69 of the Petition.

6        *70.   Plaintiffs, and each of them, and the class of similarly situated individuals*

7    *described herein, all have a beneficial interest in the proper discharge of the duties that the*

8    *DOJ must faithfully execute in connection with the "assault weapons" registration process.*

9    *Plaintiffs, and each of them, and the class of similarly situated individuals described herein,*

10    *have a beneficial interest in application of the laws in a fair, just and reasonable manner that*

11    *gives each similarly situated citizen the opportunity to comply with the registration*

12    *requirements.*

13        70.   The statements in paragraph 70 of the Petition merely characterize Petitioners' claims

14    or state legal conclusions, and are not averments of fact that require a response.  To the extent a

15    response is required, Respondents deny the allegations in paragraph 70 of the Petition.

16        *71.   As a result of the Defendants' failure to establish, implement, and maintain a*

17    *functional registration system throughout the registration period, Plaintiffs, and each of them,*

18    *have been deprived of the ability to avail themselves of the laws that would protect them from*

19    *criminal liability and permit them to retain lawful and beneficial use of their statutorily-*

20    *classified "assault weapons." Plaintiffs, and each of them, therefore have a beneficial interest*

21    *in ensuring that the law, and Defendants' failed implementation of the same through their*

22    *defective registration process and failures to perform their duties, does not deprive them (and*

23    *their members, in the case of Institutional Plaintiffs) of their constitutional and statutory rights*

24    *and their liberty and property interests without due process of law. The actions and omissions*

25    *of the Defendants, and each of them, rise to the level of a deprivation of due process under the*

26    *United States Constitution, and the Constitution of the State of California, and a denial of*

27    *Plaintiffs rights under the applicable statutes.*

28

71.     The statements in paragraph 71 of the Petition merely characterize Petitioners' claims or state legal conclusions, and are not averments of fact that require a response.  To the extent a response is required, Respondents deny the allegations in paragraph 71 of the Petition.

*72.     Plaintiffs have no speedy or adequate remedy at law, and this Court has jurisdiction to grant the mandamus and other relief requested herein as necessary and proper to rectify the previous and continuing deprivation of such interests. (Cal. Const., art. VI, § 10.)*

72.     The statements in paragraph 72 of the Petition merely characterize Petitioners' claims or state legal conclusions, and are not averments of fact that require a response.  To the extent a response is required, Respondents deny the allegations in paragraph 72 of the Petition.

*73.     Plaintiffs incorporate paragraphs 1 through 72 as if fully set forth herein.*

73.     Respondents incorporate by reference their admissions, denials, and averments to the above allegations as if fully set forth herein.

*74.     An actual controversy has arisen and now exists between Plaintiffs, and others similarly situated, and Defendants, and each of them, as to the validity and enforceability of certain statutes prohibiting the possession of "assault weapons" as re-defined by California law, and as to whether such statutes are void and unenforceable, as applied as to them. Specifically, Plaintiffs, and others similarly situated, claim that they have been and are continuing to be deprived of due process under the law, the Constitution of the United States and of the State of California, and that they have been and are continuing to be otherwise deprived of such rights and benefits of the law by Defendants' failure and refusal to operate, provide, or otherwise allow for a functional "assault weapons" registration system, as required by Penal Code § 30900(b)(2).*

74.     The statements in paragraph 74 of the Petition merely characterize Petitioners' claims or state legal conclusions, and are not averments of fact that require a response.  To the extent a response is required, Respondents deny the allegations in paragraph 74 of the Petition.

*75.     The Fourteenth Amendment to the United States Constitution and article I, section of the California Constitution, each guarantee that no person shall be deprived of life, liberty, or property without due process of law.*

37

1   75.   The statements in paragraph 75 of the Petition merely characterize Petitioners' claims

2   or state legal conclusions, and are not averments of fact that require a response.

3   *76.   An actual controversy has further arisen and now exists between Plaintiffs, and the*

4   *class of similarly situated individuals previously identified, on the one hand, and Defendants,*

5   *and each of them, on the other hand, as to whether Plaintiffs and the class of persons they*

6   *represent were deprived of their right or ability to register their firearms as assault weapons by*

7   *July 1, 2018, as required by Pen Code.§§ 30680(c) and 30900(b) and the DOJ's own*

8   *regulations, and as to whether that deprivation has resulted in a deprivation of due process.*

9   76.   The statements in paragraph 76 of the Petition merely characterize Petitioners' claims

10   or state legal conclusions, and are not averments of fact that require a response.  To the extent a

11   response is required, Respondents deny the allegations in paragraph 76 of the Petition.

12   *77.   Plaintiffs desire a judicial declaration that certain statutes otherwise subjecting*

13   *them to criminal sanctions – to wit: Penal Code §§ 30600, 30605, 30615, 30800, 30900(b) – are*

14   *invalid and unenforceable as applied to them, and to the class of similarly-situated individuals*

15   *they represent, because Defendants' flawed registration system has unfairly and improperly*

16   *prevented them from complying with the law in violation of their rights to due process.*

17   *WHEREFORE, Plaintiffs seek declaratory relief as set forth below.*

18   77.   The statements in paragraph 77 of the Petition merely characterize Petitioners' claims

19   or state legal conclusions, and are not averments of fact that require a response.  To the extent a

20   response is required, Respondents deny the allegations in paragraph 77 of the Petition.

21   *78.   Plaintiffs incorporate paragraphs 1 through 77 as if fully set forth herein.*

22   78.   Respondents incorporate by reference their admissions, denials, and averments to the

23   above allegations as if fully set forth herein.

24   *79.   Plaintiffs, and each of them, individually, as representatives of the previously*

25   *identified class of similarly situated individuals, and the similarly-situated members of the*

26   *Institutional Plaintiffs and the public, the interests of whom are at the core of the institutions'*

27   *organizational purposes, seek injunctive relief in Plaintiffs' favor, against Defendants, and*

28   *each of them, prohibiting all Defendants and their agents from enforcing Penal Code §§*

38

1  *30600, 30605, 30615, 30800, 30900(b) as to each of them, and those similarly situated, until*

2  *said Plaintiffs, the class of individuals they represent, and the affected members of the*

3  *Institutional Plaintiffs identified herein, are granted a reasonable opportunity to register their*

4  *firearms through a functional and reliable registration system.*

5      79.    The statements in paragraph 79 of the Petition merely characterize Petitioners' claims

6  or state legal conclusions, and are not averments of fact that require a response.  To the extent a

7  response is required, Respondents deny the allegations in paragraph 79 of the Petition.

8      ***80.    Temporary and permanent injunctive relief are therefore necessary and proper, as***

9  *plaintiffs will be irreparably injured without such injunctive relief, and the balance of harms*

10  *weighs heavily in Plaintiffs' favor - particularly as Defendants' failures and refusal to provide*

11  *a reliable and functional registration system has left Plaintiffs in jeopardy of criminal liability.*

12      80.    The statements in paragraph 80 of the Petition merely characterize Petitioners' claims

13  or state legal conclusions, and are not averments of fact that require a response.  To the extent a

14  response is required, Respondents deny the allegations in paragraph 80 of the Petition.

15      Respondents admit that Petitioners purport to request the relief listed in the Prayer for

16  Relief, but deny that Petitioners are entitled to the requested relief or any other relief.

17                              **AFFIRMATIVE DEFENSES**

18      In asserting these defenses, Respondents do not assume the burden of establishing any fact

19  or proposition where that burden is properly imposed on Petitioners.  For each assertion,

20  allegation, cause of action, and/or claim for relief by Petitioners, Respondents assert the following

21  separate and distinct affirmative defenses:

22                          **FIRST AFFIRMATIVE DEFENSE**

23      The Petition fails to state facts sufficient to justify the relief sought or to state a cause of

24  action against Respondents upon which relief may be granted.

25                        **SECOND AFFIRMATIVE DEFENSE**

26      Petitioners have not suffered any injury or damages as a result of any act or conduct by

27  Respondents and, therefore, Petitioners are not entitled to relief from Respondents.

28

1

**THIRD AFFIRMATIVE DEFENSE**

2

Petitioners do not have standing to bring the causes of action alleged in the Petition.

3

**FOURTH AFFIRMATIVE DEFENSE**

4

Petitioners' claims are barred, in whole or in part, by the doctrines of waiver, estoppel,

5

and/or unclean hands.

6

**FIFTH AFFIRMATIVE DEFENSE**

7

Petitioners' injuries (if any) were caused by something or someone other than Respondents.

8

**SIXTH AFFIRMATIVE DEFENSE**

9

Respondents' conduct at all times was in conformity with the law.

10

**SEVENTH AFFIRMATIVE DEFENSE**

11

Respondents intend to rely upon any other matter constituting an avoidance or affirmative

12

defense as set forth in Rule 8(c) of the Federal Rules of Civil Procedure, and reserve the right to

13

seek leave to amend this Answer to add to, amend, withdraw or modify these defenses as this

14

action proceeds.

15

**PRAYER FOR RELIEF**

16

WHEREFORE, Respondents prays that:

17

1.      The Court deny the Petition;

18

2.      The Court enter judgment in favor of Respondents;

19

3.      The Court deny Petitioners' request for attorneys' fees and costs;

20

4.      The Court award Respondents costs of suit; and

21

5.      The Court grant such other and further relief that the Court deems just and proper.

22

23

/ / /

24

/ / /

25

/ / /

26

/ / /

27

/ / /

28

Respondents' Answer to Second Amended Petition and Complaint (CASE NO. 2:18-cv-02317-MCE-AC)

1    Dated:  July 12, 2019                                    Respectfully Submitted,

2                                                             XAVIER BECERRA
                                                              Attorney General of California
3                                                             BENJAMIN M. GLICKMAN
                                                              Supervising Deputy Attorney General
4

5                                                             */s/ John W. Killeen*
                                                              JOHN W. KILLEEN
6                                                             Deputy Attorney General
                                                              *Attorneys for Respondents Xavier Becerra,*
7                                                             *Brent E. Orick, Joe Dominic, and the*
                                                              *California Department of Justice*
8    SA2018102035
     13864847_4.docx
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respondents' Answer to Second Amended Petition and Complaint (CASE NO. 2:18-cv-02317-MCE-AC)

# CERTIFICATE OF SERVICE

Case Name:  **Sharp, Harry, et al. v. Xavier Becerra, et al.**          No.   **2:18-cv-02317-MCE-AC**

I hereby certify that on <u>July 12, 2019,</u> I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**ANSWER OF RESPONDENTS TO PETITIONERS' SECOND AMENDED PETITION FOR WRIT OF MANDATE AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>July 12, 2019</u>, at Sacramento, California.

Eileen A. Ennis                                    */s/ Eileen A. Ennis*
Declarant                                             Signature

SA2018102035
13912379.docx